ACCEPTED
05-15-00861-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
7/16/2015 4:04:22 PM
LISA MATZ
CLERK

NO. 05-15-00861-CV

IN THE COURT OF APPEALS
FIFTH DISTRICT OF TEXAS
AT DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS

7/16/2015 4:04:22 PM

LISA MATZ
Clerk

IN RE ROGER ARASH FARAHMAND,
Relator

Original Proceeding Arising From the 417th Judicial District Court
Collin County, Texas
Cause No. 417-56531-2013
Hon. Cynthia Wheless

**VOLUME I OF RELATOR'S RECORD IN SUPPORT OF
PETITION FOR WRIT OF MANDAMUS
TABS 1 THRU 17**

THE LAW OFFICE OF GARY L. NICKELSON
Chris Nickelson
State Bar No. 24013241
5201 West Freeway, Suite 100
Fort Worth, Texas 76107-5200
Phone: 817-735-4000
Fax: 817-735-1480
Email: JCN@nickfamlaw.com
ATTORNEY FOR RELATOR,
ROGER ARASH FARAHMAND

1

# INDEX

Tab 1     Case Register

Tab 2     Original Petition for Divorce, Emergency (Ex Parte) Request for Extraordinary Relief, and Request for Temporary Orders, filed 12/30/13

Tab 3     Temporary Emergency Ex Parte Order and Order Setting Hearing, signed 12/30/13

Tab 4     Original Counter-Petition for Divorce, filed 1/27/14

Tab 5     Rule 11 Agreement, filed 1/27/14

Tab 6     Reporter's Record of Hearing on 3/10/14

Tab 7     Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce, filed 3/28/14

Tab 8     Letter Advising of Trial on Request to Declare Marriage Void, filed 4/23/14

Tab 9     Agreed Scheduling Order, signed 5/2/14

Tab 10    Maryam Farahmand's Answer to Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce, filed 5/22/14

Tab 11    Respondent's First Supplemental and Amended Counter-Petition for Divorce, filed 6/30/14

Tab 12    Respondent's First Verified Motion for Continuance, filed 7/10/14

Tab 13    Respondent's Objection to and Motion to Strike Petitioner's Certificate of Marriage, filed 7/12/14

Tab 14    Respondent's Hybrid Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari, filed 7/15/14

Tab 15    Petitioner's Special Exceptions and Motion to Strike Respondent's "First Verified Motion for Continuance", filed 7/31/14

Tab 16    Petitioner's Special Exceptions and Motion to Strike Respondent's "First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and his Client Party and Motion for Interim Attorney Fees and Expenses", filed 7/31/14

Tab 17    Petitioner's Special Exceptions and Motion to Strike Respondent's "First Amended Answer to Original Petition to Declare Marriage Void", filed 7/31/14

## VERIFICATION

Before me the undersigned notary, on this day personally appeared in person known to me to be Chris Nickelson, who after being duly sworn by me did testify under oath as follows:

1.  My name is Chris Nickelson. I am over the age of 18 years of age and am legally competent to make this affidavit. I am counsel for Roger Arash Farahmand, and I am also an attorney duly licensed and in good standing in the State of Texas. The statements contained herein are within my personal knowledge and true and correct, and I make these statements voluntarily and not under duress.

2.  The documents contained in the *Volume I of Relator's Record in Support of Petition for Writ of Mandamus Tabs 1 Thru 17*, *Volume II of Relator's Record in Support of Petition for Writ of Mandamus Tab 18*, and *Volume III of Relator's Record in Support of Petition for Writ of Mandamus Tabs 19 Thru 30* are all true and correct copies of pleadings, orders, hearing transcripts, and evidence admitted in the suit for dissolution of marriage between Roger and Maryam Farahmand, cause number, 417-56531-2013, in the 417th Judicial District Court of Collin County, Texas.

Further, Affiant sayeth not.



Chris Nickelson

SUBSCRIBED AND SWORN TO before me on the 16th day of July, 2015.

ELIZABETH CHRISTMAN
Notary Public, State of Texas
My Commission Expires
November 28, 2016

Elizabeth Christman
NOTARY PUBLIC, State of Texas

4

# ROGER FARAHMAND'S
# RECORD TAB 1

Location : All Civil & Family Courts   Images Help

# REGISTER OF ACTIONS
## CASE NO. 417-56531-2013

| | | |
|---|---|---|
| In the Matter of the Marriage of Roger Arash Farahmand vs. Maryam Farahmand and in the Interest of ▇▇▇▇▇▇▇▇▇▇▇ | §<br>§<br>§<br>§<br>§<br>§ | Case Type: **Divorce with Children**<br>Date Filed: **12/30/2013**<br>Location: **417th District Court**<br>Case Number History: **401-56531-2013** |

---

### PARTY INFORMATION

**Attorneys**

| | | |
|---|---|---|
| **Petitioner** | **Farahmand, Roger Arash** *Also Known As* **Farahmand, Roger** | **Karen Turner**<br>*Retained*<br>214-780-0646(W) |
| | | ~~Bradford Nace~~<br>*~~Retained~~*<br>~~214-459-8289(W)~~ |
| | | Bradford Nace<br>*Retained*<br>214-459-8289(W) |
| | | ~~Ike Vanden Eykel~~<br>*~~Retained~~*<br>~~214-871-2727(W)~~ |
| | | ~~Rebecca Tillery Rowan~~<br>*~~Retained~~*<br>~~214-871-2727(W)~~ |
| **Respondent** | **Farahmand, Maryam** | **John J Pfister, Jr.**<br>*Retained*<br>972-712-6700(W) |
| | | ~~Dawn M. Grams Horak~~<br>*~~Retained~~*<br>~~469-644-7442(W)~~ |
| | | ~~Pro SeRichard J Corbitt~~<br>*~~Retained~~*<br>~~214-744-1234(W)~~ |
| | | ~~Robert S Widner~~<br>*~~Retained~~*<br>~~469-563-4800(W)~~ |
| **Respondent** | **John, Pfister J.**<br>6814 Lebanon Road, Suite 101<br>Frisco, TX 75034 | |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

12/30/2013 **Original Petition for Divorce (OCA) $289.00**
  *Emergency(ex parte) request for extraordinary relief, and request for temporary orders*
12/30/2013 **Request for Citation $8.00**
  *x1 waiting*

| 12/30/2013 | **Request for Temporary Restraining Order $8.00** | | |
| | *x1 waiting* | | |
| 12/30/2013 | **Order** | | |
| | *Temporary Emergency Ex Parte Order and Order Setting Hearing* | | |
| 12/30/2013 | **Citation** | | |
| | Farahmand, Maryam | Served | 01/02/2014 |
| | | Returned | 01/02/2014 |
| 12/30/2013 | **Temporary Restraining Order** | | |
| | Farahmand, Maryam | Served | 01/02/2014 |
| | | Returned | 01/02/2014 |
| 01/10/2014 | **Subpoena Return - Not DC Issued** | | |
| | *Que Le Served 1/9/2014* | | |
| 01/10/2014 | **Subpoena Return - Not DC Issued** | | |
| | *Beth Cook served 1/9/2014* | | |
| 01/14/2014 | **Temporary Orders Hearing**  (9:00 AM) (Judicial Officer Rusch, Mark) | | |
| 01/14/2014 | **General Docket Entry** | | |
| | *Matter reset* | | |
| 01/14/2014 | **Order Extending** | | |
| | *Extension of Temporary Emergency Ex Parte Order and Order Setting Hearing* | | |
| 01/24/2014 | **Request for Copies $** | | |
| 01/24/2014 | **Subpoena Return - Not DC Issued** | | |
| | *Aaron Lilly Served 1/23/2014* | | |
| 01/27/2014 | **Original Answer** | | |
| | *Respondent's Original Answer* | | |
| 01/27/2014 | **Counter Petition $50.00** | | |
| | *Original Counter-Petition for Divorce* | | |
| 01/27/2014 | **Rule 11 Agreement** | | |
| | *Rule 11 Agreement* | | |
| 01/27/2014 | **Rule 11 Agreement** | | |
| | *Rule 11 Agreement* | | |
| 01/28/2014 | *CANCELED*   **Temporary Orders Hearing**  (9:00 AM) (Judicial Officer Rusch, Mark) | | |
| | *Reset* | | |
| 02/04/2014 | **Motion** | | |
| | *Maryam Farahmand's Motion for Expedited Hearing for Interim Possession and Access* | | |
| 02/04/2014 | **Notice of Hearing** | | |
| | *Notice of Hearing on Motion for Expedited Hearing for Interim Possession and Access* | | |
| 02/05/2014 | **General Docket Entry** | | |
| | *No action taken by the Court* | | |
| 02/25/2014 | **Affidavit** | | |
| | *Affidavit of Business Records of Hannah's House* | | |
| 02/26/2014 | **Affidavit** | | |
| | *Business Records Affidavit of Hannah's House February* | | |
| 03/06/2014 | **Motion** | | |
| | *Maryam Farahmand's Request to Expand Local 20-Minute Rule for Temporary Orders Hearing* | | |
| 03/07/2014 | **Subpoena Return - Not DC Issued** | | |
| | *Served 3/6/2014 Aslan Ghaffari* | | |
| 03/07/2014 | **Subpoena Return - Not DC Issued** | | |
| | *served 3/6/2014 Farid Rastegar* | | |
| 03/10/2014 | **Temporary Orders Hearing**  (9:00 AM) (Judicial Officer Rusch, Mark) | | |
| 03/10/2014 | **General Docket Entry** | | |
| | *Temp Hearing conducted; Ruling dictated; MJR* | | |
| 03/18/2014 | **Notice of Appearance** | | |
| | *Appearance of Co-Counsel and Notice of Change in Lead Counsel* | | |
| 03/21/2014 | **Rule 11 Agreement** | | |
| | *Rule 11 Agreement regarding possession* | | |
| 03/28/2014 | **Petition (Non - OCA) $70.00** | | |
| | *Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* | | |
| 04/01/2014 | **Certificate of Deposition (Bill of Cost Form)** | | |
| | *Maryam Farahmand Reporter Certification* | | |
| 04/04/2014 | **Certificate of Deposition (Bill of Cost Form)** | | |
| | *Roger Farahmand* | | |
| 04/10/2014 | **Certificate of Deposition (Bill of Cost Form)** | | |
| | *Reporters Certification Deposition of Maryam Farahmand March 4,2014* | | |
| 04/21/2014 | **Certificate** | | |
| | *Certificate of Written Discovery* | | |
| 04/23/2014 | **Service Return** | | |
| | *Return of service on Aslan Ghaffari on Notice of Intent to take Depo.* | | |
| 04/23/2014 | **Letter** | | |
| | *Hearing Date 07/29/2014* | | |
| 04/24/2014 | **Request for Citation $8.00** | | |
| 04/24/2014 | **Request for Notice $8.00** | | |
| 04/25/2014 | **Motion** | | |
| | *Motion for Substitution of Counsel* | | |
| 04/28/2014 | **Citation** | | |
| | Farahmand, Maryam | Served | 05/02/2014 |
| | | Returned | 05/02/2014 |
| 04/28/2014 | **Notice** | | |
| | Farahmand, Maryam | Served | 05/02/2014 |
| | | Returned | 05/02/2014 |

| | |
|---|---|
| 04/28/2014 | **Subpoena Return - Not DC Issued** |
| | *Shahrbanoo Khanipour aka Mahnaz Keyani Subpoena served* |
| 05/01/2014 | **Designation of** |
| | *Designation of Attorney in Charge* |
| 05/02/2014 | **Service Return** |
| | *Maryam Farahmand Served Notice 05/02/2014* |
| 05/02/2014 | **Service Return** |
| | *Maryam Farahmand Served Citation 05/02/2014* |
| 05/02/2014 | **Agreed Order** |
| | *Agreed Scheduling Order* |
| 05/06/2014 | **Certificate** |
| | *Certificate of Written Discovery* |
| 05/08/2014 | **Certificate** |
| | *Certificate of Written Discovery* |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Syed Shah* |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Dr. Michael Scott Woods* |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Thomas Janacek served subp 05/09/2014* |
| 05/16/2014 | **Petitioner's** |
| | *Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness* |
| 05/16/2014 | **Service Return** |
| | *Notice of intent to issue Subpoena Legacy Apartment Homes Served 05/14/14* |
| 05/19/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness* |
| 05/22/2014 | **Original Answer** |
| | *Maryam Farahmand's Answer to Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | *Dr Michael Scott Woods* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | *CR for Syed Shah served Subpoena 05/22/2014* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Thomas Janacek, M.D.* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | *Dr Robert Gordon* |
| 05/27/2014 | **Motion Hearing**  (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *M/Issuance of Letters Rogatory and Subpoena to Depose Out-of-State Witness* |
| 05/27/2014 | **Appearance of Counsel** |
| | *Notice of Appearance of Counsel* |
| 05/27/2014 | **Response** |
| | *Respondent's Response and Objections to Issuance of Letters Rogatory and Subpoena to Depose an Out-of-state Witness* |
| 05/27/2014 | **Certificate** |
| | *Certificate of Marriage* |
| 05/27/2014 | **General Docket Entry** |
| | *Letters Rogatory issued* |
| 05/27/2014 | **Order** |
| | *Order for Issuance of Letter Rogatory and Subpoena to Depose an Out of State Witness* |
| 05/29/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Post Legacy Apartments served Subpoena 05/28/2014* |
| 05/29/2014 | **Certificate** |
| | *Certificate of Written Responses to Discovery* |
| 06/03/2014 | **Request for Copies $** |
| | *x10* |
| 06/05/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Dr. Thomas Janacek served subpoena 06/04/2014* |
| 06/09/2014 | **Notice of Intention to Take Deposition by Written Questions** |
| | *Written Deposition Service transcription of deposition of written questions on Dr. Ghaffari and Bill of Costs* |
| 06/09/2014 | **Designation of** |
| | *Petitioner's Designation of Expert Witnesses* |
| 06/09/2014 | **Motion** |
| | *First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Centennial Medical Center of Frisco* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing Business Records Affidavit and Records - Centennial Medical Center Frisco* |
| 06/09/2014 | **Affidavit** |
| | *Business Records Affidavit - Post Legacy Apartments* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing of Business Records Affidavit - Post Legacy Apartments* |
| 06/09/2014 | **Notice** |
| | *Notice of Business Records and Affidavit Filing - Sayed Shah, M.D.* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Sayed Shah, M.D.* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit* |
| 06/09/2014 | **Designation of** |
| | *Respondent's Designation of Expert Witnesses* |

| | |
|---|---|
| 06/09/2014 | **Certificate** |
| | *of Written Discovery* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing Medical Records and Affidavit* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Dr. Robert Gordon* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Dr. Robert Gordon (UNDER SEAL)* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing Records and Affidavit* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 1 (UNDER SEAL)* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 2 (UNDER SEAL)* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Dr. Scott Woods* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Dr. Scott Woods (UNDER SEAL)* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Frisco PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit - Frisco PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Plano PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Frisco PD Corrected* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit - Plano PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Arlington PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Arlington PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing Business Records and Affidavit - Richardson PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Richardson PD* |
| 06/13/2014 | **Amended Motion** |
| | *Petitioner's First Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out of State Witness* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Deposition Questions Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video English to Farsi* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Questions English to Farsi* |
| 06/13/2014 | **Original Answer** |
| | *Amicus Attorney's Original Answer in Suit Affecting the Parent- Child Relationship* |
| 06/13/2014 | **Designation of** |
| | *Designation of Attorney in Charge* |
| 06/13/2014 | **Notice** |
| | *Petitioner's Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/13/2014 | **Order** |
| | *of Letters Rogaroty and Subpoena for an Out of State Witness Amir Bagherkalantari* |
| 06/16/2014 | **Subpoena Return - Not DC Issued** |
| | *Mary F Wise aka Mariam Farahmand aka Mary Farahmand* |
| 06/16/2014 | **Motion** |
| | *Motion to Sign Temporary Orders* |
| 06/16/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Motion to Sign Temporary Orders* |
| 06/17/2014 | **Notice** |
| | *Notice of Intent to Take Oral and Video Taped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Amended** |
| | *First Amended Notice of Intent to Take Oral and Videotaped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Notice** |
| | *Petitioner's First Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/18/2014 | **Notice of Hearing** |
| | *on Motion to Sign Temporary Orders* |
| 06/18/2014 | **Amended Motion** |
| | *Petitioner's Second Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-Of-State Witness* |
| 06/18/2014 | **Request for Copies $** |
| 06/18/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 06/18/2014 | **General Docket Entry** |
| | *order on letters rogatory signed* |
| 06/18/2014 | **Amended Order** |
| | *of Letters Rogatory and Subpoena for an Out-of-State Witness, Amir Bagherkalantari* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Taher El-Badawi PhD subpoena served* |

| | |
|---|---|
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Depostion/Subpoena Duces Tecum for Mary F. Wise and Request for Sanctions* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Deposition/Subpoena Duces Tecum for Jocelyn McGregor and Request for Sanctions* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Deposition/Subpoena Duces Tecum for JT Langford a/k/a Tom Langford and Request for Sanctions* |
| 06/19/2014 | **Notice** |
| | *Petitioner's Second Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *JT Langford a/k/a Tom Langford* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Jocelyn McGregor* |
| 06/19/2014 | **Letter** |
| | *Ntc ltr of new time of depo* |
| 06/19/2014 | **Letter** |
| | *Ntc Ltr re new date & time of Depo* |
| 06/19/2014 | **Letter** |
| | *Ntc Ltr of new date & time of Depo* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of Mary Wise and Request for Sanctions* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of Jocelyn McGregor and Request for Sanctions* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of JT Langford AKA Tom Langford and Request for Sanctions* |
| 06/20/2014 | **Notice of Hearing** |
| | *Notice of Hearing* |
| 06/23/2014 | *CANCELED* **Motion to Sign** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Per Attorney* |
| | *TO's* |
| 06/23/2014 | **Letter** |
| | *Progress Report for Maryam Farahmand* |
| 06/24/2014 | **Affidavit** |
| | *Business Records and Affidavit of University of Texas At Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit of University of Texas at Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavits of Dallas Police Department* |
| 06/24/2014 | **Affidavit** |
| | *Business Records and Affidavits of Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Second Notice of FIling of Records and Affidavit of the Frisco Police Department* |
| 06/24/2014 | **Affidavit** |
| | *Second Business Records and Affidavit of Frisco Police Department* |
| 06/27/2014 | **Motion** |
| | *Respondent's Motion for Protective Order Due to Written Objection to Depositions Seeking Affirmative Relief* |
| 06/27/2014 | **Notice of Hearing** |
| 06/27/2014 | **Amended Answer** |
| | *Petitioner's First Supplemental and Amended Answer to Petitioner's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 06/27/2014 | **Amended Answer** |
| | *Maryam Farahmand's First Amended Answer to Original Petition to Declare Marriage Void* |
| 06/27/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 06/27/2014 | **Amended Petition** |
| | *First Amended Petition to Declare Marriage Void and in the Alternative Second Amended Petition for Divorce* |
| 06/30/2014 | **Certificate** |
| | *Certificate of Written Discovery* |
| 06/30/2014 | **Supplemental** |
| | *Respondent's First Supplemental and Amended Counter-Petition for Divorce* |
| 07/01/2014 | **Subpoena Return - Not DC Issued** |
| | *Shamsi Damavandi served subpoena 07/01/2014* |
| 07/02/2014 | **Motion** |
| | *Respondent's Motion for Protective Order Due to Objection to Depositions* |
| 07/08/2014 | **Administrative Order** |
| | *Administrative Order of Assignment (transferring case to the 417th)* |
| 07/09/2014 | **Letter** |
| | *Letter regarding Transfer to 417th and status of case* |
| 07/10/2014 | **Motion for Continuance** |
| | *Respondent's First Verified Motion for Continuance* |
| 07/10/2014 | **Notice** |
| | *Notice of Filing Business Records (165 pages) and Affidavit of Collin College* |
| 07/10/2014 | **Affidavit** |
| | *Business Records and Affidavit* |
| 07/10/2014 | **Affidavit** |
| | *Business Records and Affidavit* |
| 07/10/2014 | **Notice** |
| | *Notice of Filing Business Records (201 pages) and Affidavit of Collin College* |
| 07/10/2014 | **Notice** |
| | *Notice of Filing Business Records and Affidavit* |

| | |
|---|---|
| 07/11/2014 | **Affidavit** |
| | *Business Records Affidavit - Plano Public Safety Communications Department* |
| 07/11/2014 | **Supplemental** |
| | *Respondent's Supplemental Motion for Protective Order Due to Objection to Depositions* |
| 07/12/2014 | **Motion** |
| | *Respondent's Motion for Additional Temporary Orders* |
| 07/12/2014 | **Motion** |
| | *Respondent's Objection to and Motion to Strike Petitioner's Certificate of Marriage* |
| 07/15/2014 | **Subpoena Return - Not DC Issued** |
| | *Bahman Parviz Subpoena Served* |
| 07/15/2014 | **Motion for Summary Judgment** |
| | *Respondent's Hybrid Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari* |
| 07/18/2014 | **Notice** |
| | *Roger Arash Farahmand's Notice of Intent to Issue Subpoena for Production or Inspection of Documents* |
| 07/21/2014 | **Notice** |
| | *Roger Arash Farahmand's Amended Notice of Intent to Issue Subpoena for Production or Inspection of Documents* |
| 07/22/2014 | **Amended** |
| | *Roger Arash Farahmand's Amended Notice of Intent to Issue Subpoena for Production or Inspection of Documents* |
| 07/23/2014 | **Notice of Hearing / FIAT** |
| | *Notice of Hearing for Additional Temporary Orders* |
| 07/23/2014 | **Notice of Hearing / FIAT** |
| | *Notice of Hearing on Motion to Strike Marriage Certificate* |
| 07/23/2014 | **Notice of Hearing / FIAT** |
| | *Notice of Hearing on Hybrid Motion for Partial Summary Judgement on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari* |
| 07/28/2014 | **Notice** |
| | *Roger Arash Farahmand's Amended Notice of Intent to Issue Subpoena for Production or Inspection of Documents* |
| 07/28/2014 | **Notice** |
| | *Roger Arash Farahmand's Amended Notice of Intent to Issue Subpoena for Production or Inspection of Documents* |
| 07/29/2014 | *CANCELED* **Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Other* |
| | *on Petiton to void* |
| 07/29/2014 | *CANCELED* **Motion To Compel** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Other* |
| 07/29/2014 | *CANCELED* **Protective Order Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Other* |
| 07/29/2014 | **Certificate of Deposition (Bill of Cost Form)** |
| | *Reporter's Certificate Deposition of Dr. Michael Scott Woods June 24, 2014* |
| 07/29/2014 | **Request for Copies $** |
| 07/31/2014 | **Special Exceptions** |
| | *Petitioner's Special Exceptions and Motion to Strike Respondent's First Verified Motion for Continuance* |
| 07/31/2014 | **Special Exceptions** |
| | *Petitioner's Special Exceptions and Motion to Strike Respondent's First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses* |
| 07/31/2014 | **Special Exceptions** |
| | *Petitioner's Special Exceptions and Motion to Strike Respondent's First Amended Answer to Original Petition to Declare Marriage Void* |
| 07/31/2014 | **Motion for Continuance** |
| | *Petitioner's Motion for Continuance* |
| 07/31/2014 | **Motion** |
| | *Petitioner's Motion to Abate Discovery Relating to Divorce Proceedings* |
| 08/01/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Petitioner's Motions* |
| 08/11/2014 | **Certificate** |
| | *Rule 203 Filing Certificate of Written Deposition* |
| 08/13/2014 | **Motion** |
| | *Motion to Sign Pretrial Scheduling Order* |
| 08/14/2014 | **Notice of Hearing** |
| | *on Motion to Sign Pretrial Scheduling Order* |
| 08/15/2014 | **Notice of Intention to Take Deposition by Written Questions** |
| | *Notice of Intent to Take Deposition of Bahman Parviz* |
| 08/15/2014 | **Notice of Intention to Take Deposition by Written Questions** |
| | *Notice of Intent to Take Deposition of Shamsi Damavandi* |
| 08/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Shamsi Damavandi Subpoena served* |
| 08/21/2014 | **Subpoena Return - Not DC Issued** |
| | *Bahman Parviz served subpoena 08/21/2014* |
| 08/21/2014 | **Motion for Continuance** |
| | *Motion For Continuance on Respondent's Motion for Additional Temporary Orders* |
| 08/21/2014 | **Motion** |
| | *Motion to Quash Notice of Intent to Take Oral and Videotaped Deposition of Shamsi Damavandi* |
| 08/21/2014 | **Motion to Quash** |
| | *Motion to Quash Notice of Intent to Take Oral and Video Taped Deposition Of Bahman Parviz* |
| 08/28/2014 | **Amended Petition** |
| | *Second Amended Petition to Declare Marriage Void and in the Alternative Third Amended Petition for Divorce* |
| 08/29/2014 | **Motion** |
| | *Petitioner's Motion for Sanctions* |
| 08/29/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Petitioner's Motion for Continuance of Respondent's Motion for Additional Temporary Orders* |
| 08/29/2014 | **Notice of Hearing** |
| | *on Motion to Quash Deposition of Bahman Parviz* |

| | |
|---|---|
| 09/02/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Motion to Quash Deposition of Shamsi Damavandi* |
| 09/02/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Petitioner's Motion for Sanctions* |
| 09/02/2014 | **Notice of Hearing** |
| | *on Motion to Quash the Deposition of Mary Wise and Request for Sanctions* |
| 09/02/2014 | **Notice of Hearing** |
| | *on Motion to Quash the Deposition of Jocelyn McGregor and Request for Sanctions* |
| 09/02/2014 | **Notice of Hearing** |
| | *on Motion to Quash the Deposition of JT Langford AKA Tom Langford and Request for Sanctions* |
| 09/05/2014 | **Motion for Continuance**  (3:30 PM) (Judicial Officer Wheless, Cynthia M) |
| | *10/16/2014 Reset by Court to 09/05/2014* |
| 09/05/2014 | **Motion Hearing**  (3:30 PM) (Judicial Officer Wheless, Cynthia M) |
| | *to Quash - ALL Motions* |
| 09/05/2014 | **General Docket Entry** |
| | *2 Motions to Quash denied and 1 granted of Mr. Farahmand's. 2 withdrawn by Ms. Farahmand. One Motion for Continuance agreed to and withdrawn.* |
| 09/11/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 09/12/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 09/16/2014 | **Motion to Withdraw** |
| | *Motion for Withdrawal of Counsel* |
| 09/18/2014 | **Appearance of Counsel** |
| | *Notice of Appearance of Co-Counsel and Designation of Lead Counsel* |
| 09/18/2014 | **Order of Withdrawal of Counsel** |
| | *and Substitution of Attorney of Record* |
| 09/22/2014 | **Subpoena Return - Not DC Issued** |
| | *Shamsi Damavandi Subpoena Service Return* |
| 09/23/2014 | **Motion to Quash** |
| | *Motion to Quash Notice of Intent to Take Oral and Videotaped Deposition of Bahman Parviz* |
| 09/23/2014 | **Motion to Quash** |
| | *Motion to Quash Notice of Intent to Take Oral and Videotaped Deposition of Shamsi Damavandi* |
| 09/23/2014 | **Subpoena Return - Not DC Issued** |
| | *Bahman Parviz* |
| 09/24/2014 | **Motion for Continuance** |
| 10/02/2014 | **Motion** |
| | *Motion for Interim Attorney's Fees and to Equalize Attorney's Fees* |
| 10/06/2014 | **Certificate of Deposition (Bill of Cost Form)** |
| | *Reporter's Certification Deposition of Shahrbanoo Khanipour May 22 2014* |
| 10/08/2014 | **Notice of Hearing** |
| | *on Petitioner's Motion for Continuance* |
| 10/09/2014 | **Designation of** |
| | *Designation of Lead Counsel* |
| 10/09/2014 | **Objection** |
| | *Objection to Motion for Continuance* |
| 10/10/2014 | **Notice of Hearing** |
| | *on Motion for Interim Attorney's Fees and to Equalize Attorneys' Fees* |
| 10/13/2014 | **Motion** |
| | *Motion to Quash and for Protective Order* |
| 10/14/2014 | **Motion to Quash** |
| | *and for Protective Order* |
| 10/14/2014 | **Motion to Quash** |
| | *Motion to Quash* |
| 10/15/2014 | **Temporary Orders Hearing**  (11:00 AM) (Judicial Officer Wheless, Cynthia M) |
| | *10/29/2014 Reset by Court to 10/15/2014* |
| 10/15/2014 | **Motion for Continuance**  (11:00 AM) (Judicial Officer Wheless, Cynthia M) |
| 10/15/2014 | **General Docket Entry** |
| | *case was continued to the 31st and the TO hearing is hereby specially set at 9:30 with no guarantees re: other matters set for motion that day due to significant delays by attorneys in setting the TO hearing...Court warned parties that it would hear the proposed Order on delivery of passports to court's registry upon reading of transcript from 401st...court also warned parties that the court may not reach the lesser motions on file with the court as the level of importance was beneath TO.* |
| 10/17/2014 | **Motion** |
| | *Motion for Substitution of Counsel* |
| 10/22/2014 | **Order to Substitute Counsel** |
| | *Order on Motion for Substitution of Counsel* |
| 10/24/2014 | **Response** |
| | *Petitoner's Response to Respondent's Hybrid Motion for Partial Summary Judgment Regarding Respondent's Prior Marriage* |
| 10/27/2014 | **Certificate of Deposition (Bill of Cost Form)** |
| | *Dr. Robert Gordon 6/24/14* |
| 10/31/2014 | **Temporary Injunction**  (9:30 AM) (Judicial Officer Wheless, Cynthia M) |
| | *Additional* |
| | *10/03/2014 Reset by Court to 10/31/2014* |
| 10/31/2014 | **Motion Hearing**  (9:30 AM) (Judicial Officer Wheless, Cynthia M) |
| | *to Strike Marriage Certificate* |
| | *10/03/2014 Reset by Court to 10/31/2014* |

| | |
|---|---|
| 10/31/2014 | **Motion Hearing**  (9:30 AM) (Judicial Officer Wheless, Cynthia M)<br>*Hybrid Mtn for Partial Summary Judgment*<br>*10/03/2014 Reset by Court to 10/31/2014* |
| 10/31/2014 | **Motion Hearing**  (9:30 AM) (Judicial Officer Wheless, Cynthia M)<br>*to Sign Pretrial Scheduling Order* |
| 10/31/2014 | **Motion Hearing**  (9:30 AM) (Judicial Officer Wheless, Cynthia M)<br>*Interim Atty Fees and to Equalize Atty Fees* |
| 10/31/2014 | **Temporary Order**<br>*Partial Temporary Orders - Passports & Travel Only* |
| 10/31/2014 | **Passport Registry Receipt**<br>*Roger Arash Farahmand, Maryam Farahmand, and Mason Jon Jon Farahmand* |
| 11/18/2014 | **Motion to Withdraw**<br>*Motion for Withdrawal of Counsel* |
| 11/18/2014 | **Motion**<br>*Motion for Leave to Late Designate Expert Witness or Alternatively Motion for Continuance* |
| 11/19/2014 | **Notice of Hearing**<br>*on Respondent's Motion for Leave to Late Designate Expert Witness* |
| 11/19/2014 | **Court Admin Correspondence**<br>*Email regarding trial. AM* |
| 11/21/2014 | **Order**<br>*Order Granting Interim Attorney's Fees* |
| 11/25/2014 | **Amended Petition**<br>*Third Amended Petition to Declare Marriage Void and in the Alternative Fourth Amended Petition for Divorce* |
| 11/26/2014 | **Amended Answer**<br>*Counter- Petitioner's Second Amended Answer to Original Petition to Declare Marriage Void and in the Alternative, First Amended Petition for Divorce* |
| 11/26/2014 | **Counter Claim - Family $50.00**<br>*Maryam Farahmand's Counterclaim for Declaratory Judgement* |
| 12/01/2014 | **Subpoena Return - Not DC Issued**<br>*Mahin Hedaiti Subpoena Served* |
| 12/01/2014 | **Subpoena Return - Not DC Issued**<br>*Aslan Ghaffari Subpoena Served* |
| 12/01/2014 | **Subpoena Return - Not DC Issued**<br>*Mrs. Farid Rastegar Subpoena Served* |
| 12/01/2014 | **Subpoena Return - Not DC Issued**<br>*Mr Farid Rastegar Subpoena Served* |
| 12/02/2014 | **Subpoena Return - Not DC Issued**<br>*Seyed Mohammad Najafian* |
| 12/02/2014 | **Subpoena Return - Not DC Issued**<br>*Ramin Ghaffari* |
| 12/02/2014 | **Subpoena Return - Not DC Issued**<br>*Shahrbanoo Khanipour* |
| 12/02/2014 | **Subpoena Return - Not DC Issued**<br>*Azam Nematipour* |
| 12/02/2014 | **Subpoena Return - Not DC Issued**<br>*Dayne Hollmuller* |
| 12/04/2014 | *CANCELED*   **Motion Hearing**  (10:00 AM) (Judicial Officer Wheless, Cynthia M)<br>*Other*<br>*for Leave to Late Designate Expert Witness/Cont - SUBMISSION ONLY* |
| 12/04/2014 | *CANCELED*   **Motion Hearing**  (10:00 AM) (Judicial Officer Wheless, Cynthia M)<br>*Other*<br>*SUBMISSION ONLY* |
| 12/04/2014 | **Motion**<br>*Petitioner's Motion for Leave to Designate Rebuttal Witness* |
| 12/09/2014 | **Response**<br>*Response to Petitioner's Motion for Leave to Designate Rebuttal Witness or Alternatively Motion for Continuance* |
| 12/09/2014 | **Motion for Continuance**<br>*Dawn Horak's First Verified Motion for Continuance* |
| 12/09/2014 | **Subpoena Return - Not DC Issued**<br>*Mehrnaz Ghaffari* |
| 12/10/2014 | **Order of Withdrawal of Counsel**<br>*Agreed Order on Motion for Withdrawal of Counsel* |
| 12/10/2014 | **Order for Continuance**<br>*Order Granting Dawn Horak's First Verified Motion for Continuance* |
| 12/11/2014 | **Brief**<br>*Petitioner's Brief in Support of Void Marriage* |
| 12/11/2014 | **Affidavit**<br>*Foreign Language Translation and Affidavit* |
| 12/11/2014 | **Subpoena Return - Not DC Issued**<br>*Sarah Nga Nguyen* |
| 12/11/2014 | **Affidavit**<br>*Foreign Language Translation and Affidavit* |
| 12/11/2014 | **Affidavit**<br>*Foreign Language Translation and Affidavit* |
| 12/12/2014 | *CANCELED*   **Motion for Sanctions**  (9:30 AM) (Judicial Officer Wheless, Cynthia M)<br>*Continuance Granted* |
| 12/12/2014 | **General Docket Entry**<br>*All witnesses sworn and ordered to return on January 12th and 13th 2015 at 9:00 a.m. afterwards we had some issues resolved regarding the child support and visitation issues.* |

| | |
|---|---|
| 01/12/2015 | **Trial Before the Court**  (9:00 AM) (Judicial Officer Wheless, Cynthia M) |
| | *TWO Days* |
| | *12/12/2014 Reset by Court to 01/12/2015* |
| 01/12/2015 | **Amended** |
| | *Petitioner's First Amended Brief in Support of Void Marriage* |
| 01/13/2015 | **General Docket Entry** |
| | *Second day of trial resumed testimony and evidence at 9:30 a.m. Court first verified the interpreter's experience for translating as she is not licensed and there is no licensing exam for Farsi. Court accepted her as an interpreter. Testimony and evidence continued.* |
| 01/13/2015 | **General Docket Entry** |
| | *Trial before the court: After verifying all the sworn witnesses were accounted for and that rebuttal expert request for late designation denied. Court accepted the Rule being invoked by the Respondent W/M/Defendant. Court advised in English without the help of interpreters about the Rule. Testimony and evidence received. Recessed at 5:20.* |
| 01/13/2015 | **General Docket Entry** |
| | *Court recessed after hearing testimony and evidence at 6:00 p.m. Ordered to resume at 9:30 a.m.* |
| 02/06/2015 | **Docket Control - No Appearances Required**  (9:30 AM) (Judicial Officer Wheless, Cynthia M) |
| | *Decision Due* |
| | *01/22/2015 Reset by Court to 01/30/2015* |
| | *01/30/2015 Reset by Court to 02/06/2015* |
| | Result: Orders Signed |
| 02/10/2015 | **Motion** |
| | *Motion for Order of Custody and Psychological Evaluation* |
| 02/15/2015 | **Order** |
| 02/26/2015 | **Notice of Hearing** |
| | *on Petitioners Motion for Order of Custody and Psychological Evaluation* |
| 02/26/2015 | **Motion** |
| | *Motion for Further Temporary Orders* |
| 02/26/2015 | **Court Admin Correspondence** |
| | *Email regarding settings. AM* |
| 03/02/2015 | **Notice of Hearing** |
| | *for Further Temporary Orders* |
| 03/02/2015 | **Correspondence Received by Court** |
| | *fax/e-mail received by the court* |
| 03/04/2015 | **Motion for Continuance** |
| 03/06/2015 | **Notice of Hearing** |
| | *on Petitioner's Motion for Continuance* |
| 03/20/2015 | **Motion for Continuance**  (9:30 AM) (Judicial Officer Wheless, Cynthia M) |
| | Result: Orders Granted |
| 03/20/2015 | **General Docket Entry** |
| | *granted continuance and parties were directed to confer with coordinator on new date within short time interval* |
| 04/02/2015 | **Motion** |
| | *Motion for Mediation* |
| 04/06/2015 | **Motion to Quash** |
| | *Motion to Quash Subpoena* |
| 04/07/2015 | **Motion Hearing**  (10:00 AM) (Judicial Officer Wheless, Cynthia M) |
| | *Order of Custody and Psychological Eval AND Status on SAPCR/TO* |
| | *03/06/2015 Reset by Court to 03/23/2015* |
| | *03/23/2015 Reset by Court to 04/07/2015* |
| | Result: Orders Signed |
| 04/07/2015 | **Brief** |
| | *Respondent's Brief on Interim Fees and Spousal Support* |
| 04/07/2015 | **General Docket Entry** |
| | *ORDER ON MOTION FOR REFERRAL TO MEDIATION SIGNED* |
| 04/07/2015 | **Order** |
| | *Order on Motion for Referral to Mediation* |
| 04/07/2015 | **Order Appointing** |
| | *Order Appointing Social Study and Psychological Evaluation* |
| 04/28/2015 | **Court Admin Correspondence** |
| | *Email regarding setting. AM* |
| 05/13/2015 | **Motion** |
| | *Motion to Instruct Christy Bradshaw Schmidt to Review Documents* |
| 05/14/2015 | **Notice of Hearing** |
| | *Notice of Hearing on Petitioner's Motion to Instruct Christy Bradshaw Schmidt to Review Documents* |
| 05/14/2015 | **Motion** |
| | *Motion to Compel Discovery and for Sanctions* |
| 05/18/2015 | **Notice of Hearing** |
| | *Notice of Hearing on Motion to Compel* |
| 05/19/2015 | **Motion To Compel**  (9:00 AM) (Judicial Officer Wheless, Cynthia M) |
| | *TWO HOURS - Motion to Instruct* |
| | *05/21/2015 Reset by Court to 05/19/2015* |
| | Result: Other |
| 05/19/2015 | **Motion to Quash** |
| | *Motion to Quash Subpoena* |
| 06/04/2015 | **Motion** |
| | *Motion to Enter* |
| 06/04/2015 | **Motion** |
| | *Petitioner's Motion to Compel Production of Documents and for Sanctions* |

| 06/05/2015 | **Order** | | |
| | *Order on Motion to Instruct Christy Bradshaw Schmidt to Review Documents* | | |
| 06/05/2015 | **Notice of Hearing** | | |
| | *on Maryam Farahmand's Motion to Enter* | | |
| 06/05/2015 | **Notice of Hearing** | | |
| | *Notice of Hearing on Petitioner's Motion to Compel Production of Documents and for Sanctions* | | |
| 06/09/2015 | **Motion To Compel** (11:00 AM) (Judicial Officer Wheless, Cynthia M) | | |
| | *and Motion to Enter TO - One Hour Total* | | |
| 06/09/2015 | **General Docket Entry** | | |
| | *Several Motions set for today: 1) Motion to Enter TO and - Court will hear from Ms. Porter re: Dr. Mitchells prelim findings re summer possession of the 23 mos. old child; 2) Motion to Compel by Ms. Farahmand - seeking reformation and striking of objections;* | | |
| 06/09/2015 | **Temporary Order** | | |
| | *Temporary Order Granting Interim Attorney's Fees* | | |
| 06/18/2015 | **Deputy Reporter Statement** | | |
| 06/25/2015 | **Other** (9:00 AM) (Judicial Officer Wheless, Cynthia M) | | |
| | *RULING DUE* | | |
| 06/25/2015 | **Correspondence Received by Court** | | |
| 08/31/2015 | **Docket Control - No Appearances Required** (9:00 AM) (Judicial Officer Wheless, Cynthia M) | | |
| | *06/08/2015 Reset by Court to 08/31/2015* | | |

---

**FINANCIAL INFORMATION**

---

**Minor Child** Farahmand, ▮▮▮▮▮▮

| | | | |
|---|---|---|---|
| Total Financial Assessment | | | 2.00 |
| Total Payments and Credits | | | 2.00 |
| **Balance Due as of 07/06/2015** | | | **0.00** |

| 06/13/2014 | Transaction Assessment | | | 2.00 |
|---|---|---|---|---|
| 06/13/2014 | Payment | Receipt # DC-47305-2014 | Farahmand, Mason Jon Jon | (2.00) |

**Movant** Tillery, Rebecca

| | | | |
|---|---|---|---|
| Total Financial Assessment | | | 2.00 |
| Total Payments and Credits | | | 2.00 |
| **Balance Due as of 07/06/2015** | | | **0.00** |

| 10/14/2014 | Transaction Assessment | | | 2.00 |
|---|---|---|---|---|
| 10/14/2014 | Payment | Receipt # DC-81334-2014 | Tillery, Rebecca | (2.00) |

**Petitioner** Farahmand, Roger

| | | | |
|---|---|---|---|
| Total Financial Assessment | | | 2.00 |
| Total Payments and Credits | | | 2.00 |
| **Balance Due as of 07/06/2015** | | | **0.00** |

| 09/19/2014 | Transaction Assessment | | | 2.00 |
|---|---|---|---|---|
| 09/19/2014 | Payment | Receipt # DC-73861-2014 | Farahmand, Roger | (2.00) |

**Petitioner** Farahmand, Roger Arash

| | | | |
|---|---|---|---|
| Total Financial Assessment | | | 648.00 |
| Total Payments and Credits | | | 648.00 |
| **Balance Due as of 07/06/2015** | | | **0.00** |

| 03/18/2014 | Transaction Assessment | | | 2.00 |
|---|---|---|---|---|
| 03/18/2014 | Payment | Receipt # DC-19892-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/21/2014 | Transaction Assessment | | | 2.00 |
| 03/21/2014 | Payment | Receipt # DC-21274-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/28/2014 | Transaction Assessment | | | 72.00 |
| 03/28/2014 | Payment | Receipt # DC-23643-2014 | FARAHMAND, ROGER A. | (72.00) |
| 04/01/2014 | Transaction Assessment | | | 2.00 |
| 04/01/2014 | Payment | Receipt # DC-24382-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/04/2014 | Transaction Assessment | | | 2.00 |
| 04/04/2014 | Payment | Receipt # DC-25524-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/10/2014 | Transaction Assessment | | | 2.00 |
| 04/10/2014 | Payment | Receipt # DC-26831-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/17/2014 | Transaction Assessment | | | 2.00 |
| 04/17/2014 | Payment | Receipt # DC-29154-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/21/2014 | Transaction Assessment | | | 2.00 |
| 04/21/2014 | Payment | Receipt # DC-29986-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30921-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30945-2014 | FARAHMAND, ROGER A. | (2.00) |

| Date | Type | Receipt | Name | Amount |
|---|---|---|---|---|
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Payment | Receipt # DC-31124-2014 | Gary Sherman | (16.00) |
| 04/28/2014 | Transaction Assessment | | | 2.00 |
| 04/28/2014 | Payment | Receipt # DC-32057-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33663-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33664-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/06/2014 | Transaction Assessment | | | 2.00 |
| 05/06/2014 | Payment | Receipt # DC-34317-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/08/2014 | Transaction Assessment | | | 2.00 |
| 05/08/2014 | Payment | Receipt # DC-35500-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/09/2014 | Transaction Assessment | | | 2.00 |
| 05/09/2014 | Payment | Receipt # DC-36083-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/09/2014 | Transaction Assessment | | | 2.00 |
| 05/09/2014 | Payment | Receipt # DC-36086-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/09/2014 | Transaction Assessment | | | 2.00 |
| 05/09/2014 | Payment | Receipt # DC-36091-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/16/2014 | Transaction Assessment | | | 2.00 |
| 05/16/2014 | Payment | Receipt # DC-38273-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/19/2014 | Transaction Assessment | | | 2.00 |
| 05/19/2014 | Payment | Receipt # DC-38487-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/19/2014 | Transaction Assessment | | | 2.00 |
| 05/19/2014 | Payment | Receipt # DC-38777-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40326-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40332-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40347-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40363-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | Payment | Receipt # DC-40684-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/29/2014 | Transaction Assessment | | | 2.00 |
| 05/29/2014 | Payment | Receipt # DC-41719-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/29/2014 | Transaction Assessment | | | 2.00 |
| 05/29/2014 | Payment | Receipt # DC-41844-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/03/2014 | Transaction Assessment | | | 10.00 |
| 06/03/2014 | Payment | Receipt # DC-42961-2014 | Julio C Arrobas | (10.00) |
| 06/05/2014 | Transaction Assessment | | | 2.00 |
| 06/05/2014 | Payment | Receipt # DC-43854-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45391-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45429-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45505-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45521-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45531-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45534-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45542-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45545-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45551-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45560-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45633-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45682-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45693-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45697-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45715-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45759-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45760-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45768-2014 | FARAHMAND, ROGER A. | (2.00) |

| Date | Transaction | Receipt | Payor | Amount |
|---|---|---|---|---|
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45770-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45775-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45782-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45783-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45810-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45814-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45876-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45878-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47026-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47216-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47219-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47220-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47225-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/16/2014 | Transaction Assessment | | | 2.00 |
| 06/16/2014 | Payment | Receipt # DC-47344-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/16/2014 | Transaction Assessment | | | 2.00 |
| 06/16/2014 | Payment | Receipt # DC-47765-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/17/2014 | Transaction Assessment | | | 2.00 |
| 06/17/2014 | Payment | Receipt # DC-48013-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/17/2014 | Transaction Assessment | | | 2.00 |
| 06/17/2014 | Payment | Receipt # DC-48039-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/17/2014 | Transaction Assessment | | | 2.00 |
| 06/17/2014 | Payment | Receipt # DC-48096-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/18/2014 | Transaction Assessment | | | 2.00 |
| 06/18/2014 | Payment | Receipt # DC-48265-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/18/2014 | Transaction Assessment | | | 2.00 |
| 06/18/2014 | Payment | Receipt # DC-48541-2014 | Koons Fuller | (2.00) |
| 06/19/2014 | Transaction Assessment | | | 2.00 |
| 06/19/2014 | Payment | Receipt # DC-48741-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/19/2014 | Transaction Assessment | | | 2.00 |
| 06/19/2014 | Payment | Receipt # DC-48847-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/19/2014 | Transaction Assessment | | | 2.00 |
| 06/19/2014 | Payment | Receipt # DC-48852-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/20/2014 | Transaction Assessment | | | 2.00 |
| 06/20/2014 | Payment | Receipt # DC-49060-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/20/2014 | Transaction Assessment | | | 2.00 |
| 06/20/2014 | Payment | Receipt # DC-49144-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | Payment | Receipt # DC-50394-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | Payment | Receipt # DC-50395-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/25/2014 | Transaction Assessment | | | 2.00 |
| 06/25/2014 | Payment | Receipt # DC-50398-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | Payment | Receipt # DC-51488-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/30/2014 | Transaction Assessment | | | 2.00 |
| 06/30/2014 | Payment | Receipt # DC-51638-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/01/2014 | Transaction Assessment | | | 2.00 |
| 07/01/2014 | Payment | Receipt # DC-52142-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/08/2014 | Transaction Assessment | | | 2.00 |
| 07/08/2014 | Payment | Receipt # DC-53384-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/09/2014 | Transaction Assessment | | | 2.00 |
| 07/09/2014 | Payment | Receipt # DC-53796-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/10/2014 | Transaction Assessment | | | 2.00 |
| 07/10/2014 | Payment | Receipt # DC-54327-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/11/2014 | Transaction Assessment | | | 2.00 |
| 07/11/2014 | Payment | Receipt # DC-54689-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/15/2014 | Transaction Assessment | | | 2.00 |
| 07/15/2014 | Payment | Receipt # DC-55240-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/18/2014 | Transaction Assessment | | | 2.00 |
| 07/18/2014 | Payment | Receipt # DC-56642-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/21/2014 | Transaction Assessment | | | 2.00 |
| 07/21/2014 | Payment | Receipt # DC-56793-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/22/2014 | Transaction Assessment | | | 2.00 |
| 07/22/2014 | Payment | Receipt # DC-57512-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/28/2014 | Transaction Assessment | | | 2.00 |

| | | | | |
|---|---|---|---|---|
| 07/28/2014 | Payment | Receipt # DC-58937-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/28/2014 | Transaction Assessment | | | 2.00 |
| 07/28/2014 | Payment | Receipt # DC-58948-2014 | FARAHMAND, ROGER A. | (2.00) |
| 07/29/2014 | Transaction Assessment | | | 2.00 |
| 07/29/2014 | Payment | Receipt # DC-59171-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/01/2014 | Transaction Assessment | | | 2.00 |
| 08/01/2014 | Payment | Receipt # DC-60207-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/04/2014 | Transaction Assessment | | | 2.00 |
| 08/04/2014 | Payment | Receipt # DC-60593-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/11/2014 | Transaction Assessment | | | 2.00 |
| 08/11/2014 | Payment | Receipt # DC-62981-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/13/2014 | Transaction Assessment | | | 2.00 |
| 08/13/2014 | Payment | Receipt # DC-63796-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/14/2014 | Transaction Assessment | | | 2.00 |
| 08/14/2014 | Payment | Receipt # DC-63925-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/15/2014 | Transaction Assessment | | | 2.00 |
| 08/15/2014 | Payment | Receipt # DC-64514-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/18/2014 | Transaction Assessment | | | 2.00 |
| 08/18/2014 | Payment | Receipt # DC-65055-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/19/2014 | Transaction Assessment | | | 2.00 |
| 08/19/2014 | Payment | Receipt # DC-65113-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/19/2014 | Transaction Assessment | | | 2.00 |
| 08/19/2014 | Payment | Receipt # DC-65488-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | Payment | Receipt # DC-65993-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | Payment | Receipt # DC-66024-2014 | FARAHMAND, ROGER A. | (2.00) |
| 08/28/2014 | Transaction Assessment | | | 2.00 |
| 08/28/2014 | Payment | Receipt # DC-67998-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/02/2014 | Transaction Assessment | | | 2.00 |
| 09/02/2014 | Payment | Receipt # DC-68565-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/02/2014 | Transaction Assessment | | | 2.00 |
| 09/02/2014 | Payment | Receipt # DC-68871-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/02/2014 | Transaction Assessment | | | 2.00 |
| 09/02/2014 | Payment | Receipt # DC-68885-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/08/2014 | Transaction Assessment | | | 2.00 |
| 09/08/2014 | Payment | Receipt # DC-70416-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/08/2014 | Transaction Assessment | | | 2.00 |
| 09/08/2014 | Payment | Receipt # DC-70540-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/16/2014 | Transaction Assessment | | | 2.00 |
| 09/16/2014 | Payment | Receipt # DC-73062-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/22/2014 | Transaction Assessment | | | 2.00 |
| 09/22/2014 | Payment | Receipt # DC-74392-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/24/2014 | Transaction Assessment | | | 2.00 |
| 09/24/2014 | Payment | Receipt # DC-75062-2014 | FARAHMAND, ROGER A. | (2.00) |
| 09/25/2014 | Transaction Assessment | | | 2.00 |
| 09/25/2014 | Payment | Receipt # DC-75417-2014 | FARAHMAND, ROGER A. | (2.00) |
| 10/06/2014 | Transaction Assessment | | | 2.00 |
| 10/06/2014 | Payment | Receipt # DC-78147-2014 | FARAHMAND, ROGER A. | (2.00) |
| 10/07/2014 | Transaction Assessment | | | 2.00 |
| 10/07/2014 | Payment | Receipt # DC-78626-2014 | FARAHMAND, ROGER A. | (2.00) |
| 10/08/2014 | Transaction Assessment | | | 2.00 |
| 10/08/2014 | Payment | Receipt # DC-79635-2014 | FARAHMAND, ROGER A. | (2.00) |
| 10/15/2014 | Transaction Assessment | | | 2.00 |
| 10/15/2014 | Payment | Receipt # DC-81899-2014 | FARAHMAND, ROGER A. | (2.00) |
| 10/27/2014 | Transaction Assessment | | | 2.00 |
| 10/27/2014 | Payment | Receipt # DC-85317-2014 | FARAHMAND, ROGER A. | (2.00) |
| 10/28/2014 | Transaction Assessment | | | 2.00 |
| 10/28/2014 | Payment | Receipt # DC-85688-2014 | FARAHMAND, ROGER A. | (2.00) |
| 11/26/2014 | Transaction Assessment | | | 2.00 |
| 11/26/2014 | Payment | Receipt # DC-95888-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/01/2014 | Transaction Assessment | | | 2.00 |
| 12/01/2014 | Payment | Receipt # DC-96480-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/02/2014 | Transaction Assessment | | | 2.00 |
| 12/02/2014 | Payment | Receipt # DC-96960-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/02/2014 | Transaction Assessment | | | 2.00 |
| 12/02/2014 | Payment | Receipt # DC-97164-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/04/2014 | Transaction Assessment | | | 2.00 |
| 12/04/2014 | Payment | Receipt # DC-98120-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/10/2014 | Transaction Assessment | | | 2.00 |
| 12/10/2014 | Payment | Receipt # DC-99725-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/11/2014 | Transaction Assessment | | | 2.00 |
| 12/11/2014 | Payment | Receipt # DC-100452-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/12/2014 | Transaction Assessment | | | 2.00 |
| 12/12/2014 | Payment | Receipt # DC-100615-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/12/2014 | Transaction Assessment | | | 2.00 |
| 12/12/2014 | Payment | Receipt # DC-100680-2014 | FARAHMAND, ROGER A. | (2.00) |
| 12/12/2014 | Transaction Assessment | | | 2.00 |
| 12/12/2014 | Payment | Receipt # DC-100731-2014 | FARAHMAND, ROGER A. | (2.00) |

| | | | | |
|---|---|---|---|---|
| 12/30/2013 | Transaction Assessment | | | 284.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Payment | Receipt # DC-63819-2013 | FARAHMAND, ROGER A. | (300.00) |

**Respondent** Farahmand, Maryam
Total Financial Assessment 228.00
Total Payments and Credits 228.00
**Balance Due as of 07/06/2015** **0.00**

| | | | | |
|---|---|---|---|---|
| 01/24/2014 | Transaction Assessment | | | 2.00 |
| 01/24/2014 | Payment | Receipt # DC-05866-2014 | Farahmand, Maryam | (2.00) |
| 01/27/2014 | Transaction Assessment | | | 2.00 |
| 01/27/2014 | Payment | Receipt # DC-06362-2014 | Farahmand, Maryam | (2.00) |
| 01/27/2014 | Transaction Assessment | | | 52.00 |
| 01/27/2014 | Payment | Receipt # DC-06370-2014 | Farahmand, Maryam | (52.00) |
| 01/28/2014 | Transaction Assessment | | | 2.00 |
| 01/28/2014 | Payment | Receipt # DC-06600-2014 | Farahmand, Maryam | (2.00) |
| 01/28/2014 | Transaction Assessment | | | 2.00 |
| 01/28/2014 | Payment | Receipt # DC-06623-2014 | Farahmand, Maryam | (2.00) |
| 02/05/2014 | Transaction Assessment | | | 2.00 |
| 02/05/2014 | Payment | Receipt # DC-08569-2014 | Farahmand, Maryam | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | Payment | Receipt # DC-14149-2014 | Farahmand, Maryam | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | Payment | Receipt # DC-14447-2014 | Farahmand, Maryam | (2.00) |
| 03/06/2014 | Transaction Assessment | | | 2.00 |
| 03/06/2014 | Payment | Receipt # DC-16467-2014 | Farahmand, Maryam | (2.00) |
| 04/04/2014 | Transaction Assessment | | | 2.00 |
| 04/04/2014 | Payment | Receipt # DC-25346-2014 | Farahmand, Maryam | (2.00) |
| 04/06/2015 | Waiver | | | 2.00 |
| 04/25/2014 | Transaction Assessment | | | 2.00 |
| 04/25/2014 | Payment | Receipt # DC-31710-2014 | Farahmand, Maryam | (2.00) |
| 05/01/2014 | Transaction Assessment | | | 2.00 |
| 05/01/2014 | Payment | Receipt # DC-32957-2014 | Farahmand, Maryam | (2.00) |
| 05/22/2014 | Transaction Assessment | | | 2.00 |
| 05/22/2014 | Payment | Receipt # DC-39989-2014 | Farahmand, Maryam | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | Payment | Receipt # DC-40611-2014 | Farahmand, Maryam | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | Payment | Receipt # DC-40631-2014 | Farahmand, Maryam | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45432-2014 | Farahmand, Maryam | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45553-2014 | Farahmand, Maryam | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45554-2014 | Farahmand, Maryam | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47308-2014 | Farahmand, Maryam | (2.00) |
| 06/16/2014 | Transaction Assessment | | | 2.00 |
| 06/16/2014 | Payment | Receipt # DC-47674-2014 | Farahmand, Maryam | (2.00) |
| 06/18/2014 | Transaction Assessment | | | 2.00 |
| 06/18/2014 | Payment | Receipt # DC-48571-2014 | Farahmand, Maryam | (2.00) |
| 06/19/2014 | Transaction Assessment | | | 2.00 |
| 06/19/2014 | Payment | Receipt # DC-48871-2014 | Farahmand, Maryam | (2.00) |
| 06/20/2014 | Transaction Assessment | | | 2.00 |
| 06/20/2014 | Payment | Receipt # DC-49061-2014 | Farahmand, Maryam | (2.00) |
| 06/20/2014 | Transaction Assessment | | | 2.00 |
| 06/20/2014 | Payment | Receipt # DC-49062-2014 | Farahmand, Maryam | (2.00) |
| 06/23/2014 | Transaction Assessment | | | 2.00 |
| 06/23/2014 | Payment | Receipt # DC-49724-2014 | Farahmand, Maryam | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | Payment | Receipt # DC-51243-2014 | Farahmand, Maryam | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | Payment | Receipt # DC-51245-2014 | Farahmand, Maryam | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | Payment | Receipt # DC-51349-2014 | Farahmand, Maryam | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | Payment | Receipt # DC-51416-2014 | Farahmand, Maryam | (2.00) |
| 06/27/2014 | Transaction Assessment | | | 2.00 |
| 06/27/2014 | Payment | Receipt # DC-51486-2014 | Farahmand, Maryam | (2.00) |
| 06/30/2014 | Transaction Assessment | | | 2.00 |
| 06/30/2014 | Payment | Receipt # DC-51727-2014 | Farahmand, Maryam | (2.00) |
| 07/02/2014 | Transaction Assessment | | | 2.00 |
| 07/02/2014 | Payment | Receipt # DC-52422-2014 | Farahmand, Maryam | (2.00) |
| 07/10/2014 | Transaction Assessment | | | 2.00 |
| 07/10/2014 | Payment | Receipt # DC-54231-2014 | Farahmand, Maryam | (2.00) |

| Date | Description | Receipt | Name | Amount |
|---|---|---|---|---|
| 07/11/2014 | Transaction Assessment | | | 2.00 |
| 07/11/2014 | Payment | Receipt # DC-54707-2014 | Farahmand, Maryam | (2.00) |
| 07/14/2014 | Transaction Assessment | | | 2.00 |
| 07/14/2014 | Payment | Receipt # DC-54773-2014 | Farahmand, Maryam | (2.00) |
| 07/14/2014 | Transaction Assessment | | | 2.00 |
| 07/14/2014 | Payment | Receipt # DC-54784-2014 | Farahmand, Maryam | (2.00) |
| 07/16/2014 | Transaction Assessment | | | 2.00 |
| 07/16/2014 | Payment | Receipt # DC-55533-2014 | Farahmand, Maryam | (2.00) |
| 07/16/2014 | Transaction Assessment | | | 2.00 |
| 07/16/2014 | Payment | Receipt # DC-55671-2014 | Farahmand, Maryam | (2.00) |
| 07/24/2014 | Transaction Assessment | | | 2.00 |
| 07/24/2014 | Payment | Receipt # DC-58175-2014 | Farahmand, Maryam | (2.00) |
| 07/24/2014 | Transaction Assessment | | | 2.00 |
| 07/24/2014 | Payment | Receipt # DC-58176-2014 | Farahmand, Maryam | (2.00) |
| 07/24/2014 | Transaction Assessment | | | 2.00 |
| 07/24/2014 | Payment | Receipt # DC-58178-2014 | Farahmand, Maryam | (2.00) |
| 07/29/2014 | Transaction Assessment | | | 2.00 |
| 07/29/2014 | Payment | Receipt # DC-59516-2014 | Farahmand, Maryam | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | Payment | Receipt # DC-66111-2014 | Farahmand, Maryam | (2.00) |
| 08/21/2014 | Transaction Assessment | | | 2.00 |
| 08/21/2014 | Payment | Receipt # DC-66124-2014 | Farahmand, Maryam | (2.00) |
| 09/03/2014 | Transaction Assessment | | | 2.00 |
| 09/03/2014 | Payment | Receipt # DC-69255-2014 | Farahmand, Maryam | (2.00) |
| 09/03/2014 | Transaction Assessment | | | 2.00 |
| 09/03/2014 | Payment | Receipt # DC-69257-2014 | Farahmand, Maryam | (2.00) |
| 09/03/2014 | Transaction Assessment | | | 2.00 |
| 09/03/2014 | Payment | Receipt # DC-69262-2014 | Farahmand, Maryam | (2.00) |
| 09/11/2014 | Transaction Assessment | | | 2.00 |
| 09/11/2014 | Payment | Receipt # DC-71290-2014 | Farahmand, Maryam | (2.00) |
| 09/15/2014 | Transaction Assessment | | | 2.00 |
| 09/15/2014 | Payment | Receipt # DC-72202-2014 | Farahmand, Maryam | (2.00) |
| 09/24/2014 | Transaction Assessment | | | 2.00 |
| 09/24/2014 | Payment | Receipt # DC-75024-2014 | Farahmand, Maryam | (2.00) |
| 09/24/2014 | Transaction Assessment | | | 2.00 |
| 09/24/2014 | Payment | Receipt # DC-75026-2014 | Farahmand, Maryam | (2.00) |
| 10/02/2014 | Transaction Assessment | | | 2.00 |
| 10/02/2014 | Payment | Receipt # DC-77754-2014 | Farahmand, Maryam | (2.00) |
| 10/09/2014 | Transaction Assessment | | | 2.00 |
| 10/09/2014 | Payment | Receipt # DC-80264-2014 | Farahmand, Maryam | (2.00) |
| 10/09/2014 | Transaction Assessment | | | 2.00 |
| 10/09/2014 | Payment | Receipt # DC-80358-2014 | Farahmand, Maryam | (2.00) |
| 10/10/2014 | Transaction Assessment | | | 2.00 |
| 10/10/2014 | Payment | Receipt # DC-80477-2014 | Farahmand, Maryam | (2.00) |
| 10/15/2014 | Transaction Assessment | | | 2.00 |
| 10/15/2014 | Payment | Receipt # DC-81725-2014 | Farahmand, Maryam | (2.00) |
| 10/20/2014 | Transaction Assessment | | | 2.00 |
| 10/20/2014 | Payment | Receipt # DC-83241-2014 | Farahmand, Maryam | (2.00) |
| 10/23/2014 | Transaction Assessment | | | 2.00 |
| 10/23/2014 | Payment | Receipt # DC-84515-2014 | Farahmand, Maryam | (2.00) |
| 11/19/2014 | Transaction Assessment | | | 2.00 |
| 11/19/2014 | Payment | Receipt # DC-93618-2014 | Farahmand, Maryam | (2.00) |
| 11/19/2014 | Transaction Assessment | | | 2.00 |
| 11/19/2014 | Payment | Receipt # DC-93712-2014 | Farahmand, Maryam | (2.00) |
| 11/19/2014 | Transaction Assessment | | | 2.00 |
| 11/19/2014 | Payment | Receipt # DC-93789-2014 | Farahmand, Maryam | (2.00) |
| 11/26/2014 | Transaction Assessment | | | 52.00 |
| 11/26/2014 | Payment | Receipt # DC-96196-2014 | Farahmand, Maryam | (52.00) |
| 12/09/2014 | Transaction Assessment | | | 2.00 |
| 12/09/2014 | Payment | Receipt # DC-99422-2014 | Farahmand, Maryam | (2.00) |
| 12/10/2014 | Transaction Assessment | | | 2.00 |
| 12/10/2014 | Payment | Receipt # DC-99938-2014 | Farahmand, Maryam | (2.00) |
| 12/12/2014 | Transaction Assessment | | | 2.00 |

**Respondent** Horak, Dawn M. Grams
Total Financial Assessment                     2.00
Total Payments and Credits                     2.00
**Balance Due as of 07/06/2015**               **0.00**

| Date | Description | Receipt | Name | Amount |
|---|---|---|---|---|
| 12/09/2014 | Transaction Assessment | | | 2.00 |
| 12/09/2014 | Payment | Receipt # DC-99484-2014 | Horak, Dawn M. Grams | (2.00) |

# ROGER FARAHMAND'S
# RECORD TAB 2



NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE 401 |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | JUDICIAL DISTRICT COURT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ▆▆▆▆▆▆▆▆ | § | COLLIN COUNTY, TEXAS |
| A MINOR CHILD | § | |

### ORIGINAL PETITION FOR DIVORCE, EMERGENCY (EX PARTE) REQUEST FOR EXTRAORDINARY RELIEF, AND REQUEST FOR TEMPORARY ORDERS

TO THE HONORABLE JUDGE OF SAID COURT:

This Original Petition for Divorce, Ex Parte Request for Emergency/Extraordinary Relief and Request for Temporary Orders is brought by ROGER ARASH FARAHMAND, Petitioner, (hereinafter referred to as "ROGER FARAHMAND") who is a resident of Collin County, Texas. MARYAM FARAHMAND, Respondent, is also a resident of Collin County, Texas.

### I.
### DISCOVERY CONTROL PLAN

Discovery in this suit is intended to be conducted under Level 2, Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### JURISDICTION

Petitioner has been a domiciliary of this State for the preceding six (6) month period and a resident of Collin County for the preceding ninety (90) day period.

### III.
### SERVICE

Process should be served on MARYAM FARAHMAND at ▆▆▆▆▆▆▆▆, ▆▆▆▆▆▆ or any other location she may be found.

ORIGINAL PETITION FOR DIVORCE,
EMERGENCY (EX PARTE) REQUEST FOR EXTRAORDINARY RELIEF,
AND REQUEST FOR TEMPORARY ORDERS
Pg. 1

# IV.
## GROUNDS

The parties were married on or about **July 28, 2012** and have ceased living together as husband and wife. The marriage has become insupportable because of a discord or conflict of personalities between ROGER FARAHMAND and MARYAM FARAHMAND that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation.

# V.
## CHILD OF THE MARRIAGE

ROGER FARAHMAND and MARYAM FARAHMAND are parents of the following minor child of this marriage, who is not under the continuing jurisdiction of any other court: █████████████████████, who was born ████████. There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child the subject of this suit. Information as required by section 154.181(b)(1) of the Texas Family Code is provided below. ROGER FARAHMAND believes that he and MARYAM FARAHMAND may enter into a written agreement containing provisions for the conservatorship, possession of and access to, support and health insurance pertaining to the child. If such an agreement is not made however, then ROGER FARAHMAND requests the Court to make appropriate orders of and pertaining to the child for conservatorship, possession, access, support and health insurance.

The appointment of ROGER FARAHMAND and MARYAM FARAHMAND as joint managing conservators would not be in the best interest of ████████████████████, ROGER FARAHMAND, on final hearing, should be appointed sole managing conservator, ROGER FARAHMAND requests that MARYAM FARAHMAND's possession of and access to ██████████████████████████ be monitored and supervised by a competent individual/entity. ROGER FARAHMAND should be awarded possession of the child at all other times not otherwise awarded to MARYAM FARAHMAND.

In the 2nd alternative, ROGER FARAHMAND requests that he and MARYAM FARAHMAND be designated joint managing conservators and that he have the exclusive right to designate the primary residence of the child. ROGER FARAHMAND requests that MARYAM FARAHMAND be awarded possession and access in accordance with the Texas Family Code, Chapter 153.312 to 153.317. ROGER FARAHMAND should be awarded possession of the child at all other times not otherwise awarded to MARYAM FARAHMAND.

In all alternatives, ROGER FARAHMAND requests that payments for the support of the child and medical support should be ordered in an amount supported by the guidelines set forth in the Texas Family Code and paid in the manner specified by the Court. ROGER

FARAHMAND also requests that MARYAM FARAHMAND seek and follow all recommendations by a qualified psychiatrist and psychologist as well as to submit to random drug testing, upon request by either ROGER FARAHMAND and/or a qualified testing facility.

## VI.
## MANAGING CONSERVATORSHIP, POSSESSION AND ACCESS, RIGHTS, PRIVILIGES, DUTIES, AND POWERS

The child's present living environment with MARYAM FARAHMAND, without the imposition of a court order, would endanger the child's physical health and/or significantly impair the child's emotional development. The appointment of ROGER FARAHMAND and MARYAM FARAHMAND as joint managing conservators would *not* be in the best interest of the child. ROGER FARAHMAND, on final hearing, should be appointed sole managing conservator, with all the rights and duties of a sole managing conservator. MARYAM FARAHMAND should be appointed possessory conservator *with possession and access as determined appropriate following a psychological evaluation and drug and alcohol evaluation, monitoring and supervision* with all the rights and duties of a parent conservator.

ROGER FARAHMAND should be designated as the conservator who has the exclusive right to designate the child's primary residence, along with all other rights and duties of a sole managing conservator. In the alternative, ROGER FARAHMAND requests that he and MARYAM FARAHMAND be designated joint managing conservators and ROGER FARAHMAND should be designated as the conservator who has the exclusive right to designate the child's primary residence.

## VII.
## REQUIRED INFORMATION ABOUT CHILD

Information required by section 154.181(b)(1) of the Texas Family Code is provided as follows: Blue Cross, Blue Shield is in effect for the child.

## VIII.
## DIVISION OF MARITAL ESTATE

ROGER FARAHMAND requests the Court to divide the estate of the parties in a manner that the Court deems just and right, as provided by law. ROGER FARAHMAND believes he and MARYAM FARAHMAND may enter into an agreement for the division of their estate and if so, would ask the Court to approve such agreement. If such agreement is not made however, then ROGER FARAHMAND requests the Court to order a division of their estate in a manner that the Court deems just and right, and fair and equitable, as provided by law.

## IX.
## SEPARATE PROPERTY

ROGER FARAHMAND owns certain separate property that is not part of the community estate of the parties, and ROGER FARAHMAND requests the Court to confirm that separate property as ROGER FARAHMAND's separate property and estate.

## X.
## CHILD'S PROPERTY

No property of consequence is owned or possessed by the child the subject of this suit.

## XI.
## REQUEST FOR TEMPORARY ORDERS REGARDING CHILD

ROGER FARAHMAND requests the Court, after notice and hearing, to dispense with the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions for the safety and welfare of the child as deemed necessary and equitable, including but not limited to the following:

Appointing ROGER FARAHMAND temporary sole managing conservator and MARYAM FARAHMAND temporary possessory conservator; or in the alternative, appointing ROGER FARAHMAND and MARYAM FARAHMAND temporary joint managing conservators, and appointing ROGER FARAHMAND the temporary conservator who has the exclusive right to designate the primary residence of the child.

ROGER FARAHMAND requests that MARYAM FARAHMAND's possession of and access to ███████████████████ be monitored and supervised by a competent individual/entity in accordance with the Texas Family Code. ROGER FARAHMAND should be awarded possession of the child at all other times not otherwise awarded to MARYAM FARAHMAND.

Ordering a forensic custody evaluation/social study to be conducted to look into the circumstances and condition of ███████████████████ and of the home of any person requesting managing conservatorship or possession of ████ ████ ████ ██████.

Ordering that MARYAM FARAHMAND submit to a forensic psychiatric and/or psychological evaluation.

Ordering MARYAM FARAHMAND to submit to drug and alcohol evaluation by a licensed psychiatrist and/or psychologist.

ORIGINAL PETITION FOR DIVORCE,
EMERGENCY (EX PARTE) REQUEST FOR EXTRAORDINARY RELIEF,
AND REQUEST FOR TEMPORARY ORDERS
Pg. 4

Ordering MARYAM FARAHMAND to comply with all recommendations and/or treatment plans from any medical professionals and/or Court appointed experts.

Ordering MARYAM FARAHMAND to submit to a hair follicle test, fingernail test, and/or any other test that may be requested by ROGER FARAHMAND, as well as specific and random drug testing, upon request by either ROGER FARAHMAND and/or a testing facility.

Payments for the support of the child should be ordered in the manner specified by the Court. The requested relief is in the best interest of the child.

With regard to the requested temporary order for managing conservatorship, ROGER FARAHMAND would show the Court the following:

**These temporary orders are necessary because without the imposition of a court order to protect the child, the child's present living environment with MARYAM FARAHMAND would endanger the child's physical health or significantly impair the child's emotional development. Also in support of, see:**

## XII.
## REQUEST FOR EX PARTE EMERGENCY/EXTRAORDINARY RELIEF

As a basis for the emergency/extraordinary relief requested herein, ROGER FARAHMAND would show that prior to the presentation of this ORIGINAL PETITION FOR DIVORCE that MARYAM FARAHMAND has engaged in the conduct set forth in his affidavit, attached hereto as *Exhibit "1."* ROGER FARAHMAND requests such relief be granted immediately, without notice or hearing, and that a hearing be scheduled on such issues on the first available date. This order is necessary to protect the child ███████████ ███████████. Based on that affidavit, ROGER FARAHMAND requests the Court to issue an emergency temporary ex parte emergency order for the protection of the child ███████ ███████████, and ordering the following relief:

*Prohibited (and ordered) from having any unsupervised physical possession of and/or access to the child* ███████████████████*, until further order of the Court;*

*Prohibited (and ordered) from removing* ███████████████████ *from ROGER ARASH FARAHMAND's care.*

## XIII.
## REQUEST FOR TEMPORARY ORDERS FOR DISCOVERY
## AND ANCILLARY RELIEF

ROGER FARAHMAND requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders for discovery and ancillary relief as deemed necessary and equitable, including but not limited to the following:

Ordering MARYAM FARAHMAND to provide a sworn inventory and appraisement of all the separate and community property owned or claimed by the parties and all debts and liabilities owed by the parties substantially in the form and detail prescribed by the *Texas Family Law Practice Manual* (2d ed.), form 7-1.

Ordering MARYAM FARAHMAND to execute all necessary releases required by ROGER FARAHMAND to obtain any discovery allowed by the Texas Rules of Civil Procedure, including but not limited to her past medical records, her cell phone records, her Facebook account records, and any other releases that ROGER FARAHMAND so requests.

Ordering MARYAM FARAHMAND to sign a HIPAA release by a date certain and to state in writing the name, address and phone number for all medical providers she has had in the past 5 years.

## XIV.
## REQUEST FOR TEMPORARY ORDERS CONCERNING USE OF PROPERTY

ROGER FARAHMAND requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders respecting the temporary use of the parties' property as deemed necessary and equitable, including but not limited to the following:

Awarding ROGER FARAHMAND the exclusive use and possession of the residence maintained by Petitioner before marriage located at ██████████████████ ████, its furniture, and furnishings during the pendency of this suit and enjoining MARYAM FARAHMAND from entering and remaining on the premises of that residence, except as authorized by order of this Court and Awarding ROGER FARAHMAND the exclusive use and control of the motor vehicle in his possession and enjoining MARYAM FARAHMAND from entering, operating and/or exercising control over it.

ORIGINAL PETITION FOR DIVORCE,
EMERGENCY (EX PARTE) REQUEST FOR EXTRAORDINARY RELIEF,
AND REQUEST FOR TEMPORARY ORDERS
Pg. 6

## XV.
## STATEMENT REGARDING PROTECTIVE ORDER

There is no protective order under Title 4, Protective Orders and Family Violence, or section 6.504 of the Texas Family Code in effect.

## XVI.
## REQUEST FOR TEMPORARY INJUNCTIONS

ROGER FARAHMAND requests the Court to dispense with the issuance of a bond, and ROGER FARAHMAND requests after notice and hearing that MARYAM FARAHMAND be temporarily enjoined, pending the further order of this Court, from:

1. Disrupting or removing ███████████████████ from ROGER FARAHMAND;
2. Allowing ██████████████ from being in the direct presence of SHAMSI DAMAVANDI, BAHMAN PARVIZ-KHYAVI or MAHSA PARVIZ until further order of the Court;
3. Approaching within three hundred (300) feet of either ████████ F████████ from ROGER FARAHMAND at any location other than a site designated for supervised visitation;
4. Consuming narcotics or prescription medication without medical authorization; and
5. Consuming any prescriptive narcotics for which MARYAM FARAHMAND has a prescription, at levels other than as prescribed by her treating physician.

## XVII.
## COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND THE CONDUCT OF PARTIES

ROGER FARAHMAND hereby incorporates the Collin County Standing Order Regarding Children, Property and the Conduct of Parties to her pleadings. **NOTICE TO PARTIES: YOU ARE ORDERED TO REFRAIN FROM DOING CERTAIN ACTS AND YOU ARE AUTHORIZED TO DO CERTAIN ACTS AS SET FORTH IN THE ORDER, EXCEPT AS OTHERWISE MAY BE ORDERED. YOU ARE ADVISED TO READ THE ORDER IN ITS ENTIRETY.** The Collin County Standing Order Regarding Children, Property and the Conduct of Parties is accordingly attached hereto and incorporated herein as if set forth in its entirety. *See attached Exhibit "3."*

## XVIII.
## ATTORNEY'S FEES AND EXPENSES

It was necessary for ROGER FARAHMAND to secure the services of NACE & MOTLEY, L.L.P., lawyers duly licensed and practicing in the State of Texas, to preserve, protect and defend ROGER FARAHMAND's rights and the child, and to prepare and prosecute this Cause of Action, and further for any necessary Appeal of this Cause of Action to the appropriate Court of Appeal, inclusive of, and not limited to Appeal to the Supreme Court of Texas, United States Federal District Court, Fifth Circuit Court of Appeals and the United States Supreme Court, by original or derivative action, or by way of "Writ of Error."

In order to effect an equitable division of the Estate of the Parties, and as part thereof, Judgment for Attorney Fees should be rendered against MARYAM FARAHMAND and in favor of ROGER FARAHMAND for the use and benefit of ROGER FARAHMAND's attorneys, for Trial of this Cause of Action, and for any and all necessary Appeal of this Cause of Action, inclusive of Appeal to the Supreme Court of Texas, by "Petition for Review," all to bear interest at the highest rate allowed by Law; or, in the alternative, ROGER FARAHMAND requests that reasonable Attorney's Fees, expenses and Costs be taxed as Costs of Court, and be further Ordered paid directly to the undersigned Attorney, who may enforce this Order for Attorney's Fees in the Attorney's own name, all to bear interest at the highest rate allowed by Law from date of Judgment until paid. ROGER FARAHMAND stated further that all Legal Time spent on behalf of ROGER FARAHMAND, is maintained by ROGER FARAHMAND on computer at ROGER FARAHMAND's Attorney's Offices in Dallas, Dallas County, Texas, which accounting and Attorney's Fees Records are available for inspection upon written notice by Attorneys of Record for MARYAM FARAHMAND, during normal business hours. Respondent, MARYAM FARAHMAND, is hereby placed upon formal notice of this fact.

ROGER FARAHMAND further states upon hearing and trial of this Cause of Action, together with any Temporary Hearings, ROGER FARAHMAND's Attorneys, specifically BRAD NACE or KRISTI MOTLEY, will testify as "Expert Witnesses" with reference to reasonable Attorney's Fees, Costs and Expenses, incurred by ROGER FARAHMAND, with reference to all aspects of this Cause of Action.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, ROGER FARAHMAND prays that citation and notice issue as required by law and:

That this Court enter its orders in accordance with the allegations contained in this Petition;

ORIGINAL PETITION FOR DIVORCE,
EMERGENCY (EX PARTE) REQUEST FOR EXTRAORDINARY RELIEF,
AND REQUEST FOR TEMPORARY ORDERS
Pg. 8

That ROGER FARAHMAND prays that the Court grant temporary injunctions in conformity with the allegations of this petition and ROGER FARAHMAND prays that, after notice and hearing, temporary orders be issued in accordance with the requests made herein;

That ROGER FARAHMAND prays that the Court grant all other relief requested on a temporary basis;

That ROGER FARAHMAND be awarded reasonable Attorney's Fees, Expenses and Costs of Court, all to bear Interest at the highest rate allowed by Law from date of Judgment until paid;

That ROGER FARAHMAND be awarded such other and further relief, both general and specific, both at Law and in Equity, to which he may show himself to be justly entitled; and

ROGER FARAHMAND prays for General Relief.

Respectfully submitted,

NACE & MOTLEY, L.L.P.
The Crescent Court
100 Crescent Court, 7th Floor
Dallas, Texas 75201
214-459-8289
214-242-4333 facsimile

By:_____
Bradford Nace
State Bar No. 24007726

## CERTIFICATION BY THE UNDERSIGNED COUNSEL

To the best of my knowledge the party against who relief is sought is not represented by counsel in the matter made the basis of this suit.

Bradford Nace
Attorney for ROGER FARAHMAND

ORIGINAL PETITION FOR DIVORCE,
EMERGENCY (EX PARTE) REQUEST FOR EXTRAORDINARY RELIEF,
AND REQUEST FOR TEMPORARY ORDERS
Pg. 9

NO. _____

| | | | |
|---|---|---|---|
| IN THE MATTER OF | § | IN THE ____ | |
| THE MARRIAGE OF | § | | |
| | § | | |
| ROGER ARASH FARAHMAND | § | | |
| AND | § | JUDICIAL DISTRICT COURT | |
| MARYAM FARAHMAND | § | | |
| | § | | |
| AND IN THE INTEREST OF | § | | |
| ████████████████████ | § | COLLIN COUNTY, TEXAS | |
| A MINOR CHILD | § | | |

## SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND

| | |
|---|---|
| COUNTY OF COLLIN | § |
| | § |
| STATE OF TEXAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared ROGER ARASH FARAHMAND (hereinafter referred to as "ROGER"), known to me to be the person whose signature is affixed hereto, and, who, after first being duly sworn on his oath did say he is over the age of 18 years, has never been convicted of a felony, and is competent to make this affidavit; that he is the Petitioner in the above entitled and numbered cause; that he has read this AFFIDAVIT, has knowledge of the facts contained herein, and that they are all true and correct.

"I, ROGER ARASH FARAHMAND, am the Petitioner in this case and the Applicant seeking the EMERGENCY MOTION FOR EX PARTE/EXTRAORDINARY RELIEF. That Respondent, MARYAM FARAHMAND (hereinafter "MARYAM"), and I met on June 5, 2012 and married shortly thereafter on July 28, 2012. We have a son named ████████████ ██████████ (hereinafter "J██████"), age six (6) months, born July 9, 2013. MARYAM and her sister have had a significant history of instability and mental health issues.

"From the outset, MARYAM's emotional volatility was evident, in private and later in public. That volatility (yelling, screaming, highs and lows) has been observed by numerous family, friends, business associates and partner, as well medical staff and now the police. Despite having a Ph.D. and two Master's Degrees, MARYAM has not held any meaningful employment immediately before, or during, our marriage. It is my understanding that MARYAM had to leave her last place of employment due to mental instability. She applied for short-term disability but was denied.

"During our marriage, MARYAM told me that she went to Green Oaks in 2009 for an attempted suicide. She said she did not remember the exact details, only that she had a *"breakdown"* and overdosed on Xanax. Recently however, she changed her story claiming that it was a *"medication issue,"* and that's why she *"overdosed on Xanax."* MARYAM later sought psychiatric

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 1

counseling through Dr. SCOTT WOOD, M.D. for PTSD, severe self-esteem issues and depression, but per her words, "*he wouldn't do therapy*" and that he "*just gave me medication.*"

"MARYAM has told me that in the past she has been on a variety of pills, including Adderall, Prozac, Xanax and Seroquel but that she hasn't taken them since July 2012. Throughout our marriage, but more recently, MARYAM would have auditory hallucinations when she would not sleep. I don't know if that condition is due to the medications she claimed she wasn't taking or something else. I do know MARYAM once destroyed her car from sleep deprivation (she was also recently in a "hit and run"). According to MARYAM, she fell asleep behind the wheel and did not remember the accident. That the Adderall helps keeps her awake, and she likes it because she "*doesn't eat*" and it lets her "*lose weight.*" (Conflicting with what she previously told me about her past pill usage). That she took Xanax and Melatonin to calm down, so she could go to sleep.

"On November 15, 2013, MARYAM saw Dr. SCOTT WOOD, M.D., and was prescribed Prozac. Since then, MARYAM has refused to take that medication. On December 13, 2013, MARYAM threatened to harm herself, stating she has "*no reason to live;*" that "*I want to kill myself;*" that "*I don't want to look at baby – I just want to kill myself today.*" That "*I have nothing to live for anymore.*" That "*I'm tired. There is nothing I can do.*" She also repeated these things on the December 18. She began banging her head against the wall in front of ▮▮▮▮. (She has also banged her head against several walls before in the past). She spent Saturday and Sunday in bed, and slept the entire time. She told me she was still not taking her Prozac.

"On December 18, 2013, I left for work. MARYAM began blowing up my phone as well as that of my business partner. Following, I returned home with my business partner to find my mom at the house. MARYAM was holding ▮▮▮▮, screaming at the top of her lungs. I came in and MARYAM started screaming and shouting the same things she usually does. My mom tried to calm her to no avail. MARYAM began hitting her head against the wall again. My mom removed our son and went into another room. I began to leave only to be stopped by MARYAM handing me her phone. Her mother was on the other end stating "*she is going to kill herself,*" who then oscillated saying that her daughter was in "*great mental shape.*" MARYAM was now tearing her hair from her head. Then BAHMAN PARVIZ-KHYAVI, her father, arrived. Following, MARYAM tells me "*Now you can be happy. I just took 30 Hydrocodones.*" I immediately put MARYAM in the car and rushed her to PLANO PRESBYTERIAN EMERGENCY.

"On December 18, 2013, MARYAM was involuntarily committed to PLANO PRESBYTERIAN EMERGENCY. There, MARYAM told the staff that she took "*30 Hydrocodone*" because she doesn't "*want want to live anymore.*" MARYAM's father demanded that MARYAM change her story and the reasons why she was there. To blame it on me and marital issues, not her mental health. Her father became furious with her when the nurses left, stating "*don't tell them*" she was "*trying to kill*" herself. That "*these guys are mean*" and "*not trustworthy.*" That "*they will make a record for her.*" That admonition despite her sister, MAHSA PARVIZ, having also attempted suicide, resulting in her hospitalization for having ingested twelve (12) Ambien pills. I told him to stop telling her that. I asked him "*Don't you think she needs help?*" He looked at me angrily and left the room. I could overhear him talking to his wife cursing at me and that I am "*making a record*" for his daughter. He then came back into the room, stating that I needed to go to therapy with her.

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 2

"I later returned to the ICU, where MARYAM's parents were trying to get her released. They continued to blame the situation on me. They denied that MARYAM took any pills. MARYAM's father said *"how do you know she took any pills?"* I asked him – *"did you see her blood report?"* PRESBYTERIAN then transferred MARYAM to the SEAY CENTER, where she was checked in on Thursday, December 19, 2013 at night remaining until Monday, December 23, 2013 when I picked her up. Because of the toxicity in MARYAM's blood work, the hospital intravenously gave her an antidote for 24 hours and charcoal to absorb it. MARYAM slept for those 24 hours. When she woke, she was sweet, pleasant and asked me to get some personal effects for her from home.

"During that hospitalization, I found in her belongings at least two containers full of different pills, including uppers and downers in her contact case and in her Pamprin bottles. Following her release, I asked MARYAM about the pills. She said they were from before and that *"Pamprin is for cramps."* When I showed her the pictures, she then stated they were Aderall and that she lied. *See Exhibit 2, a fair and accurate depiction of some of the pills I took a picture of.* After her release from the SEAY CENTER and her conversations with her parents, MARYAM changed her story yet again, stating now that the pills were from before we met. Before we got home, MARYAM began repeating the same rage as in the past, yelling and screaming at me. On Friday, December 27, 2013, and following her release, MARYAM demanded the return of those pills – else she would call the police on me.

"At home, MARYAM demanded that I kick my dad and uncle out of the house despite previously agreeing that they could stay (my father had been with us following ███████ s birth and my uncle came in for the Christmas holiday). On Christmas Day, I asked my father and uncle to leave to try and placate MARYAM and to calm the situation. They heard her berating me. Rather than our relying on my father to help care for ██████ I was forced to keep ██████ with me at all times. On December 27, 2013, MARYAM stated she would kill herself with an overdose if we went away ██████ and me).

"On December 28, 2013, I left the home with ██████ to go to the office and told MARYAM I would return in thirty (30) minutes. Before I got to work (eight (8) miles away), I received a phone call from my office stating *"your wife is here."* Concerned as I had just left her, I stopped at a nearby police annex to seek guidance on what I should do. While talking with Officer ELLIS, I received a phone call from Richardson Police Department. I let the two officers communicate on my phone. It is my understanding through the police departments that MARYAM contacted Richardson police claiming that I was *"homicidal"* and that I *"took her son."* MARYAM later told me she called the police is because my *"life is in danger."* She later stated she contacted the Richardson police *"bc u ignored me."*

"Based on the involvement of the police, and her deteriorating condition, I felt it prudent to have my business partner and father later check on MARYAM at the house before I returned. (Since then, I decided to myself and ██████ from her). MARYAM however refused to come to or to open the door, so they called the police for a wellness check. Office ELLIS, who I had just met with earlier, came to the house. In the house were broken bottles and stemware as well as vomit. MARYAM sought to blame me, but it is my understanding that Officer ELLIS advised her that he was just with me.

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 3

"She has also made recent baseless allegations to my friends that I was out drunk with our son -- during a baby shower for my friend's newborn child. In response to the latest accusation, I immediately went to the police station to separate fact from fiction. There, I spoke with Office STENSON (Badge No. 8656) and apprised him of the escalating situation. He advised me to contact a lawyer to protect myself; that the matter was civil. Additional proof will be offered in Court to negate her latest wave of accusations. MARYAM's behavior has now risen to a new level, and I am extremely concerned for her and our son's welfare given it is not beneath her to make false accusations.

"In the last twelve (12) hours, I received two (2) "*No Caller ID*" calls at 3:32am and then received thirty-seven (37) "*No Caller ID*" calls through the signing of this AFFIDAVIT. ████ was asleep in my care. I could hear a guy on the other end making sex noises, moaning saying something to the effect "*I'm jerking off on your face.*" No idea who that was, except to say I have had the same phone number for fifteen (15) years and have never received any calls of the sort. It is my distinct impression that the caller may be related to MARYAM's sister, now that she is back in town from Boston, the same sister who has also had a significant history of emotional problems. This type of behavior is atypical of what her sister has done in the past.

"Today, MARYAM has called and texted me numerous times pleading with me to come home. While I am certainly open to working things out, I don't believe I have recourse other than to seek immediate court intervention for the time being. I feel I am left without recourse as MARYAM's parents are not assisting in helping her get better, MARYAM is not being compliant with therapy or psychotropic medications previously prescribed, and now with the recent baseless accusations – I am having to live a life on eggshells having to constantly document everything about everything.

"████ is in my possession at this time.

"Consequently, I am requesting immediate possession of and access to our child, without any unsupervised possession by MARYAM, until a hearing can be held in an effort to remove our child from any further emotional and possible physical damage. Additional testimony, evidence, and witnesses will be offered at hearing, to further show that MARYAM's demeanor and temperament is having a detrimental impact on our child. I have reviewed the Temporary Emergency/Ex Parte Order and believe the requests are in the best interest of our child and the least restrictive in terms of requests at this time. I am asking the Court to grant the relief requested against MARYAM to protect our son."

_____
ROGER ARASH FARAHMAND

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 4

SWORN TO AND SUBSCRIBED BEFORE ME by ROGER ARASH FARAHMAND this the 30th day of December 2013.



Notary Public, State of Texas

My Commission Expires:
_November 8, 2017_.

BETHANY FANSLER
Notary Public
STATE OF TEXAS
My Comm. Exp. November 18, 2017

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 5



P₂

## COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND CONDUCT OF THE PARTIES

No party to this lawsuit has requested this order. Rather, this order is a standing order of the Collin County District Courts that applies in every divorce suit and every suit affecting the parent-child relationship filed in Collin County. The District Courts of Collin County have adopted this order because the parties and their children should be protected and their property preserved while the lawsuit is pending before the court. Therefore it is ORDERED:

1. NO DISRUPTION OF CHILDREN. Both parties are ORDERED to refrain from doing the following acts concerning any children who are subjects of this case:

    1.1    Removing the children from the State of Texas, acting directly or in concert with others, without the written agreement of both parties or an order of this Court.

    1.2    Disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court.

    1.3    Hiding or secreting the children from the other parent or changing the children's current place of abode, without the written agreement of both parents or an order of this Court.

    1.4    Disturbing the peace of the children.

    1.5    Making disparaging remarks about each other or the other person's family members, to include but not be limited to the child's grandparents, aunts, uncles, or stepparents.

    1.6    Discussing with the children, or with any other person in the presence of the children, any litigation related to the children or the other party.

    1.7    If this is an original divorce action, allowing anyone with whom the party is romantically involved, to remain over night in the home while in possession of the child. Overnight is defined from 10:00 p.m. until 7:00 a.m.

2. CONDUCT OF THE PARTIES DURING THE CASE. Both parties are ORDERED to refrain from doing the following acts:

    2.1    Using vulgar, profane, obscene, or indecent language, or a coarse or offensive manner to communicate with the other party, whether in person, by telephone, or in writing.

    2.2    Threatening the other party in person, by telephone, or in writing to take unlawful action against any person.

    2.3    Placing one or more telephone calls, at an unreasonable hour, in an offensive or

repetitious manner, without a legitimate purpose of communication, or anonymously.

2.4 Opening or diverting mail addressed to the other party.

3. PRESERVATION OF PROPERTY AND USE OF FUNDS DURING DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

3.1 Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both of the parties.

3.2 Misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any property of one or both of the parties.

3.3 Damaging or destroying the tangible property of one or both of the parties, including any document that represents or embodies anything of value.

3.4 Tampering with the tangible property of one or both of the parties, including any document that represents or embodies anything of value, and causing pecuniary loss to the other party.

3.5 Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of either party, whether personal property or real estate property, and whether separate or community, except as specifically authorized by this order.

3.6 Incurring any indebtedness, other than legal expense in connection with this suit, except as specifically authorized by this order.

3.7 Making withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by this order.

3.8 Spending any sum of cash in either party's possession or subject to either party's control for any purpose, except as specifically authorized by this order.

3.9 Withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan or employee savings plan or from any individual retirement account or Keogh account, except as specifically authorized by this order.

3.10 Signing or endorsing the other party's name or any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividends, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party.

3.11 Taking any action to terminate or limit credit or charge cards in the name of the other party.

3.12 Entering, operating, or exercising control over the motor vehicle in the possession of the other party.

3.13 Discontinuing or altering the withholding for federal income taxes on wages or salary while this suit is pending.

3.14 Terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual services, such as security, pest control, landscaping, or yard maintenance at the other party's residence or in any manner attempting to withdraw any deposits for service in connection with such

services.

3.15 Intercepting or recording the other party's electronic communications.

## 4. PERSONAL AND BUSINESS RECORDS IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

4.1    Concealing or destroying any family records, property records, financial records, business records or any records of income, debts, or other obligations.

4.2    Falsifying any writing or record relating to the property of either party.

4.3    "Records" include e-mail or other digital or electronic data, whether stored on a computer hard drive, diskette or other electronic storage device.

## 5. INSURANCE IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

5.1    Withdrawing or borrowing in any manner all or any part of the cash surrender value of life insurance policies on the life of either party, except as specifically authorized by this order.

5.2    Changing or in any manner altering the beneficiary designation on any life insurance on the life of either party or the parties' children.

5.3    Canceling, altering, or in any manner affecting any casualty, automobile, or health insurance policies insuring the parties' property of persons including the parties' minor children.

## 6. SPECIFIC AUTHORIZATIONS IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are specifically authorized to do the following:

6.1    To engage in acts reasonably and necessary to the conduct of that party's usual business and occupation.

6.2    To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit.

6.3    To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care.

6.4    To make withdrawals from accounts in financial institutions only for the purposes authorized by this order.

## 7. SERVICE AND APPLICATION OF THIS ORDER.

7.1    The Petitioner shall attach a copy of this order to the original petition and to each copy of the petition. At the time the petition is filed, if the Petitioner has failed to attach a copy of this order to the petition and any copy of the petition, the Clerk shall ensure that a copy of this order is attached to the petition and every copy of the petition presented.

7.2    This order is effective upon the filing of the original petition and shall remain in full force and effect as a temporary restraining order for fourteen days after the date of the filing of the original petition. If no party contests this order by presenting evidence at a hearing on or before fourteen days after the date of the filing of the original petition, this order shall continue in full force and effect as a temporary injunction until further order of this court. This entire

order will terminate and will no longer be effective when the court signs a final order or the case is dismissed.

8. EFFECT OF OTHER COURT ORDERS. If any part of this order is different from any part of a protective order that has already been entered or is later entered, the protective order provisions prevail. Any part of this order not changed by some later order remains in full force and effect until the court signs a final decree.

9. PARTIES ENCOURAGED TO MEDIATE. The parties are encouraged to settle their disputes amicably without court intervention. The parties are encouraged to use alternative dispute resolution methods, such as mediation, to resolve the conflicts that may arise in this lawsuit.

THIS COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND CONDUCT OF THE PARTIES SHALL BECOME EFFECTIVE ON OCTOBER 14, 2013.

JUDGE ANGELA TUCKER
199th Judicial District Court

JUDGE SCOTT BECKER
219th Judicial District Court

JUDGE JOHN ROACH, JR.
296th Judicial District Court

JUDGE RAY WHELESS
366th Judicial District Court

JUDGE BENJAMIN SMITH
380th Judicial District Court

JUDGE MARK RUSCH
401st Judicial District Court

JUDGE CHRIS OLDNER
416th Judicial District Court

JUDGE CYNTHIA WHELESS
417th Judicial District Court

JUDGE JILL WILLIS
429th Judicial District Court

# ROGER FARAHMAND'S
# RECORD TAB 3

NO. ___401 - 56531-2013___

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE 401 |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | JUDICIAL DISTRICT COURT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████████████████ | § | COLLIN COUNTY, TEXAS |
| A MINOR CHILD | § | |

## TEMPORARY EMERGENCY EX PARTE ORDER
## AND ORDER SETTING HEARING

On this day, ROGER ARASH FARAHMAND, Petitioner, presented a request for a temporary emergency ex parte order to the Court. The Court, having examined Applicant's pleadings and allegations, finds that Applicant's sworn pleadings and allegations show that Applicant is entitled to the relief requested. Applicant has requested an order for the child who is subject to the jurisdiction of this court pursuant to the Texas Family Code. The Court finds that there is an immediate need for the following orders to protect the child ██████████████████████ and that the orders are in the best interest of the child. IT IS THEREFORE ORDERED that the clerk of this Court issue temporary emergency ex parte orders as follows, and Respondent, MARYAM FARAHMAND, is immediately:

*Prohibited (and ordered) from having any unsupervised physical possession of and/or access to the child* ███████████████████, *either directly or indirectly, until further order of the Court (only Hannah's House or mutually agreed supervisor may supervise);*

*Prohibited (and ordered) from removing* ████████████████████ *from ROGER ARASH FARAHMAND's care.*

This temporary emergency ex parte order shall be effective immediately and binding on MARYAM FARAHMAND and Respondent's agents, servants, employees, and attorneys; and on those persons in active concert or participation with her who receive actual notice of this order by personal service or otherwise. This temporary ex parte order shall continue in full force and effect for fourteen (14) days from the date this order is signed unless terminated sooner by order of this Court. The requirement of a bond is waived.

## NOTICE OF HEARING

IT IS FURTHER ORDERED that the clerk shall issue notice to Respondent, MARYAM FARAHMAND, to appear, and Respondent is ORDERED to appear in person, before the **401** Judicial District Court, at 2600 Bloomdale Road, McKinney, Texas 75071 on January **14**, 2014 at **9** : **00** A./P.M. The purpose of this hearing is to determine whether the Court should issue the relief requested by ROGER ARASH FARAHMAND in his Original Petition for Divorce, Temporary Emergency Ex Parte Order and Request for Temporary Orders, as well as any additional relief that is in the best interest of the child.

## WARNING

**A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.**

SIGNED on ___12-30-13___ at ___2:32___ A./P.M.

_____
JUDGE PRESIDING

TEMPORARY EMERGENCY EX PARTE ORDER
AND ORDER SETTING HEARING
Pg. 2

# ROGER FARAHMAND'S
# RECORD TAB 4

## NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 401ST JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████████████ | § | |
| A CHILD | § | COLLIN COUNTY, TEXAS |

### ORIGINAL COUNTER-PETITION FOR DIVORCE

*1. Discovery Level*

Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

*2. Parties*

This suit is brought by MARYAM FARAHMAND, Counter-Petitioner. The last three numbers of MARYAM FARAHMAND's driver's license number are 351 and the last three number of MARYAM FARAHMAND's Social Security number are 203.

ROGER ARASH FARAHMAND is Counter-Respondent.

*3. Domicile*

Counter-Petitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

RESPONDENT'S ORIGINAL COUNTER-PETITION FOR DIVORCE          PAGE 1

## 4. Service

Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Counter-Respondent's attorney of record, Bradford Nace, Nace & Motley, LLP., 100 Crescent Court, 7th Floor, Dallas, Texas 75201.

## 5. Protective Order Statement

No protective order under Title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

## 6. Dates of Marriage and Separation

The parties were married on or about July 28, 2012, and have ceased to live together as husband and wife.

## 7. Grounds for Divorce

The marriage has become insupportable because of discord or conflict of personalities between Counter-petitioner and Counter-respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

Counter-Respondent Roger Farahmand is guilty of cruel treatment toward Counter-Petitioner Maryam Farahmand of a nature that renders further living together insupportable.

## 8.  *Child of the Marriage*

Counter-Petitioner and Counter-Respondent are parents of the following child of this marriage who is not under the continuing jurisdiction of any other Court:

Name: ███████████████████
Sex:  Male
Birth date: ██████████

There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child the subject of this suit.

Information required by Section 154.181(b) of the Texas Family Code will be provided.

No property of consequence is owned or possessed by the child the subject of this suit.

Counter-Petitioner and Counter-Respondent, on final hearing, should be appointed joint managing conservators, with all the rights and duties of a parent conservator.

Counter-Petitioner should be designated as the conservator who has the exclusive right to designate the primary residence of the child. The residence of the child should be restricted to Collin County and counties contiguous to Collin County, Texas. Counter-Respondent should be ordered to make payments for the support of the child and to provide medical child support in the manner specified

by the Court. Counter-Petitioner requests that the payments for the support of the child survive the death of Counter-Respondent and become the obligations of Counter-Respondent's estate.

## 9. *Division of Community Property*

Counter-Petitioner requests the Court to divide the estate of Counter-Petitioner and Counter-Respondent in a manner that the Court deems just and right, as provided by law.

Counter-Petitioner should be awarded a disproportionate share of the parties' estate for the following reasons, including but not limited to:

a. fault in the breakup of the marriage;

b. benefits the innocent spouse may have derived from the continuation of the marriage;

c. disparity of earning power of the spouses and their ability to support themselves;

d. cruel treatment by Counter-Respondent toward Counter-Petitioner;

e. community indebtedness and liabilities;

f. tax consequences of the division of property;

g. earning power, business opportunities, capacities, and abilities of the spouses;

h. nature of the property involved in the division;

i.      attorney's fees to be paid; and

j.      the size and nature of the separate estates of the spouses.

## 10.   *Separate Property*

Counter-Petitioner may own certain separate property that is not part of the community estate of the parties, and Counter-Petitioner requests the Court to confirm that separate property as Counter-Petitioner's separate property and estate.

## 11.   *Reimbursement*

Counter-Respondent's Separate Estate to Reimburse Community Estate –

a.      Counter-Petitioner requests the Court to reimburse the community estate for funds or assets expended by the community estate for the benefit of Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefited from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

b.      Counter-Petitioner requests the Court to reimburse the community estate for the value of community time, toil, talent and effort expended by Counter-Petitioner to benefit or enhance Counter-Respondent's separate estate. The community estate was not adequately compensated for Counter-Petitioner's use of community time, talent, toil and effort beyond what was reasonably necessary to

maintain, manage, and preserve Counter-Respondent's separate estate. The failure of the Court to allow and award such reimbursement to the community estate will result in the unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

c. Counter-Petitioner requests the Court to reimburse the community estate for funds or assets expended by the community estate for payment of unsecured liabilities of Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

d. The community estate has expended funds or assets to make capital improvements on property claimed by Counter-Respondent as separate property, giving rise to a claim for reimbursement in favor of the community estate and against Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's

separate estate at the expense of the community estate.

e.     The community estate is or was obligated on a debt incurred during the marriage for the acquisition of, or capital improvements to, property and secured by a lien on community property. Counter-Petitioner's separate estate has expended funds or assets for the payment of that debt. Those expenditures have resulted in the reduction of the principal of that debt, giving rise to a claim for reimbursement in favor of Counter-Petitioner's separate estate and against the community estate. Those expenditures resulted in a direct benefit to the community estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of the community estate at the expense of Counter-Petitioner's separate estate.

f.     Counter-Respondent is or was obligated on a debt incurred during the marriage for the acquisition of, or capital improvements to, property and secured by a lien on property claimed by Counter-Respondent as separate property. The community estate has expended fund or assets for payment of that debt. Those expenditures have resulted in the reduction of the principal of those debts, giving rise to a claim for reimbursement in favor of the community estate and against Counter-Respondent's separate estate. Those expenditures resulted in a direct

benefit to Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

Community Estate to Reimburse Counter-Petitioner's Separate Estate

a. Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for the benefit of the community. Those expenditures resulted in a direct benefit to the community estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of the community estate at the expense of Counter-Petitioner's separate estate.

b. Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for payment of unsecured liabilities of the community estate. Those expenditures resulted in a direct benefit to the community estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow

reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of the community estate at the expense of Counter-Petitioner's separate estate.

Counter-Respondent's Separate Estate to Reimburse Counter-Petitioner's Separate Estate

a.      Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for the benefit of Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

b.      Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for payment of unsecured liabilities of Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or

assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

c. Counter-Petitioner's separate estate has expended funds or assets to make capital improvements on property claimed by Counter-Respondent as separate property, giving rise to a claim for reimbursement in favor of Counter-Petitioner's separate estate and against Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

d. Counter-Respondent is or was obligated on a debt incurred during the marriage for the acquisition of, or capital improvements to, property and secured by a lien on property claimed by Counter-Respondent as separate property, Counter-Petitioner's separate estate has expended funds or assets for payment of that debt. Those expenditures have resulted in the reduction of the principal of that debt, giving rise to a claim for reimbursement in favor of Counter-Petitioner's separate estate and against Counter-Respondent's separate estate. Counter-

Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

## 12. *Request for Temporary Orders and Injunction*

Counter-Petitioner requests the Court, after notice and hearing, to dispense with the issuance of a bond, to make the Collin County Standing Order into a temporary injunction and to issue any other temporary orders and appropriate temporary injunctions for the preservation of the property and protection of the parties and for the safety and welfare of the child of the marriage as deemed necessary and equitable. Additionally, Counter-Petitioner requests that the Court enjoin Counter-Respondent from the following:

1.     Preventing and/or excluding Counter-Petitioner from the use and possession of her personal belongings, clothing, and personal items.

2.     Entering, operating, or exercising control over the 2013 BMW X3 in the possession of Counter-Petitioner.

3.     Hiding or secreting the child from Counter-Petitioner.

4.     Making disparaging remarks regarding Counter-Petitioner or Counter-Petitioner's family in the presence or within the hearing of the child.

5.    Consuming alcohol during the periods of possession of or access to the child.

Counter-Petitioner requests that each party be authorized as follows:

To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation, and medical care.

To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit.

To make withdrawals from accounts in financial institutions only for the purposes authorized by the Court's order.

## 13.    *Request for Temporary Orders Concerning Use of Property*

Counter-Petitioner requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders and issue any appropriate temporary injunctions respecting the temporary use of the parties' property as deemed necessary and equitable, including but not limited to the following:

Awarding Counter-Petitioner exclusive use and control of the 2013 BMW X3 and enjoining Counter-Respondent from entering, operating, or exercising control over it.

Awarding Counter-Petitioner the exclusive use of her personal belongings, clothing, and personal items to be retrieved by Counter-Petitioner by a date certain.

## 14. Request for Temporary Orders Regarding Child

Counter-Petitioner requests the Court, after notice and hearing, to dispense with the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions for the safety and welfare of the child of the marriage as deemed necessary and equitable, including but not limited to the following:

Appointing Counter-Petitioner and Counter-Respondent temporary joint managing conservators, and designating Counter-Petitioner as the conservator who has the exclusive right to designate the primary residence of the child.

Restricting the residence of the child to Collin County and counties contiguous to Collin County, Texas.

Ordering appropriate possession and access of the child considering, *inter alia,* the age of the child, the ability of the parents to provide care for the child, and the living arrangements of each parent.

Ordering that Counter-Respondent utilize a deep lung device on any vehicle in which he transports the child.

## 15. Request for Interim Attorney's Fees and Temporary Support

Counter-Petitioner requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders and issue any appropriate temporary injunctions regarding attorney's fees and

support as deemed necessary and equitable, including but not limited to the following:

Counter-Petitioner requests that Counter-Respondent be ordered to pay reasonable interim attorney's fees and expenses, including but not limited to fees for appraisals, accountants, actuaries, and so forth. Counter-Petitioner is not in control of sufficient community assets to pay attorney's fees and anticipated expenses.

Counter-Petitioner has insufficient income for support, and Counter-Petitioner requests the Court to order Counter-Respondent to make payments for the support of Counter-Petitioner until a final decree is signed.

## 16.  *Request for Temporary Orders for Discovery and Ancillary Relief*

Counter-Petitioner requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders for discovery and ancillary relief as deemed necessary and equitable, including but not limited to the following:

Ordering Counter-Respondent to provide a sworn inventory and appraisement of all the separate and community property owned or claimed by the parties and all debts and liabilities owed by the parties substantially in the form and detail prescribed by the *Texas Family Law Practice Manual* (3d ed.), form 7-1.

## 17.  *Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Counter-Petitioner to secure the services of the Law Office of Richard J. Corbitt, licensed attorney, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Counter-Respondent and in favor of Counter-Petitioner for the use and benefit of Counter-Petitioner's attorney and be ordered paid directly to Counter-Petitioner's attorney, who may enforce the judgment in the attorney's own name. Counter-Petitioner requests post-judgment interest as allowed by law.

## 18. Collin County Standing Order

The Collin County Standing Order regarding children, property, and conduct of the parties is attached hereto and incorporated herein for all purposes.

## 19. Prayer

Counter-Petitioner prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this counter-petition.

Counter-Petitioner prays that the Court, after notice and hearing, grant a temporary injunction enjoining Counter-Respondent, in conformity with the allegations of this counter-petition, from the acts set forth above while this case is pending.

Counter-Petitioner prays that, after notice and hearing, the requested temporary orders be granted.

Counter-Petitioner prays for attorney's fees, expenses, costs, and interest as requested above.

Counter-Petitioner prays for general relief.

Respectfully submitted,

LAW OFFICE OF RICHARD J. CORBITT, P.C.
6440 N. Central Expressway, Suite 402
Dallas, Texas 75206

By:_____
Richard J. Corbitt
Attorney for Counter-Petitioner
State Bar No. 04817000
Email: corbittlaw@gmail.com

**Certificate of Service**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure to Bradford Nace, Nace & Motley, LLP., 100 Crescent Court, 7th Floor, Dallas, Texas 75201, counsel of record for Petitioner on January 27, 2014.

_____
Richard J. Corbitt
Attorney for Counter-Petitioner

## COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND CONDUCT OF THE PARTIES

No party to this lawsuit has requested this order. Rather, this order is a standing order of the Collin County District Courts that applies in every divorce suit and every suit affecting the parent-child relationship filed in Collin County. The District Courts of Collin County have adopted this order because the parties and their children should be protected and their property preserved while the lawsuit is pending before the court. Therefore it is ORDERED:

1. **NO DISRUPTION OF CHILDREN.** Both parties are ORDERED to refrain from doing the following acts concerning any children who are subjects of this case:

1.1  Removing the children from the State of Texas, acting directly or in concert with others, without the written agreement of both parties or an order of this Court.

1.2  Disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court.

1.3  Hiding or secreting the children from the other parent or changing the children's current place of abode, without the written agreement of both parents or an order of this Court.

1.4  Disturbing the peace of the children.

1.5  Making disparaging remarks about each other or the other person's family members, to include but not be limited to the child's grandparents, aunts, uncles, or stepparents.

1.6  Discussing with the children, or with any other person in the presence of the children, any litigation related to the children or the other party.

1.7  If this is an original divorce action, allowing anyone with whom the party is romantically involved, to remain over night in the home while in possession of the child. Overnight is defined from 10:00 p.m. until 7:00 a.m.

2. **CONDUCT OF THE PARTIES DURING THE CASE.** Both parties are ORDERED to refrain from doing the following acts:

2.1  Using vulgar, profane, obscene, or indecent language, or a coarse or offensive manner to communicate with the other party, whether in person, by telephone, or in writing.

2.2  Threatening the other party in person, by telephone, or in writing to take unlawful action against any person.

2.3  Placing one or more telephone calls, at an unreasonable hour, in an offensive or

repetitious manner, without a legitimate purpose of communication, or anonymously.

2.4 Opening or diverting mail addressed to the other party.

3. PRESERVATION OF PROPERTY AND USE OF FUNDS DURING DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

3.1 Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both of the parties.

3.2 Misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any property of one or both of the parties.

3.3 Damaging or destroying the tangible property of one or both of the parties, including any document that represents or embodies anything of value.

3.4 Tampering with the tangible property of one or both of the parties, including any document that represents or embodies anything of value, and causing pecuniary loss to the other party.

3.5 Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of either party, whether personal property or real estate property, and whether separate or community, except as specifically authorized by this order.

3.6 Incurring any indebtedness, other than legal expense in connection with this suit, except as specifically authorized by this order.

3.7 Making withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by this order.

3.8 Spending any sum of cash in either party's possession or subject to either party's control for any purpose, except as specifically authorized by this order.

3.9 Withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan or employee savings plan or from any individual retirement account or Keogh account, except as specifically authorized by this order.

3.10 Signing or endorsing the other party's name or any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividends, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party.

3.11 Taking any action to terminate or limit credit or charge cards in the name of the other party.

3.12 Entering, operating, or exercising control over the motor vehicle in the possession of the other party.

3.13 Discontinuing or altering the withholding for federal income taxes on wages or salary while this suit is pending.

3.14 Terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual services, such as security, pest control, landscaping, or yard maintenance at the other party's residence or in any manner attempting to withdraw any deposits for service in connection with such

services.

3.15 Intercepting or recording the other party's electronic communications.

4. PERSONAL AND BUSINESS RECORDS IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

4.1     Concealing or destroying any family records, property records, financial records, business records or any records of income, debts, or other obligations.

4.2     Falsifying any writing or record relating to the property of either party.

4.3     "Records" include e-mail or other digital or electronic data, whether stored on a computer hard drive, diskette or other electronic storage device.

5. INSURANCE IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

5.1     Withdrawing or borrowing in any manner all or any part of the cash surrender value of life insurance policies on the life of either party, except as specifically authorized by this order.

5.2     Changing or in any manner altering the beneficiary designation on any life insurance on the life of either party or the parties' children.

5.3     Canceling, altering, or in any manner affecting any casualty, automobile, or health insurance policies insuring the parties' property of persons including the parties' minor children.

6. SPECIFIC AUTHORIZATIONS IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are specifically authorized to do the following:

6.1     To engage in acts reasonably and necessary to the conduct of that party's usual business and occupation.

6.2     To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit.

6.3     To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care.

6.4     To make withdrawals from accounts in financial institutions only for the purposes authorized by this order.

7. SERVICE AND APPLICATION OF THIS ORDER.

7.1     The Petitioner shall attach a copy of this order to the original petition and to each copy of the petition. At the time the petition is filed, if the Petitioner has failed to attach a copy of this order to the petition and any copy of the petition, the Clerk shall ensure that a copy of this order is attached to the petition and every copy of the petition presented.

7.2     This order is effective upon the filing of the original petition and shall remain in full force and effect as a temporary restraining order for fourteen days after the date of the filing of the original petition. If no party contests this order by presenting evidence at a hearing on or before fourteen days after the date of the filing of the original petition, this order shall continue in full force and effect as a temporary injunction until further order of this court. This entire

order will terminate and will no longer be effective when the court signs a final order or the case is dismissed.

8.  EFFECT OF OTHER COURT ORDERS. If any part of this order is different from any part of a protective order that has already been entered or is later entered, the protective order provisions prevail. Any part of this order not changed by some later order remains in full force and effect until the court signs a final decree.

9.  PARTIES ENCOURAGED TO MEDIATE. The parties are encouraged to settle their disputes amicably without court intervention. The parties are encouraged to use alternative dispute resolution methods, such as mediation, to resolve the conflicts that may arise in this lawsuit.

THIS COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND CONDUCT OF THE PARTIES SHALL BECOME EFFECTIVE ON OCTOBER 14, 2013.

JUDGE ANGELA TUCKER
199th Judicial District Court

JUDGE SCOTT BECKER
219th Judicial District Court

JUDGE JOHN ROACH, JR.
296th Judicial District Court

JUDGE RAY WHEELESS
366th Judicial District Court

JUDGE BENJAMIN SMITH
380th Judicial District Court

JUDGE MARK RUSCH
401st Judicial District Court

JUDGE CHRIS OLDNER
416th Judicial District Court

JUDGE CYNTHIA WHEELESS
417th Judicial District Court

JUDGE JILL WILLIS
429th Judicial District Court

# ROGER FARAHMAND'S
# RECORD TAB 5

Filed: 1/27/2014 5:32:48 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Lisa Sharpe Deputy



100 CRESCENT COURT, 7ᵗʰ FLOOR
DALLAS, TEXAS 75201

PHONE (214) 459-8289
FAX (214) 242-4333

www.nacemotley.com

# NACE ℮ MOTLEY, L.L.P.
## ATTORNEYS AT LAW

BRADFORD NACE
KRISTI MOTLEY

January 27, 2014

*VIA EFILE*
Richard J. Corbitt, P.C.
Attorney at Law
6440 N. Central Expressway
Suite 402
Dallas, Texas 75206

RE:     ITMOTMO Farahmand;
        Cause No. 401-56531-2013.

Dear Mr. Corbitt:

Pursuant to our conversations held today, it is my understanding that the following agreements have been reached in the above-styled and numbered cause:

1.    The January 28, 2014 temporary order hearing will be reset to an agreeable date in either February or March or first available date agreeable to all parties;

2.    Roger Farahmand and Maryam Farahmand will each sign a HIPAA release, for the period January 1, 2009 through present, as set forth in the TFLPM;

3.    The Temporary Ex Parte Order (extension) shall continue, except modified to remove Hannah's House and to permit for Roger Farahmand's nanny to monitor/supervise as follows:

    a.    Maryam Farahmand to have a minimum of three (3) days each calendar week, and up to two (2) hours each period of possession;

    b.    That such supervision shall be subject to Hannah's House Rules, attached hereto and incorporated in by reference;

4.    Maryam Farahmand shall surrender the following documents/personalty, if in her possession, to Richard Corbitt at his office for inspection, copying and turnover to the undersigned counsel no later than 5:00P.M., January 31ˢᵗ, 2014:

    a.    Blue Binder(s) (Cedars Hospital binders);

    b.    All business/client files pertaining to Roger Farahmand;

    c.    Blue Safe and its contents (bank documents, tax information, etc.);

    d.    Humidor and its contents (currency signed by Roger Farahmand's grandmother);

    e.    Pictures belonging to Roger Farahmand; and

    f.    Rugs removed from the Knight residence.

5.    The undersigned shall make arrangements with Richard Corbitt for the surrender of the following personalty, if in Roger Farahmand's possession, for turnover to Maryam Farahmand no later than 5:00P.M., January 31ˢᵗ, 2014:

BN/ Correspondence

a. Clothing and personal effects, including but not limited to the wedding jewelry and gold gifted by her parents to her.

If the above and foregoing accurately reflects the temporary agreement of the parties, then please sign below for filing/E-filing with the Court. Following, I will prepare an Order outlining the above.

Very truly yours,

Brad Nace    1/27/14   5:18pm

Richard Corbitt

CC:    Roger Farahmand

# ROGER FARAHMAND'S
# RECORD TAB 6

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

TRIAL COURT CAUSE NO. 401-56531-2013

IN THE MATTER OF            )    IN THE DISTRICT COURT
THE MARRIAGE OF             )
ROGER ARASH FARAHMAND       )
AND                         )    COLLIN COUNTY, TEXAS
MARYAM FARAHMAND            )
                            )
AND IN THE INTEREST OF      )
███████ ████ ████████       )    401st JUDICIAL DISTRICT

---

**HEARING**

---

On the 10th day of March, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Mark J. Rusch, Judge Presiding, held in McKinney, Collin County, Texas.

Proceedings reported by computerized machine shorthand.

Kimberly Tinsley, CSR #3611
(972) 548-4247

**APPEARANCES**

Bradford Winston Nace       SBOT NO. 24007726
Attorney at Law
100 Crescent Court
7th Floor
Dallas, TX   75201
Telephone:   (214)459-8289

                    Attorney for Petitioner Roger Farahmand


Richard J. Corbitt       SBOT NO. 04817000
Attorney At Law
6440 N. Central Expwy.
Suite 402
Dallas, TX   75208
Telephone:   (214)744-1234

                    Attorney for Respondent Maryam Farahmand

VOLUME 1

**HEARING**

*March 10, 2014*                                    PAGE    VOL

Proceedings begin  ...........................5      1

*Witness Direct    Cross    Voir Dire*
ASLAN GHAFFARI
     By Mr. Nace         11                                  1
     By Mr. Corbitt                          13             1
     By Mr. Nace         17                                  1
     By Mr. Corbitt               20                        1
     By Mr. Nace         21                                  1

FARID RASTEGAR
     By Mr. Nace         23                                  1
     By Mr. Corbitt               26                        1
     By Mr. Nace         27                                  1

ROGER FARAHMAND
     By Mr. Nace         29                                  1
     By Mr. Corbitt               38                        1

MICHAEL SCOTT WOODS
     By the Court        55                                  1

ROBERT GORDON
     By the Court        68                                  1

Court's Ruling ...............................75     1

Adjourned ...................................104    1

Reporter's Certificate ......................105    1

## ALPHABETICAL WITNESS INDEX

| | DIRECT | CROSS | VOIR DIRE | VOL |
|---|---|---|---|---|
| Farahmand, Roger | 29 | 38 | | 1 |
| Ghaffari, Aslan | 11,17 | 20 | 13 | 1 |
| Ghaffari, Aslan | 21 | | | 1 |
| Gordon, Robert | 68 | | | 1 |
| Rastegar, Farid | 23,27 | 26 | | 1 |
| Woods, Michael Scott | 55 | | | 1 |

## EXHIBITS OFFERED BY THE PETITIONER

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 1 | Marriage License dated 12/12/2009 | 18 | | 1 |
| 2 | Video of 12/12/2009 on DVD | 25 | 25 | 1 |
| 3 | Supporting Affidavit of Roger Farahmand | 30 | | 1 |
| 4 | Roger Farahmand's Summary of Requests | 31 | 31 | 1 |

**P R O C E E D I N G S**

*(Open court)*

THE COURT: Let's go on the record in Cause Number 401-56531-2013 which is styled Farahmand versus Farahmand. We're set for a temporary orders hearing today. Petitioner ready?

MR. NACE: Yes, Your Honor.

THE COURT: Respondent ready?

MR. CORBITT: Respondent/Counter-Petitioner is ready, Your Honor.

THE COURT: First thing I need to do is swear in my translator. Would you tell me your name and spell last name for the court reporter, please.

INTERPRETER: My first name is Mansour M-A-N-S-O-U-R, last name is Khakpour K-H-A-K-P-O-U-R.

THE COURT: You've got a license, I assume.

INTERPRETER: Actually, I'm representing a company which does have a license for this.

THE COURT: Okay. Raise your right hand for me.

*(Mansour Khakpour sworn as interpreter)*

MR. CORBITT: Please the Court, are we gonna go from here or at counsel table?

THE COURT: I don't mind doing it up here. But if you would rather sit down, we'll do it at counsel

table.

Let's have everybody who expects to testify in this proceeding please stand and raise your right hand for me. If you think you might be testifying, stand up.

MR. CORBITT: We have four. At least I'm gonna swear them in.

(The witnesses were sworn)

THE COURT: Put your hands down. Mr. Farahmand, Mrs. Farahmand, come up and have a seat with counsel. If you'll have a seat next to who you're translating for.

Anyone invoke the Rule?

MR. CORBITT: We do.

MR. NACE: We would.

THE COURT: Those of you in my gallery who's been sworn in, it means two things. You will remain outside this courtroom while this hearing is being conducted. Two, you do not discuss this case, your testimony or what transpires in this courtroom unless you're in here as a witness. There is an exception to that. If we should take a break you're allowed to talk to either Mr. Nace or Mr. Corbitt, individually or together. But if you're talking to on or the other or both, you need to be outside the hearing of anyone else connected with this case so they can't overhear your

conversations. If you guys will have a seat outside, I'll call you when and if I need you.

MR. CORBITT: Please the Court, may I request one thing of the Court's consideration? That is that we allow the experts, Dr. Scott Woods, the psychiatrist, as well as Dr. Robert Gordon, to be present during the testimony.

THE COURT: For what?

MR. CORBITT: Well, first of all, I would think that that would be a necessity in the situation. And number two, it's my understanding that experts can be in the same room when one testifies to hear the other's testimony.

MR. NACE: They're not court appointed, Your Honor; they're retained.

THE COURT: I don't need them for a temporary hearing.

You need your translator up here next to your client, I would assume. Don't you? Or, is he coming for your client's mother?

MR. NACE: He's on our side, Your Honor.

THE COURT: Who is he here for the benefit of?

MR. NACE: He's here for the benefit of translating the marital issues --

THE COURT: Who?

MR. NACE: Aslan Ghaffari is the individual I subpoenaed. The translator is here to translate basically our allegations of bigamy, that Maryam Farahmand is still married to an individual she married and lied about in her deposition this last Thursday. So that's who we have here today, Your Honor.

MR. CORBITT: May I respond?

THE COURT: No because nobody's answering my question. Whose benefit, what relation to someone in this room, is this translator here? Mom? Dad? Grandparents? Who?

MR. NACE: Dad.

THE COURT: Okay. Your dad hasn't -- your client hasn't needed a translator in my courtroom before.

MR. NACE: My client does not need a translator, that's correct; just a witness we have here under subpoena.

THE COURT: Okay. Thank you. Now, I got it.

You're alleging that Mrs. Farahmand has committed bigamy?

MR. NACE: Yes, Your Honor.

THE COURT: All right. Mrs. Farahmand, listen very carefully to me.

Bigamy is a crime in this state. It is a felony in this state. With respect to that, you would have an absolute right under the Constitution of the United States and under the Constitution and laws of the State of Texas to remain silent and not take -- and not answer any question with respect to that. If you say anything in this courtroom with respect to this bigamy issue, it can and will be held against you.

You're entitled to be represented by an attorney, and you are. And your attorney also is an experienced criminal defense lawyer. So I know he knows these things, but I need to make sure you know these things. If you have any questions about any of those issues, you make sure you talk to your lawyer about it because you don't get to pick and choose the questions you will answer with respect to that issue. All right.

Is there anybody in my courtroom who was sworn in just a second ago who hasn't left?

MR. NACE: Judge, the only person I asked to except is Mr. Ghaffari. He's 97 years of age, and I'm going to call him as our first witness.

THE COURT: All right. I can deal with that one.

For the record, we've had essentially the lawyers tell me their positions prior to going on the

record, so I know what those are.

Under our local rules each sides got 20 minutes aside. I'm going to give them an extra five because I'm using a translator for at least one of these witnesses. So everybody's got 25 minutes.

Mr. Nace, who's going to be your first witness?

MR. NACE: Mr. Ghaffari.

THE COURT: Mr. Ghaffari, if you would step up here for me, please.

MR. NACE: And, Judge, may I keep my cell phone out so I can see how much time I have, to keep track of my time?

THE COURT: You can. But, as nicely as I can say this, my timer beats your cell phone.

MR. NACE: I understand.

THE COURT: Ralph, can you get a seat for our translator?

BAILIFF: Yes, sir.

THE COURT: I need you guys to come up and have a seat in that black chair over there for me.

Now, it's more important that I hear you than I hear Mr. Ghaffari, since I assume he's going to be speaking in Farsi. That microphone that's there on the table, you can pick that up and pull that closer to you.

*INTERPRETER:* Yes, sir.

*THE COURT:* I just need you to talk into it so that we can all hear you. Mr. Nace.

*MR. NACE:* Ready when you are, Your Honor. Ready? Thank you.

**ASLAN GHAFFARI,**

having been first duly sworn, testified through the duly sworn interpreter as follows:

**DIRECT EXAMINATION**

**BY MR. NACE:**

Q. State your name for the record, sir.

A. Aslan Ghaffari.

Q. And you are here pursuant to a subpoena that I issued for your appearance today, correct?

A. Yes.

Q. With regard to your appearance today, question, have you ever performed a marriage between a man and a woman in the State of Texas?

A. Yes.

Q. And with regard to anybody in this particular courtroom, do you recognize any of the persons in this courtroom as you sit here today?

A. Yes.

Q. And who do you recognize today as you sit here?

A. The lady sitting on that side and also

Mr. Arash.

Q. And if you could, the lady to my left I believe who you have identified, if you could identify an article of clothing, for the Court and for the record, that she's wearing?

A. With the black jacket.

MR. NACE: Your Honor, I'd like the record to reflect that Mr. Ghaffari has described and identified Mrs. Farahmand in this matter.

THE COURT: The record will so reflect.

Q. *(By Mr. Nace)* Cutting right through it, sir. Do you recall performing a wedding with Ms. Farahmand, previously Parviz, on the 12th day of December, 2009?

A. Yes, but I don't remember the exact name.

Q. Did that marriage take place in a public place?

A. Yes.

Q. Do you recall approximately how many people were present in attendance on the date you performed the wedding with Ms. Parviz?

A. Yes.

Q. Was there any question in your mind whether it was a wedding or something else?

A. I think it was a wedding.

Q. In your experience -- first, how old are you today?

A.    97.

Q.    And in your 97 years of life, approximately how many years of marriage -- how many marriages have you performed?

A.    Approximately eight to ten people.

Q.    And are you qualified to perform marriages in the State of Texas?

MR. CORBITT:  Objection, speculation on the part of this witness until the witness has proven that he has so.  May I take the witness on voir dire?

THE COURT:  Sure.

MR. CORBITT:  Please the Court.

**VOIR DIRE EXAMINATION**

**BY MR. CORBITT:**

Q.    Mr. Ghaffari, I hope I pronounced your name correctly.  Are you a licensed ordained Christian minister?

A.    No, I don't have no license.

Q.    Are you a priest?

A.    No.

Q.    Are you a Jewish rabbi?

MR. CORBITT:  Am I talking too loud, Judge? I'm sorry.

THE COURT:  I can hear you.

Q.    (By Mr. Corbitt) Mr. Ghaffari, are you a Jewish

rabbi?

A.   No.

Q.   Are you a justice of the Supreme Court?

A.   No.

Q.   Are you a judge of the Court of Criminal Appeals?

A.   No.

Q.   Are you a justice of the Court of Appeals, of a district, or a county, or a probate court?

A.   No.

Q.   Are you or have you been a judge of a domestic relations or juvenile court?

A.   No.

Q.   Are you a retired justice or judge of any of those courts that I asked just a minute ago?

A.   No.

Q.   Mr. Ghaffari, you said I think it was a wedding, did you not, sir?

A.   I'm sure it was a wedding.

Q.   Excuse me.  Was that his testimony?  I'm sorry. I feel rude about this.  Was that his testimony just a minute ago, to Ms. Kim, I think it was a wedding?

MR. NACE:  Object to --

THE COURT:  He's asking did he say the words "I think it was a wedding."

A.    I saw it was a wedding.

MR. CORBITT:  Thought, is that what I just heard Mr. Translator?  Thought?

INTERPRETER:  No.

MR. CORBITT:  What was the word?  Say what he just said, please.  I'm sorry.  My fault.

THE COURT:  He didn't understand what you said.  Can you repeat?

INTERPRETER:  I saw a wedding.

MR. CORBITT:  Okay.  Did he answer my question?  I think it was a wedding, did he use that exact terminology?

MR. NACE:  Object to the compound question.

THE COURT:  Sustained.  Respectfully, that's a weight not admissibility thing.

MR. CORBITT:  Please the Court, with regard to purpose of voir dire, we'll pass the witness at this particular juncture in time.  But we will make an objection under Family Code 2.202 that he is not qualified to conduct a wedding in the State of Texas.

THE COURT:  Mr. Ghaffari --

MR. CORBITT:  And I will also state that the Court can take judicial knowledge of the fact that Mr. Farahmand was the Petitioner in this cause, and he files the petition on December 30th, 2013, at 2:02 p.m.

and he specifically stated that the parties were married as husband and wife on or about July 28th, 2012.

THE COURT: I'll be happy to take judicial notice of the pleadings in this matter.

Mr. Ghaffari, by what authority did you perform a wedding?

THE WITNESS: In Islamic law there is no need to have any permission.

THE COURT: Well, are you an Imam?

THE WITNESS: No.

THE COURT: Are you telling me that anyone in Islamic law is authorized to perform a wedding?

THE WITNESS: That's my thought and understanding.

THE COURT: Okay. And just so that I understand, I know that there are several subdivisions of Islam, Sunni, for example, Shi'ite. What subdivision are you?

THE WITNESS: Shi'ite.

THE COURT: Thank you. So the world will know, I'm not an expert under Islamic law, but at least I've got his testimony that he is authorized to do that. That would, at least at this point in time, cover him as far as 2.02 is concerned. Mr. Nace.

MR. NACE: Thank you, Your Honor.

DIRECT EXAMINATION (CONTINUED)

BY MR. NACE:

Q.   Who had contacted you, if you recall, originally to perform this wedding?

A.   I do not remember it very well, but definitely could be one of their family members or father.

MR. NACE:  May I approach the witness?

THE COURT:  You may.

Q.   (By Mr. Nace) I'm going to hand you what we'll mark as Petitioner's 1.  Can you identify this document for the record?

INTERPRETER:  He said, "This is my signature."

Q.   So that would be a yes, you can identify this document for the record?

A.   I don't remember very well, but this is my signature and this is my handwriting.

Q.   And is this a true and correct copy?

A.   As you heard, I don't remember it very well. But certainly this is my handwriting, and this is everything that I wrote.

Q.   On that particular document it says at the top Rights of Matrimony, correct?

MR. CORBITT:  Objection, Your Honor, speaks for itself.  It's not introduced into evidence.

THE COURT: Sustained.

MR. NACE: We'll offer.

THE COURT: Does it have a number on it?

MR. NACE: Yes, Your Honor, Petitioner's 1.

MR. CORBITT: Predicate has not been issued.

THE COURT: Let me see it, please.

MR. NACE: Yes, Your Honor.

(Document present to the Court)

THE COURT: Mr. Nace, I have what appears to be a Xerox copy. I don't see a clerk's stamp on here anywhere.

MR. NACE: Your Honor, we have the original with another witness. That is a copy.

THE COURT: Why isn't the original of a marriage license on file with my clerk?

MR. NACE: From what I understand, to file it that was their responsibility through her family. But the original does exist.

THE COURT: Where is the original?

MR. NACE: My client can better answer that judge through another witness. Because of things missing in this case, our chain of custody, we want to make sure we're keeping things intact.

THE COURT: His objection is sustained at

this point in time.

MR. NACE: May I re-approach the witness?

THE COURT: Sure.

Q. (By Mr. Nace) Sir, re-handing you this particular exhibit, when you perform these weddings before, do you typically sign off as a witness having performed a wedding ceremony?

MR. CORBITT: Please the Court, objection as to any relevancy regarding what he's done in the past. We're only worried about --

THE COURT: Overruled.

INTERPRETER: Can you repeat the question?

Q. (By Mr. Nace) Yes. With regard to the eight to ten wedding ceremonies Mr. Ghaffari has performed in his years, does he typically sign and certify that the parties were united in marriage?

A. Usually I write the name of the couple, the people who are getting married, in the marriage portion and all the information in a piece of paper and they sign it.

Q. And there's no question in Mr. Ghaffari's mind that this piece of paper that I offered as Exhibit 1 is his signature and nobody else's?

A. This is my signature for sure.

MR. NACE: Pass the witness.

MR. CORBITT: Please the Court. May have I approach?

THE COURT: Sure.

MR. CORBITT: Judge, this is using my time?

THE COURT: Yes, sir. Cross-examination, direct examination, all that stuff is what you've got.

**CROSS-EXAMINATION**

**BY MR. CORBITT:**

Q. Mr. Ghaffari, I'm sorry, sir. That list here, does that say Ph.D in C-O-R-O-M-I?

INTERPRETER: C-O-N?

MR. CORBITT: Whatever it says, sir. I didn't write it.

INTERPRETER: That says economy. That's an E you're missing.

A. Ph.D in Economy.

Q. Okay. And there's no filing on the bottom of it, is there?

A. No.

Q. These weddings that you performed, these eight to ten in ten years. How many in the United States of America?

A. Some of them were here, yes.

MR. CORBITT: Pass the witness.

MR. NACE: Briefly, Judge.

## REDIRECT EXAMINATION

BY MR. NACE:

Q.   On what date did you perform the wedding ceremony of Maryam and Amir?

A.   I don't remember.

Q.   With regard to --

A.   It is written right here.

Q.   That would be December 12th, 2009, correct?

A.   Yeah, it has to be correct.

Q.   Would you ever put a different date down than the date you performed a wedding ceremony?  Would you ever put a different date down other than the date you performed a wedding ceremony?

MR. CORBITT:  Objection, speculation on the part of this witness.

THE COURT:  Sustained.  Well, respectfully, I don't care.

MR. NACE:  Pass the witness.

MR. CORBITT:  Pass the witness.

THE COURT:  This witness excused or reserved, Mr. Nace?

MR. NACE:  Excused, Your Honor.

MR. CORBITT:  Yes, sir.

THE COURT:  Mr. Ghaffari, I have a couple of questions.  They may have some others.  Did you know

the man that was participating in the wedding that we've been talking about?

THE WITNESS: No, I didn't know him.

THE COURT: No relation to you?

THE WITNESS: No.

THE COURT: Then nevermind. You can step down. He's free to go. He can remain if he wants, but if he wishes to leave, he can.

Will we be needing this translator for anything else, Mr. Nace?

MR. NACE: Yes, Your Honor, for one other witness. I'll just step in the hallway and get the next witness.

THE COURT: For the record, Mr. Nace, who is your next witness?

MR. NACE: Yes, Your Honor. This is Farid Rastegar.

THE COURT: Sir, come up, come around and have a seat in that black chair over there for me. Please speak directly into the microphone on your right. And if you would please spell both your first and your last name for my court reporter, I'd appreciate it.

THE WITNESS: I need a translator.

THE COURT: Okay. Mr. Nace, I'll need your translator. Come on back up.

The first thing I need him to do is spell his first and last name for my court reporter, so if you would ask him to do that I would appreciate it.

INTERPRETER: His name in his birth certificate is Gholam Raza, which spells G-H-O-L-A-M, space, R-A-Z-A. Last name is Rastegar, R-A-S-T-E-G-A-R. But he's been known by the name of Farid, F-A-R-I-D.

THE COURT: Is that a nickname?

INTERPRETER: Yes.

THE COURT: Mr. Nace.

MR. NACE: Thank you, Your Honor.

**FARID RASTEGAR,**

having been first duly sworn, testified through the duly sworn interpreter as follows:

**DIRECT EXAMINATION**

BY MR. NACE:

Q. Please state your full name for the record.

A. My name is Gholam Raza Rastegar, but my nickname is Farid.

Q. And you're here pursuant to a subpoena I issued for your appearance today, correct?

A. Yes.

Q. And I also subpoenaed you to bring a video with you today, as well, correct?

A. Yes.

Q.   And you're a videographer?

A.   Yes.

Q.   With regard to the video you brought today, was that video made at or near the time of the events or conditions recorded?

A.   I taped this during that party on that specific date.

Q.   So would your answer be yes, then, that the video made was at or near the time of the events recorded?

A.   Yes.

Q.   Was it in the regular course to make and keep such records in the course of your business?  When I say records, video.

        INTERPRETER:  Can you explain what you mean?

Q.   Was it in the regular course of your business to make such videos?

A.   Yes.

Q.   Was it the regular course of your business to keep such videos?

A.   Always.

Q.   And the video made was made by a person with knowledge of the events recorded?

A.   Yes.

Q. And you have that video in front of you today?

A. Yes.

Q. Now, you're a videographer by trade, correct?

A. Yes.

Q. And with regard to the video made, is it of events that occurred on December 12th, 2009?

A. I'm very positive about 2009, but the exact date of it had been written in that video.

Q. So would that video be a fair and accurate depiction of the recordings made as of December 12th, 2009.

A. Yes.

MR. NACE: We'll offer the video as an exhibit, Your Honor.

THE COURT: What number is on this exhibit?

MR. NACE: This will be Petitioner's 2. May I approach?

THE COURT: Yes. Mr. Corbitt.

MR. CORBITT: No objection to the entry of the video.

THE COURT: It's admitted.

MR. NACE: Thank you, Judge. Is there any way we can put this on a video?

THE COURT: Not now, not unless you want it running while your time is running. I'll look at it.

MR. NACE: We'll defer to the Court's wisdom. May I tender this to His Honor?

THE COURT: Sure.

MR. NACE: And it is still in my right hand as I am approaching His Honor, but I did not put an exhibit sticker on that. I would pass this witness, Judge.

**CROSS-EXAMINATION**

BY MR. CORBITT:

Q. Sir, I apologize. I cannot pronounce your name. That's my fault. I'm not being rude to you.

Now, let me ask you something. You said this is a tape of a party, a party. Didn't you say that?

A. I have only one reason why I mention party. In this tape in the very, very last section of it, the father of --

MR. NACE: Judge, I'm sorry. I would object to the nonresponsiveness of the witness.

THE COURT: Sustained. He's not answering the question.

MR. CORBITT: May I ask a question, another one?

THE COURT: Sure.

Q. (By Mr. Corbitt) Was it told to you that you were taping an engagement party, yes or no?

A.   No.   I typed it "wedding" because it was a wedding -- then it was a wedding.

Q.   And no one said it was an engagement party?

A.   No.

Q.   Do you know -- excuse me.   Sir, do you know my client?

A.   Yes.

Q.   Do you know her mother?

A.   Yes.

Q.   Did you tell her mother that it was an engagement party, you were taping an engagement party?

A.   Did I have to tell her?

Q.   Did you?   Did you tell her?   Did you tell my client's mom, mother, that it was an engagement party?

A.   No.

MR. CORBITT:  Okay.   Pass the witness.

MR. NACE:  Very briefly, Judge.

**REDIRECT EXAMINATION**

BY MR. NACE:

Q.   Sir, in the last week, other than myself, has any other individual contacted you to ask you about the events of December of 2009?

A.   Yesterday, the mother of the bride.

Q.   Yesterday the mother of the bride contacted you?

A.   Yes.

Q.   Did she speak with you?

A.   Around two, three minutes we talked.

Q.   And she contacted you, correct?

A.   Well, actually, it was a person in one of the society they go, they were talking to him and then they passed the phone to the mother of the bride.

Q.   And when did this happen?

A.   I believe -- I think it was yesterday -- no, it was yesterday.

Q.   And this was Ms. Parviz or Maryam's side of the family, right?

A.   Yes, it was the mother of the bride.

MR. NACE:  I'll pass this witness.

MR. CORBITT:  Pass the witness.

THE COURT:  Is he excused or reserved, Mr. Nace?

MR. NACE:  I'll reserve him for His Honor.

THE COURT:  I'm sorry?

MR. NACE:  I'll reserve him for His Honor, if His Honor has questions.

THE COURT:  No, not for a temporary orders hearing, I don't.  I just need to know do I need to keep him here or can he go on about his day?

MR. NACE:  He can go on about his day, Your Honor.

THE COURT: Sir, you can step down. You're free to go.

MR. NACE: Judge, just before he leaves. I believe I offered the video and it was admitted.

THE COURT: If I haven't said it, Petitioner's 2 is admitted.

MR. NACE: We would offer it just to be sure.

THE COURT: I've admitted it. It's in.

MR. NACE: We would call Mr. Farahmand.

THE COURT: Mr. Farahmand, let these guys clear out. And if you would come up, have a seat in the dark black chair. Speak into that microphone on your right for me. You've already been sworn, Mr. Farahmand. You can put your hand down.

Mr. Nace, by my clock you've got eight minutes and 51 seconds.

MR. NACE: May I approach?

THE COURT: Yep.

**ROGER FARAHMAND,**

having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. NACE:

Q. Sir, state your name.

A. My name is Roger Arash Farahmand.

Q. You are the Petitioner in this case; is that correct?

A. Yes, sir.

Q. I hand you what's been marked as Exhibit Number 3, Petitioner's. Can you identify it?

A. Yes. This is the affidavit that we filed with the Court on December 30th around 2:00 p.m.

Q. Is that a true and correct copy?

A. Yes, it is.

MR. NACE: Judge, we'll offer 3 as a summary of my client's testimony.

THE COURT: Any objection?

MR. CORBITT: None, as a 1006 only, Judge.

THE COURT: As a summary, yes, sir.

MR. CORBITT: Okay. Thank you.

MR. NACE: May I tender?

THE COURT: Sure.

(Document presented to the Court)

Q. (By Mr. Nace) Also, with regard to -- first, you're the Petitioner in this case. You understand why we're here today, correct?

A. Yes.

Q. And --

MR. NACE: May I also approach my client with Petitioner's 4?

Q. You've reviewed with me a summary of your requests today, correct?

A. Yes.

Q. Is that also a fair and accurate depiction, a true and correct copy of what it purports to be?

A. Yes.

MR. NACE: We would offer 4 as a summary.

MR. CORBITT: Requested rulings, no objection.

THE COURT: It's admitted.

MR. NACE: May I tender?

(Document presented to the Court)

Q. (By Mr. Nace) What is it you want and why do you want it?

A. I want my --

MR. CORBITT: Instrument speaks for itself.

THE COURT: Overruled.

A. I want my child to be in a safe and loving environment that is stable. I need to have possession of my child because at this time his mother has shown suicidal behavior. She's been in and out of mental institutions. In addition to that, she's tried to commit suicide on numerous cases.

She's been very violent and unpredictable around ██ ██. I've kept ██ ██ with myself since

December 18th upon her admission to the C Center when she took 30 hydrocodones and we had to take her to the ER, more specifically, I took her to the ER. She's been displaying deteriorating behavior over the course of time, and it's just been unsafe.

I've wanted her to go out and get help. Unfortunately, her and her family instead of getting help have gone out on a smear campaign and just trying to fight this rather than working together and getting her the help and stair-stepping her into seeing the baby.

Q. With regard to her parents, meaning Maryam's parents, do you have concerns with regard to their supervision of your seven-month old child?

A. Yes. I -- after January 4th and because of their continued erratic behavior, I did some research. Prior to my marriage they had fifty 911 calls.

MR. CORBITT: Objection. Objection. Objection. Hearsay.

THE COURT: Sustained.

A. Uh --

THE COURT: No. Wait for the question.

Q. (By Mr. Nace) With regard to the medical records we subpoenaed last time we were in court, when Ms. Farahmand had George Parker as counsel, have you reviewed those records?

A.   Yes.

Q.   And do those records, I guess 372 pages worth, those encompass December 18 through December 23rd, 2013, correct?

A.   Yes.   And while she was taken to the hospital --

THE COURT:   Just wait for a question.

Q.   (By Mr. Nace) You heard my deposition of her last Thursday, correct?

A.   It was on Tuesday.   But, yes.

Q.   Tuesday.   Was there any indication in mother of the child's testimony that she was compliant with the discharge summaries set forth in those records?

A.   No.

Q.   Do you have concerns about Maryam's testimony as being less than candid?

A.   She hasn't told the truth.   I counted at least 116 lies where I could document with facts and certified proof that she lied.

Q.   And she made allegations, after she was aware you filed for divorce, of family violence, correct?

A.   Yes.

Q.   You heard her testify that she claimed you shoved her, correct?

A.   Well, at the deposition that's what she claimed.

Q.   And you have a recording of that interaction,

don't you?

A. I have a recording of that interaction.

Q. Did you shove her?

A. No.

Q. With regard to the recording, let's take a snapshot of time. What date did you record Ms. Farahmand?

A. Which recording? In the one --

Q. I believe several where she was erratic. The one that stands out most in your mind.

A. I believe it was on December 11.

Q. And do you have that recording today?

A. I have it with me right now.

Q. If you could, play that recording for the court.

A. Sure.

(Audio being played off witness' phone)

UNIDENTIFIED 1: [Female voice]...abide by my rules. I don't want him in the kitchen fucking around. You know, grease everywhere. I want to have enough food. If you want -- I'm the woman in the house. God dammit, I'll (incoherent), (screaming) I hate you. (screaming)

UNIDENTIFIED 2: [Male voice] Okay, okay, okay.

(Inaudible/incoherent words and sounds)

*UNIDENTIFIED 1:* [Female voice] Get the fuck out of my house.

MR. NACE: Okay. Stop there.

THE COURT: You realize that most of that was inaudible, right?

MR. NACE: I understand that, Your Honor.

Q. (By Mr. Nace) With the what I'll call explosion in that audio cassette, have you heard this kind of outburst before with Maryam?

A. It's on a daily basis since December. When we first started our --

MR. CORBITT: Objection, non-responsive.

THE COURT: Sustained.

Q. (By Mr. Nace) Do you have any concerns that she'll act like that in your son's presence?

A. My son was present. I was holding the baby.

Q. And with regard to give the Court a brief idea of what had happened in December precipitating -- well, there were two hospitalizations in December, correct?

A. Yes.

Q. One was between December 18, 2013, and December 23rd when she was discharged, correct?

A. Correct.

Q. And then another one where she's picked up by the police on December 30th and is released on the 1st,

correct?

A.   Yes.

          MR. CORBITT:  Object to counsel testifying.

          THE COURT:  Overruled.

Q.   (By Mr. Nace) On the 1st, that's when she came to your home after she was discharged?

A.   Yes.

Q.   She testified about this in her deposition, right?

A.   Yes.

Q.   And there she claims after she entered the house that you purportedly touched her, correct?

A.   Yes.

Q.   But you heard her deposition, right?

A.   Yes.

Q.   Any of that accurate?

A.   No.

Q.   With regard to what you're asking for today -- oh, first.  Did Maryam testify last Tuesday that she had never married the individual in the -- on December 12th, 2009?

A.   She testified that she's never been married. That was an engagement party, not a wedding, and that she's never been divorced and she has never had an annulment with this individual.  They do have an address

in California together.

Q.   What are you asking for today going forward?

A.   Your Honor, I would like the Court to protect my child, our child, and appoint an amicus attorney for somebody who's unbiased to evaluate all the credible evidence, to separate the fact from the fiction, and to be able to distinguish between the smear campaign and the hired people who object to facts, to protect ██ ██'s best interest.  At this time I would like to continue the supervised visitation.  I'll share the costs until this ad litem attorney can do a thorough investigation or a social study is completed.

I would like Maryam to get help and her parents to get help.  The Frisco police has recommended them --

MR. CORBITT:  Objection, Your Honor.

A.   -- for family counseling.

THE COURT:  I don't need to know what the Frisco police are saying.

A.   And due to the fact that --

THE COURT:  Your objection is sustained.

A.   And due to the fact the mother and the father have continuously gone on this smear campaign and talked to different people in the community by spreading untruths, I'm afraid.  I'm on eggshells.

MR. CORBITT: Excuse me. This is outside the scope of the question.

THE COURT: Sustained.

MR. CORBITT: Thank you. Request it be stricken.

THE COURT: Oh, I can ignore it.

Q. (By Mr. Nace) Back in December did you find pills in your home?

A. Yes.

Q. Approximately how many pills did you locate in your home?

A. Probably 50 Adderall pills and five or six downers, I guess, is what I'm told.

(Beeper sounding)

THE COURT: You're out of time, Mr. Nace.

You've got 12 minutes and nine seconds, Mr. Corbitt.

**CROSS-EXAMINATION**

**BY MR. CORBITT:**

Q. Mr. Farahmand, you're a lawyer, right?

A. Yes.

Q. You filed the petition for divorce on December 30th, 2013, at 2:02 p.m., did you not?

A. My attorney did.

Q. Well, you had it filed, correct?

A.   Correct.

Q.   And you are the one that stated specifically that you guys were married on or about July 28th, 2012?

A.   On December 30th --

Q.   Excuse me.  On July -- you said in your December 30th pleading that you and Maryam were married on July 28th, 2012, yes or no?

A.   On December 30th that was my belief at that time.

Q.   And that the marriage had become insupportable because of discord and conflicts, correct?  Did you plead that or didn't you?

A.   I pled that.  At that time I thought I was --

Q.   That's enough right now.  Hold on.  Let me ask the questions, please, sir.

A.   Sure.

Q.   Now, next question.  You know what a judicial admission is, don't you?

A.   Yes.

Q.   Okay.  Do you think that you made a judicial admission when you filed this pleading with this Honorable Court 401st?

A.   On December 30th I thought I was married.  I said the truth.

Q.   Do you know specifically that the law in the

State of Texas under the Family Code presumes, under Family Code Section 1.102, that the most recent marriage is presumed valid?

MR. NACE: Judge --

A.    If you showed me the Family Code --

THE COURT: Hang on a second.

MR. NACE: He's calling for a legal conclusion.

THE COURT: Overruled. He's a lawyer.

A.    Could you show me the Family Code?

THE COURT: Mr. Farahmand, what kind of law do you practice?

THE WITNESS: Tax.

THE COURT: What kind of tax law? Corporate? Individual? What?

THE WITNESS: Corporate.

THE COURT: Okay. Respectfully, what he knows or doesn't know, I don't need to know. I know what the law is.

MR. CORBITT: I know you do. Yes, sir.

THE COURT: Next question.

Q.    (By Mr. Corbitt) Now, you just for the first time brought up Tuesday of this week or last week in our depositions anything about this -- your allegations of bigamy, right?

A. Well --

Q. First time you mentioned it?

A. No.

Q. When had you mentioned it before?

A. When I found out about it.

Q. To your wife?

A. When I found out about it.

Q. To your wife?

A. I don't talk to her.

Q. As a matter of fact, in that deposition what's the terminology you called her at least 20 times?

A. I respectfully asked you not to refer to her as my wife. And then you asked me what should we call her? I said, I don't know. But she is the mother of my child, and we're connected that way.

Q. You didn't say at least 20 times that's Baby Mama?

A. No. You did.

Q. You didn't? I'm asking --

A. I don't remember.

Q. You don't remember, okay. Now, you know about Dr. Woods, don't you? That's her psychiatrist for some five years.

A. She told me Dr. Woods is where she gets her medicine.

Q.   As a matter of fact, you have seen Dr. Woods at least one time, didn't you?

A.   I went with her, I believe on November 16th or 14th, to see Dr. Woods, and he prescribed --

Q.   Non-responsive.  Did you meet with Dr. Woods, yes or no?

A.   Yes.

Q.   Next question.  State the facts with reference to whether or not her parents have watched ██ ██ at least 20 to 30 times?

A.   I don't -- they have not watched ██ ██ 20 or 30 times.

Q.   State the facts -- pull those pictures out. State the facts with reference to whether or not they were watching ██ ██ up until the middle of December 2013?

A.   That's not true.

Q.   Okay.

MR. CORBITT:  May I approach?

THE COURT:  You may.

Q.   (By Mr. Corbitt) Respondent's Number 1 I'm gonna hand you, sir.  Do you recognize the individual on the right-hand side there?  That's ██ ██?

A.   That's ██ ██.

Q.   Is that a grandad?

A.    Yes, his grandfather.

Q.    His grandpa?

A.    Well, grandfather, grandpa.

Q.    Okay.  Yes, sir.  And I'm gonna hand you what's been marked as Respondent's Exhibit Number 2 and ask you whether or not you can identify those, that photo.

A.    I'm trying to think where it is.

Q.    No, no, no.  The individuals there, that's your son and that's your mother-in-law?

A.    Excuse me.  No, that's not my mother-in-law.

Q.    Okay.  What is the lady -- is the lady the biological mother of that lady sitting on my right over there, whatever you want to call her, baby mama?  Whoever that lady right there is, is that her biological mom?

A.    That's her mother.  I don't know if they're biological.

Q.    Okay.  Thank you.  Did you ever tell anyone that you were worth $10 million?

A.    Not that I recall.

Q.    Do you specifically recall testifying -- Page 23, 24.  Do you specifically recall testifying last week, when I asked that same question, you said, I don't recall?  Do you remember saying specifically I could have possibly said it?  Do you remember that?

A.    Well, you asked three or four questions, and

you're taking things out of context right now. But if you would like, we can rehash.

THE COURT: Mr. Farahmand, just do me this favor. Don't do the lawyer thing.

THE WITNESS: I'm sorry, Your Honor.

THE COURT: Be a witness. Just answer the question directly.

THE WITNESS: I'm sorry.

THE COURT: Did you say that?

THE WITNESS: Your Honor, could he repeat it?

THE COURT: Sure. Mr. Corbitt, can you repeat that question for me?

Q. (By Mr. Corbitt) When I asked you had you told anyone that you were worth $10 million, your answer was, as you said, I don't recall. And then did you not say, I could have possibly said that?

A. I could have possibly said sometime in my life, sure.

Q. Okay. Thank you.

Now, you also told the Court, His Honor, or the ladies and gentlemen of the jury, that you didn't know what your annual profit for the calendar year 2012, did you not? You said it was zero or not much.

A. No.

Q.    You don't recall that?

A.    What's your question?  And I'm not trying to be a lawyer.  But you asked me like 50 questions of 50 entities and what my income was.  What are you referring to?

Q.    Yes, sir.  As a matter of fact, how many businesses are you involved in?

A.    I don't know sitting right here.

Q.    Well, would it help you to know that you listed 16?

A.    If that's what I've listed.  I don't know.  I mean, I'm kind of nervous.  I'm on the stand.

Q.    Since you and Mrs. Farahmand entered into this marriage relationship July 28th, 2012, isn't it a fact that you guys were on trips during most of the marriage, even taking ██ ██?  Even taking ██ ██.

A.    We went on trips, yes.

Q.    And on few or many times?

A.    Depends who ask you.  I mean, for me it's normal.

Q.    It's normal.  Now, let me ask you this, please, sir.  Real estate, you have two properties here in Dallas area, Dallas/Collin County area, correct?

A.    No.

Q.    No, you don't?

A. No.

Q. Okay. Well, tell me the real estate you have here in Dallas and Collin County contiguous areas. You have a home, don't you?

A. I have a home.

Q. Yes, sir. And don't you have a condo down --

THE COURT: Hang on a second. Hang on a second. Mr. Farahmand.

THE WITNESS: Yes, sir.

THE COURT: When I sit in my capacity as a family law, Judge, I'm always fascinated by how accountants and tax lawyers structure things. Because what's really, really important for tax purposes is not particularly important in the family law courtroom.

THE WITNESS: I understand. Yes, sir.

THE COURT: In who's name is the house?

THE WITNESS: It's under my name, Your Honor.

THE COURT: Okay. What's it worth?

THE WITNESS: $800,000.

THE COURT: Is it paid off?

THE WITNESS: No. I have no equity in it, Your Honor.

THE COURT: Okay. Any other real estate that you own anywhere?

THE WITNESS: I have a partial ownership through a company that I'm involved in. There's real estate owned in -- there's a condo on Main Street. There is maybe in the corporation about 20,000 or 30,000 in equity; however, there's another partner in there.

THE COURT: Can I interrupt you? Condo on Main Street of what city or town?

THE WITNESS: I'm sorry. Dallas.

THE COURT: Okay. What are the intersections, Main and what?

THE WITNESS: I don't know. Right by the federal building.

THE COURT: Anybody living in it right now?

THE WITNESS: There's a tenant living there.

THE COURT: What's the tenant paying for that?

THE WITNESS: $900 a month.

THE COURT: Does that cover the expenses of rent or whatever of that condo?

THE WITNESS: It covers the HOA and part of the mortgage payment.

THE COURT: Okay. Mr. Corbitt.

MR. CORBITT: Thank you.

Q. (By Mr. Corbitt) And it states whether or not you

own in Colorado, 1700 Basset Street, a Unit Number 1717, that you paid down $700,000 for, yes or no? Yes or no?

A.  No.

Q.  No, okay. Well, excuse me. Did you pay for a condo in Denver, Colorado?

A.  Yes. I didn't pay it. I got a loan.

Q.  Sir?

A.  I got a loan.

Q.  Okay. It cost 700,000, did it not?

A.  That's a recollection that I testified to.

Q.  State the facts relevant to whether or not you also have a property in California, an interest in a property in California that you use to ski with, yes or no?

A.  I don't use the property to ski, no.

Q.  Okay. You do own an interest in it?

A.  I own an interest in it, and I owned all of these prior to my relationship or knowing this young lady.

MR. CORBITT:  Non-responsive.

THE COURT:  Sustained.

MR. CORBITT:  State the facts with reference to whether or not you also own a home at the Pedregal in Cabo San Lucas.

A.  I have an interest in it.

Q.   Yes, sir.  And as a matter of fact, you also got a boat there, don't you?

A.   I have an interest maybe.  I don't know.  I think my partner sold that interest.

Q.   And it's a big boat, is it not?

A.   I don't know.  I don't go on it.

Q.   Now, motor vehicles.  State the facts with reference to whether or not you drive a 2013, 750LI BMW.

A.   I do.

Q.   Your wife -- excuse me.  The lady seated on my right, she drives a 2013 BMW?

A.   No.

Q.   What is it?

A.   2014.

Q.   Okay.  Thank you.  Please forgive me.  As a matter of fact, you have another vehicle that you own, do you not, that's a 2010 vehicle BMW that you let your sister drive?

A.   No, she owns it.

Q.   Okay.  Did you give it to her?

A.   It's hers.

Q.   Sir, did you give it to her?

A.   I mean, it's her vehicle.  I don't know if I gave it to her.

Q.   Who paid for it?

A.    I paid her part of her salary payment on the car.

Q.    Okay, sir.  Thank you.  Do you also have a 2003 Caddy Escalade that's free and clear?

A.    The 2003 Cadillac Escalade is free and clear.

Q.    Do you also have a Maserati that's free and clear?

A.    I do have a Maserati.

Q.    Do you also have mutual funds?

A.    I believe I do.

Q.    Do you recall me asking you about those mutual funds and you said, you don't know the name and I don't know the value of them?

A.    That's correct.

Q.    Now, with regard to personal property, state the facts with reference to whether or not you told me last week that your personal property was worth somewhere between 300 to 500 thousand dollars?

A.    I told you that's my perception of the replacement value of that property.

Q.    State the facts with reference to whether or not you have already been convicted, not once, but twice, of driving while intoxicated?

        MR. NACE:  I would object to the relevance, unless there's a timeframe, Judge.

THE COURT: I didn't hear you, Mr. Nace.

MR. NACE: I would object to relevance unless there's a defined timeframe.

THE COURT: Overruled. Not impeachment. It goes to best interest of the kid.

A. There were two alcohol-related offenses, yes.

Q. And you were convicted of --

THE COURT: Hang on a second.

Q. -- both of them, were you not?

THE COURT: Stop, stop, stop. Where and when?

THE WITNESS: Dallas County, October 2000. Denver County, October 2008.

THE COURT: Results of those incidents.

THE WITNESS: I pled out on both incidences with the no contest plea, I believe, Your Honor.

THE COURT: The charge in Dallas driving while intoxicated?

THE WITNESS: It was driving while intoxicated, Your Honor.

THE COURT: Charge in Denver was?

THE WITNESS: Driving while ability impaired.

THE COURT: Okay.

Q. (By Mr. Corbitt) Now, Mr. Farahmand, you know

we're asking the Court -- ██ ██, your son, has a passport, true?

A.   True.

Q.   In your possession, is it not?

A.   True.

Q.   And you are from Iran, aren't you?  Your family's from Iran?

A.   I'm from the United States, but my ancestry is Persian.  You're right.

Q.   Yes, sir.  And you have properties in foreign countries you testified to, Mexico, right?  You understand we're asking His Honor, request that you place that passport into the registry of the Court.  Do you remember me asking you that question last week and you said you're not agreeing to any of that?

MR. NACE:   I would object to the multifarious compound question.

THE COURT:   Overruled.

Q.   Do you object to the Court asking you to turnover that passport tomorrow, or within a reasonable time, whatever the Court says, if he so does, and let that passport stay in the registry of the Court?

A.   If the Court tells me to do anything, I will abide by it.

(Beeper sounding)

Q.    Thank you very much, sir.

THE COURT:  And you're out of time, Mr. Corbitt.

Of what nation is your son a citizen, Mr. Farahmand?

THE WITNESS:  United States of America.

THE COURT:  Any others?

THE WITNESS:  No, not that I know.

THE COURT:  Are you a citizen of any country other than the United States?

THE WITNESS:  I used to have an Iranian passport.  I don't anymore.

THE COURT:  Why not?

THE WITNESS:  Because I don't go there.  I don't have any family here.  They're all here.

THE COURT:  This woman, who at least at one point in time was referred to as your wife, is she a citizen of the United States of America?

THE WITNESS:  Yes, sir.

THE COURT:  Is she a citizen of any other country?

THE WITNESS:  She is a citizen of Iran.

THE COURT:  Okay.  Where's your Iranian passport?

THE WITNESS:  I have no idea.  I haven't

been there for --

THE COURT: When's the last time you remember seeing it?

THE WITNESS: 2005, 2006 -- 2006, Your Honor.

THE COURT: Where were you living at that time?

THE WITNESS: I had just sold my business, and I was traveling. And I was in between Dallas and Colorado.

THE COURT: Somewhere between Dallas and Cairo?

THE WITNESS: No, Colorado. Denver, Colorado. I had a non-compete so I couldn't work.

THE COURT: I was thinking Cairo, Egypt, to Dallas is a large area. Dallas to Colorado is significantly smaller. Okay. You can step down.

MR. CORBITT: Your Honor, may I make a --

THE COURT: No. Does she have a treating psychiatrist or psychologist?

MR. CORBITT: Absolutely.

THE COURT: I want them in here.

MR. CORBITT: Both?

THE COURT: I need the treating psychiatrist.

MR. CORBITT: Yes, sir. And treating psychologist, both?

THE COURT: I just need the psychiatrist first.

(Witness enters courtroom)

THE COURT: Sir, would you step up here for me.

MR. CORBITT: Please the Court, Dr. Scott Woods.

THE COURT: Come up here, have a seat in that chair, and speak directly into the microphone on your right.

**MICHAEL SCOTT WOODS,**

having been first duly sworn, testified as follows:

THE COURT: Would you tell me your name, please, sir.

THE WITNESS: Dr. Michael Scott Woods.

THE COURT: W-O-O-D-S?

THE WITNESS: Yes.

THE COURT: Doctor, what kind of doctor are you?

THE WITNESS: I am a psychiatrist. I practice adult and child psychiatry.

THE COURT: Okay. Only thing I really need to know is are you licensed by the State of Texas to do

this?

THE WITNESS:  I am.

THE COURT:  Okay.  I'll spare you the whole resume and curriculum vitae thing.

THE WITNESS:  Thank you.

THE COURT:  All right.  I am trying not to violate certain privileges.  Okay?

THE WITNESS:  Okay.

THE COURT:  That woman there in the black sweater one of your patients?

THE WITNESS:  Correct.

THE COURT:  How long have you been treating her?

THE WITNESS:  A little over five years.

THE COURT:  Are you at liberty to tell me what you're treating her for?

THE WITNESS:  I've been given consent to discuss the case.

THE COURT:  What are you treating her for?

THE WITNESS:  Depression and anxiety.

THE COURT:  Okay.  What meds is she suppose to be on?

THE WITNESS:  That's changed over --

THE COURT:  I don't doubt that.  Currently what should she be on?

THE WITNESS: Currently she's not taking medication. I met with her last week, and she informed me that she had gotten off some of the medication.

THE COURT: Was that with or without your advice?

THE WITNESS: Without. I didn't think it was -- I thought it could be risky doing so. I think her concern was that was somehow going to be used against her in these hearings to either allege that she was overmedicated or had to take these medications or she would be unable to function.

THE COURT: Let me explain something to you, Doctor, about the judge of the 401st. I expect people in family law litigation at the very least to be anxious. Okay?

THE WITNESS: Okay.

THE COURT: Some of that sometimes rises to the level where they need medication and assistance. I've dealt with lots of things in my career and people who stood in front of me. I know bipolar folks who are on medication who are just fine. And I deal with lots of people in my capacity as a felony judge who self-medicate with methamphetamine and aren't doing well at all.

THE WITNESS: No.

THE COURT: And everything in between.

Okay?

THE WITNESS: Okay.

THE COURT: If she has an issue, and she's dealing with it, that's a good thing. And I'm not gonna smack her if she's dealing with it appropriately.

THE WITNESS: Correct. And -- go ahead.

THE COURT: If she thinks she knows better than her medical providers, then I need to know that. Does she think she knows better than her medical providers?

THE WITNESS: I don't believe so. And I again discussed with her last week, in fact, I documented in my notes, whether or not she's prescribed certain medication and how much and those things really is only at the discretion of her physician and no one else.

THE COURT: And you don't know this, but I know this, you don't know this about me, but I know that depression can take people to some very, very bad places.

THE WITNESS: Yes, indeed.

THE COURT: And when they're in those very bad places, really bad things can happen. Okay.

THE WITNESS: Yes.

THE COURT: That's always my concern when I'm dealing with depression. Because under the Family Code I am charged to act in the best interest of the

child. I'm not charged to act in what is convenient for them. And I don't mind inconveniencing them as long as the kids are okay. All right.

On her medications does she pose a threat to her eight-month-old child?

THE WITNESS: No, not in my opinion.

THE COURT: Okay. Off her medications does she pose a threat or a potential threat?

THE WITNESS: Not at this time. Again, that's been a very recent development, and I've seen her once. She's only been off of the prescription medication for a few weeks.

THE COURT: Okay.

THE WITNESS: And, no, she was fine.

THE COURT: When is she scheduled next to see you?

THE WITNESS: Oh, sometime in the next maybe three weeks, three to four weeks.

THE COURT: Okay.

THE WITNESS: After this is over.

THE COURT: Beg pardon?

THE WITNESS: After the hearing is over essentially and some things hopefully resolved.

THE COURT: Well, today isn't resolving anything. Today is a temporary matter, and I regularly

change my rulings at final hearings because I have limited time and limited information. I hate the phrase win or lose in family law litigation. But it's not the case of whoever wins at the temporary hearing wins at the final hearing. Okay?

THE WITNESS: Okay.

THE COURT: If that assists you in treatment, it just doesn't make any difference.

THE WITNESS: Okay.

THE COURT: Forget everything you've ever seen on television about Texas family law. I won't practice medicine if you won't practice law, and we'll get along just fine.

THE WITNESS: Agreed.

THE COURT: Now, are you treating anyone else in the family?

THE WITNESS: No.

THE COURT: All right. What can I do, as a judge, to assist you, as a doctor, in mom's treatment so that I get mom, for lack of a better word, stabilized and I don't need to worry about kid issues? Although, this kid's eight months and I suspect I'm going to be worrying about kid issues for the next 18 years.

THE WITNESS: I really would have to think about that. She's been very compliant in her

appointments and coming to see me. That's never been an issue. There was one extended period a few years ago of about nine or ten months where she didn't see me, but she's been very consistent in her visits with me over the last five years and in contacting me if there were issues or concerns.

So I haven't been worried that she's gonna disappear or that I'm not gonna hear from her. She even notified me that she was going to be trying to get off her medication. I said I think that's a bad idea, but again, she told me these things, and so communication is good, I believe. And I think as long as she is seeing me consistently, or someone, and I think being able to get information, and I have in the past. Her mother accompanied her to some visits back in I think 2009, when there were concerns, so I think the family support is there and they would contact me if there were any issues or concerns they had, as well.

THE COURT: Okay. I'm not going to use my words correctly, so feel free to correct me, okay. Are you involved in her, for lack of a better word, treatment in relation to a suicide attempt or multiple suicide attempts.

THE WITNESS: That's not why she initially came to see me, no. But there was an alleged suicide

attempt in 2009 where she was taken by paramedics to the hospital for a brief detainment at the hospital, and then the most recent. And that was disputed as to whether or not that was actually a suicide attempt. But the most recent one here at the end of 2013 when she was hospitalized for several days. So I'm aware of those.

THE COURT: Why do you say it's disputed? I want you to assume I know nothing.

THE WITNESS: This was during a period of a very high stress with her job at the time and a supervisor she had at work and the amount of hours she was working, job was very stressful. And she was taken by paramedics. I think a family member called because she was banging her head against the wall. And she hadn't been sleeping well and had been taking more of her sleep medication to try to get some sleep. I think a combination of all those things led to this wondering had she intentionally taken the medication and banging her head against the wall if she was intentionally to harm herself. And she denied that was a suicide attempt, just that she was frustrated with the job situation and to take the medication was to try to help with the anxiety and insomnia, and it was about work.

THE COURT: Okay. Can I assume that as the psychiatrist you are primarily the medication guy as

opposed to the counseling guy?

THE WITNESS: We talk about lots of things, her family, her job, her immediate family with the baby. But, yeah, it's medications and addressing her anxiety and depression, but we do cover all the things going on in her life at the time. Sometimes we talk about relationships. Sometimes we talk about issues at work, specifically not about medications, whatever is going on at the time.

THE COURT: Medically, if there's going to be an issue, a problem from her being off her medications, how would that generally manifest itself?

THE WITNESS: Changes in mood, changes in behavior, changes in sleep pattern. It would be apparent to other people around her, I think, because it has been in the past. I think she had gotten off her medicine for a time after she got married and, of course, while she was pregnant. While she was pregnant, she did fairly well. I think the previous time, which I think was around 2010, her moods got worse.

So that's the concern I have is that moods get worse, and then when her moods get worse a lot of times it results in irritability and anger, sleep problems. So I'm not a big fan of doing trials off medication, especially when there's been a recurrent

history of a problem.

THE COURT: In your medical opinion, what is the best medical course of treatment for her, at least involving you. I'm not asking about other stuff. I'm talking about her mental health.

THE WITNESS: I think to remain on the medication that has been helpful to her in the past or helped her to provide mood stability. What we discussed last week was that the medication -- for example, the medication for anxiety didn't seem to be helping a whole lot. She just knew through all this there was going to be anxiety and the medication was not helping, so she got off of that. She was pretty exhausted by the end of the day and so sleep wasn't really an issue. So she didn't feel she needed the sleep medication. So she had substituted an over-the-counter natural supplement as an antidepressant instead of the prescription medication.

THE COURT: Can I assume part of the checkups with you involve blood work to see how her medication levels are?

THE WITNESS: Only if necessary. There are only certain medications that require that.

THE COURT: Do any of the medications she's on require that?

THE WITNESS: Not the ones she was most

recently on, no.

THE COURT: If she's on her medications, do you believe she poses a risk of harm to her child?

THE WITNESS: Do you want yes or no?

THE COURT: If it's not a fair question, tell me.

THE WITNESS: I think it's more complicated than whether she's taking her medication or not. It has to do with the issues the stressors that have been going on within the family over the last six months or so, six to nine months. I think that has been the biggest influence in what has affected her anxiety and mood.

THE COURT: The stressors including this lawsuit?

THE WITNESS: Yes. And especially -- and this happened before the first of this year, but with other stressors while everyone was in the home together. But, yes, I look back at the last five years and for the most part her moods have been stable. When they haven't, we've adjusted things and they've improved. So I have a long history of mood stability with her going back quite a while.

So I'm fairly confident that going forward that if she remains in treatment, which I fully expect she will, that her moods will remain stable and when

things need adjusting, we will, as we have in the past. Under those circumstances, the woman I've treated for the past five years, no, I don't believe poses any risk to her child.

THE COURT: Okay.

THE WITNESS: Even in this period of high stress with things going on and with divorce and custody, I don't believe she poses a risk to the child. She never has indicated that.

I don't believe she poses a risk to herself. I think that the issue that led to her taking the pills and going to the hospital at the end of December were due to an intense amount of stress with all the things going on, frustration, feeling desperate, that nothing was changing, nothing was going the way she thought it was going to happen. And it was a rather impulsive move out of desperation, not something she had been thinking about or planning.

THE COURT: Not to be a smartaleck, but I'm gonna be one.

THE WITNESS: Okay.

THE COURT: Somebody who hurts themselves or someone else impulsively hurts themselves or someone else just as much as if it were planned out. You know, the drunk driver kills somebody just as dead as the guy

who plans the shooting.

THE WITNESS: Yes, the result is the same.

THE COURT: Okay. They've used up all their time. That's why you and I are having this conversation. What else do I need to know?

THE WITNESS: Well, I think that episode we were just alluding to was out of character, but it happened. So, you know, you can't discount that. But I've never had concerns that she was suicidal on an ongoing basis. It really hasn't been an issue whatsoever. And there are some patients that is, it's a regular or recurring issue. I've had absolutely no concerns that she's had any thoughts or feelings towards harming the baby whatsoever, nothing.

THE COURT: Okay. Thank you. You can step down. You're free to go.

THE WITNESS: Thank you, sir.

(Witness exits courtroom)

THE COURT: Mr. Corbitt, is that psychologist around?

MR. CORBITT: Yes, he is, Judge.

THE COURT: Go get said psychologist for me.

MR. CORBITT: Thank you.

(Witness enters courtroom)

THE COURT: Sir, if you would come on up. Have a seat in that black chair over there for me. Please speak directly into the microphone on your right. I swore you in earlier this morning, didn't I?

THE WITNESS: You did, sir.

THE COURT: I thought you were in this crowd over here.

THE WITNESS: Yes, sir.

**ROBERT GORDON,**

having been first duly sworn, testified as follows:

THE COURT: Please tell me your name and spell your last name for my court reporter.

THE WITNESS: Dr. Robert Gordon, G-O-R-D-O-N.

THE COURT: Dr. Gordon, what kind of doctor are you?

THE WITNESS: Clinical and forensic psychologist.

THE COURT: Are you treating? Consulting? What is your role in this lawsuit?

THE WITNESS: I am evaluating Maryam Farahmand.

THE COURT: All right. Can I assume at some point in time you've issued a whole fun battery of psychological tests?

THE WITNESS: Yes, sir.

THE COURT: Can you hit the highlights of the tests; not the results, just what tests you have administered?

THE WITNESS: The MMPI, the 16PF, PAI, and also mental status examination and tests that deal with cooperation and shared parenting, such as the Myers Briggs.

THE COURT: Do you diagnose?

THE WITNESS: Yes, sir.

THE COURT: Have you made a diagnosis?

THE WITNESS: Yes.

THE COURT: What is your diagnosis?

THE WITNESS: Major affective disorder in remission.

THE COURT: Okay. What sorts of things can trigger it to come out of remission?

THE WITNESS: Sir, would you say that again, please?

THE COURT: I don't know if it's even a smart question. You said we have this disorder that's in remission.

THE WITNESS: Yes, sir.

THE COURT: I'm trying to ascertain what can, if anything, can cause it to come out of remission?

THE WITNESS: Yes, sir. It's a very smart question. The separation from her husband of a marital circumstance that was discouraging, without hopefulness and overwhelmingly disparaging to her self-esteem, without criticism of Mr. Farahmand, coming out of that circumstance into a single and independent life could cause a lifting of the depression and hopefulness about her future.

THE COURT: All right. I'm gonna try and translate that into English. And you have every right, ability, or whatever, to tell me I'm wrong.

Are you telling me that the stress and anxiety, pressure, whatever the right word is, from -- that results from family law litigation and the very public systematic dismantling of a relationship could trigger an episode?

THE WITNESS: Could trigger an episode of health, yes.

THE COURT: All right. So what kind of help she need?

THE WITNESS: The kind of help she needs is what she's getting, and that is continued psychiatric counseling from Dr. Woods, continued evaluation and support from myself, and she'll be fine.

THE COURT: All right. In your opinion,

does she pose a physical threat to her child?

THE WITNESS: Absolutely, unequivocally no.

THE COURT: In your opinion, does she pose an emotional or psychological threat to her child?

THE WITNESS: Absolutely not.

THE COURT: When did you evaluate her?

THE WITNESS: I began evaluating her at the end of February, February 25th of this year.

THE COURT: And if you know -- well, can you tell me whether or not your tests are affected by virtue of the fact that someone might have been born or raised in another country?

THE WITNESS: Absolutely, yes.

THE COURT: Was she?

THE WITNESS: She was, in fact.

THE COURT: And how does that factor into the validity, lack of validity, adjustment, or whatever, the grading scheme of the test?

THE WITNESS: It makes it challenging for someone like me to determine whether it has the validity of a person who was raised in a different family structure in Iran. But at the same time, Your Honor, she's also a Ph.D in neuroscience, so she's very sophisticated, as well, and that also had to be factored into my evaluation of her results.

THE COURT: Okay.

THE WITNESS: She is, herself, like a psychologist, a neuroscientist.

THE COURT: So can I assume she is like many people in the medical profession, a lousy patient? Is this like lawyers are lousy clients in lawsuits?

THE WITNESS: No. She's very receptive to having all of the enhanced mental health and parenting that she can ascribe and benefit from. She is a good and is a compliant patient.

THE COURT: You know she's taken herself off her meds?

THE WITNESS: I do, sir.

THE COURT: And your two cents about that?

THE WITNESS: My two cents is that she is functioning very well without her medication. She has made an adjustment. I'm sure that Dr. Woods would have preferred a gradual withdrawal, rather than an abrupt withdrawal, but everybody acknowledges that she's doing quite well without her medication.

THE COURT: What's your understanding for how long she's been off her meds?

THE WITNESS: Several weeks.

THE COURT: In general, just in a general psychological health of someone -- and let's assume that

we are involved in contentious family law litigation, not just normal stuff but above the average level of contention. All right. Someone with her mental health status, would it be wiser for her to be on medication to assist with the stress and the anxiety, or not?

THE WITNESS: It certainly should be evaluated between herself and Dr. Woods. They may determine that some antidepressant or antianxiety is indicated.

THE COURT: Okay. Is there any other psychological issues that are out there other than the depression and anxiety?

THE WITNESS: She has a marvelous support network of her parents, of her professor at the University of North Texas --

MR. NACE: I would object as non-responsive.

THE COURT: Sustained. Bad question or we're not communicating. I'm not interested in her support network, as politely -- for this question.

THE WITNESS: Yes, sir.

THE COURT: I need to know if there's any other mental health -- oh, let's use the word diagnosis, word, phrase, I'm not speaking coherently, anything else under whatever DSM we are currently using, four, five,

whatever it is?

THE WITNESS: Yes, sir. If I understand your question --

THE COURT: Is she also a paranoid schizophrenic?

THE WITNESS: Absolutely, unequivocally not. She does have an apprehension about the intentions of her husband which borderline on extreme suspiciousness. I'm not sure that that's unjustified under the circumstances.

THE COURT: It's normal in any family law lawsuit?

THE WITNESS: In my experience, yes. There's also a heightened sense of emotional reaction to matters which can be treated in psychotherapy. And there is a history of depression in her family, all of that is true.

THE COURT: Okay. That's what I need to know. Thank you. You can step down.

MR. CORBITT: Your Honor, may I ask --

THE COURT: No. I don't need anything else. I know what I need to know.

MR. CORBITT: He prepared a report.

THE COURT: Don't need a report, respectfully. Not today. Maybe in final but not today.

MR. CORBITT: May I impose upon the court just to take our requested rulings, and we'll pack up and get out of here.

THE COURT: I'm about to tell you what my ruling is.

MR. CORBITT: Without seeing our requested rulings?

THE COURT: Oh, I'll be happy to look at your requested rulings. I was unclear.

MR. CORBITT: Usually I give them to you at the first.

(Pause in proceedings)

THE COURT: All right. Gentlemen, make sure you have your pads and papers and that we answer any questions before you leave, because I don't want to have to do this another time for temporary orders.

The parties are gonna be appointed temporary joint managing conservators. Temporarily Dad is gonna be primary with the right to establish the primary residence of the child within Collin County.

His financial situation is such that I'm not ordering child support at this time. He has the ability to take care of the kid without a contribution from her.

We're going to enter the standard

injunctions with standard language. So everybody in this room listen very carefully to me. I don't care which side of this room you're supporting, or not. No one says anything derogatory, insulting, meanspirited, demeaning, insulting about anyone in this lawsuit, period. Especially in the presence of this kid. And if you can't hold your tongue, don't say it around the child. And if you can't, you should expect me to do something about it and you won't like it; like put you in jail, like call the State department, or anything else I need to do to make sure this kid is safe.

All passports, American and Iranian, for this child will be surrendered into the registry of the Court. All passports from the parties will be put into the registry of the Court, American or Iranian. All parties are enjoined from seeking replacement passports or applying for new passports for themselves or their -- or this child.

If you have a business trip, I'll be happy to give you a passport. If you've got a real reason to travel, I'll be happy to give you your passport. And both parties will inform the United States State Department pursuant to that wonderful standard language about restrictions on child -- this kid does not get on an airplane, or a jet, or a helicopter, or a ship,

period. This child does not leave the United States, period.

Mother is ordered to continue her psychological course of treatment with Dr. Woods, if that involves counseling, medication, or whatever, and to abide by and follow all of his orders and instructions. Mr. Gordon is a forensic guy, you can continue with him, or not. I'm not ordering you to. I'm not forbidding you to. Dr. Woods is the main primary treatment guy. You will continue in your treatment with Dr. Woods.

Everyone in this room understand that if somebody has a chemical imbalance in their brain, I don't hold it against them if they are dealing with it appropriately.

Now, I've got an eight-month-old kid. And Mr. Nace, just so you'll know, while this testimony about another wedding is interesting, even assuming for the sake of discussion that some ceremony was performed, that license isn't on file, so I don't have a valid prior ceremonial marriage. I may or I may not have a valid informal marriage and that would certainly be some evidence of it. But you're miles from at the very least cohabitation. So at least today, I'm not -- don't have any concerns about there being a bigamy situation. That doesn't mean there isn't one. I'm just saying today, in

this temporary hearing, that's not causing me heartburn.

Now, who's got medical insurance on this child?

MR. NACE: Mr. Farahmand does.

THE COURT: All right. Mr. Farahmand, you'll continue covering this child with your medical insurance. Any uncovered medical expenses of the parties will be split 50/50.

Mr. Corbitt, you been paid yet?

MR. CORBITT: Sir?

THE COURT: Have you been paid?

MR. CORBITT: Yes, sir, through borrowed money.

MR. NACE: Twice what we were, Your Honor. He got a $20,000 check; I got ten.

THE COURT: Cool beans. I'm not worried about your client's ability to cover the check, Mr. Nace.

MR. CORBITT: Judge, was husband to continue the medical on the --

THE COURT: Sir?

MR. CORBITT: Was the husband -- excuse me. Mr. Farahmand, was he also ordered to continue medical on the Mom, also?

THE COURT: Yeah. If Mom's covered, Mom stays covered. And Mom pays any uncovered expenses that

are in her name, and Dad pays any uncovered expenses in his name. Because you see, right now I don't have reason to think this is not a valid marriage.

MR. NACE: Judge, briefly, Ms. Farahmand has her own health insurance, not through my client, just for clarification.

MR. CORBITT: No. Mr. Nace says yes but --

THE COURT: Just listen very carefully to me. Whoever had insurance the day this divorce was filed, there better gosh, darn be an insurance policy in place right now. I will be most put out if someone thought it was wise to cancel it or not re-up it.

If you each have health insurance, you do. If one of you has been carrying health insurance on the other because it's a better policy or better premiums, or whatever, then you have been. If somebody's changed it, change it back.

The parties will be awarded the temporary use of the vehicles in their name -- or in their possession rather. How is the 2014 vehicle being paid for? Whoever's been paying for them keeps paying them. So I suspect, Mr. Farahmand, that's you.

Ms. Farahmand, you don't do anything to diminish the value of that vehicle. You don't scratch it. You don't bang it up. You make sure the oil gets

changed. You're responsible for the maintenance and upkeep, but make sure that it's done.

I'm not gonna interfere with any contracts that are out there with this car agency or this leasing entity. Whoever's been making the insurance payments will continue to make them on the vehicles.

And I expect both sides to keep a running tab of everything that they spend. Because if I find at a final hearing that there's not a valid marriage in front of me and all I'm dealing with is a SAPCR, people should expect me to award judgments for folks. Because I'm operating right now on the assumption that I'm dealing with a valid marriage and this is a community property state.

Is everyone a member of the same mosque? The only reason I ask is I don't want this carrying over there, so make sure it doesn't.

With respect to this child, visitation is always as agreed between the parties, comma, in the absence of an agreement this is what we're gonna do for the next couple of months. By that I mean three.

Mom will have two hours visitation on Tuesdays and Thursdays, two hours in a block. It will bees supervised by her parents or any other competent adult. The person in possession of the child drops off

the child.  Now, if this child is in daycare, for example, then we'll do the pick up and drop off -- well, we'll do the pick up at the daycare center.  If there's not daycare, then Dad, you bring the kid to Mom.  Mom, at the end of your two hours, you return the kid to Dad.  Any competent adult can transport the kid.  So if the two of you can't inhabit the same area and not be at one another's throats, have somebody else do it because it's what's best for your son.

You'll have up to four hours on the weekend.  The weekend in my world is Saturday and Sunday.  That will continue being at Hannah's House.  Mom, you make the time arrangements up to four hours in a block.  Mom and Dad will split the cost of that 50/50.

At the end of three months I want a report from Dr. Woods.  I want to know how Mom is doing, what her mental state is.

If you can't keep your mouth shut in my courtroom, leave.  You can make whatever editorial comment you want in the hallway.  You don't make it in my courtroom.  That's for those of you on the front row, not those of you at counsel table.

Now, given all that's going on in this lawsuit, I think an amicus attorney is appropriate.

MR. CORBITT:  May we ask costs, Your Honor?

THE COURT: Sir?

MR. CORBITT: May we ask costs since she has no funds, none?

THE COURT: She's a professor at the University of North Texas or her parents are?

MR. CORBITT: She has a degree. She doesn't have a job at this point in time. She was working for the pharmacy that they had an interest in called Renner Pharmacy, which she would be glad to go back to, subject to your approval.

THE COURT: Get a job is the short answer. But, Mr. Nace, explain to your very brilliant tax attorney client that I'm going to want to know where every penny in his estate is, whether it's his separate property, whether it's community property, whether it's in a family trust or some other kind of business entity, whether it's structured or not, every account, every stock, every bond, every spec of dirt, every vehicle, every thing. Because whatever is separate property, I need to make sure I award as separate property and I don't screw up.

Both of your clients need to understand that if anybody's been moving money or assets, there'll be a price to pay for that. For some reason in the past, when I've dealt with people of certain nationalities in

high conflict litigation, more often than not funds get moved. Don't do that. If they've been moved, return them.

Now, I can have Dad pay the money up-front against a final number at final hearing. If there's a valid marriage, there is; if there isn't, there isn't. I'm just trying to figure out who I need to do this.

Mr. Nace, you got anybody in mind?

MR. NACE: Your Honor, I want the best person qualified, the most intelligent lawyer that His Honor has had before him.

THE COURT: I'm sorry?

MR. NACE: I want the most qualified, most intelligent family law expert that His Honor has had before him. And I'll certainly defer to His Honor's wisdom here. I don't have anybody specific in mind, no, sir.

THE COURT: You got anybody in particular, Mr. Corbitt?

MR. CORBITT: Judge, I'm sure we know the same people. I have no problem with you doing the picking, sir.

MR. NACE: Debbie McKoy seems to be fairly objective and fairly well-known in Collin County.

THE COURT: I'm trying to think of people

that I know that aren't doormats and who I haven't picked on lately. And while you're absolutely right about Ms. McKoy, I've put her in the middle of two or three other things right now, and I think if I'm not off her Christmas card list, I'm about to be. I'm going down this list. She was on that list.

Diana Porter is your amicus. Her offices are here in McKinney. And she is an amicus attorney, so that the record is clear.

In three months, so everyone knows, if I need to adjust, change, or otherwise tweak the visitation schedule, I will. I'm assuming I'll have a couple of months without there being problems. If there aren't problems, people should expect me to expand visitation or to dial back on supervision.

But, for the short period of time, especially in light of Dr. Woods' testimony, I just want to make sure. That's all. If Mom can handle being off her meds, she can. If she needs help, that's fine. That's what I'm trying to do right now.

Anything else from your side of the room?

MR. NACE: Yes, Your Honor a couple of things, if I may.

THE COURT: I'm sorry?

MR. NACE: A couple of things, if I may.

Just for clarification, with regard to the two hours on Tuesday and Thursday.

THE COURT: I don't know your client's schedule. I don't know her schedule. I would like it done before this kid's bedtime and so he can get back to his Dad and sleep in his bed and not Dad have to deal with a kid who's wound upcoming back in, and the normal 8:00 o'clock bedtime now becomes 10:00 or 11:00 with a kid who's bouncing off the walls. So if the kid's normal bedtime is, pick a number, 8:00 p.m., have him home a half-an-hour before his normal bedtime and back it two hours up from that.

If Mom is not working and this child has two hours in the middle of the day, and I have grandparents who are ready, willing and able to supervise, then two hours in the middle of the day will work when it can be a playtime. I prefer it not be the middle of the boy's naptime so Mom, A, has a visit and, B, again, the kid isn't bouncing off the walls. But it's going to be difficult to structure those things.

If your clients cannot work this out, come see me and I'll pick two hours. I'm assuming that your client has coming up on what should be a busy time for a tax lawyer, so I'm assuming there are some arrangements during the daytime that have been made for this child.

Nobody's bothered to tell me really what they are. We need to deal with that. I don't care when the two hours is, but I would prefer it be at a time when it can be, for lack of a better word, a positive and productive time for Mom with minimum inconvenience for Dad upon the return of the child. That's where I'm coming from.

MR. NACE: With regard to communications, Your Honor.

THE COURT: I'm sorry?

MR. NACE: With regard to communications, if Ms. Farahmand --

THE COURT: If you guys need to communicate with one another, you will either, A, use your lawyers or, B, if it is about the child and an emergency -- and so you will know, my definition of an emergency means somebody is bringing this child to a doctor or a hospital. You can text or call one another if it's an emergency. If we are talking about scheduling or otherwise, you will e-mail one another.

MR. NACE: Judge, with regard to supervision, I'm assuming direct line of sight.

THE COURT: I'm sorry?

MR. NACE: With regard to supervision by her parents, direct line of sight, is that --

THE COURT: Same room.

MR. NACE: And with regard --

THE COURT: If they go to the park, grandma or grandpa gets to stroll down to the park. But if it's a two-story building and Mom and the child are in the bedroom upstairs, grandparents are upstairs in the same room or in the hallway. If the kid is downstairs with Mom, grandparents are downstairs with the kid and Mom. We're not on different floors. We're not taking naps. We are -- supervise means supervise. It means you've got an eye on it, but you don't have to be in the middle of the conversation. I'm assuming -- are the grandparents in my courtroom?

MR. CORBITT: Yeah.

THE COURT: Grandpa just listen. Sit. You don't need to stand. Just listen. I assume that you don't think your daughter is a threat at all to your grandson. I want you to understand that I need to make sure that she is not. Okay. So that's part of what this supervised visitation is for is so that I have a comfort factor, not you, me. And if you or your wife are going to be supervising, it means you are there, you can see what's going on, you can hear what's going on. If you go out to the grocery store, for example, you and your wife, the child is with you. You don't leave the building and leave the kid behind with Mom. If they want to go down

to the park, you go with them.  If they want to go to the shopping mall, you go with them.  And hopefully, in about three months I can lighten up on this.  But for the next three months, you and your wife are not just my eyes and ears, you're his eyes and ears, and his eyes and ears.  Clear?

(*Person nods head up and down*)

THE COURT:  Okay.

MR. NACE:  With regard to the up to four hours at Hannah's House on Saturdays and Sundays, does His Honor mean every week?

THE COURT:  Every week, four hours either day, not both days.  Four hours on Saturday or four hours on Sunday.  But depending on what somebody's schedule is Saturday might work better than Sunday.  Depending on what Hannah's House schedule is one may work better than the other.  I don't know those things.  I'll let these guys make those arrangements.

MR. NACE:  With regard to the costs and the allocation therefore, Judge, with regard to Hannah's House and Diana Porter, could the Court give some clarification on the expenses?

THE COURT:  Sure.  And everybody is ordered to fill out whatever paperwork they need to fill out this week to make sure visitation can start this coming

weekend. I've had people in the past in other lawsuits get cute and not fill out paperwork that has prevented visitation from happening. If you don't think that I won't react badly to that, try me. So everybody fills out all the paperwork.

MR. NACE: And Judge, just for clarification, the allocation of costs at Hannah's House and Diana Porter?

THE COURT: It's 50/50.

MR. NACE: And last, Judge, during the pendency of this matter my client had access to an account for the Renner Pharmacy which has since discontinued due to, we believe, Ms. Farahmand's conduct. We are lacking those records. We believe they were moved by Ms. Farahmand. We've asked for them back and not gotten them. There are client files that are also missing. And so my client --

THE COURT: Whose records?

MR. NACE: Stand up and address the Court.

MR. FARAHMAND: Your Honor, I was put out of the house on December 28th. When I re-entered it on January 2nd, all my business records, sales records of previous businesses, financial documents, hard drives, client records, missing from my office. I have requested from Maryam to return those. She claims she does not

have those. And that has caused a huge, huge burden on me to get it because they were all original documents, the sale of Cedar Hospital, the sale of Inner Health, and my client files. And I have pictures showing when I did come into the house the computers were taken apart and the hard drives missing.

MR. NACE: And in conjunction of that, Your Honor --

THE COURT: Well, right now I'm not dealing with a discovery dispute. But if anybody has -- I misunderstood.

MR. NACE: There are two components there, Judge. One is access to the -- I believe, the Chase Renner Pharmacy bank account which was interrupted by Ms. Farahmand. We've got her deposition testimony to that effect. Also, the spoliation of documents which we need back --

THE COURT: It's not spoliation yet. And that would be a very incendiary word to be using.

MR. NACE: We don't have necessary documents anymore.

THE COURT: All right. Well, sit down. I'll handle this. Mr. Corbitt.

MR. CORBITT: Yes, sir.

THE COURT: If someone, either your client

or someone thinking they were assisting your client, removed a whole bunch of records, or any records, or hard drives, or otherwise, see that they get returned. Explain to your client that if somebody did that, that there are a whole lot of problems with admissibility of things. And if they're his business records, they're his business records. And if they're his business records, since that's pretty much where the money is going to be coming from so I can split things up, he needs his business records. By the same token, Mr. Farahmand. If they get returned, they don't get edited.

*MR. FARAHMAND:* They won't, Your Honor. No problem.

*THE COURT:* Hopefully not. I have lots of people in my history as a family law judge who are worth lots of money, and some people not worth anything, who go to great lengths to try and minimize their financial holdings. I had a guy week before last who was worth many millions of dollars who wanted me to believe he had nothing. It didn't go well for him.

But from a temporary orders purpose, is there anything else that you need me to address? I'll get to your side in a second.

*MR. NACE:* Let me --

*THE COURT:* Mr. Farahmand, sit.

MR. NACE: Your Honor, I think everything from our vantage point has been addressed. I think that the appointment of Diana Porter clarifies the need of a social study.

THE COURT: If Ms. Porter tells me I need a social study, I'll have a social study done. But if I do, it will be more than three months from now. Because if I move towards -- if I move towards less supervised visitation, then a social study that would occur in the next two or three months would essentially be useless and would probably require another one, which is additional and unnecessary costs. So I may very well do it, but it won't be today.

MR. NACE: We would like to get a baseline of drug usage, Judge.

THE COURT: I'm sorry?

MR. NACE: We would like to get a baseline of drug usage. And certainly to that end, we're okay with mutual random UA and drug testing being done.

THE COURT: Don't need it. I've got no evidence in front of me that tells me either one of these people are using illegal medication. I've got no reason to believe that they are.

MR. NACE: I think that's it for us, Judge. I'm sorry. With regard to the usage of the Chase bank

account, Your Honor, that pertains to a business my client started before marriage. That is the bank account we need the exclusive use of. Ms. Farahmand tried to access that account at least four times, admitted to in her deposition, during the pendency of this divorce and it's now locked up by Chase Bank for investigation of fraud.

THE COURT: Well, then it's locked up by Chase Bank. Chase Bank isn't in my room. I don't have an order to tell Chase to knock it off. All right. If the lawyers want to show up with lawyers from Chase Bank and have a discussion with the trial judge, we can do that. But today there's not a whole heck of a lot I can do about Chase's internal investigation.

MR. NACE: We would just ask that my client have the exclusive use so that he re-access that account.

THE COURT: You've heard what I've said. I have no idea why Chase has locked it up. I don't know why Chase would deny your client access, especially if they're looking at fraud, that would mean they would be concerned that someone other than your client is trying to access it. I don't know that they would be very upset about your client accessing it. So if they locked him out, I don't have the whole story. And Chase isn't here to tell me. So today, no. If Chase needs -- really

needs to happen, find a lawyer or representative of Chase and the two of you come find me some morning between 8:00 and 9:00, and we'll handle this in chambers real quick.

From your side of the room, Mr. Corbitt.

MR. CORBITT: Yes, sir. Thank you. With regard to the travel time, on that two hours, that doesn't count travel time, does it, when the kiddo is being transferred?

THE COURT: Where is the kiddo right now?

MR. CORBITT: Well, he's with Dad.

THE COURT: Were does Dad live?

MR. CORBITT: Dad lives right off Frankford. He's got a law firm here in Collin.

THE COURT: Where's the kid during the daytime?

MR. FARAHMAND: Your Honor, he's at the house.

THE COURT: As nice as I can --

MR. FARAHMAND: ███████ ████████ ██ ████████.

MR. CORBITT: The child has been kept at the law firm.

THE COURT: There are worse places to keep a kid. It's not ideal, but there are worse places.

Now, where does your client live?

MR. CORBITT: She lives with her parents in Frisco.

THE COURT: Okay. Frisco, Texas, is just up the road from Frankford and the toll road.

MR. CORBITT: Yes, sir.

THE COURT: Probably ten to 15 minutes. Parent in possession drops kid off, that's when the clock starts running. So, yeah, it will be 15 minutes to get the kiddo back. Now, if you want to do this in the middle of the day, do it in the middle of the day. That's why all of my visitation orders read just like the Family Code says they're suppose to: As agreed between the parties, comma, in the absence of an agreement.

If this child's been kept at a law firm, then I assume there are people at the law firm who actually have legal business to be doing rather than tending to an eight-month-old. Because at eight months my son was climbing things and launching himself from the tallest thing he could launch himself from, and that's just not a good kind of kid to have in the middle of a law firm, especially if he's launching himself from the top of computers and those sorts of things. But eight-month-olds bounce, so I wouldn't be too concerned.

So if the kid is at the law firm, Dad, get the kid to Mom, and the clock starts running. And Mom,

in two hours, unless someone says, no, two hours and 15 minutes is just fine, have the kid back in two hours. Next issue.

MR. CORBITT: Yes. And, Judge, with regard to Hannah's House, you didn't say Saturday and Sunday?

THE COURT: I said Saturday or -- I know what I said, and I know why it was confusing, which is why I'm clarifying. Either Saturday or Sunday and it doesn't have to be the same day each week. People have schedules and people have things, and they've got to work around them. That's what I'm trying to accommodate as much as I can. I'll give her up to four hours on either of those days. I don't want it to be two hours here or two hours there, three hours in one. I want it to be up to a four-hour block.

MR. CORBITT: Okay. Judge, speaking of Hannah's House, now, we've had problems in the past here in the 42 hours we've seen the child since January 4th. She's not allowed to take any pictures at Hannah's House because Ms. Stone over here is afraid --

THE COURT: And she's got Tuesday and Thursday where she can burn as much film or as much memory on a camera or a cell phone as she wants to.

MR. CORBITT: How about grandparents also seeing ██ ██, the child, during some of this period of

time over at Hannah's House?

THE COURT: I don't think Hannah's House is gonna be real keen on that. The -- I don't know what their rules are is the short answer. Okay. And I would prefer this be a time for Mom and ██ ██.

MR. CORBITT: Yes, sir. And I think that's a good idea. It's just that they're ordered out of the Hannah's House parking lot, and I don't know why he would have the authority to do that.

THE COURT: I don't know is the short answer, okay.

MR. CORBITT: Okay.

THE COURT: It may simply be their policies because their rooms just aren't that big. Because if we bring the extended family, friends, and all concerned, if you can fill my courtroom, I promise you, you can fill a room at Hannah's House.

MR. CORBITT: Makes all the sense in the world.

THE COURT: Grandparents will have Tuesdays and Thursdays with ██ ██ and their daughter. Saturday or Sunday I want her to have as much time with her son as she can in a positive and -- I know it's not ideal.

MR. CORBITT: Yes, sir. Thank you.

THE COURT: Okay. I've got to stair-step

her in. I've got to deal with his fears. I've got to deal with Dr. Woods' testimony. And it's three months, assuming all goes well.

MR. CORBITT: Next two issues is, number one, temporary spousal support. We have no money, have no job, have no funds. All three credit cards have been canceled, canceled.

THE COURT: If credit cards were canceled after this lawsuit was filed, uncancel them.

MR. NACE: Judge, the testimony actually during the deposition was that my client canceled them prior to filing. And further, it's his credit, not hers.

THE COURT: Respectfully, right now in my courtroom I don't have reason to believe that this is anything other than a presumptively valid marriage. We are in a community property state. I don't care what people think they should do for tactical positions or otherwise.

Now, if they were canceled, they were canceled. If what your client's concerned about is his credit history or his credit rating, although given his brief litany of things that he owns or has an interest in, I don't think he needs to be all that concerned, then that's easy. Okay.

MR. CORBITT: You ordered it restored?

THE COURT: Just listen. Just listen. There's a Maserati. There's a Cadillac Escalade. There are two other vehicles. There's property in lots of places. Businesses sold, all sorts of fun things. I suspect your clients' worth a whole lot more than I am. Of course, that's not hard; I'm a career public servant.

MR. CORBITT: Mine?

THE COURT: His.

MR. CORBITT: Yes, sir. Okay. Thank you.

THE COURT: Is it the last thing, Mr. Corbitt?

MR. CORBITT: Yes, sir. So temporary spousal support --

THE COURT: I'm thinking the best way to handle this.

MR. NACE: Judge, if I may, all the properties that Mr. Corbitt specified and outlined during examination were owned before marriage, not acquired during marriage. There is a distinction, as well. They're heavily debt laden, one thing he didn't note during his examination of my client last --

THE COURT: Just listen. I know how to split things up. Note to self, anything that gets zeroed out on an income tax form that you want the federal government to believe has no value, you shouldn't be

surprised if I award it to the other side of the room. Not a promise, just a general policy view. Because I never understood people fighting over things that have no value.

Now, she's living with her parents. Her expenses are gonna be minimal. He's already covering the cost of the car, which I assume is a few bucks.

Were credit cards canceled, Mr. Nace?

MR. NACE: Prior to the commencement of litigation, yes.

THE COURT: When?

MR. FARAHMAND: Your Honor, they were canceled December 28th.

THE COURT: All right. When did you first see a lawyer?

MR. FARAHMAND: December 29th.

THE COURT: Okay. What do you make in a month?

MR. FARAHMAND: It varies, Your Honor. My net home is about five to six thousand in spending money.

THE COURT: Note to self, Mr. Farahmand. I'm not a tax lawyer; son of an accountant. And I know that with numbers the question is infinitely more important than the answer. Numbers don't lie. They just answer the question that they're asked.

MR. FARAHMAND: Your Honor, we'll provide all the bank statements.

THE COURT: I'm sorry?

MR. FARAHMAND: You'll have all the financial documents.

THE COURT: No, I don't.

MR. FARAHMAND: Canceled checks.

THE COURT: You think you're negotiating with me, Mr. Farahmand?

MR. FARAHMAND: No, Your Honor.

THE COURT: Sit down.

MR. FARAHMAND: Yes, Your Honor.

THE COURT: I don't have any financial documents. I have summaries of things. I've got a Mom with issues. I've got an eight-month-old kid. I've got somebody dancing with me with respect to finances; if they're dancing because they think they're pulling a fast one or if they're dancing because they're just worried I don't know enough, I don't know which. One of those is absolutely forgivable. One of those is not a wise position to hold.

In a community property state she would be entitled to 50 percent of the income of the community. I'm assuming you've got a few bills. I'm assuming you've got some other things. $1,500 a month on or before the

15th of the month.

MR. NACE: And Judge, can we have a limitation? Is that during the pendency or three months?

THE COURT: That's temporary spousal maintenance. Now, we are in March. If this lawsuit is not over before September 15th, you should expect me to make it go away, because it's temporary.

Now, if I have reason to think that someone is being dilatory or obnoxious in discovery, if I think one side of the room is trying to unnecessarily delay this, then I'll factor that into the equation in September. And if things get delayed due to nobody's fault, then they do. If there are records and hard drives and those things, they need to be returned.

All right. Any questions on anything?

MR. CORBITT: Yes, sir. You gave me --

THE COURT: Yep.

MR. CORBITT: So I did hear the Court specifically say that if the credit cards --

THE COURT: No, I'm --

MR. CORBITT: -- were canceled before the filing of the divorce on December 30th, 2013, it's okay. But if they were canceled after, he's got to go restore it.

THE COURT: If anybody canceled things in

violation of the temporary standing orders of this court, they need to fix it.

MR. CORBITT: Okay, sir.

MR. NACE: Judge, if the Court were to find -- I think I know the answer. If the Court were to find at the end of this case there is no valid marriage, I'm assuming the temporary spousal support ordered would be ordered as a judgment at that time, if there were such a finding.

THE COURT: That would be one way to deal with it. Probably the easiest way to deal with it.

MR. CORBITT: Two other issues, since I thought it was my time, but if Mr. Nace wants me to sit down, I will.

We need to get our belongings out of the house because we have been out of the house now and she's got personal effects. If you'll just give us a date.

THE COURT: You guys need me to do this? Can you guys --

MR. NACE: It's available for pick up, Judge.

MR. CORBITT: Okay. Tomorrow at 12:00 o'clock?

THE COURT: I don't care when you guys do it. Go have that conversation outside, not on my court

reporter's time.

MR. CORBITT: Last thing on my behalf is interim attorney's fees.

THE COURT: I'm sorry?

MR. CORBITT: Last thing on my behalf is interim attorney's fees.

THE COURT: Today that one's denied.

MR. CORBITT: Okay. Thank you for your time.

THE COURT: Get me an order. You guys are excused.

*(Proceedings adjourned)*



# The STATE OF TEXAS
## Marriage License
### COUNTY OF

**COLLIN**

*To Any Person Authorized by the Laws of the State of Texas*
*To Celebrate The Rites of Matrimony in the State of Texas.*

## GREETING:
### YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE



## RITES OF MATRIMONY

*Between*

**AMIR BAGHERKALANTARI**

*and*

**MARYAM PARVIZ KHYAVI**

*and make due return to the Clerk of the County Court of said County within*

*Thirty days thereafter, certifying your action under this license.*

*Witness my official signature and seal of office*

*At office in McKinney, Texas, this,*

*the 4th day of December 2009*

*Stacey Kemp, County Clerk*

*Collin County, Texas*

*By Patricia Crosswhite Deputy*

P-1

*I hereby certify that on the 12 th day of December 2009.*

*At 4 O'Clock p M. I united in Marriage the parties above named.*

Witness *my hand this 12 th day of December 2009.*

A. Ghafforie
<span style="font-size:small">Signature of Person performing Ceremony</span>

ASLAN GHAFFARI
<span style="font-size:small">Typed or printed name of person performing ceremony</span>

*Marriage performed in*

P.H.D in Economi <span style="font-size:small">Title of person performing ceremony</span>

_____Collin_____ *County* 1633 Piedmont Pl. Carrollton, Texas — <span style="font-size:small">Address of person performing ceremony</span>

*Returned and filed for record the _____ day of _____, _____.*

*and recorded the _____ day of _____, _____ in the*

*In Document Number* *Marriage License Record of Collin County*

*Stacey Kemp, County Clerk*

*By_____ Deputy*

15208

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009
at 3:28 PM
Stacey Kemp, County Clerk
By _Patricia Crowley_ Deputy

Returned and Filed for
Record the ____ day
of _____ : _____
Stacey Kemp, County Clerk
By _____ Deputy

Section 2.204 of the Family Code
This license cannot be used prior to:
12/07/2009 3:28 PM

Section 2.201 of the Family Code
Must be used before:
01/04/2010

Section 2.202 of the Family Code
Persons authorized to conduct ceremony.

Printed material distributed as required by
Section 2.009 of the Family Code.

## Groom
Birthday: 07/05/1981
Place of Birth: Tehran, IRAN

## Bride
Birthday: 11/27/1980
Place of Birth: Tehran, IRAN

Return License To

MARYAM PARVIZ KHYAVI
15025 FARMCOTE DR
RICHARDSON, TX 75080

Petitioner's Exhibit 2

DVD – Wedding 12/12/2009

NO. _____

| IN THE MATTER OF | § | IN THE ____ |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | JUDICIAL DISTRICT COURT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████████████████ | § | COLLIN COUNTY, TEXAS |
| A MINOR CHILD | § | |

## SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND

| COUNTY OF COLLIN | § |
| | § |
| STATE OF TEXAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared ROGER ARASH FARAHMAND (hereinafter referred to as "ROGER"), known to me to be the person whose signature is affixed hereto, and, who, after first being duly sworn on his oath did say he is over the age of 18 years, has never been convicted of a felony, and is competent to make this affidavit; that he is the Petitioner in the above entitled and numbered cause; that he has read this AFFIDAVIT, has knowledge of the facts contained herein, and that they are all true and correct.

"I, ROGER ARASH FARAHMAND, am the Petitioner in this case and the Applicant seeking the EMERGENCY MOTION FOR EX PARTE/EXTRAORDINARY RELIEF. That Respondent, MARYAM FARAHMAND (hereinafter "MARYAM"), and I met on June 5, 2012 and married shortly thereafter on July 28, 2012. We have a son named ███████████ ███████████ (hereinafter "████████"), age six (6) months, born ███████████ MARYAM and her sister have had a significant history of instability and mental health issues.

"From the outset, MARYAM's emotional volatility was evident, in private and later in public. That volatility (yelling, screaming, highs and lows) has been observed by numerous family, friends, business associates and partner, as well medical staff and now the police. Despite having a Ph.D. and two Master's Degrees, MARYAM has not held any meaningful employment immediately before, or during, our marriage. It is my understanding that MARYAM had to leave her last place of employment due to mental instability. She applied for short-term disability but was denied.

"During our marriage, MARYAM told me that she went to Green Oaks in 2009 for an attempted suicide. She said she did not remember the exact details, only that she had a "*breakdown*" and overdosed on Xanax. Recently however, she changed her story claiming that it was a "*medication issue*," and that's why she "*overdosed on Xanax.*" MARYAM later sought psychiatric

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 1

*p-3*

counseling through Dr. SCOTT WOOD, M.D. for PTSD, severe self-esteem issues and depression, but per her words, "*he wouldn't do therapy*" and that he "*just gave me medication.*"

"MARYAM has told me that in the past she has been on a variety of pills, including Adderall, Prozac, Xanax and Seroquel but that she hasn't taken them since July 2012. Throughout our marriage, but more recently, MARYAM would have auditory hallucinations when she would not sleep. I don't know if that condition is due to the medications she claimed she wasn't taking or something else. I do know MARYAM once destroyed her car from sleep deprivation (she was also recently in a "hit and run"). According to MARYAM, she fell asleep behind the wheel and did not remember the accident. That the Adderall helps keeps her awake, and she likes it because she "*doesn't eat*" and it lets her "*lose weight.*" (Conflicting with what she previously told me about her past pill usage). That she took Xanax and Melatonin to calm down, so she could go to sleep.

"On November 15, 2013, MARYAM saw Dr. SCOTT WOOD, M.D., and was prescribed Prozac. Since then, MARYAM has refused to take that medication. On December 13, 2013, MARYAM threatened to harm herself, stating she has "*no reason to live;*" that "*I want to kill myself;*" that "*I don't want to look at baby – I just want to kill myself today.*" That "*I have nothing to live for anymore.*" That "*I'm tired. There is nothing I can do.*" She also repeated these things on the December 18. She began banging her head against the wall in front of ███████. (She has also banged her head against several walls before in the past). She spent Saturday and Sunday in bed, and slept the entire time. She told me she was still not taking her Prozac.

"On December 18, 2013, I left for work. MARYAM began blowing up my phone as well as that of my business partner. Following, I returned home with my business partner to find my mom at the house. MARYAM was holding ███████, screaming at the top of her lungs. I came in and MARYAM started screaming and shouting the same things she usually does. My mom tried to calm her to no avail. MARYAM began hitting her head against the wall again. My mom removed our son and went into another room. I began to leave only to be stopped by MARYAM handing me her phone. Her mother was on the other end stating "*she is going to kill herself,*" who then oscillated saying that her daughter was in "*great mental shape.*" MARYAM was now tearing her hair from her head. Then BAHMAN PARVIZ-KHYAVI, her father, arrived. Following, MARYAM tells me "*Now you can be happy. I just took 30 Hydrocodones.*" I immediately put MARYAM in the car and rushed her to PLANO PRESBYTERIAN EMERGENCY.

"On December 18, 2013, MARYAM was involuntarily committed to PLANO PRESBYTERIAN EMERGENCY. There, MARYAM told the staff that she took "*30 Hydrocodone*" because she doesn't "*want want to live anymore.*" MARYAM's father demanded that MARYAM change her story and the reasons why she was there. To blame it on me and marital issues, not her mental health. Her father became furious with her when the nurses left, stating "*don't tell them*" she was "*trying to kill*" herself. That "*these guys are mean*" and "*not trustworthy.*" That "*they will make a record for her.*" That admonition despite her sister, MAHSA PARVIZ, having also attempted suicide, resulting in her hospitalization for having ingested twelve (12) Ambien pills. I told him to stop telling her that. I asked him "*Don't you think she needs help?*" He looked at me angrily and left the room. I could overhear him talking to his wife cursing at me and that I am "*making a record*" for his daughter. He then came back into the room, stating that I needed to go to therapy with her.

<u>SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND</u>
Pg. 2

"I later returned to the ICU, where MARYAM's parents were trying to get her released. They continued to blame the situation on me. They denied that MARYAM took any pills. MARYAM's father said *"how do you know she took any pills?"* I asked him – *"did you see her blood report?"* PRESBYTERIAN then transferred MARYAM to the SEAY CENTER, where she was checked in on Thursday, December 19, 2013 at night remaining until Monday, December 23, 2013 when I picked her up. Because of the toxicity in MARYAM's blood work, the hospital intravenously gave her an antidote for 24 hours and charcoal to absorb it. MARYAM slept for those 24 hours. When she woke, she was sweet, pleasant and asked me to get some personal effects for her from home.

"During that hospitalization, I found in her belongings at least two containers full of different pills, including uppers and downers in her contact case and in her Pamprin bottles. Following her release, I asked MARYAM about the pills. She said they were from before and that *"Pamprin is for cramps."* When I showed her the pictures, she then stated they were Aderall and that she lied. *See Exhibit 2, a fair and accurate depiction of some of the pills I took a picture of.* After her release from the SEAY CENTER and her conversations with her parents, MARYAM changed her story yet again, stating now that the pills were from before we met. Before we got home, MARYAM began repeating the same rage as in the past, yelling and screaming at me. On Friday, December 27, 2013, and following her release, MARYAM demanded the return of those pills – else she would call the police on me.

"At home, MARYAM demanded that I kick my dad and uncle out of the house despite previously agreeing that they could stay (my father had been with us following ▮▮▮▮ birth and my uncle came in for the Christmas holiday). On Christmas Day, I asked my father and uncle to leave to try and placate MARYAM and to calm the situation. They heard her berating me. Rather than our relying on my father to help care for ▮▮▮▮, I was forced to keep ▮▮▮▮ with me at all times. On December 27, 2013, MARYAM stated she would kill herself with an overdose if we went away ▮▮▮▮ and me).

"On December 28, 2013, I left the home with ▮▮▮▮ to go to the office and told MARYAM I would return in thirty (30) minutes. Before I got to work (eight (8) miles away), I received a phone call from my office stating *"your wife is here."* Concerned as I had just left her, I stopped at a nearby police annex to seek guidance on what I should do. While talking with Officer ELLIS, I received a phone call from Richardson Police Department. I let the two officers communicate on my phone. It is my understanding through the police departments that MARYAM contacted Richardson police claiming that I was *"homicidal"* and that I *"took her son."* MARYAM later told me she called the police is because my *"life is in danger."* She later stated she contacted the Richardson police *"bc u ignored me."*

"Based on the involvement of the police, and her deteriorating condition, I felt it prudent to have my business partner and father later check on MARYAM at the house before I returned. (Since then, I decided to myself and ▮▮▮▮ from her). MARYAM however refused to come to or to open the door, so they called the police for a wellness check. Office ELLIS, who I had just met with earlier, came to the house. In the house were broken bottles and stemware as well as vomit. MARYAM sought to blame me, but it is my understanding that Officer ELLIS advised her that he was just with me.

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 3

"She has also made recent baseless allegations to my friends that I was out drunk with our son -- during a baby shower for my friend's newborn child. In response to the latest accusation, I immediately went to the police station to separate fact from fiction. There, I spoke with Office STENSON (Badge No. 8656) and apprised him of the escalating situation. He advised me to contact a lawyer to protect myself; that the matter was civil. Additional proof will be offered in Court to negate her latest wave of accusations. MARYAM's behavior has now risen to a new level, and I am extremely concerned for her and our son's welfare given it is not beneath her to make false accusations.

"In the last twelve (12) hours, I received two (2) "*No Caller ID*" calls at 3:32am and then received thirty-seven (37) "*No Caller ID*" calls through the signing of this AFFIDAVIT. ███████ was asleep in my care. I could hear a guy on the other end making sex noises, moaning saying something to the effect "*I'm jerking off on your face.*" No idea who that was, except to say I have had the same phone number for fifteen (15) years and have never received any calls of the sort. It is my distinct impression that the caller may be related to MARYAM's sister, now that she is back in town from Boston, the same sister who has also had a significant history of emotional problems. This type of behavior is atypical of what her sister has done in the past.

"Today, MARYAM has called and texted me numerous times pleading with me to come home. While I am certainly open to working things out, I don't believe I have recourse other than to seek immediate court intervention for the time being. I feel I am left without recourse as MARYAM's parents are not assisting in helping her get better, MARYAM is not being compliant with therapy or psychotropic medications previously prescribed, and now with the recent baseless accusations – I am having to live a life on eggshells having to constantly document everything about everything.

"███████ is in my possession at this time.

"Consequently, I am requesting immediate possession of and access to our child, without any unsupervised possession by MARYAM, until a hearing can be held in an effort to remove our child from any further emotional and possible physical damage. Additional testimony, evidence, and witnesses will be offered at hearing, to further show that MARYAM's demeanor and temperament is having a detrimental impact on our child. I have reviewed the Temporary Emergency/Ex Parte Order and believe the requests are in the best interest of our child and the least restrictive in terms of requests at this time. I am asking the Court to grant the relief requested against MARYAM to protect our son."

ROGER ARASH FARAHMAND

SUPPORTING AFFIDAVIT OF ROGER ARASH FARAHMAND
Pg. 4

SWORN TO AND SUBSCRIBED BEFORE ME by ROGER ARASH FARAHMAND this the 30th day of December 2013.

_____
Notary Public, State of Texas

My Commission Expires:
November 8, 2017.

BETHANY FANSLER
Notary Public
STATE OF TEXAS
My Comm. Exp. November 18, 2017



P₂

NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE 401ˢᵗ |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | JUDICIAL DISTRICT COURT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ▮▮▮▮▮▮▮▮▮▮▮▮ | § | COLLIN COUNTY, TEXAS |
| A MINOR CHILD | § | |

## ROGER ARASH FARAHMAND'S SUMMARY OF REQUESTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, ROGER ARASH FARAHMAND, Petitioner, who requests that the Court grant the following relief on a temporary basis:

**GRANTED**      **DENIED**

_____      _____      *Conservatorship.* Appointing ROGER ARASH FARAHMAND temporary sole managing conservator and MARYAM FARAHMAND temporary possessory conservator; *or*

_____      _____      In the alternative, appointing ROGER FARAHMAND and MARYAM FARAHMAND temporary joint managing conservators, and appointing ROGER FARAHMAND the temporary conservator who has the exclusive right to designate the primary residence of the child.

_____      _____      *Possession or Access.* ROGER FARAHMAND requests on a temporary basis that MARYAM FARAHMAND be awarded possession of and access to the child as previously ordered (3 days per week, up to two hours at a time). ROGER FARAHMAND should be awarded possession of the child at all other times not otherwise awarded to MARYAM FARAHMAND; *or*

_____      _____      *Supervision.* That MARYAM FARAHMAND's periods of visitation be monitored and continuously supervised by HANNAH'S HOUSE until further order of the Court.

_____      _____      *Inventory and Appraisement.* Both parties are ordered to prepare and exchange sworn inventory and appraisements in conformity with the Texas Family Law Practice Manual within 30 days.

_____      _____      *Appointment of Amicus Attorney.* Ordering an Amicus Attorney to investigate facts and circumstances in this case in order to make additional recommendations before implementing further

ROGER FARAHMAND'S SUMMARY OF REQUESTS
Pg. 1

*P-4*

possession of and access to the child.

_**Alternatively for Social Study.**_ Ordering an independent psychologist to perform a social study to look into the circumstances and condition of ███████████████ and of the home of any person requesting managing conservatorship or possession of ████████████. Costs ordered evenly divided.

_**Psychiatric/Psychological Evaluation.**_ Ordering MARYAM FARAHMAND to undergo a forensic psychiatric and psychological evaluation and Ordering MARYAM FARAHMAND to comply with all recommendations and/or treatment plans from any medical professionals and/or Court appointed experts. MARYAM FARAHMAND is responsible for 100% of those costs.

_**Drug and Alcohol Evaluation.**_ Ordering MARYAM FARAHMAND to submit to a drug and alcohol evaluation and MARYAM FARAHMAND to submit to drug and alcohol counseling as recommended by a licensed psychiatrist, psychologist and/or social worker. MARYAM FARAHMAND is responsible for 100% of those costs.

_**Random UAs.**_ Ordering MARYAM FARAHMAND and ROGER FARAHMAND to submit to random UAs and ETG tests during the pendency of this case. Each side pays his/her own.

_**Hair/Nail test following 3 months.**_ Ordering MARYAM FARAHMAND and ROGER FARAHMAND to submit to a hair follicle test or fingernail test on March 10, 2014. Each side pays his/her own.

_**Disengagement Counseling.**_ Ordering MARYAM FARAHMAND to undergo disengagement counseling.

_**Geographic Restriction.**_ The residence of the child should be restricted to Collin County, Texas.

_**Residence.**_ Awarding ROGER FARAHMAND the exclusive use and possession of the residence located at ████████████ ████████████, its furniture, and furnishings during the pendency of this suit and enjoining MARYAM FARAHMAND from entering and remaining on the premises of the residence, except as authorized by order of this Court and Awarding ROGER FARAHMAND the exclusive use and control of the BMW 7 series motor vehicle and enjoining MARYAM FARAHMAND from entering, operating and/or exercising control over it; and

_**HIPAA RELEASE.**_ Ordering MARYAM FARAHMAND to submit to the taking of his deposition on a date certain.

<u>ROGER FARAHMAND'S SUMMARY OF REQUESTS</u>
Pg. 2

ROGER FARAHMAND requests the Court to dispense with the issuance of a bond, and ROGER FARAHMAND requests after notice and hearing that MARYAM FARAHMAND be temporarily enjoined, pending the further order of this Court, from:

| | | |
|---|---|---|
| _____ | _____ | Using any corporeal discipline on ███████████ |
| _____ | _____ | Using alcohol within seventy-two (72) hours of any possession of or access to the child; |
| _____ | _____ | Using narcotics or prescriptions without medical authorization; and |
| _____ | _____ | Enjoining MARYAM FARAHMAND from communicating with any witnesses in this case for purpose of seeking to change, alter or amend their testimony. |

ROGER FARAHMAND prays that the Court grant the relief requested herein.

Respectfully Submitted,

NACE & MOTLEY, L.L.P.
The Crescent Court
100 Crescent Court, 7th Floor
Dallas, Texas 75201
214-459-8289
214-242-4333 facsimile

By: _____
Bradford Nace
State Bar No. 24007726
Attorney for ROGER FARAHMAND

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on the 10th day of March 2014.

_____
Bradford Nace
Attorney for ROGER FARAHMAND

STATE OF TEXAS

COUNTY OF COLLIN

I, Kimberly Tinsley, Official Court Reporter in and for the 401st District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $624.50 and was paid by Counsel for Petitioner, Roger Farahmand.

WITNESS MY OFFICIAL HAND on this, the 3rd day of April, 2014.

Digitally signed by Kimberly Tinsley
Date: 2014.04.03 22:42:50 -05'00'

Kimberly Tinsley, CSR
Texas CSR #3611
Official Court Reporter
401st District Court
Collin County, Texas
2100 Bloomdale Rd, Suite 30030
McKinney, Texas 75071
Telephone: (972) 548-4247
E-mail: ktinsley@co.collin.tx.us
Expiration: 12/31/15

# ROGER FARAHMAND'S
# RECORD TAB 7

## NO. <u>401-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | |
| MARYAM FARAHMAND | § | 401ST JUDICIAL DISTRICT |
| | § | |
| AND IN THE INTEREST OF | § | |
| | § | |
| ███████████ | § | |
| A MINOR CHILD | § | COLLIN COUNTY, TEXAS |

## ORIGINAL PETITION TO DECLARE MARRIAGE VOID AND IN THE ALTERNATIVE FIRST AMENDED PETITION FOR DIVORCE

*1.     Discovery Level*

Discovery in this case is intended to be conducted under level 2 of rule 190

of the Texas Rules of Civil Procedure.

*2.     Objection to Assignment of Case to Associate Judge*

Petitioner objects to the assignment of this matter to an associate judge for a

trial on the merits or presiding at a jury trial.

*3.     Parties*

This suit is brought by Roger Arash Farahmand, Petitioner.

*4.     Jurisdiction*

Roger Arash Farahmand is domiciled in Texas.

5. *Service*

Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Respondent's attorney of record, Richard J. Corbitt, Law Office of Richard J. Corbitt, P.C., 6440 N. Central Expressway, Suite 402, Dallas, Texas 75206.

6. *Protective Order Statement*

No protective order under Title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

## I.

## ORIGINAL PETITION TO DECLARE MARRIAGE VOID AND SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP

7. *Grounds*

Petitioner and Respondent entered into a purported marriage on July 28, 2012. The purported marriage is void and of no effect under the provisions of section 6.202 of the Texas Family Code because Respondent was already legally married. The prior marriage of Respondent was to Amir Bagherkalantari and occurred on or about December 12, 2009. Respondent's marriage to Amir Bagherkalantari was never dissolved by divorce or annulment or terminated by the death of Amir Bagherkalantari.

8. *Child*

Petitioner and Respondent are parents of the following child of this purported marriage who is not under the continuing jurisdiction of any other court:

Name: ███████████████████
Sex: Male
Birth date: ██████████

There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child the subject of this suit.

Information required by section 154.181(b) of the Texas Family Code is provided as follows: Blue Cross, Blue Shield is in effect for the child.

No property of consequence is owned or possessed by the child the subject of this suit.

The appointment of Petitioner and Respondent as joint managing conservators would not be in the best interest of the child. Roger Arash Farahmand, on final hearing, should be appointed sole managing conservator, with all the rights and duties of a parent sole managing conservator. Maryam Farahmand should be appointed possessory conservator with possession and access as determined appropriate following a psychological evaluation and drug and alcohol evaluation, monitoring and supervision with all the rights and duties of a parent conservator. Roger Arash Farahmand should be designated as the

conservator who has the exclusive right to designate the child's primary residence, along with all other rights and duties of a sole managing conservator.

In the alternative, Roger Arash Farahmand requests that he and Maryam Farahmand be designated joint managing conservators and that he have the exclusive right to designate the primary residence of the child with the exclusive right to make decisions concerning the child's education, the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures, and the exclusive right to consent to psychiatric and psychological treatment of the child. Roger Arash Farahmand requests that Maryam Farahmand be awarded possession and access as the Court deems to be in the best interest of the child, and considering the safety and welfare of the child. Roger Arash Farahmand should be awarded possession of the child at all other times not otherwise awarded to Maryam Farahmand.

In all alternatives, Roger Arash Farahmand requests that payments for the support of the child and medical support should be ordered in an amount supported by the guidelines set forth in the Texas Family Code and paid in the manner specified by the Court. Roger Arash Farahmand requests that the payments for the support of the child survive the death of Maryam Farahmand and become the obligation of Maryam Farahmand's estate. Roger Arash Farahmand also requests that Maryam Farahmand seek and follow all recommendations by a qualified

psychiatrist and psychologist as well as to submit to random drug testing, upon request by either Roger Arash Farahmand and/or qualified testing facility.

9.  *Confirmation of Name*

Respondent's name before the purported marriage was Maryam Parviz-Khyavi, and this former name should be confirmed by the Court as her lawful name.

10.  *Property*

Petitioner requests that the Court find the marriage relationship is meretricious and property acquired or accumulated during the void marriage by the parties should not be treated as community property and not be subject to a just and right division.

11.  *Request for Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Bradford Nace of Nace & Motley, LLC and Ike Vanden Eykel, Rebecca Tillery and the firm of KoonsFuller, P.C., licensed attorneys, to preserve and protect the child's rights. Respondent should be ordered to pay reasonable attorney's fees, expenses, and costs through trial and appeal, and a judgment should be rendered in favor of these attorneys and against Respondent and be ordered paid directly to Petitioner's attorneys, who may enforce the judgment in the attorney's own name. Petitioner requests postjudgment interest as allowed by law.

## II.

## <u>IN THE ALTERNATIVE, FIRST AMENDED PETITION FOR DIVORCE</u>

In the alternative and without waiving any relief requested in the foregoing suit to declare marriage void, Petitioner brings this suit for divorce and files his First Amended Petition for Divorce.

12. *Domicile*

Petitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

13. *Protective Order Statement*

No protective order under title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

14. *Dates of Marriage and Separation*

The parties were married on or about July 28, 2012 and ceased to live together as husband and wife on or about December 30, 2013.

15. *Grounds for Divorce*

The marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

16. *Property*

Petitioner requests the Court to divide their estate in a manner that the Court deems just and right, as provided by law.

17. *Separate Property*

Petitioner owns certain separate property that is not part of the community estate of the parties, and Petitioner requests the Court to confirm that separate property as Petitioner's separate property and estate.

18. *Collin County Standing Order Regarding Children, Property and the Conduct of the Parties*

The Collin County Standing Order Regarding Children, Property and the Conduct of the Parties is attached hereto in compliance with the standing order of the Collin County District Courts and is incorporated herein by reference.

19. *Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Bradford Nace of Nace & Motley, LLC and Ike Vanden Eykel, Rebecca Tillery and the firm of KoonsFuller, P.C., licensed attorneys, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Respondent and in favor of Petitioner for the use and benefit of

Petitioner's attorneys and be ordered paid directly to Petitioner's attorneys, who may enforce the judgment in the attorney's own name. Petitioner requests postjudgment interest as allowed by law.

20. *Prayer*

Petitioner prays that the Court enter its order declaring void the marriage of Petitioner and Respondent.

In the alternative, Petitioner prays that the Court grant a divorce and all other relief requested in this petition.

Petitioner prays for attorney's fees, expenses, and costs as requested above.

Petitioner prays for general relief.

Respectfully submitted,

IKE VANDEN EYKEL
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201
(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

## CERTIFICATE OF SERVICE

I certify that on March ___, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address or by other means set forth in accordance with Rule 21a of the *Texas Rules of Civil Procedure*:

Richard J. Corbitt
Richard J. Corbitt & Associates, P.C.
6440 N. Central Expressway, Suite 402
Dallas, Texas 75206

**REBECCA TILLERY**
Attorney for Petitioner

# ROGER FARAHMAND'S
# RECORD TAB 8

Filed: 4/23/2014 4:10:32 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Amy Mathis Deputy

# KOONSFULLER

*Family Law*

Reputation.
Resources.
Results.

1717 McKinney Avenue
Suite 1500
Dallas, Texas 75202
(214) 871-2727 Office
(214) 871-0196 Facsimile

March 31, 2014

*Via Facsimile: (214)754-0515*
Mr. Richard Corbitt
Attorney at Law
6440 North Central Expressway, Suite 402
Dallas, Texas 75205

> Re:    Cause No. 401-56531-2013; In the Matter of the Marriage of Roger Arash
>         Farahmand and Maryam Farahmand and in the Interest of Farahmand Child

Dear Mr. Corbitt:

Please be advised that Petitioner's request to declare marriage void (i.e. not including any custody matters), with respect to the above-referenced cause, has been set for final hearing on **July 29, 2014** at **9:00 a.m.** in the **401ST Judicial District Court of Collin County, Texas.**

I will be sending you a proposed scheduling order for your consideration.

If you should have any questions, please do not hesitate to contact my office.

Sincerely,

Rebecca Tillery

RAT/cm


cc:    401ST Judicial District Court (*via e-file*)
        Mr. Roger Farahmand
        Mr. Brad Nace

\* \* \* Communication Result Report ( Mar. 31. 2014 1:21PM ) \* \* \*

1) Koons Fuller — Dallas
2)

Date/Time: Mar. 31. 2014 1:20PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 2250 Memory TX | 2147540515 | P. 2 | OK | |

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size
E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

## KOONSFULLER
*Family Law*

Reputation.
Resources.
Results.

1717 McKinney Avenue
Suite 1500
Dallas, Texas 75202
(214) 871-2727 Office
(214) 871-0196 Facsimile

### FAX TRANSMISSION FORM

DATE:     March 31, 2014

TO:       Richard Corbitt
          Attorney at Law

FAX NO.   (214) 754-0515

RE:       Cause No. 401-56531-2013; IMMO Farahmand

FROM:     IKE VANDEN EYKEL/REBECCA TILLERY/Kathy Geoffrion (Paralegal)

TOTAL PAGES TRANSMITTED: ___2___ (including cover page).

SPECIAL MESSAGE:

Letter

IF TRANSMISSION PROBLEMS ARE ENCOUNTERED OR THIS FAX IS NOT RECEIVED COMPLETE CALL (214) 871-2727 AS SOON AS POSSIBLE.

### NOTICE OF CONFIDENTIALITY

This information contained in and transmitted with this facsimile is:

1.    SUBJECT TO THE ATTORNEY/CLIENT PRIVILEGE;
2.    ATTORNEY WORK PRODUCT; OR
3.    CONFIDENTIAL

It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, or use of or reliance upon the information contained in and transmitted with this facsimile by or to anyone other than the recipient designated above by the sender is unauthorized and strictly prohibited. If you have received this facsimile in error, please notify Kathy Geoffrion by telephone at (214) 871-2727 immediately. Any facsimile erroneously transmitted to you should be immediately returned to the sender by U.S. Mail, or if authorization is granted by the sender, destroyed.

# ROGER FARAHMAND'S
# RECORD TAB 9

## CAUSE NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| ROGER ARASH FARAHMAND AND | § § | |
| MARYAM FARAHMAND | § § | 401ST JUDICIAL DISTRICT |
| AND IN THE INTEREST OF | § § | |
| ██████████████████, | § | |
| A MINOR CHILD | § | COLLIN COUNTY, TEXAS |

### AGREED SCHEDULING ORDER

The Court finds that the trial on Petitioner's Petition to Declare Marriage Void is currently scheduled for July 29, 2014. IT IS THEREFORE ORDERED that the deadlines for the discovery and pre-trial matters in this cause of action shall be as follows:

1.   The deadline for designating testifying expert witnesses shall be June 9, 2014;

2.   The deadline to serve any discovery requests shall be May 28, 2014;

3.   The deadline for the close of the discovery period shall be June 27, 2014; and

4.   The deadline for amending pleadings shall be July 15, 2014.

Signed on this the _2_ day of _May_ , 2014.

_____
JUDGE PRESIDING

AGREED:

_____
Rebecca Tillery
Attorney for Roger Arash Farahmand

_____
Robert S. Widner
Attorney for Maryam Farahmand

# ROGER FARAHMAND'S
# RECORD TAB 10

Filed: 5/22/2014 2:16:15 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Mindi Johns Deputy
Envelope ID: 1339906

## NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 401ST JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████  ██████  ██████ | § | COLLIN COUNTY, TEXAS |
| ████████████ A CHILD | § | |

### MARYAM FARAHMAND'S ANSWER TO ORIGINAL PETITION TO DECLARE MARRIAGE VOID AND IN THE ALTERNATIVE FIRST AMENDED PETITION FOR DIVORCE

MARYAM FARAHMAND, Counter-Petitioner, files this Answer to Roger Arash Farahmand's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce.

### 1. *General Denial*

MARYAM FARAHMAND enters a general denial of the claims made in Roger Arash Farahmand's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce and all amendments thereto.

### 2. *Defenses*

MARYAM FARAHMAND and ROGER FARAHMAND entered into a legitimate marriage on or about July 28, 2012. MARYAM FARAHMAND was not previously married at the time she entered into the

1 | P a g e

marriage relationship with ROGER FARAHMAND. Prior to her relationship with ROGER FARAHMAND, MARYAM FARAHMAND and Amir Bagherkalantari had a dating relationship in 2009. Contrary to ROGER FARAHMAND's claim:

A. No Prior Marriage

1. Although a marriage license was issued to Maryam Farahmand and Amir Bagherkalantari in December of 2009, Maryam Farahmand and Amir Bagherkalantari did not get married to each other (formally or informally) within 31 days after the issuance of the license on December 12, 2009. Thus, the marriage license expired pursuant to Section 2.201 of the Texas Family Code (issued prior to September 1, 2013). Further, no license was filed with the Collin County Clerk at any time after December 12, 2009.

2. A formal wedding ceremony did not occur between Maryam Farahmand and Amir Bagherkalantari. In fact, Maryam Farahmand and Amir Bagherkalantari did not cohabitate for more than two weeks, had a fight on the nightof the engagement party, dated sporadically, and ended their dating relationship/engagement completely in August of 2010.

3. Assuming, *arguendo*, that a marriage ceremony had actually occurred on December 12, 2009, the person reflected on the

"marriage license" as the person performing the ceremony was identified as P.H.D. (sic) in economics. Pursuant to Section 2.02 of the Texas Family Code, such a person is not authorized to conduct a marriage ceremony in Texas. Any such marriage would be invalid and the person performing the ceremony could be charged with a misdemeanor offense.

B. No Prior Informal/Common Law Marriage

1. Additionally, should Roger Farahmand attempt to claim an informal marriage between Maryam Farahmand and Amir Bagherkalantari, it has been more than two years since Maryam Farahmand and Amir Bagherkalantari ended their dating relationhip/engagement and no proceedings were initiated within that two-year time period to prove an "informal marriage". Therefore, it is a rebuttable presumption that Maryam Farahmand and Amir Bagherkalantari did not enter into an agreement to be married pursuant to Section 2.401 of the Texas Family Code. Additionally, neither Maryam Farahmand nor Amir Bagherkalantari are and/or have claimed an informal marriage between them. Therefore, Roger Farahmand would not be a proper party to make an informal marriage claim.

2. Maryam Farahmand and Amir Bagherkalantari did not intend to have a present, immediate, and permanent marital relationship prior to or at any time after December of 2009, nor did they agree to be

husband and wife. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex.App.-Houston [14th Dist.] 2011, pet. Denied). An agreement to be married at some time in the future is insufficient to show that a marriage was "present and immediate". See *Aguilar v. State*, 715 S.W.2d 645, 648(Tex.Crim.App.1986); *Texas Employers' Ins. v. Borum*, 834 S.W.2d 395, 399 n.3 (Tex.App.-San Antonio 1992, writ denied).

3. Maryam Farahmand and Amir Bagherkalantari did not live together as husband and wife prior to or at any time after December of 2009.

4. Maryam Farahmand and Amir Bagherkalantari did not represent to others in Texas that they were married prior to or at any time after December of 2009.

C. Roger Farahmand is presumably attempting to raise a prior marriage claim for the purposes of a tactical advantage, to confuse the issues, to deny Maryam Farahmand her community property interests, to deny Maryam Farahmand her community and separate property claims, to illegitimate the child born of the marriage, to harass, embarrass, and annoy Maryam Farahmand, and to increase the costs of litigation.

*3.    Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for MARYAM FARAHMAND to secure the services of Robert S. Widner of the Widner Family Law Group, a licensed attorney, to prepare and defend this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Counter-Respondent an din favor of Counter-Petitioner for the use and benefit of Counter-Petitioner's attorney and be ordered paid directly to the Counter-Petitioner's attorney, who may enforce the judgment in the attorney's own name. Counter-Petitioner requests post-judgment interest as allowed by law.

## 4.    *Prayer*

MARYAM FARAHMAND prays that Petitioner take nothing by his suit, that the Court deny Petitioner's request to declare the parties' marriage void, that the Court affirm MARYAM FARAHMAND's defenses, and that MARYAM FARAHMAND be granted all relief requested in this Answer.

MARYAM FARAHMAND prays for attorney's fees, expenses, costs, and interest as requested above.

MARYAM FARAHMAND prays for general relief.

Respectfully submitted,

Widner Family Law Group
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
Tel: (972) 979-5700
Fax: (972) 692-8951

Robert S. Widner

By: _____
       Robert S. Widner
       Attorney for Counter-Petitioner
       State Bar No. 00792092
       Email: robertwidner@gmail.com

## Certificate of Service

I certify that a true and correct copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on May 22, 2014.

Robert S. Widner

_____
Robert S. Widner
Attorney for Maryam Farahmand

# ROGER FARAHMAND'S
# RECORD TAB 11

Filed: 6/30/2014 12:38:48 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Kim Sherrin Deputy
Envelope ID: 1680988

## CAUSE NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| .AND | § | 401st JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ██████████████████ , | § | |
| A MINOR CHILD. | § | COLLIN COUNTY, TEXAS |

### RESPONDENT'S FIRST SUPPLEMENTAL AND AMENDED COUNTER-PETITION FOR DIVORCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Maryam Farahmand, the Respondent and Counter-Petitioner in the above-styled and numbered cause, and files this First Supplemental and Amended Counter-Petition for Divorce. In support of thereof, Maryam Farahmand would respectfully show the Court as follows:

### 1. DISCOVERY LEVEL

Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

---

Respondent's First Supplemental and Amended Counter-Petitioner for Divorce          **Page 1**

## 2. PARTIES

This suit is brought by MARYAM FARAHMAND, Counter-Petitioner. The last three numbers of MARYAM FARAHMAND's driver's license number are 351 and the last three number of MARYAM FARAHMAND's Social Security number are 203.

ROGER ARASH FARAHMAND is Counter-Respondent. ROGER ARASH FARAHMAND may be served by and through his attorneys of record identified in Section/Paragraph Number 4 below as well as the Certificate of Service below.

## 3. DOMICILE

Counter-Petitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

## 4. SERVICE

Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Counter-Respondent's attorneys of record:

Mr. Ike Vanden Eykel
Ms. Rebecca Tillery
Koons Fuller, P.C.
1717 McKinney Avenue, Suite 1500
Dallas, Texas, 75202

Mr. Bradford Nace
Nace & Motley, LLC
100 Crescent Court, 7th Floor
Dallas, Texas, 75201

## 5. PROTECTIVE ORDER STATEMENT

No protective order under Title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

## 6. DATES OF MARRIAGE AND SEPARATION

The parties were married on or about July 28, 2012, and have ceased to live together as husband and wife.

## 7. GROUNDS FOR DIVORCE

The marriage has become insupportable because of discord or conflict of personalities between Counter-Petitioner and Counter-Rrespondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

Counter-Respondent Roger Farahmand is guilty of cruel treatment toward Counter-Petitioner Maryam Farahmand of a nature that renders further living together insupportable.

## 8. CHILD OF THE MARRIAGE

Counter-Petitioner and Counter-Respondent are parents of the following child of this marriage who is not under the continuing jurisdiction of any other

Court:

Name:           ███████████████████

Sex:            Male

Birth Date:     ████████████

There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child the subject of this suit.

The father is Counter-Respondent, ROGER ARASH FARAHMAND. Counter-Petitioner and Counter-Respondent became married via a formal marriage on or about July 27, 2012. If, for any reason, the marriage by and between Counter-Petitioner and Counter-Respondent is declared void, Counter-Respondent voluntarily identified himself as the father on the birth certificate, has asserted his paternity of the child to multiple third parties, and has judicially admitted himself as the father of the child.

## 9.    MINOR CHILD'S PROPERTY

No property of consequence is owned or possessed by the child the subject of this suit.

## 10.    HEALTH INSURANCE INFORMATION

Information required by Section 154.181(b) of the Texas Family Code will be provided.

11. **ADJUDICATION OF PARENTAGE/SAPCR**

A. **AGREEMENT**

Counter-Petitioner believes that she and Counter-Respondent will enter into a written agreement containing provisions for conservatorship of, possession of, access to, and support of the child. If such an agreement is not made, Counter-Petitioner requests the Court to make orders for conservatorship of, possession of, access to, and support of the child, as requested herein.

B. **PRIMARY RESIDENCE; SUPPORT**

Counter-Petitioner should be designated as the conservator who has the exclusive right to designate the primary residence of the child. Counter-Respondent should be ordered to make payments for the support of the child and to provide medical child support in the manner specified by the Court. Counter-Petitioner request that the payments for the support of the child survive the death of Counter-Respondent and become the obligations of Counter-Respondent's estate.

C. **JOINT MANAGING CONSERVATORS & SUPPORT**

Counter-Petitioner and Counter-Respondent, on final hearing, should be

appointed joint managing conservators, with all the rights and duties of a parent conservator.

Counter-Petitioner should be designated as the conservator who has the exclusive right to designate the primary residence of the child. The residence of the child should be restricted to Collin County and counties contiguous to Collin County, Texas. Counter-Petitioner should be the sole party to be allowed to retain the child's passport and Counter-Respondent should not be allowed to remove the child from the State of Texas. Counter-Respondent should be ordered to make payments for the support of the child and to provide medical child support in the manner specified by the Court. Counter-Petitioner requests that the payments for the support of the child survive the death of Counter-Respondent and become the obligations of Counter-Respondent's estate.

### E. SECURITY FOR POSSESSION AND ACCESS

Counter-Respondent may violate the Court's orders relating to Counter-Petitioner's possessory interest in the child. Counter-Petitioner requests the Court to order Counter-Respondent to execute a bond or deposit in a reasonable amount, conditioned on Counter-Respondent's compliance with the Court's orders concerning possession and access to the child.

## F. INTERNATIONAL ABDUCTION

Counter-Petitioner requests the Court to determine whether there is a risk of international abduction of the child by Counter-Respondent and to take such measures as are necessary to protect the child.

## G. LIFE SUPPORT

Counter-Petitioner requests the Court to order Respondent to obtain and maintain a life insurance policy payable to Counter-Petitioner for the benefit of the child to be applied toward Respondent's support obligation under the child support order in the event of Respondent's death.

## H. RESPONDENT COMMITTED FAMILY VIOLENCE

Counter-Respondent has a history or pattern of committing family violence during the two-year period preceding the date of filing of this suit. Counter-Petitioner requests the Court to deny Counter-Respondent access to the child. Alternatively, if the Court finds that awarding Counter-Respondent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child, Counter-Petitioner requests that the Court render a possession order that is designed to protect the safety and well-

being of the child and any other person who has been a victim of family violence committed by Counter-Respondent, including, but not limited to, ordering that the periods of access be continuously supervised by an entity or person chosen by the Court, ordering that the exchange of possession of the child occur in a protective setting, ordering Counter-Respondent to refrain from the consumption of alcohol or a controlled substance within the twelve (12) hours before or during the period of access to the child, and ordering Counter-Respondent to attend and complete an anger management and co-parenting program or, if such a program is not available, to complete a course of treatment with a mental health professional.

## 12.    DIVISION OF COMMUNITY PROPERTY

### A.    AGREEMENT

Counter-Petitioner believes that Counter-Petitioner and Counter-Respondent will enter into a written agreement for the division of their estate. If such an agreement is made, Counter-Petitioner requests the Court to approve the agreement and divide their estate in a manner consistent with the agreement. If such an agreement is not made, Counter-Petitioner requests the Court to divide their estate in a manner that the Court deems just and right, as provided by law.

## B.    EQUITIES FAVORING COUNTER-PETITIONER

Counter-Petitioner should be awarded a disproportionate share of the parties' estate for the following reasons including, but not limited to:

(1)    fault in the breakup of the marriage;

(2)    benefits the innocent spouse may have derived from the continuation of the marriage;

(3)    disparity of earning power of the spouses and their ability to support themselves;

(4)    cruel treatment by Counter-Respondent toward Counter-Petitioner;

(5)    community indebtedness and liabilities;

(6)    tax consequences of the division of property;

(7)    earning power, business opportunities, capacities, and abilities of the spouses;

(8)    nature of the property involved in the division;

(9)    attorney's fees to be paid;

(10)    the size and nature of the separate estates of the spouses' estates;

(11) conversion of community property by Counter-Respondent;

(12) economic distress committed by Counter-Respondent;

(13) forgery committed by Counter-Respondent or his agents, affiliates, or other;

(14) fraudulent transfer of community property;

(15) actual fraud;

(16) breach of fiduciary duty;

(17) business fraud;

(18) groundless pleading under Texas Rules of Civil Procedure Rule 13; and

(19) Frivolous pleading under Texas Civil Practice and Remedies Code §10.001.

## 13. REIMBURSEMENT

### A. COUNTER-RESPONDENT'S SEPARATE ESTATE TO REIMBURSE COMMUNITY ESTATE

1. Counter-Petitioner requests the Court to reimburse the community estate for funds or assets expended by the community estate for the benefit of Counter-Respondent's separate estate. The community estate has not

been adequately compensated for or benefited from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

2.     Counter-Petitioner requests the Court to reimburse the community estate for the value of community time, toil, talent and effort expended by Counter-Petitioner to benefit or enhance Counter-Respondent's separate estate. The community estate was not adequately compensated for Counter-Petitioner's use of community time, talent, toil and effort beyond what was reasonably necessary to maintain, manage, and preserve Counter-Respondent's separate estate. The failure of the Court to allow and award such reimbursement to the community estate will result in the unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

3.     Counter-Petitioner requests the Court to reimburse the community estate for funds or assets expended by the community estate for payment of unsecured liabilities of Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefitted from

the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

4.  The community estate has expended funds or assets to make capital improvements on property claimed by Counter-Respondent as separate property, giving rise to a claim for reimbursement in favor of the community estate and against Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

5.  The community estate is or was obligated on a debt incurred during the marriage for the acquisition of, or capital improvements to, property and secured by a lien on community property. Counter-Petitioner's separate estate has expended funds or assets for the payment of that debt. Those expenditures have resulted in the reduction of the principal of that debt, giving rise to a claim for reimbursement in favor of Counter-Petitioner's separate estate and against the

community estate. Those expenditures resulted in a direct benefit to the community estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of the community estate at the expense of Counter-Petitioner's separate estate.

6. Counter-Respondent is or was obligated on a debt incurred during the marriage for the acquisition of, or capital improvements to, property and secured by a lien on property claimed by Counter-Respondent as separate property. The community estate has expended fund or assets for payment of that debt. Those expenditures have resulted in the reduction of the principal of those debts, giving rise to a claim for reimbursement in favor of the community estate and against Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. The community estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of the community estate.

**B. COMMUNITY ESTATE TO REIMBURSE COUNTER-PETITIONER'S SEPARATE ESTATE**

1. Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for the benefit of the community. Those expenditures resulted in a direct benefit to the community estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of the community estate at the expense of Counter-Petitioner's separate estate.

2. Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for payment of unsecured liabilities of the community estate. Those expenditures resulted in a direct benefit to the community estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust

enrichment of the community estate at the expense of Counter-Petitioner's separate estate.

**C.** **COUNTER-RESPONDENT'S SEPARATE ESTATE TO REIMBURSE COUNTER-PETITIONER'S SEPARATE ESTATE**

1.    Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for the benefit of Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

2.    Counter-Petitioner requests the Court to reimburse Counter-Petitioner's separate estate for funds or assets expended by Counter-Petitioner's separate estate for payment of unsecured liabilities of Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been

adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

3.     Counter-Petitioner's separate estate has expended funds or assets to make capital improvements on property claimed by Counter-Respondent as separate property, giving rise to a claim for reimbursement in favor of Counter-Petitioner's separate estate and against Counter-Respondent's separate estate. Those expenditures resulted in a direct benefit to Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

4.     Counter-Respondent is or was obligated on a debt incurred during the marriage for the acquisition of, or capital improvements to, property and secured by a lien on property claimed by Counter-Respondent as separate property, Counter-Petitioner's separate estate has expended funds or assets for payment of

that debt. Those expenditures have resulted in the reduction of the principal of that debt, giving rise to a claim for reimbursement in favor of Counter-Petitioner's separate estate and against Counter-Respondent's separate estate. Counter-Petitioner's separate estate has not been adequately compensated for or benefitted from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to Counter-Petitioner's separate estate will result in an unjust enrichment of Counter-Respondent's separate estate at the expense of Counter-Petitioner's separate estate.

## 14. SEPARATE PROPERTY

Counter-Petitioner may own certain separate property that is not part of the community estate of the parties, and Counter-Petitioner requests the Court to confirm that separate property as Counter-Petitioner's separate property and estate.

## 15. REQUEST FOR TEMPORARY RESTRAINING ORDERS, TEMPORARY ORDERS, AND TEMPORARY INJUNCTION

Counter-Petitioner requests the Court, after notice and hearing, to dispense with the issuance of a bond, to make the Collin County Standing Order into a temporary injunction and to issue any other temporary orders and appropriate temporary injunctions for the preservation of the property and protection of the

parties and for the safety and welfare of the child of the marriage as deemed necessary and equitable.

## A. ADDITIONAL INJUNCTIONS

Additionally, Counter-Petitioner requests that the Court enjoin Counter-Respondent from the following:

1. Filing any suits or threatening to file any suits against witnesses or family members of Counter-Petitioner.

## B. AUTHORIZATIONS

Counter-Petitioner requests that Counter-Respondent be authorized only as follows:

a. To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation, and medical care;

b. To make expenditures and incur indebtedness for reasonable attorney's fees and expenses I connection with this suit;

c. To make withdrawals from accounts in financial institutions only for the purposes authorized by the Court's order; and

d. To engage in acts reasonable and necessary to conduct

Respondent's usual business and occupation.

## C. REQUEST FOR TEMPORARY ORDERS CONCERNING USE OF PROPERTY

Counter-Petitioner requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders and issue any appropriate temporary injunctions respecting the temporary use of the parties' property as deemed necessary and equitable, including but not limited to the following:

Awarding Counter-Petitioner exclusive use and control of the 2013 BMW X3 and enjoining Counter-Respondent from entering, operating, or exercising control over it.

Awarding Counter-Petitioner the exclusive use of her personal belongings, clothing, and personal items to be retrieved by Counter-Petitioner by a date certain.

## D. REQUEST FOR TEMPORARY ORDERS

Counter-Petitioner requests the Court, after notice and hearing, to dispense with the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions for the safety and welfare of the child of the marriage as deemed necessary and equitable, including but not limited to the

following:

(1) Ordering a pretrial conference to simplify the issues in this case and determine the stipulations of the parties and for any other matters the Court deems appropriate.

(2) Ordering the parties to participate in an alternative dispute resolution process before trial of this matter.

(3) Ordering preparation of a social study into the circumstances and condition of the child and of the home of any person requesting conservatorship of, possession of, or access to the child.

(4) Ordering the psychological evaluation of Counter-Respondent.

(5) Ordering the parties to attend a parent education and family stabilization course.

(6) Ordering Counter-Respondent to produce copies of income tax returns for tax years 2010, 2011, 2012, 2013, and 2014 a financial statement, and current pay stubs by a date certain.

(8) Ordering Counter-Respondent to execute all necessary releases required by Counter-Petitioner to obtain any discovery allowed

by the Texas Rules of Civil Procedure.

(9) Ordering Counter-Respondent to execute all necessary releases pursuant to the Health Insurance Portability and Accountability Act (HIPAA) and 45 C.F.R. Section 164.508 to permit Petitioner to obtain health-care information regarding the children.

(10) Ordering Counter-Respondent to provide a sworn inventory and appraisement of all the separate and community property owned or claimed by the parties and all debts and liabilities owned by the parties substantially in the form and detail prescribed by the *Texas Family Law Practice Manual* 3rd ed.), form 7-1.

(11) Appointing Counter-Petitioner and Counter-Respondent temporary joint managing conservators, and designating Counter-Petitioner as the conservator who has the exclusive right to designate the primary residence of the child.

(12) Restricting the residence of the child to Collin County and counties contiguous to Collin County, Texas.

(13) Ordering appropriate possession and access of the child

considering, inter alia, the age of the child, the ability of the parents to provide care for the child, and the living arrangements of each parent.

(14) Ordering that Counter-Respondent utilize a deep lung device on any vehicle in which he transports the child.

(15) All passports, American and Iranian, for this child will be surrendered into the registry of the Court.

(16) Prohibiting the child to be removed from the State of Texas.

E.    **TEMPORARY INTERIM ATTORNEY'S FEES AND SUPPORT**

Counter-Petitioner requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders and issue any appropriate temporary injunctions regarding attorney's fees and support as deemed necessary and equitable including, but not limited to, the following:

(1) Counter-Petitioner request that R Counter-espondent be ordered to pay reasonable interim attorney's fees and expenses including, but not limited to, fees for appraisals, accountants, actuaries, and so forth. Counter-Respondent is to in control of

sufficient community assets to pay attorney's fees and anticipated expenses.

(2) Counter-Petitioner has insufficient income for support, and Counter-Petitioner requests the Court to order Counter-Respondent to make payments for the support of Counter-Petitioner until a final decree is signed.

(3) Counter-Petitioner is not in control of sufficient community assets to pay attorney's fees and anticipated expenses.

(4) Ordering Petitioner to reinstate any and all credit cards and bank accounts that Counter-Petitioner had use and enjoyment of thirty (30) days prior to the filing of the divorce on or about December 30, 2013.

(5) Order Counter-Respondent to reinstate Maryam Farahmand's health insurance. Same was cancelled within days of Counter-Respondent filing the Petition for Divorce. Alternatively, order Counter-Respondent to pay one hundred percent (100%) of the costs associated with Counter-Petitioner obtaining health insurance.

**16.** **REQUEST FOR PERMANENT INJUNCTION**

Counter-Petitioner requests the Court, after trial on the merits, to grant any and all necessary permanent injunctions to ensure the welfare and safety of the parties.

**17.** **ADDITIONAL CAUSES OF ACTION/THEORIES OF RECOVERY**

    **A.** **CAUSE OF ACTION FOR INTENTIONAL, KNOWING, OR RECKLESS BODILY INJURY**

ROGER ARASH FARAHMAND, on a continuing basis, intentionally inflicted emotional distress on MARYAM FARAHMAND when one ROGER ARASH FARAHMAND acted intentionally or recklessly, through extreme and outrageous conduct, proximately causing severe emotional distress to MARYAM FARAHMAND. Emotional distress means highly unpleasant mental reactions, such as grief, shame, humiliation, embarrassment, anger, disappointment and worry. Severe means that the distress inflicted is so extreme that a reasonable man or woman could not be expected to endure it without undergoing unreasonable suffering. MARYAM FARAHMAND requests actual damages for the past and future value of severe emotional distress resulting from such conduct. *Twyman v.*

*Twyman*, 855 S.W. 2d. 619 (Tex. 1993); *Massey v. Massey*, 8075 S.W. 2d 391 (Tex.App. - Houston [1st Dist.] 1990, writ. denied). MARYAM FARAHMAND pleads intentional infliction of emotional distress as a continuing tort under *Newton v. Newton*, 895 S.W. 2d 503, 506 (Tex. Civ. App.-Forth Worth 1995, no writ). ROGER ARASH FARAHMAND, by hiring investigator, hiring false investigators, by suing MARYAM FARAHMAND's mother, by having investigators "pat down" the baby for listening devices at the end of a visitation, by sending false private investigators to follow MARYAM FARAHMAND, has engaged in a process of intimidation intended to cause intentional infliction of emotional distress.

B.   **CAUSE OF ACTION FOR THREAT OF IMMINENT BODILY INJURY**

Counter-Respondent intentionally or knowingly threatened Counter-Petitioner, which placed Counter-Petitioner in fear or apprehension of imminent bodily injury.

C.   **CAUSE OF ACTION FOR OFFENSIVE OR PROVOCATIVE PHYSICAL CONTACT**

Counter-Respondent intentionally or knowingly caused physical contact with Counter-Petitioner, when Counter-Respondent knew or should have

reasonably believed that Counter-Petitioner would regard such contact as offensive or provocative.

**D.    CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Counter-Respondent intentionally or recklessly engaged in a pattern of extreme and outrageous conduct that caused Counter-Petitioner to suffer severe emotional distress.

**E.    ACTUAL DAMAGES FOR RESULTING PERSONAL INJURIES**

As a direct and proximate result of Counter-Respondent's wrongful conduct alleged above, Counter-Petitioner has suffered certain damages including, but not limited to, the following:

1.    loss of earnings in the past;

2.    loss of earning capacity, diminution of earning capacity, or both that in reasonable probability will be suffered in the future;

3.    physical pain, suffering, nd mental anguish in the past;

Petitioner brings this suit for these damages, which are within the jurisdictional limits of the Court.

## F. CONVERSION.

MARYAM FARAHMAND owned personal property and ROGER ARASH FARAHMAND proximately caused injury to MARYAM FARAHMAND through his exercise of dominion and control over MARYAM FARAHMAND's personal property or his wrongful refusal to return MARYAM FARAHMAND's personal property upon her demand. ROGER ARASH FARAHMAND thereafter, transferred the personal property to unknown third parties and/or entities of Counter-Respondent. MARYAM FARAHMAND seeks actual and exemplary damages resulting from ROGER ARASH FARAHMAND's conduct. *Connell v. Connell*, 889 S.W. 2d 534 (Tex. App. - San Antonio 1994, writ denied).

## G. ECONOMIC DURESS.

ROGER ARASH FARAHMAND threatened MARYAM FARAHMAND that he would commit financial acts which he had no legal right to do. Such threat was of such character as to destroy the free agency of MARYAM FARAHMAND. Her free will was overcome and it caused her to do that which she would not otherwise have done, and which she was not legally bound to do. The restraint caused by such threats was eminent and MARYAM FARAHMAND had no present means of protection. MARYAM FARAHMAND seeks actual and

exemplary damages resulting from ROGER ARASH FARAHMAND's conduct. *Matthews v. Matthews*, 725 S.W. 2d 275 (Tex. App. - Houston [1st Dist.] 1987, writ ref'd n.r.e.).

### H. FORGERY

ROGER ARASH FARAHMAND intentionally caused his sister to forge MARYAM FARAHMAND's name to checks and/or documents, or cause confusion as to her identity and she was harmed by this intentional misrepresentation. "Forgery," as that term is used herein, means to alter, make, complete, execute or authenticate any writings so that it purports to be the act of another who did not authorize that act, done with the intent to defraud or harm another. Forgery is an unlawful and unconscionable act which common law court may provide a civil remedy. MARYAM FARAHMANDs seeks actual and exemplary damages resulting from ROGER ARASH FARAHMAND's conduct. *Saxer v. Nash Phillips-Copus Co., Real Estate*, 678 S.W. 2d 736 (Tex. Civ. App. - Tyler 1984, writ ref'd n.r.e). Both Chase Bank, and on information and belief, Farmers & Merchants Bank located in Wisconsin, and Jocelyn McGregor from Chase Bank and Paul Kujawa have conspired with Roger Farahmand, along with Mary Wise.

## I.    FRAUDULENT TRANSFERS OF COMMUNITY PROPERTY

During the parties' marriage, ROGER ARASH FARAHMAND transferred community property in violation of the Texas Uniform Fraudulent Transfer Act and Texas Family Code. ROGER ARASH FARAHMAND transferred certain community property with actual intent to hinder and defraud MARYAM FARAHMAND, who brings this cause of action within one year from the date of discovery. MARYAM FARAHMAND is a creditor of ROGER ARASH FARAHMAND because she has various claims against ROGER ARASH FARAHMAND arising before or within a reasonable time after the transfers were made. Furthermore, ROGER ARASH FARAHMAND retained actual and constructive possession and control of the property after transfer. The combined transfers constitute a substantial part of the community estate. MARYAM FARAHMAND requests that the Court set aside ROGER ARASH FARAHMAND's conveyance of community property. Tex. Bus. & Com. Code Ann., § 24.005(a)(1); Tex. Fam. Code Ann., §6.707. Both Chase Bank, and on information and belief, Farmers & Merchants Bank located in Wisconsin, and Jocelyn McGregor from Chase Bank and Paul Kujawa have conspired with Roger Farahmand. Mary Wise has also conspired and assisted.

## J.    ACCOUNTING

ROGER ARASH FARAHMAND has spent money on or transferred money or property to third parties, escapades, and ventures, and hidden or concealed community assets. A legal and equitable accounting is necessary to determine the size of the community estate and provide an equitable distribution. MARYAM FARAHMAND seeks actual and exemplary damages resulting from ROGER ARASH FARAHMAND's conduct. *Huel v. DeShazo*, 922 S.W. 2d 920, 923 (Tex. 1996); *Hutchings v. Chevron U.S.A, Inc.*, 862 S.W. 2d 752, 762 (Tex. App. - El Paso 1993, writ denied).

## K.    ACTUAL FRAUD ON THE PERSON AND PROPERTY

ROGER ARASH FARAHMAND intentionally plotted and carried out a plan to actually defraud MARYAM FARAHMAND personally, the community estate, and MARYAM FARAHMAND's separate property estate. ROGER ARASH FARAHMAND made material representations to MARYAM FARAHMAND that were false. ROGER ARASH FARAHMAND knew these representations were false, or ROGER ARASH FARAHMAND made them recklessly without knowledge of their truth and as a positive assertion. ROGER ARASH FARAHMAND made these representations with the intention that

MARYAM FARAHMAND would act on them. MARYAM FARAHMAND acted in reliance on these representations and as a consequence she and the community estate and MARYAM FARAHMAND's separate property estate suffered injury and damage. Such conduct proximately caused injury, loss or damage to MARYAM FARAHMAND, the community estate and MARYAM FARAHMAND's separate property estate, for which she seeks judgment against ROGER ARASH FARAHMAND for actual damages including pre and post judgment interest. MARYAM FARAHMAND requests the court to apply the principles of law in *Schlueter v. Schlueter*, 975 S.W.2d 584 (Tex. 1998) and *Vickery v. Vickery*, 999 S.W. 2d 342 (Tex. 1999) petition for review denied, only dissent published [fraud on the person and property], in making calculations of actual damages. In doing the acts alleged, ROGER ARASH FARAHMAND acted wantonly and with malice toward MARYAM FARAHMAND and the community estate. MARYAM FARAHMAND seeks exemplary damages for herself and the community estate for this wanton and malicious conduct. *Land v. Marshall*, 426 S.W.2d 841 (Tex. 1986); *Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1965); Horlock v. Horlock, 535 S.W.2d 52 (Tex. Civ. App. – Houston [14th Dist. 1975, writ dism'd). To the extent *Schlueter v. Schlueter, supra*, is applicable. MARYAM

FARAHMAND requests the court to quantify the amount of damages to the community estate and apply the damage calculations in making a just and right division of community property. Both Chase Bank, and on information and belief, Farmers & Merchants Bank located in Wisconsin, and Jocelyn McGregor from Chase Bank and on information and belief, Paul Kujawa have conspired with Roger Farahmand. Mary Wise has also conspired and assisted.

## L.   BREACH OF FIDUCIARY DUTY UNDER THE TRUST FUND DOCTRINE

ROGER ARASH FARAHMAND, as MARYAM FARAHMAND's spouse, had a fiduciary duty with and to MARYAM FARAHMAND. ROGER ARASH FARAHMAND held MARYAM FARAHMAND's separate property in trust for her. ROGER ARASH FARAHMAND commingled community estate property with MARYAM FARAHMAND's separate estate property to the extent that it is not traceable or distinguishable from the community property estate of John and MARYAM FARAHMAND. ROGER ARASH FARAHMAND's fiduciary duty to MARYAM FARAHMAND casts on him the burden to disclose such facts as to distinguish his own property and to ensure a fair division of the property. Absent such proof, ROGER ARASH FARAHMAND commingled community property interests become a part of MARYAM FARAHMAND's

separate property. Thus, MARYAM FARAHMAND requests that the Court award ROGER ARASH FARAHMAND's community property interests in the commingled property to MARYAM FARAHMAND's separate estate. *Farrow v. Farrow*, 238 S.W. 2d 255 (Tex. Civ. App. - Austin 1951, no writ). Both Chase Bank, and on information and belief, Farmers & Merchants Bank located in Wisconsin, and Jocelyn McGregor from Chase Bank and Paul Kujawa have conspired with Roger Farahmand. Mary Wise has also conspired and assisted.

**M.   BREACH OF FIDUCIARY RELATIONSHIP - BUSINESS AND PERSONAL**

R ROGER ARASH FARAHMAND had a fiduciary relationship with and wife MARYAM FARAHMAND, both inside the marriage relationship, and outside, regardless of their marriage, and owed to her a fiduciary duty of utmost good faith and fair dealing. As a result of their fiduciary relationship MARYAM FARAHMAND reposed a special confidence in her husband and attorney ROGER ARASH FARAHMAND, in both roles. ROGER ARASH FARAHMAND had a duty in equity and in good conscience to act in good faith and with due regard for MARYAM FARAHMAND's interests.       However, ROGER ARASH FARAHMAND, in violation of his duty to his wife, MARYAM FARAHMAND, breached that duty many times. Both Chase Bank, and on information and belief,

Farmers & Merchants Bank located in Wisconsin, and Jocelyn McGregor from Chase Bank and Paul Kujawa have conspired with Roger Farahmand. Mary Wise has also conspired and assisted.

## N.    BUSINESS FRAUD & CONSTRUCTIVE TRUST

MARYAM FARAHMAND was the sole officer and director of various pharmaceutical companies. ROGER ARASH FARAHMAND, as her attorney, wrongfully removed her from this position in violation of the standing orders and temporary orders of this court. He had a fiduciary duty to MARYAM FARAHMAND as her attorney and under the "special facts" rule. These actions were a producing cause of damage to MARYAM FARAHMAND for which she seeks recovery. MARYAM FARAHMAND seeks actual and exemplary damages resulting from the conduct of ROGER ARASH FARAHMAND. *Weir v. King*, 166 S.W.2d 187 (Tex. Civ. App. – Dallas 1942, writ ref'd w.o.m); *Buckner v. Buckner*, 85 S.W.2d 877 (Tex. App. – Tyler 1991, n.w.h.); *Miller v. Miller*, 700 S.W.2d 941 (Tex. App. – Dallas 1985, writ ref'd n.r.e.). ROGER ARASH FARAHMAND has expended community funds to purchase property which he has put in the names of third party "DBAs" such as his family and his corporate entities. These transactions were done to conceal assets from MARYAM FARAHMAND, during

the course of this divorce. A constructive trust should be imposed on each company and/or property in favor of MARYAM FARAHMAND or, in the alternative; a secured judgment for actual damages should be awarded to MARYAM FARAHMAND and against ROGER ARASH FARAHMAND. *Young v. Young*, 168 S.W.3d 276 280, 282 (Tex. App. – Dallas 2005, no pet.). ROGER ARASH FARAHMAND is also in contempt for these violations and should be put in jail. Both Chase Bank, and on information and belief, Farmers & Merchants Bank located in Wisconsin, and Jocelyn McGregor from Chase Bank and Paul Kujawa have conspired with Roger Farahmand. Mary Wise has also conspired and assisted.

## O. PRAYER

The conduct committed by Respondent against Petitioner is the type of conduct evidencing actual malice on Respondent's part that allows the imposition of exemplary damages. Petitioner additionally brings this suit for these damages, which are within the jurisdictional limits of this Court.

Petitioner prays for judgment against Respondent in a sum within the jurisdictional limits of this Court for her actual damages as alleged, exemplary damages, for prejudgment and post-judgment interest as allowed by law, for costs

of court, and for general relief.

## 18. ATTORNEY'S FEES, EXPENSES, COSTS, AND INTEREST

It was necessary for Counter-Petitioner to secure the services of the Law Office of Richard J. Corbitt, Robert S. Widner, and Dawn M. Grams, licensed attorneys, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Counter-Respondent and in favor of Counter-Petitioner for the use and benefit of Counter-Petitioner's attorney and be ordered paid directly to Counter-Petitioner's attorney, who may enforce the judgment in the attorney's own name. Counter-Petitioner requests post-judgment interest as allowed by law.

## 19. MAINTENANCE

Counter-Petitioner requests the Court to order that she be paid postdivorce maintenance for a reasonable period in accordance with chapter 8 of the Texas Family Code. Counter-Petitioner requests the Court to issue an order for withholding from Counter-Respondent's wages for this maintenance.

## 20. NOTIFICATION OF CREDITORS

It should be ordered that each party shall send to the other party, within three (3) days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

## 21. NOTIFICATION OF CHANGE OF ADDRESS OR EMPLOYMENT

It should be ordered that Respondent notify this Court and Petitioner by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven (7) days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of Respondent and the name and address of her current employer, whenever that information becomes available.

## 22. SANCTIONS AND ATTORNEY'S FEES ARE APPROPRIATE

### A. GROUNDLESS PLEADING UNDER TEXAS RULES OF CIVIL PROCEDURE RULE 13

Counter-Petitioner asks the court to impose appropriate sanctions against Counter-Respondent or, alternatively, his attorneys of record, Bradford Nace, Ike Vanden Eykel, and Rebecca Tillery, for filing the groundless and frivolous

pleading of an alleged prior marriage of Counter-Petitioner.

Pursuant to TEXAS RULES OF CIVIL PROCEDURE Rule 13, the court can impose sanctions on a person who signed a pleading in violation of Rule 13 of the TEXAS RULES OF CIVIL PROCEDURE. A pleading is sanctionable under TEXAS RULES OF CIVIL PROCEDURE Rule 13 if it is groundless and was brought in bad faith or for the purposes of harassment. TEX. R. CIV. P. 13; *CTE Comm. Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). A groundless pleading is one that has no basis in law or fact and is not warranted by a good faith argument for the extension, modification, or reversal of existing law. TEX. R. CIV. P. 13; *Tanner*, 856 S.W.2d 730.

The standard for reviewing whether a pleading is groundless is objective: Did the party and attorneys make a reasonable inquiry into the legal and factual basis of the claim. *See Tanner*, 856 S.W.2d at 730. The reasonableness of the inquiry is judged by the facts available and the circumstances present at the time the party filed the pleading. *Tarrant Cty. v. Chancey*, 942 S.W.2d 151, 155 (Tex. App. – Fort Worth 1997, no writ).

In the present case, Counter-Respondent or, alternatively, his attorneys of record filed the groundless pleading in bad and for the purpose of harassment in an

attempt to defraud Counter-Petitioner from her portion of the community property as well increase the stress and strain on Counter-Petitioner financially, mentally, and emotionally. Specifically, there is no documentation or evidence supporting the factual allegations of the Counter-Respondent relating to an alleged purported marriage. Counter-Respondent's allegations or factual contentions have no evidentiary support and are extremely unlikely to ever have any evidentiary support to support same even after a reasonable opportunity for further investigation, or discovery. As such, Counter-Petitioner was forced to litigate this matter including, but not limited to, drafting answers to each and every petition filed by the Counter-Respondent, forced to draft objections and answers to discovery requests, and forced to review and/or respond to the overwhelming number of documents either filed by Counter-Petitioner's attorneys or transmitted as correspondence.

## B. FRIVOLOUS PLEADING UNDER TEXAS CIVIL PRACTICE AND REMEDIES CODE §10.001

The court can impose sanctions on the attorney who signed a pleading, or the party represented by the attorney, if the pleading, motion, or other paper was signed in violation of TEXAS CIVIL PRACTICE & REMEDIES CODE Section 10.001.

TEX. CIV. PRAC. & REM. CODE §10.004(a), The following conduct of Plaintiffs' attorney violated Section 10.001.

A pleading is frivolous when presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. TEX. CIV. PRAC. & REM. CODE §10.001(1). Clearly, the actions of Counter-Respondent and/or his counsel evidence that Counter-Respondent's pleadings against Counter-Petitioner are frivolous and are presented before the Court in the attempt to cause an increase in the cost of litigation and for harassment. Therefore, Counter-Respondent or, alternatively, his attorneys of record, Bradford Nace, Ike Vanden Eykel, and Rebecca Tillery are subject to sanctions.

Further, a pleading is frivolous unless each allegation or factual contention has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation, or discovery. TEX. CIV. PRAC. & REM. CODE §10.001(3). In the present case, Counter-Respondent's attorney of record has failed to provide any evidentiary support for his allegations against Counter-Petitioner.

---

## C. GROUNDLESS PLEADING UNDER TEX. CIV. PRAC. & REM. CODE §9.011

The court can impose sanctions on the attorney or party represented by the attorney who signed a pleading, motion, or other that paper was signed in violation of TEXAS CIVIL PRACTICE & REMEDIES CODE Section 9.011. The court may sanction a party for filing pleadings that are (1) groundless and (2) brought in bad faith, brought for the purposes of harassment, or interposed for improper purpose of causing an undue delay, needless increase of litigation, and seeking to disqualify the opposing counsel of record by unnecessarily calling that lawyer as a witness. *Herrmann & Andreas Ins. Agency, Inc. v. Appling,* 800 S.W.2d 312, 320 (Tex. App. – Corpus Christi 1990, no writ). Plaintiffs' pleadings are frivolous and violate Section 9.011 of the TEXAS CIVIL PRACTICE & REMEDIES CODE because (1) they are groundless, (2) they were brought in bad faith, (3) they were brought for the purpose of harassment, and (4) they were interposed for an improper purpose.

## D. SANCTIONS

Counter-Petitioner asks the court to impose the following sanctions on Counter-Respondent or, alternatively, his attorneys of record:

    a.    An order striking all of the allegations of Counter-Respondent

wherein he refers to any purported prior marriage of Counter-Petitioner;

b.     An order for payment to Counter-Petitioner for attorney's fees in defense of Counter-Respondent's petition to declare marriage void in an amount that is equal or greater than the amount invoiced by Counter-Respondent's during the pendency of this matter or, alternatively, payment for one hundred percent of Counter-Petitioner's attorney's fees.

c.     A penalty to be paid to the Court.

## E.     COSTS & ATTORNEY FEES

It was necessary for Counter-Petitioner to hire an attorney, for Counter-Petitioner to incur the additional cost of travel due to Counter-Respondent's counsel's refusal to adhere to the basic facts of this case, and to prepare this Counter-Claim. The Court should award Counter-Petitioner reasonable attorney's fees in the amount of $25,000.00 under TEXAS RULES OF CIVIL PROCEDURE Rule 13, Section 10.004(c)(3) of the TEXAS CIVIL PRACTICE & REMEDIES CODE Section, and Section 9.012(e)(3) of the TEXAS CIVIL PRACTICE & REMEDIES CODE.

When the party against whom sanctions are sought cannot show due

diligence, a court may award the party seeking sanction all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the litigation. TEX. CIV. PRAC. & CODE §10.002(c). Counter-Respondent and/or Counter-Respondent's counsel of record did not exercise due diligence. Because Counter-Respondent and/or Counter-Respondent's counsel of record wholly failed to show due diligence, the court should award Counter-Petitioner all costs for inconvenience, harassment, and out-of-pocket expenses caused by this lawsuit.

## 23.   COLLIN COUNTY STANDING ORDER

The Collin County Standing Order regarding child, property, and conduct of the parties is attached hereto as Exhibit A and incorporated herein for all purposes.

## 24.   REQUEST FOR ATTORNEY'S FEES, EXPENSES, COSTS, AND INTEREST

It was necessary for Counter-Petitioner to secure the services of Dawn M. Grams Horak, a licensed attorney, to preserve and protect Maryam Farahamand and the minor child's rights. Counter-Petitioner prays that Counter-Respondent be responsible for one hundred percent of Counter-Petitioner's attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

## 25. PRAYER

WHEREFORE, PREMISES CONSIDERED, Maryam Farahmand, the Counter-Petitioner, respectfully prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this petition including, but not limited to, the following:

1.  **Combined TRO and Temporary Injunction** - immediately grant a temporary restraining order restraining Counter-Respondent, in conformity with the allegations of this petition, from the acts set forth above, and Counter-Petitioner prays that, after notice and hearing, this temporary restraining order be made a temporary injunction;

2.  **Temporary Injunction** - in addition to the temporary restraining order and temporary injunction prayed for above, after notice and hearing, grant a temporary injunction enjoining Respondent, in conformity with the allegations of this petitioner, from the acts set forth above while this case is pending;

3.  **Permanent Injunction** – upon final hearing, the Court enter a permanent injunction enjoining Counter-Respondent, in conformity with the allegations of this petition, from the acts set forth above;

4. Counter-Petitioner prays for an order adjudicating parentage, that Counter-Petitioner be appointed sole managing conservator with the exclusive right to designate the primary residence of the child, that appropriate orders be made for the support of the child and for payment of an equitable portion of all prenatal and postnatal health-care expenses of the mother and child and payment of the fees, expenses, and costs of Counter-Petitioner in bringing this action.

5. **Attorney's Fees & Costs** - for attorney's fees, expenses, costs, and interest as requested above.

6. Counter-Petitioner prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this counter-petition.

7. Temporary Orders - Counter-Petitioner prays that, after notice and hearing, the requested temporary orders be granted.

8. Counter-Petitioner Maryam Farahmand prays for any and all other further relief for which she may be entitled to and that is sought in the foregoing pleading.

9. Counter-Petitioner Maryam Farahmand prays for general relief.

Respectfully submitted,

**WIDNER FAMILY LAW GROUP, PLLC**

By: /s/ Robert S. Widner .
**Robert S. Widner**
Texas State Bar No. 00792092

2911 Turtle Creek Boulevard, Suite 405
Dallas, Texas, 75219

Telephone No.:          972-979-5700
Facsimile No.:          972-692-8951
Electronic Address robertwidner@gmail.com

and

**DAWN M. GRAMS, P.C.**

By: _Dawn M. Grams Horak_ .
**Dawn M. Grams Horak**
Texas State Bar No. 24036667

P.O. Box 924
Grapevine, Texas, 76099

Telephone No.:          469-644-7442
Facsimile No.:          214-572-6893
Electronic Address:     dgrams@msn.com

*of counsel to Widner Family Law Group, LLC*

**ATTORNEYS FOR RESPONDENT AND
COUNTER-PETITIONER
MARYAM FARAHMAND**

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following parties via the manner reflected below, in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

Mr. Ike Vanden Eykel  
Ms. Rebecca Tillery  
Koons Fuller, P.C.  
1717 McKinney Avenue, Suite 1500  
Dallas, Texas, 75202  

✓ **Facsimile 214-871-0196**  
Certified Mail/Return Receipt Requested  
U.S. First Class Mail  
✓ **Other**  
    ike@koonsfuller.com  
    tillery@koonsfuller.com  
    Reagan@koonsfuller.com  
✓ **E-Service**  

Mr. Bradford Nace  
Nace & Motley, LLC  
100 Crescent Court, 7th Floor  
Dallas, Texas, 75201  

✓ **Facsimile 214-242-4333**  
Certified Mail/Return Receipt Requested  
U.S. First Class Mail  
✓ **Other**    **bnace@nacemotley.com**  
✓ **E-Service**  

Ms. Diana L. Porter  
Diana L. Porter, P.C.  
103 E. Virginia Street, Suite 201  
McKinney, Texas 75069  

Facsimile 972-548-2349  
Certified Mail/Return Receipt Requested  
U.S. First Class Mail  
✓ **Other**  
**dporter@collincountydivorce.com**  
    **Pursuant to Request of Attorney**  

Certified to as of this 30th day of June, 2014.

/s/ Dawn M. Grams Horak
**DAWN M. GRAMS HORAK**

## COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND CONDUCT OF THE PARTIES

No party to this lawsuit has requested this order. Rather, this order is a standing order of the Collin County District Courts that applies in every divorce suit and every suit affecting the parent-child relationship filed in Collin County. The District Courts of Collin County have adopted this order because the parties and their children should be protected and their property preserved while the lawsuit is pending before the court. Therefore it is ORDERED:

1. NO DISRUPTION OF CHILDREN. Both parties are ORDERED to refrain from doing the following acts concerning any children who are subjects of this case:

   1.1 Removing the children from the State of Texas, acting directly or in concert with others, without the written agreement of both parties or an order of this Court.

   1.2 Disrupting or withdrawing the children from the school or day-care facility where the children are presently enrolled, without the written agreement of both parents or an order of this Court.

1.3 Hiding or secreting the children from the other parent or changing the children's current place of abode, without the written agreement of both parents or an order of this Court.

   1.4 Disturbing the peace of the children.

   1.5 Making disparaging remarks about each other or the other person's family members, to include but not be limited to the child's grandparents, aunts, uncles, or stepparents.

   1.6 Discussing with the children, or with any other person in the presence of the children, any litigation related to the children or the other party.

   1.7 If this is an original divorce action, allowing anyone with whom the party is romantically involved, to remain over night in the home while in possession of the child. Overnight is defined from 10:00 p.m. until 7:00 a.m.

2. CONDUCT OF THE PARTIES DURING THE CASE. Both parties are ORDERED to refrain from doing the following acts:

   2.1 Using vulgar, profane, obscene, or indecent language, or a coarse or offensive manner to communicate with the other party, whether in person, by telephone, or in writing.

   2.2 Threatening the other party in person, by telephone, or in writing to take unlawful action against any person.

   2.3 Placing one or more telephone calls, at an unreasonable hour, in an offensive or



repetitious manner, without a legitimate purpose of communication, or anonymously.

2.4    Opening or diverting mail addressed to the other party.

## 3. PRESERVATION OF PROPERTY AND USE OF FUNDS DURING DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

3.1    Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the property of one or both of the parties.

3.2    Misrepresenting or refusing to disclose to the other party or to the Court, on proper request, the existence, amount, or location of any property of one or both of the parties.

3.3    Damaging or destroying the tangible property of one or both of the parties, including any document that represents or embodies anything of value.

3.4    Tampering with the tangible property of one or both of the parties, including any document that represents or embodies anything of value, and causing pecuniary loss to the other party.

3.5    Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of either party, whether personal property or real estate property, and whether separate or community, except as specifically authorized by this order.

3.6    Incurring any indebtedness, other than legal expense in connection with this suit, except as specifically authorized by this order.

3.7    Making withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by this order.

3.8    Spending any sum of cash in either party's possession or subject to either party's control for any purpose, except as specifically authorized by this order.

3.9    Withdrawing or borrowing in any manner for any purpose from any retirement, profit-sharing, pension, death, or other employee benefit plan or employee savings plan or from any individual retirement account or Keogh account, except as specifically authorized by this order.

3.10    Signing or endorsing the other party's name or any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividends, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party.

3.11    Taking any action to terminate or limit credit or charge cards in the name of the other party.

3.12    Entering, operating, or exercising control over the motor vehicle in the possession of the other party.

3.13    Discontinuing or altering the withholding for federal income taxes on wages or salary while this suit is pending.

3.14    Terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or other contractual services, such as security, pest control, landscaping, or yard maintenance at the other party's residence or in any manner attempting to withdraw any deposits for service in connection with such

services.

      3.15 Intercepting or recording the other party's electronic communications.

## 4. PERSONAL AND BUSINESS RECORDS IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

      4.1      Concealing or destroying any family records, property records, financial records, business records or any records of income, debts, or other obligations.

      4.2      Falsifying any writing or record relating to the property of either party.

      4.3      "Records" include e-mail or other digital or electronic data, whether stored on a computer hard drive, diskette or other electronic storage device.

## 5. INSURANCE IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are ORDERED to refrain from doing the following acts:

      5.1      Withdrawing or borrowing in any manner all or any part of the cash surrender value of life insurance policies on the life of either party, except as specifically authorized by this order.

      5.2      Changing or in any manner altering the beneficiary designation on any life insurance on the life of either party or the parties' children.

      5.3      Canceling, altering, or in any manner affecting any casualty, automobile, or health insurance policies insuring the parties' property of persons including the parties' minor children.

## 6. SPECIFIC AUTHORIZATIONS IN DIVORCE CASE. If this is a divorce case, both parties to the marriage are specifically authorized to do the following:

      6.1      To engage in acts reasonably and necessary to the conduct of that party's usual business and occupation.

      6.2      To make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit.

      6.3      To make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation and medical care.

      6.4      To make withdrawals from accounts in financial institutions only for the purposes authorized by this order.

## 7. SERVICE AND APPLICATION OF THIS ORDER.

      7.1      The Petitioner shall attach a copy of this order to the original petition and to each copy of the petition. At the time the petition is filed, if the Petitioner has failed to attach a copy of this order to the petition and any copy of the petition, the Clerk shall ensure that a copy of this order is attached to the petition and every copy of the petition presented.

      7.2      This order is effective upon the filing of the original petition and shall remain in full force and effect as a temporary restraining order for fourteen days after the date of the filing of the original petition. If no party contests this order by presenting evidence at a hearing on or before fourteen days after the date of the filing of the original petition, this order shall continue in full force and effect as a temporary injunction until further order of this court. This entire

order will terminate and will no longer be effective when the court signs a final order or the case is dismissed.

8. EFFECT OF OTHER COURT ORDERS. If any part of this order is different from any part of a protective order that has already been entered or is later entered, the protective order provisions prevail. Any part of this order not changed by some later order remains in full force and effect until the court signs a final decree.

9. PARTIES ENCOURAGED TO MEDIATE. The parties are encouraged to settle their disputes amicably without court intervention. The parties are encouraged to use alternative dispute resolution methods, such as mediation, to resolve the conflicts that may arise in this lawsuit.

THIS COLLIN COUNTY STANDING ORDER REGARDING CHILDREN, PROPERTY AND CONDUCT OF THE PARTIES SHALL BECOME EFFECTIVE ON OCTOBER 14, 2013.

JUDGE ANGELA TUCKER
199th Judicial District Court

JUDGE JOHN ROACH, JR.
296th Judicial District Court

JUDGE BENJAMIN SMITH
380th Judicial District Court

JUDGE CHRIS OLDNER
416th Judicial District Court

JUDGE JILL WILLIS
429th Judicial District Court

JUDGE SCOTT BECKER
219th Judicial District Court

JUDGE RAY WHEELESS
366th Judicial District Court

JUDGE MARK RUSCH
401st Judicial District Court

JUDGE CYNTHIA WHEELESS
417th Judicial District Court

# ROGER FARAHMAND'S
# RECORD TAB 12

Filed: 7/10/2014 12:15:17 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Lisa Sharpe Deputy
Envelope ID: 1782144

## NO. 417-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███, A CHILD | § | COLLIN COUNTY, TEXAS |

## RESPONDENT'S FIRST VERIFIED MOTION FOR CONTINUANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Maryam Farahmand, the Respondent and Counter-Petitioner in the above-styled and numbered cause, and files this First Verified Motion for Continuance for the hearing set for July 29, 2014, on Petitioner's Petition to Declare Marriage Void. In support of thereof, Maryam Farahmand would respectfully show the Court as follows:

1.     Petitioner's initial allegations of a prior marriage of Respondent occurred on or about **March 10, 2014**, at a hearing in this Court. Petitioner's identified Amir Bagherkalantari as the alleged prior spouse of Respondent at this time. *See* Exhibit A.

2.     On or about Thursday, **May 8, 2014**, Amir Bagherkalantari stated to

---

Respondent's First Verified Motion for Continuance                                        1 | P a g e

Respondent, Maryam Farahmand, that he was going to see how much the Petitioner, Roger Farahmand offered to pay him for his testimony. Thus, there appears to be either witness tampering or the possibility of witness tampering.

3.     On or about Tuesday, **June 24, 2014**, Brenda Rodgers spoke with the Court Coordinator for the 401st Judicial District Court of Collin County, Texas, and was advised that the court's docket was closed for the month of July. The Court Coordinator further advised that any setting presently on the docket would be heard, but there would be "NO additions, NO deletions, NO substitutions, NO changes whatsoever." *See* Exhibit B-1. As a result thereof, Respondent did not file her Motion for Summary Judgment, as same would not be considered or heard before the court on or before the Tuesday, **July 29, 2014**, hearing date. *See* Exhibit B.

4.     The parties were last before the Court on or about Tuesday, May 27, 2014. *See* Exhibit D. During the time period of Tuesday, **May 27, 2014**, and Friday, **June 27, 2014**, Petitioner filed more than fifty (50) documents with the Court. In addition to the more than fifty (50) documents filed, Petitioner remits up to three (3) to four (4) letters to Respondent's counsel on an almost daily basis. *See* Exhibit B.

5. On **May 27, 2014**, Petitioner filed a document entitled "Certificate of Marriage." *See* Exhibit E. At the hearing on March 10, 2014, the Honorable Judge Mark J. Rusch ruled, in relevant part, that no marriage license by and between Respondent and Amir Bagherkalantari was ". . .on file, so [he] [didn't] have a valid prior ceremonial marriage." *See* Exhibit D - Hearing Transcript, Page 77, Lines 18-20. Disregarding this ruling, Petitioner files same misrepresenting that same is valid. *See* Exhibit E.

6. Respondent would further show that Aslan Ghaffari, on behalf of and at the request of Petitioner, provided false sworn testimony at the March 10, 2014, hearing and that the signature on the alleged marriage certificate is not Mr. Ghaffari's signature. Specifically, in the years 2005-2011, Mr. Ghaffari executed various legal documents. *See* Exhibit F. In aforementioned legal documents, Mr. Ghaffari correctly spelled his name: G-H-A-F-F-A-R-I. *See* Exhibit F. However, on the purported "marriage license," Mr. Ghaffari's name is spelled: G-H-A-F-F-O-R-I-E. *See* Exhibit E. How would a man who is eighty (80) plus years old misspell his own last name? Because it is not his signature!

7. On or about June 9, 2014, Petitioner designated Madoud Anasri as the expert to testify as to a "Persian Muslim wedding." However, Petitioner's

designated expert is the father of Roger's Farahmand's business partner and very close friend, Shaya Ansari. In fact, Roger Farahmand himself indicated during his March 4, 2014 deposition that he owns property with Shaya Ansari and that Shaya is "a dear friend, like -- like my brother." Clearly, the expert testimony of Madoud Anasri will be biased, as his own son has a financial stake in the outcome of the proceedings. Relevant portions of the deposition of Petitioner are as follows:

## Owns property in Las Vegas, Nevada with Shaya Ansari:

*P102*

Q. Okay. Any other property save and except the ones you've testified to so far, Mr. Farahmand?

A. No. I've testified to four.

Q. Yes, sir, you have. In the United States.

A. I think I have one in Vegas, *Las Vegas.*

Q. Okay.

A. Or through Badmand Holdings and another friend of mine.

Q. What's your friend's name, please?

A. Shaya.

*P103*

Q. Could you spell it for us?

A. S-H-A-Y-A.

Q. Uh-huh.

A. Ansari, A-N-S-A-R-I.

## Owns rental property with Shaya Ansari in Cabo San Lucas, Mexico:

P104

Q. And where is this property located?

A. *Cabo San Lucas*.

Q. What's the date of purchase?

A. 2006.

P105

Q. What was the purchase price?

A. At that time, I think it was half a million.

Q. It's not a timeshare, is it, sir?

A. No.

Q. Okay. And is it -- is it -- do you rent it out or do you...

A. I don't.

Q. Is it -- who does, if they do?

A. *Shaya.*

Q. Okay. So he -- *Mr. Shaya* is your -- I don't want to use the wrong word here -- partner or associate in this property, also?

A. Yes.

Q. Okay.

A. He's a dear friend, like -- like my brother.

Q. Okay. Is there only two of you?

A. Yes.

Q. Could you give me the address of that property, please?

A. Sure.

Q. Thank you.

A. *Pedregal, Cabo San Lucas.*


## Owns a Boat with Shaya Ansari:

P109

Do you have an interest in a *boat*?

A. Possibly.

Q. Okay. Could you tell the Court what "maybe" means as far as your interest in a boat?

A. Yes. I don't know if my partner has sold the interest or we still possess it or what happened.

Q. Is this your partner Tom?

A. No, Tom's not my partner.

Q. Okay. Please forgive me, then. You said partner. I hadn't heard anything about a partner except Shaya -- Shaya -- Shaya.

A. You've never asked, but *Shaya's* my partner, yes --

Q. Okay.

A. -- in that situation.

Q. Is that the partner in the boat, also?

A. Yes.

*See* Exhibit C. Madoud Anasri lives in New Jersey and was not made available for a deposition and did not provide an expert report. Thus, how can Respondent prepare for his anticipated testimony when no information has been provided for review?

8.      Petitioner's Petition to Declare Marriage Void is set for hearing on **July 29, 2014 at 9:00 a.m.** *See* Exhibit A. This hearing will determine the validity of Respondent's marriage to Petitioner. Respondent should be afforded the opportunity to adequately prepare for same. Due to Petitioner filing more than fifty (50) documents in less than thirty-five (35) days prior to the deadline for completion of discovery and amending the pleadings on file, not including designating an out-of-state expert whose son will be financially affected by the

ruling of the court, Respondent has not been able to adequately prepare for the July 29th hearing date.

9.      Due to the reasons set forth in this Motion, Respondent respectfully asks this Court for a brief continuance to allow for the Respondent to adequately prepare for the hearing Petitioner's Petition to Declare Marriage Void that is currently set for hearing on July 29, 2014 at 9:00 a.m. and to allow the Respondent an opportunity to file and have this Court hear motions including, but not limited to, the following prior to the final setting on July 29, 2014: Motion to Strike or Exclude Experts and Motion for Summary Judgment on Marriage Issue.

10.     This continuance is not sought solely for delay but that justice may be done. *See* Exhibit B.

WHEREFORE, PREMISES CONSIDERED, the Respondent, Maryam Farahmand, asks this Court to continue the hearing that is currently set for July 29, 2014, at 9:00 a.m. on Petitioner's Petition to Declare Marriage Void and reset same for a future date or for at least one hundred and twenty (120) days and modify all deadlines identified in the Agreed Scheduling Order to adhere to same. Respondent further asks for any and all such other relief, either at law or equity to which she may show herself to be justly entitled including, but not limited to, attorney's fees

and expenses.

Respectfully submitted,

**WIDNER FAMILY LAW GROUP, PLLC**

By: /s/ Robert S. Widner                    .
**Robert S. Widner**
Texas State Bar No. 00792092

2911 Turtle Creek Boulevard, Suite 405
Dallas, Texas, 75219

Telephone No.:          972-979-5700
Facsimile No.:          972-692-8951
Electronic Address robertwidner@gmail.com

and

**DAWN M. GRAMS, P.C.**

By: /s/ Dawn M. Grams Horak                    .
**Dawn M. Grams Horak**
Texas State Bar No. 24036667

P.O. Box 924
Grapevine, Texas, 76099

Telephone No.:          469-644-7442
Facsimile No.:          214-572-6893
Electronic Address:     dgrams@msn.com

*of counsel to Widner Family Law Group, LLC*

**ATTORNEYS FOR RESPONDENT AND**

## COUNTER-PETITIONER
## MARYAM FARAHMAND
## CERTIFICATE OF CONFERENCE

I, the undersigned attorney, Dawn M. Grams Horak, hereby certify to the Court that I have attempted to confer with opposing counsel in an effort to resolve the issues contained in this motion without the necessity of Court intervention. Specifically, I have contacted counsel for Petitioner on multiple occasions via electronic correspondence and opposing counsel has stated that they would not be in agreement with same.

Therefore, the parties have not been able to come to an amicable resolution to this matter without the necessity of the Court's intervention.

Certified to as of this 10th day of July, 2014.

/s/ Dawn M. Grams Horak
**DAWN M. GRAMS HORAK**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following parties via the manner reflected below, in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

Mr. Ike Vanden Eykel
Ms. Rebecca Tillery
Koons Fuller, P.C.
1717 McKinney Avenue, Suite 1500
Dallas, Texas, 75202

**Facsimile 214-871-0196**
Certified Mail/Return Receipt Requested
U.S. First Class Mail
**Other**
    ike@koonsfuller.com
    tillery@koonsfuller.com
    Reagan@koonsfuller.com
**E-Service**

Mr. Bradford Nace
Nace & Motley, LLC
100 Crescent Court, 7th Floor
Dallas, Texas, 75201

**Facsimile 214-242-4333**
Certified Mail/Return Receipt Requested
U.S. First Class Mail
**Other    bnace@nacemotley.com**
**E-Service**

Ms. Diana L. Porter
Diana L. Porter, P.C.
103 E. Virginia Street, Suite 201
McKinney, Texas 75069

Facsimile 972-548-2349
Certified Mail/Return Receipt Requested
U.S. First Class Mail
**Other**
**dporter@collincountydivorce.com**
**Pursuant to Request of Attorney**

Certified to as of this ___ day of July, 2014.

/s/ Dawn M. Grams Horak
**DAWN M. GRAMS HORAK**

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

TRIAL COURT CAUSE NO. 401-56531-2013

IN THE MATTER OF                )   IN THE DISTRICT COURT
THE MARRIAGE OF                 )
ROGER ARASH FARAHMAND           )
AND                             )   COLLIN COUNTY, TEXAS
MARYAM FARAHMAND                )
                                )
AND IN THE INTEREST OF          )
███████████████████             )   401st JUDICIAL DISTRICT

---

**HEARING**

---

On the 10th day of March, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Mark J. Rusch, Judge Presiding, held in McKinney, Collin County, Texas.

Proceedings reported by computerized machine shorthand.

Kimberly Tinsley, CSR #3611
(972) 548-4247



**APPEARANCES**

Bradford Winston Nace      SBOT NO. 24007726
Attorney at Law
100 Crescent Court
7th Floor
Dallas, TX   75201
Telephone:   (214)459-8289

                 *Attorney for Petitioner Roger Farahmand*


Richard J. Corbitt        SBOT NO. 04817000
Attorney At Law
6440 N. Central Expwy.
Suite 402
Dallas, TX   75208
Telephone:   (214)744-1234

                 *Attorney for Respondent Maryam Farahmand*

VOLUME 1

**HEARING**

*March 10, 2014*                                          *PAGE*   *VOL*

Proceedings begin  ..............................5      1

*Witness Direct   Cross   Voir Dire*
ASLAN GHAFFARI
     By Mr. Nace            11                              1
     By Mr. Corbitt                            13           1
     By Mr. Nace            17                              1
     By Mr. Corbitt                20                       1
     By Mr. Nace            21                              1

FARID RASTEGAR
     By Mr. Nace            23                              1
     By Mr. Corbitt                26                       1
     By Mr. Nace            27                              1

ROGER FARAHMAND
     By Mr. Nace            29                              1
     By Mr. Corbitt                38                       1

MICHAEL SCOTT WOODS
     By the Court           55                              1

ROBERT GORDON
     By the Court           68                              1

Court's Ruling ...............................75       1

Adjourned ...................................104       1

Reporter's Certificate ......................105       1

**ALPHABETICAL WITNESS INDEX**

|  | DIRECT | CROSS | VOIR DIRE | VOL |
|---|---|---|---|---|
| Farahmand, Roger | 29 | 38 |  | 1 |
| Ghaffari, Aslan | 11,17 | 20 | 13 | 1 |
| Ghaffari, Aslan | 21 |  |  | 1 |
| Gordon, Robert | 68 |  |  | 1 |
| Rastegar, Farid | 23,27 | 26 |  | 1 |
| Woods, Michael Scott | 55 |  |  | 1 |

**EXHIBITS OFFERED BY THE PETITIONER**

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 1 | Marriage License dated 12/12/2009 | 18 |  | 1 |
| 2 | Video of 12/12/2009 on DVD | 25 | 25 | 1 |
| 3 | Supporting Affidavit of Roger Farahmand | 30 |  | 1 |
| 4 | Roger Farahmand's Summary of Requests | 31 | 31 | 1 |

THE COURT: Sustained.

MR. NACE: We'll offer.

THE COURT: Does it have a number on it?

MR. NACE: Yes, Your Honor, Petitioner's 1.

MR. CORBITT: Predicate has not been issued.

THE COURT: Let me see it, please.

MR. NACE: Yes, Your Honor.

(Document present to the Court)

THE COURT: Mr. Nace, I have what appears to be a Xerox copy. I don't see a clerk's stamp on here anywhere.

MR. NACE: Your Honor, we have the original with another witness. That is a copy.

THE COURT: Why isn't the original of a marriage license on file with my clerk?

MR. NACE: From what I understand, to file it that was their responsibility through her family. But the original does exist.

THE COURT: Where is the original?

MR. NACE: My client can better answer that judge through another witness. Because of things missing in this case, our chain of custody, we want to make sure we're keeping things intact.

THE COURT: His objection is sustained at

this point in time.

MR. NACE: May I re-approach the witness?

THE COURT: Sure.

Q. (By Mr. Nace) Sir, re-handing you this particular exhibit, when you perform these weddings before, do you typically sign off as a witness having performed a wedding ceremony?

MR. CORBITT: Please the Court, objection as to any relevancy regarding what he's done in the past. We're only worried about --

THE COURT: Overruled.

INTERPRETER: Can you repeat the question?

Q. (By Mr. Nace) Yes. With regard to the eight to ten wedding ceremonies Mr. Ghaffari has performed in his years, does he typically sign and certify that the parties were united in marriage?

A. Usually I write the name of the couple, the people who are getting married, in the marriage portion and all the information in a piece of paper and they sign it.

Q. And there's no question in Mr. Ghaffari's mind that this piece of paper that I offered as Exhibit 1 is his signature and nobody else's?

A. This is my signature for sure.

MR. NACE: Pass the witness.

period.  This child does not leave the United States, period.

Mother is ordered to continue her psychological course of treatment with Dr. Woods, if that involves counseling, medication, or whatever, and to abide by and follow all of his orders and instructions. Mr. Gordon is a forensic guy, you can continue with him, or not.  I'm not ordering you to.  I'm not forbidding you to.  Dr. Woods is the main primary treatment guy.  You will continue in your treatment with Dr. Woods.

Everyone in this room understand that if somebody has a chemical imbalance in their brain, I don't hold it against them if they are dealing with it appropriately.

Now, I've got an eight-month-old kid.  And Mr. Nace, just so you'll know, while this testimony about another wedding is interesting, even assuming for the sake of discussion that some ceremony was performed, that license isn't on file, so I don't have a valid prior ceremonial marriage.  I may or I may not have a valid informal marriage and that would certainly be some evidence of it.  But you're miles from at the very least cohabitation.  So at least today, I'm not -- don't have any concerns about there being a bigamy situation.  That doesn't mean there isn't one.  I'm just saying today, in

STATE OF TEXAS

COUNTY OF COLLIN

I, Kimberly Tinsley, Official Court Reporter in and for the 401st District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $624.50 and was paid by Counsel for Petitioner, Roger Farahmand.

WITNESS MY OFFICIAL HAND on this, the 3rd day of April, 2014.

Digitally signed by Kimberly Tinsley
Date: 2014.04.03 22:42:50 -05'00'

Kimberly Tinsley, CSR
Texas CSR #3611
Official Court Reporter
401st District Court
Collin County, Texas
2100 Bloomdale Rd, Suite 30030
McKinney, Texas 75071
Telephone:  (972) 548-4247
E-mail: ktinsley@co.collin.tx.us
Expiration:  12/31/15



**The STATE OF TEXAS**

**Marriage License**

**County Of**

## COLLIN

To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.

## GREETING:

### YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE

## RITES OF MATRIMONY

Between
AMIR BAGHERKALANTARI
and
MARYAM PARVIZ KHYAVI

and make due return to the Clerk of the County Court of said County within
Thirty days thereafter, certifying your action under this license.

Witness my official signature and seal of office

At office in McKinney, Texas, this,

the 4th day of December 2009

Stacey Kemp, County Clerk

Collin County, Texas

By _Patricia Crowshott_ Deputy

P-1

I hereby certify that on the _12th_ day of _December_ 20_09_.
At _4_ O'Clock _p_ M. I united in Marriage the parties above named.

Witness my hand this _12th_ day of _December_ 2009.

_A. Ghafforie_
Signature of Person performing Ceremony

ASLAN GHAFFARI
Typed or printed name of person performing ceremony

Marriage performed in                    P.H.D in eco nom: Title of person performing ceremony

_Collin_ County 1633 Piedmont Pl. Carrollton, Texas –     Address of person performing ceremony

Returned and filed for record the _____ day of _____, _____.

and recorded the _____ day of _____, _____ in the

In Document Number                    Marriage License Record of Collin County

Stacey Kemp, County Clerk

By _____ Deputy

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009

at 3:28 PM

Stacey Kemp, County Clerk

By _____ Deputy

Returned and Filed for

Record the ____ day

of _____. ____

Stacey Kemp, County Clerk

By _____ Deputy

## Groom
Birthday: 07/05/1981
Place of Birth: Tehran, IRAN

## Bride
Birthday: 11/27/1980
Place of Birth: Tehran, IRAN

Section 2.204 of the Family Code
This license cannot be used prior to:
12/07/2009 3:28 PM

Section 2.201 of the Family Code
Must be used before:
01/04/2010

Section 2.202 of the Family Code
Persons authorized to conduct ceremony.

Printed material distributed as required by
Section 2.009 of the Family Code.

## Return License To

MARYAM PARVIZ KHYAVI

15025 FARMCOTE DR

RICHARDSON, TX 75080

NO. 417-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████, A CHILD | § | COLLIN COUNTY, TEXAS |

**<u>VERIFICATION</u>**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF TARRANT** | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Dawn M. Grams Horak, who, after being duly sworn, stated under oath that she is one of the attorney's of record for the Respondent, Maryam Farahmand in the above styled number and cause; that she has read the motion; and that the statements contained in the following paragraphs are within her personal knowledge and are true and correct 4, 9, 16 _____.

Also, see Exhibit B-1.

_____
**DAWN M. GRAMS HORAK**

SWORN TO AND SUBSCRIBED before me on this 9th day of July, 2014.

_____
**NOTARY PUBLIC in and for the State of Texas**

My Commission Expires: 9/19/17

LAURIE TAMASI
Notary Public, State of Texas
My Commission Expires
September 19, 2017



EXHIBIT
**B**

Blumberg No. 5208

## Dawn Horak

| | |
|---|---|
| **From:** | Brenda Rodgers <brendalrodgers@gmail.com> |
| **Sent:** | Tuesday, June 24, 2014 3:55 PM |
| **To:** | Dawn Horak |
| **Cc:** | Bob Widner |
| **Subject:** | Re: FW: Farahmand |

████████████████ I was unsuccessful in getting the MSJ set before or on July 29. The Court Coordinator was very adamant about the docket being closed for the month of July. She also stated that the 401st Judge does not hear motions by submission anyway. She will not let us remove our Mtn to Compel and add the MSJ in its place either. She stated NO additions, NO deletions, NO substitutions - NO changes whatsoever. I let Bob know this ███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███

Thanks,
Brenda

Redacted due to Attorney Work
Product. Only Relevant Portions
provided. All other, subject to
privilege or



EXHIBIT
B-1

Blumberg No. 5208

NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | * | IN THE 401ST |
| THE MARRIAGE OF | * | |
| | * | |
| ROGER ARASH FARAHMAND | * | |
| AND | * | JUDICIAL DISTRICT COURT |
| MARYAM FARAHMAND | * | |
| | * | |
| AND IN THE INTEREST OF | * | |
| ███████████████████ | * | |
| A MINOR CHILD | * | COLLIN COUNTY, TEXAS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF ROGER FARAHMAND

Taken for the Respondent

March 4, 2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF ROGER FARAHMAND, produced as a witness at the instance of the Respondent, and duly sworn, was taken in the above-styled and numbered cause on March 4, 2014, from 2:07 p.m. to 5:38 p.m., before Pennie Futrell, CSR in and for the State of Texas, reported by machine shorthand, at the Law Offices of Richard J. Corbitt, P.C., 6440 N. Central Expressway, Suite 700, Dallas, Texas 75206, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.



APPEARANCES

FOR THE PETITIONER:

    Mr. Bradford Nace
    NACE & MOTLEY, LLP
    100 Crescent Court
    7th Floor
    Dallas, Texas 75201
    Telephone:    214.459.8289
    Facsimile:    214.242.4333
    E-mail:       bnace@nacemotley.com

FOR THE RESPONDENT:

    Mr. Richard J. Corbitt
    LAW OFFICE OF RICHARD J. CORBITT, P.C.
    6440 N. Central Expressway
    Suite 402
    Dallas, Texas 75206
    Telephone:    214.744.1234
    Facsimile:    214.754.0515
    E-mail:       corbittlaw@gmail.com

ALSO PRESENT:

    Mr. Randy Johnson - Videographer
    Ms. Maryam Farahmand

                          I N D E X

APPEARANCES........................................ 2

EXAMINATION OF ROGER FARAHMAND

     Direct Examination by Mr. Corbitt............... 4

SIGNATURE AND CORRECTION PAGE........................190

CERTIFICATE.........................................192

                     E X H I B I T S

NO.           DESCRIPTION                        PAGE

(None)

CERTIFIED QUESTIONS:

Page 20, line 1

Page 30, line 21

Page 33, line 13

Page 68, line 17

Page 119, line 6

INFORMATION TO BE PROVIDED:

Page 97, line 18

Page 104, line 7

Page 114, line 6

Page 120, line 3

Page 120, line 15

have, if you do?

A.   I don't have it.   I'm sorry, I got to clarify that.   I withdraw what I said before.   Badmand Holdings has an interest.

Q.   Okay.   Okay.   I didn't hear that.   I'm sorry.

A.   No, I didn't say it, and I apologize.

Q.   What was the date of purchase there?

A.   I don't know if it was 2009, '10, on one of those dates, October '9 or October '10.

Q.   And how much was that purchased for, if you know?

A.   130,000.

Q.   All right.   Do you know fair market value now, if you do?

A.   I don't know.

Q.   Okay.   Any other property save and except the ones you've testified to so far, Mr. Farahmand?

A.   No.   I've testified to four.

Q.   Yes, sir, you have.   In the United States.

A.   I think I have one in Vegas, Las Vegas.

Q.   Okay.

A.   Or through Badmand Holdings and another friend of mine.

Q.   What's your friend's name, please?

A.   Shaya.

Q.  Could you spell it for us?

A.  S-H-A-Y-A.

Q.  Uh-huh.

A.  Ansari, A-N-S-A-R-I.

Q.  And what interest -- ownership interest do you have in it, sir?

A.  I -- very minor, through a company, third party.

Q.  Through Badmand?

A.  Yes.

Q.  Okay.  What was the date of purchase?

A.  2009 or '10 again.

Q.  Do you know the fair -- excuse me, strike that.

Do you know the purchase price?

A.  I don't remember.

Q.  Okay, sir.  Do you know the value now, if you do?

A.  I don't remember.

Q.  Well --

A.  I have no idea.

Q.  Okay.  That's fair.

Any other properties in the United States that you have a interest in of any kind, whether it be use of benefit or ownership?

A.  I'm trying to think if the business has bought

Q. What was the purchase price?

A. At that time, I think it was half a million.

Q. It's not a timeshare, is it, sir?

A. No.

Q. Okay. And is it -- is it -- do you rent it out or do you...

A. I don't.

Q. Is it -- who does, if they do?

A. Shaya.

Q. Okay. So he -- Mr. Shaya is your -- I don't want to use the wrong word here -- partner or associate in this property, also?

A. Yes.

Q. Okay.

A. He's a dear friend, like -- like my brother.

Q. Okay. Is there only two of you?

A. Yes.

Q. Could you give me the address of that property, please?

A. Sure.

Q. Thank you.

A. Pedregal, Cabo San Lucas.

Q. And that's residential?

A. Yes.

Q. Down at the good end?

Do you have an interest in a boat?

A. Possibly.

Q. Okay. Could you tell the Court what "maybe" means as far as your interest in a boat?

A. Yes. I don't know if my partner has sold the interest or we still possess it or what happened.

Q. Is this your partner Tom?

A. No, Tom's not my partner.

Q. Okay. Please forgive me, then.

You said partner. I hadn't heard anything about a partner except Shaya -- Shaya -- Shaya.

A. You've never asked, but Shaya's my partner, yes --

Q. Okay.

A. -- in that situation.

Q. Is that the partner in the boat, also?

A. Yes.

Q. Okay. What kind of boat is it, please?

A. I don't know. It's a boat. I have a picture of -- I mean, I have a little model of it.

Q. Have you ever been on it?

A. Yes.

Q. Does it have a outboard or inboard?

A. I don't know. I -- I get seasick. I love fishing but I get seasick.

# REGISTER OF ACTIONS
## CASE NO. 417-56531-2013

| | |
|---|---|
| In the Matter of the Marriage of Roger Arash Farahmand vs. Maryam Farahmand and in the Interest of ▇▇▇▇▇▇▇ | § § § § § |

Case Type: **Divorce with Children**
Date Filed: **12/30/2013**
Location: **417th District Court**
Case Number History: **401-56531-2013**

---

### PARTY INFORMATION

| | | |
|---|---|---|
| **Petitioner** | Farahmand, Roger Arash *Also Known As* FARAHMAND, ROGER A. | **Attorneys** **Ike Vanden Eykel** *Retained* 214-871-2727(W) |
| | | Bradford Nace *Retained* 214-459-8289(W) |
| | | Rebecca Tillery *Retained* 214-871-2727(W) |
| **Respondent** | Farahmand, Maryam | **Robert S Widner** *Retained* 972-979-5700(W) |
| | | Dawn M. Grams Horak *Retained* 469-644-7442(W) |
| | | ~~Pro Se~~Richard J Corbitt *Retained* 214-744-1234(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

12/30/2013 **Original Petition for Divorce (OCA) $289.00**
*Emergency(ex parte) request for extraordinary relief, and request for temporary orders*

12/30/2013 **Request for Citation $8.00**
*x1 waiting*

12/30/2013 **Request for Temporary Restraining Order $8.00**
*x1 waiting*

12/30/2013 **Order**
*Temporary Emergency Ex Parte Order and Order Setting Hearing*

12/30/2013 **Citation**

| | | |
|---|---|---|
| Farahmand, Maryam | Served Returned | 01/02/2014 01/02/2014 |

12/30/2013 **Temporary Restraining Order**

| | | |
|---|---|---|
| Farahmand, Maryam | Served Returned | 01/02/2014 01/02/2014 |

01/10/2014 **Subpoena Return - Not DC Issued**
*Que Le Served 1/9/2014*

01/10/2014 **Subpoena Return - Not DC Issued**
*Beth Cook served 1/9/2014*

01/14/2014 **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark)

01/14/2014 **General Docket Entry**
*Matter reset*

01/14/2014 **Order Extending**
*Extension of Temporary Emergency Ex Parte Order and Order Setting Hearing*

01/24/2014 **Request for Copies $1.00/ pg**

01/24/2014 **Subpoena Return - Not DC Issued**
*Aaron Lilly Served 1/23/2014*

01/27/2014 **Original Answer**
*Respondent's Original Answer*

01/27/2014 **Counter Petition $50.00**
*Original Counter-Petition for Divorce*

01/27/2014 **Rule 11 Agreement**
*Rule 11 Agreement*



EXHIBIT
**D**
Blumberg No. 5208

| | |
|---|---|
| 01/27/2014 | **Rule 11 Agreement** |
| | Rule 11 Agreement |
| 01/28/2014 | CANCELED **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | Reset |
| 02/04/2014 | **Motion** |
| | Maryam Farahmand's Motion for Expedited Hearing for Interim Possession and Access |
| 02/04/2014 | **Notice of Hearing** |
| | Notice of Hearing on Motion for Expedited Hearing for Interim Possession and Access |
| 02/05/2014 | **General Docket Entry** |
| | No action taken by the Court |
| 02/25/2014 | **Affidavit** |
| | Affidavit of Business Records of Hannah's House |
| 02/26/2014 | **Affidavit** |
| | Business Records Affidavit of Hannah's House February |
| 03/06/2014 | **Motion** |
| | Maryam Farahmand's Request to Expand Local 20-Minute Rule for Temporary Orders Hearing |
| 03/07/2014 | **Subpoena Return - Not DC Issued** |
| | Served 3/6/2014 Aslan Ghaffari |
| 03/07/2014 | **Subpoena Return - Not DC Issued** |
| | served 3/6/2014 Farid Rastegar |
| 03/10/2014 | **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| 03/10/2014 | **General Docket Entry** |
| | Temp Hearing conducted; Ruling dictated; MJR |
| 03/18/2014 | **Notice of Appearance** |
| | Appearance of Co-Counsel and Notice of Change in Lead Counsel |
| 03/21/2014 | **Rule 11 Agreement** |
| | Rule 11 Agreement regarding possession |
| 03/28/2014 | **Petition (Non - OCA) $70.00** |
| | Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce |
| 04/01/2014 | **Certificate of Deposition (Bill of Cost Form)** |
| | Maryam Farahmand Reporter Certification |
| 04/04/2014 | **Certificate of Deposition (Bill of Cost Form)** |
| | Roger Farahmand |
| 04/10/2014 | **Certificate of Deposition (Bill of Cost Form)** |
| | Reporters Certification Deposition of Maryam Farahmand March 4, 2014 |
| 04/21/2014 | **Certificate** |
| | Certificate of Written Discovery |
| 04/23/2014 | **Service Return** |
| | Return of service on Aslan Ghaffari on Notice of Intent to take Depo. |
| 04/23/2014 | **Letter** |
| | Hearing Date 07/29/2014 |
| 04/24/2014 | **Request for Citation $8.00** |
| 04/24/2014 | **Request for Notice $8.00** |
| 04/25/2014 | **Motion** |
| | Motion for Substitution of Counsel |
| 04/28/2014 | **Citation** |

| | | | |
|---|---|---|---|
| | Farahmand, Maryam | Served | 05/02/2014 |
| | | Returned | 05/02/2014 |

| | |
|---|---|
| 04/28/2014 | **Notice** |

| | | | |
|---|---|---|---|
| | Farahmand, Maryam | Served | 05/02/2014 |
| | | Returned | 05/02/2014 |

| | |
|---|---|
| 04/28/2014 | **Subpoena Return - Not DC Issued** |
| | Shahrbanoo Khanipour aka Mahnaz Keyani Subpoena served |
| 05/01/2014 | **Designation of** |
| | Designation of Attorney in Charge |
| 05/02/2014 | **Service Return** |
| | Maryam Farahmand Served Notice 05/02/2014 |
| 05/02/2014 | **Service Return** |
| | Maryam Farahmand Served Citation 05/02/2014 |
| 05/02/2014 | **Agreed Order** |
| | Agreed Scheduling Order |
| 05/06/2014 | **Certificate** |
| | Certificate of Written Discovery |
| 05/08/2014 | **Certificate** |
| | Certificate of Written Discovery |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
| | Custodian of Records for Syed Shah |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
| | Custodian of Records for Dr. Michael Scott Woods |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
| | Custodian of Records for Thomas Janacek served subp 05/09/2014 |
| 05/16/2014 | **Petitioner's** |
| | Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness |
| 05/16/2014 | **Service Return** |
| | Notice of intent to issue Subpoena Legacy Apartment Homes Served 05/14/14 |
| 05/19/2014 | **Notice of Hearing** |
| | Notice of Hearing on Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness |
| 05/22/2014 | **Original Answer** |
| | Maryam Farahmand's Answer to Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | Dr Michael Scott Woods |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | CR for Syed Shah served Subpoena 05/22/2014 |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |

| | |
|---|---|
| | *Custodian of Records for Thomas Janacek, M.D.* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | *Dr Robert Gordon* |
| 05/27/2014 | **Motion Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *M/Issuance of Letters Rogatory and Subpoena to Depose Out-of-State Witness* |
| 05/27/2014 | **Appearance of Counsel** |
| | *Notice of Appearance of Counsel* |
| 05/27/2014 | **Response** |
| | *Respondent's Response and Objections to Issuance of Letters Rogatory and Subpoena to Depose an Out-of-state Witness* |
| 05/27/2014 | **Certificate** |
| | *Certificate of Marriage* |
| 05/27/2014 | **General Docket Entry** |
| | *Letters Rogatory issued* |
| 05/27/2014 | **Order** |
| | *Order for Issuance of Letter Rogatory and Subpoena to Depose an Out of State Witness* |
| 05/29/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Post Legacy Apartments served Subpoena 05/28/2014* |
| 05/29/2014 | **Certificate** |
| | *Certificate of Written Responses to Discovery* |
| 06/03/2014 | **Request for Copies $1.00/ pg** |
| | *x10* |
| 06/05/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Dr. Thomas Janacek served subpoena 06/04/2014* |
| 06/09/2014 | **Notice of Intention to Take Deposition by Written Questions** |
| | *Written Deposition Service transcription of deposition of written questions on Dr. Ghaffari and Bill of Costs* |
| 06/09/2014 | **Designation of** |
| | *Petitioner's Designation of Expert Witnesses* |
| 06/09/2014 | **Motion** |
| | *First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Centennial Medical Center of Frisco* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing Business Records Affidavit and Records - Centennial Medical Center Frisco* |
| 06/09/2014 | **Affidavit** |
| | *Business Records Affidavit - Post Legacy Apartments* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing of Business Records Affidavit - Post Legacy Apartments* |
| 06/09/2014 | **Notice** |
| | *Notice of Business Records and Affidavit Filing - Sayed Shah, M.D.* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Sayed Shah, M.D.* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit* |
| 06/09/2014 | **Designation of** |
| | *Respondent's Designation of Expert Witnesses* |
| 06/09/2014 | **Certificate** |
| | *of Written Discovery* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing Medical Records and Affidavit* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Dr. Robert Gordon* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Dr. Robert Gordon (UNDER SEAL)* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing Records and Affidavit* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 1 (UNDER SEAL)* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 2 (UNDER SEAL)* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Dr. Scott Woods* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Dr. Scott Woods (UNDER SEAL)* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Frisco PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit - Frisco PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Plano PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Frisco PD Corrected* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit - Plano PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Arlington PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Arlington PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing Business Records and Affidavit - Richardson PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Richardson PD* |
| 06/13/2014 | **Amended Motion** |
| | *Petitioner's First Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out of State Witness* |

| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Deposition Questions Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video English to Farsi* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Questions English to Farsi* |
| 06/13/2014 | **Original Answer** |
| | *Amicus Attorney's Original Answer in Suit Affecting the Parent- Child Relationship* |
| 06/13/2014 | **Designation of** |
| | *Designation of Attorney in Charge* |
| 06/13/2014 | **Notice** |
| | *Petitioner's Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/13/2014 | **Order** |
| | *of Letters Rogaroty and Subpoena for an Out of State Witness Amir Bagherkalantari* |
| 06/16/2014 | **Subpoena Return - Not DC Issued** |
| | *Mary F Wise aka Mariam Farahmand aka Mary Farahmand* |
| 06/16/2014 | **Motion** |
| | *Motion to Sign Temporary Orders* |
| 06/16/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Motion to Sign Temporary Orders* |
| 06/17/2014 | **Notice** |
| | *Notice of Intent to Take Oral and Video Taped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Amended** |
| | *First Amended Notice of Intent to Take Oral and Videotaped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Notice** |
| | *Petitioner's First Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/18/2014 | **Notice of Hearing** |
| | *on Motion to Sign Temporary Orders* |
| 06/18/2014 | **Amended Motion** |
| | *Petitioner's Second Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-Of-State Witness* |
| 06/18/2014 | **Request for Copies $1.00/ pg** |
| 06/18/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 06/18/2014 | **General Docket Entry** |
| | *order on letters rogatory signed* |
| 06/18/2014 | **Amended Order** |
| | *of Letters Rogatory and Subpoena for an Out-of-State Witness, Amir Bagherkalantari* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Taher El-Badawi PhD subpoena served* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Depostion/Subpoena Duces Tecum for Mary F. Wise and Request for Sanctions* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Deposition/Subpoena Duces Tecum for Jocelyn McGregor and Request for Sanctions* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Deposition/Subpoena Duces Tecum for JT Langford a/k/a Tom Langford and Request for Sanctions* |
| 06/19/2014 | **Notice** |
| | *Petitioner's Second Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *JT Langford a/k/a Tom Langford* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Jocelyn McGregor* |
| 06/19/2014 | **Letter** |
| | *Ntc ltr of new time of depo* |
| 06/19/2014 | **Letter** |
| | *Ntc Ltr re new date & time of Depo* |
| 06/19/2014 | **Letter** |
| | *Ntc Ltr of new date & time of Depo* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of Mary Wise and Request for Sanctions* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of Jocelyn McGregor and Request for Sanctions* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of JT Langford AKA Tom Langford and Request for Sanctions* |
| 06/20/2014 | **Notice of Hearing** |
| | *Notice of Hearing* |
| 06/23/2014 | CANCELED **Motion to Sign** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Per Attorney* |
| | *TO's* |
| 06/23/2014 | **Letter** |
| | *Progress Report for Maryam Farahmand* |
| 06/24/2014 | **Affidavit** |
| | *Business Records and Affidavit of University of Texas At Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit of University of Texas at Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavits of Dallas Police Department* |
| 06/24/2014 | **Affidavit** |
| | *Business Records and Affidavits of Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Second Notice of Filing of Records and Affidavit of the Frisco Police Department* |
| 06/24/2014 | **Affidavit** |
| | *Second Business Records and Affidavit of Frisco Police Department* |

| 06/27/2014 | **Motion** |
| | Respondent's Motion for Protective Order Due to Written Objection to Depositions Seeking Affirmative Relief |
| 06/27/2014 | **Notice of Hearing** |
| 06/27/2014 | **Amended Answer** |
| | Petitioner's First Supplemental and Amended Answer to Petitioner's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce |
| 06/27/2014 | **Amended Answer** |
| | Maryam Farahmand's First Amended Answer to Original Petition to Declare Marriage Void |
| 06/27/2014 | **Certificate** |
| | Respondent's Certificate of Written Discovery |
| 06/27/2014 | **Amended Petition** |
| | First Amended Petition to Declare Marriage Void and in the Alternative Second Amended Petition for Divorce |
| 06/30/2014 | **Certificate** |
| | Certificate of Written Discovery |
| 06/30/2014 | **Supplemental** |
| | Respondent's First Supplemental and Amended Counter-Petition for Divorce |
| 07/01/2014 | **Subpoena Return - Not DC Issued** |
| | Shamsi Damavandi served subpoena 07/01/2014 |
| 07/02/2014 | **Motion** |
| | Respondent's Motion for Protective Order Due to Objection to Depositions |
| 07/08/2014 | **Administrative Order** |
| | Administrative Order of Assignment (transferring case to the 417th) |
| 07/09/2014 | **Letter** |
| | Letter regarding Transfer to 417th and status of case |
| 07/29/2014 | **Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | on Petiton to void |
| 07/29/2014 | **Motion To Compel** (9:00 AM) (Judicial Officer Rusch, Mark) |
| 07/29/2014 | **Protective Order Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |

---

**FINANCIAL INFORMATION**

**Minor Child** ▮▮▮▮▮ ▮▮▮▮▮▮

| | | | | |
|---|---|---|---|---|
| | Total Financial Assessment | | | 2.00 |
| | Total Payments and Credits | | | 2.00 |
| | **Balance Due as of 07/09/2014** | | | **0.00** |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47305-2014 | ▮▮▮▮ , ▮▮▮▮▮ | (2.00) |

**Petitioner** Farahmand, Roger Arash

| | | | | |
|---|---|---|---|---|
| | Total Financial Assessment | | | 556.00 |
| | Total Payments and Credits | | | 556.00 |
| | **Balance Due as of 07/09/2014** | | | **0.00** |
| 12/30/2013 | Transaction Assessment | | | 284.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Payment | Receipt # DC-63819-2013 | FARAHMAND, ROGER A. | (300.00) |
| 03/18/2014 | Transaction Assessment | | | 2.00 |
| 03/18/2014 | Payment | Receipt # DC-19892-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/21/2014 | Transaction Assessment | | | 2.00 |
| 03/21/2014 | Payment | Receipt # DC-21274-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/28/2014 | Transaction Assessment | | | 72.00 |
| 03/28/2014 | Payment | Receipt # DC-23643-2014 | FARAHMAND, ROGER A. | (72.00) |
| 04/01/2014 | Transaction Assessment | | | 2.00 |
| 04/01/2014 | Payment | Receipt # DC-24382-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/04/2014 | Transaction Assessment | | | 2.00 |
| 04/04/2014 | Payment | Receipt # DC-25524-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/10/2014 | Transaction Assessment | | | 2.00 |
| 04/10/2014 | Payment | Receipt # DC-26831-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/17/2014 | Transaction Assessment | | | 2.00 |
| 04/17/2014 | Payment | Receipt # DC-29154-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/21/2014 | Transaction Assessment | | | 2.00 |
| 04/21/2014 | Payment | Receipt # DC-29986-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30921-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30945-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Payment | Receipt # DC-31124-2014 | Gary Sherman | (16.00) |
| 04/28/2014 | Transaction Assessment | | | 2.00 |
| 04/28/2014 | Payment | Receipt # DC-32057-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33663-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33664-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/06/2014 | Transaction Assessment | | | 2.00 |
| 05/06/2014 | Payment | Receipt # DC-34317-2014 | FARAHMAND, ROGER A. | (2.00) |

Filed: 5/27/2014 9:51:59 AM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Wendy Hinojosa Deputy
Envelope ID: 1361640

NO. <u>401-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | |
| MARYAM FARAHMAND | § | 401ST JUDICIAL DISTRICT |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███████████ | § | |
| ███████████ | § | |
| A MINOR CHILD | § | COLLIN COUNTY, TEXAS |

# CERTIFICATE OF MARRIAGE

Respectfully submitted,

_/s/ Ike Vanden Eykel_

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201


EXHIBIT
**E**

Page 1 of 2

(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

## CERTIFICATE OF SERVICE

I certify that on May 27, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address _or_ by other means set forth in accordance with Rule 21a of the _Texas Rules of Civil Procedure_:

Robert S. Widner
The Widner Family Law Group, PLLC
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
robertwidner@gmail.com
972.692.8951 (fax)

_/s/ Ike Vanden Eykel_
**IKE VANDEN EYKEL**
Attorney for Petitioner

Page **2** of **2**



# The STATE OF TEXAS
## Marriage License
### COUNTY OF

**COLLIN**

To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.

## GREETING:
## YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE
## RITES OF MATRIMONY

Between
*AMIR BAGHERKALANTARI*
and
*MARYAM PARVIZ KHYAVI*

and make due return to the Clerk of the County Court of said County within

Thirty days thereafter, certifying your action under this license.

Witness my official signature and seal of office

At office in McKinney, Texas, this,

the 4th day of December 2009

Stacey Kemp, County Clerk

Collin County, Texas

By _Patricia Crosswhite_ Deputy

I hereby certify that on the 12 th day of December 2009.
At 4 O'Clock P M. I united in Marriage the parties above named.

Witness my hand this 12 th day of December 2009.

A. Ghafforie
Signature of Person performing Ceremony

ASLAN GHAFFARI
Typed or printed name of person performing ceremony

Marriage performed in

Collin County 1633 Piedmont Pl. Carrollton, Texas

P.H.D in ccomom Title of person performing ceremony

Address of person performing ceremony

Returned and filed for record the _____ day of _____, _____,

and recorded the _____ day of _____, _____ in the

In Document Number _____ Marriage License Record of Collin County

Stacey Kemp, County Clerk

By _____ Deputy

15206

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009

at 3:28 PM

Stacey Kemp, County Clerk

By _Patricia Crumb_ Deputy

Returned and Filed for
Record the ____ day
of _____. ____
Stacey Kemp, County Clerk
By _____ Deputy

## Groom
Birthday: 07/05/1981
Place of Birth: Tehran, IRAN

## Bride
Birthday: 11/27/1980
Place of Birth: Tehran, IRAN

Section 2.204 of the Family Code
This license cannot be used prior to:
12/07/2009 3:28 PM

Section 2.201 of the Family Code
Must be used before:

01/04/2010

Section 2.202 of the Family Code
Persons authorized to conduct ceremony.

Printed material distributed as required by
Section 2.009 of the Family Code.

### Return License To

MARYAM PARVIZ KHYAVI

15025 FARMCOTE DR

RICHARDSON, TX 75080

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

_A. Ghaffari_ (signature)

_____     _____
Signature of Witness                              Signature of First Party

                                                  ASLAN    GHAFFARI

_____     _____
Print name of Witness                             Print name of First Party

_____     _____
Signature of Witness                              Signature of First Party

_____     _____
Print name of Witness                             Print name of First Party

State of  TEXAS                  }
County of  DENTON                }
On  SEPT 16, 2005    before me,  KELLY   WILSON                                          ,
appeared  ASLAN GHAFFARI
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_Kelly Wilson_ (signature)

_____
Signature of Notary

> **KELLY WILSON**
> NOTARY PUBLIC STATE OF TEXAS
> COMMISSION EXPIRES
> **MAY 29, 2007**

Affiant _____ Known __X__ Produced ID
Type of ID  TXDL# 0999 0271
                                                  (Seal)

State of                         }
County of                        }
On                  before me,                                                          ,
appeared
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____
Signature of Notary

Aslan Ghaffari
1633 Piedmont Place
Carrollton, Texas
          75007

Affiant _____ Known _____ Produced ID
Type of ID _____
                                                  (Seal)

_____
Signature of Preparer

_____
Print Name of Preparer

_____
Address of Preparer



it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

This instrument was prepared based on information furnished by the parties, and no independent title search has been made.



_____

Aslan Ghaffari

STATE OF TEXAS        )

COUNTY OF DALLAS      )

This instrument was acknowledged before me on January 16, 2009, by Aslan Ghaffari.

BRIDGETTE M. AVILA
MY COMMISSION EXPIRES
February 26, 2011

_____

Notary Public, State of Texas

General Warranty Deed, Page 2

current year have been prorated and are assumed by Grantee. This conveyance is made and accepted subject to any and all validly existing restrictions, mineral reservations and interests, conditions, covenants, easements, and rights of way, if any, applicable to and enforceable against the above described property as now reflected by the records of the County Clerk in said County and State and to any applicable zoning laws or ordinances.

But it is expressly agreed and stipulated that the Vendor's Lien and the Superior Title are retained and reserved in favor of the payee in said note against the above described property, premises and improvements, until said note, and all interest thereon is fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

When this deed is executed by one person, or when the Grantee is one person, the instrument shall read as though pertinent verbs and pronouns were changed to correspond, and when executed by or to a corporation the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "Successors and assigns".

Dated this the      29th day of      December, 2011

*M. Ghaffari*
MAHIN GHAFFARI

*A. Ghaffari*
ASLAN GHAFFARI

THE STATE OF TEXAS
COUNTY OF _____ Denton

This instrument was acknowledged before me on __13-29-11__, by _Mahin Ghaffari and Aslan Ghaffari._

SANDRA J. LANKOW
Notary Public
State of Texas
Comm. Expires 07-01-2015

Notary Public, State of Texas

THE STATE OF _____

COUNTY OF _____

This instrument was acknowledged before me on _____ by _____

_____ of _____

on behalf of said corporation.

Notary Public, State of _____

RETURN TO:
HUSSAIN RAJANI
1633 PIEDMONT PLACE
CARROLLTON, TX 75007

Page 2 of 2

PB554-2.1009

# ROGER FARAHMAND'S
# RECORD TAB 13

Filed: 7/12/2014 12:20:59 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Lisa Sharpe Deputy
Envelope ID: 1805836

## NO. 417-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███ , A CHILD | § | COLLIN COUNTY, TEXAS |

## RESPONDENT'S OBJECTION TO AND MOTION TO STRIKE PETITIONER'S CERTIFICATE OF MARRIAGE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Maryam Farahmand, the Respondent and Counter-Petitioner in the above-styled and numbered cause, and files this Objection to and Motion to Strike Petitioner'. In support of thereof, Maryam Farahmand (hereinafter the "Respondent") would respectfully show the Court as follows:

### I.      MARCH 10, 2014 HEARING

1.      On March 10, 2014, the Honorable Judge Mark Rusch, presiding over the 401st Judicial District Court of Collin County, Texas, heard the parties request for Temporary Orders. Relating to the purported marriage license, when it was offered to the Court as evidence, it was not admitted. *See* Exhibit A, Page 4. *See* also, Exhibit A, Pages 18-19.

---

Respondent's Motion to Strike Petitioner's Certificate of Marriage                    1 | P a g e

2.     Additionally, by the Petitioner's attorney of record's own admissions, the original marriage license prepared by the County Clerk in the year 2009 <u>was never filed</u> and, by statute, expired on the thirty-first (31st) day following issuance. *See* Exhibit A, Page 18. Thus, Petitioner has actual awareness that the purported "Marriage Certificate" was never filed and has expired by statute.

3.     Further, Page 77 of transcript of March 10, 2014, hearing, wherein the Court Reporter noted on the top right hand corner as "Ruling," in relevant part, states, "that license isn't on file, so I don't have a valid prior ceremonial marriage." *See* Exhibit A, Page 77, Lines 18-20. Therefore, it is the contention of the Respondent that on March 10, 2014, the Court ruled that no formal ceremonial marriage occurred by and between the Respondent and any third party.

## II.     PETITIONER'S CERTIFICATE OF MARRIAGE FILING

4.     On or about May 27, 2014, at 9:51:59 a.m., Petitioner filed a document entitled "Certificate of Marriage" and attached the purported "marriage license" to same. The "Certificate of Marriage" does not contain one (1) sentence in the body of that document <u>and</u> does not reference any discovery production or disclosure responses. This filing occurred more than two (2) months after the March 10, 2014, hearing wherein the Honorable Judge Rusch, in relevant part, stated, "I don't have a valid prior ceremonial marriage." *See* Exhibit A, Page 77,

Lines 18-20.

### III.       REQUEST TO WITHDRAW CERTIFICATE

5.      On or about July 11, 2014, counsel for Respondent requested that the Petitioner "please identify the basis or grounds for the filing AND advise if Petitioner is willing to formally withdraw Petitioner's Certificate of Marriage filed on Mary 27, 2014, at 9:51:59 a.m." *See* Exhibit C. Petitioner's counsel responded to said request as follows:

> In response to your inquiry, please be advised that the grounds for our pleading can be found within the body of that document, as well as our discovery production and disclosure responses. We do not agree to withdraw it. Your assertion as to the Judge's 'ruling' is patently false and possibly actionable and I would suggest that you read the entire transcript and reconsider your position. I'm happy to discuss the matter further if you wish to do so.

*See* Exhibit C. As Petitioner's Certificate of Marriage contains not even one (1) word or sentence as to the basis of the filing and there are no references to extemporaneous documents, it is the contention of the Respondent that there is no basis for the filing other than an attempt to have the document "judicially noticed" at future hearings and/or at trial. This is improper as the purported "marriage license" has not been admitted as evidence in any hearing, was never filed with the Collin County Clerk, and has expired by its own terms, as judicially admitted by Petitioner's counsel.

## IV.    OBJECTION AND BASIS TO STRIKE

6.    Respondent fervently objects to the filing and the document attached thereto. It is the contention of the Respondent that Petitioner's "Certificate of Marriage" is a groundless pleading that has no basis in fact and is unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Tex. Civ. Prac. Rem. Code §9.001.

7.    The standard for reviewing whether a pleading is groundless is objective: Did the party and attorneys make a reasonable inquiry into the legal and factual basis of the claim. *See Tanner*, 856 S.W.2d at 730. The reasonableness of the inquiry is judged by the facts available and the circumstances present at the time the party filed the pleading. *Tarrant Cty. v. Chancey*, 942 S.W.2d 151, 155 (Tex. App. – Fort Worth 1997, no writ). In the present case, the following facts were known by Petitioner's counsel prior to the filing:

➢ Purported marriage license was never filed with the Collin County Clerk.

➢ Purported marriage license expired by its own terms.

➢ Purported marriage license was not admitted into evidence at the March 10, 2014, hearing.

➢ At the March 10, 2014, hearing, the Presiding Judge, in relevant part,

stated, "that license isn't on file, so I don't have a valid prior ceremonial marriage." *See* Exhibit A, Page 77, Lines 18-20. Unquestionably, the purported marriage license filed by Petitioner on May 27, 2014, is not valid and wholly void. Petitioner had actual knowledge that the purported marriage license was void and not valid, yet filed the document with the Court anyway.

8. Further, a pleading is frivolous unless each allegation or factual contention has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation, or discovery. TEX. CIV. PRAC. & REM. CODE §10.001(3). In the present case, Petitioner has failed to provide any evidentiary support or basis for the filing of the purported marriage license. (Note: Petitioner's counsel judicially acknowledged that the purported marriage license was never filed with the Colin County Clerk. Thus, Petitioner's counsel had actual knowledge that it is not a valid marriage license.)

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Respondent, Maryam Farahmand, after notice and hearing, asks this Court to grant this motion and enter the following orders:

1. Order Striking Petitioner's Certificate of Marriage filed on May 27, 2014, at 9:51 a.m. in its entirety;

2. Admonishment to Petitioner and/or Petitioner's Counsel of Record for filing a groundless and frivolous pleading;

3. Awarding attorney's fees to Respondent for the preparation and filing of this motion;

4. Respondent further asks for any and all such other relief, either at law or equity to which she may show herself to be justly entitled.

Respectfully submitted,

**WIDNER FAMILY LAW GROUP, PLLC**


By: /s/ **Robert S. Widner**  .
    **Robert S. Widner**
    Texas State Bar No. 00792092

2911 Turtle Creek Boulevard, Suite 405
Dallas, Texas, 75219

Telephone No.:      972-979-5700
Facsimile No.:      972-692-8951
Electronic Address robertwidner@gmail.com

and

**DAWN M. GRAMS, P.C.**

By: /s/ Dawn M. Grams Horak  .
    **Dawn M. Grams Horak**
    Texas State Bar No. 24036667

P.O. Box 924
Grapevine, Texas, 76099

Telephone No.:      469-644-7442
Facsimile No.:      214-572-6893
Electronic Address:    dgrams@msn.com

*of counsel to Widner Family Law Group, LLC*

**ATTORNEYS FOR RESPONDENT AND
COUNTER-PETITIONER
MARYAM FARAHMAND**

## CERTIFICATE OF CONFERENCE

I, the undersigned attorney, Dawn M. Grams Horak, hereby certify to the Court that I have attempted to confer with opposing counsel in an effort to resolve the issues contained in this motion without the necessity of Court intervention. Specifically, emails were exchanged by and between counsel and are attached hereto as Exhibit C.

Therefore, the parties have not been able to come to an amicable resolution to this matter without the necessity of the Court's intervention.

Certified to as of this 12th day of July, 2014.

/s/ Dawn M. Grams Horak

**DAWN M. GRAMS HORAK**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the above and foregoing has

been forwarded to the following parties via the manner reflected below, in

accordance with the TEXAS RULES OF CIVIL PROCEDURE.

Mr. Ike Vanden Eykel
Ms. Rebecca Tillery
Koons Fuller, P.C.
1717 McKinney Avenue, Suite 1500
Dallas, Texas, 75202

✔**Facsimile 214-871-0196**
Certified Mail/Return Receipt Requested
U.S. First Class Mail
✔**Other**
    ike@koonsfuller.com
    tillery@koonsfuller.com
    Reagan@koonsfuller.com
✔**E-Service**

Mr. Bradford Nace
Nace & Motley, LLC
100 Crescent Court, 7th Floor
Dallas, Texas, 75201

✔**Facsimile 214-242-4333**
Certified Mail/Return Receipt Requested
U.S. First Class Mail
✔**Other**    **bnace@nacemotley.com**
**E-Service**

Ms. Diana L. Porter
Diana L. Porter, P.C.
103 E. Virginia Street, Suite 201
McKinney, Texas 75069

Facsimile 972-548-2349
Certified Mail/Return Receipt Requested
U.S. First Class Mail
✔**Other**
**dporter@collincountydivorce.com**
    **Pursuant to Request of Attorney**

Certified to as of this 12th day of July, 2014.

/s/ Dawn M. Grams Horak
**DAWN M. GRAMS HORAK**

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

TRIAL COURT CAUSE NO. 401-56531-2013

| IN THE MATTER OF | ) | IN THE DISTRICT COURT |
| THE MARRIAGE OF | ) | |
| ROGER ARASH FARAHMAND | ) | |
| AND | ) | COLLIN COUNTY, TEXAS |
| MARYAM FARAHMAND | ) | |
| | ) | |
| AND IN THE INTEREST OF | ) | |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | ) | 401st JUDICIAL DISTRICT |

---

**HEARING**

---

On the 10th day of March, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Mark J. Rusch, Judge Presiding, held in McKinney, Collin County, Texas.

Proceedings reported by computerized machine shorthand.

Kimberly Tinsley, CSR #3611
(972) 548-4247



**APPEARANCES**

Bradford Winston Nace       SBOT NO. 24007726
Attorney at Law
100 Crescent Court
7th Floor
Dallas, TX   75201
Telephone:   (214)459-8289

                    *Attorney for Petitioner Roger Farahmand*


Richard J. Corbitt       SBOT NO. 04817000
Attorney At Law
6440 N. Central Expwy.
Suite 402
Dallas, TX   75208
Telephone:   (214)744-1234

                    *Attorney for Respondent Maryam Farahmand*

VOLUME 1

**HEARING**

*March 10, 2014*                                    *PAGE*    *VOL*

Proceedings begin  ..............................5     1

*Witness Direct   Cross   Voir Dire*
ASLAN GHAFFARI
    By Mr. Nace          11                                    1
    By Mr. Corbitt                          13                 1
    By Mr. Nace          17                                    1
    By Mr. Corbitt               20                            1
    By Mr. Nace          21                                    1

FARID RASTEGAR
    By Mr. Nace          23                                    1
    By Mr. Corbitt               26                            1
    By Mr. Nace          27                                    1

ROGER FARAHMAND
    By Mr. Nace          29                                    1
    By Mr. Corbitt               38                            1

MICHAEL SCOTT WOODS
    By the Court         55                                    1

ROBERT GORDON
    By the Court         68                                    1

Court's Ruling ...............................75     1

Adjourned ...................................104     1

Reporter's Certificate ......................105     1

**ALPHABETICAL WITNESS INDEX**

|  | *DIRECT* | *CROSS* | *VOIR DIRE* | *VOL* |
|---|---|---|---|---|
| Farahmand, Roger | 29 | 38 |  | 1 |
| Ghaffari, Aslan | 11,17 | 20 | 13 | 1 |
| Ghaffari, Aslan | 21 |  |  | 1 |
| Gordon, Robert | 68 |  |  | 1 |
| Rastegar, Farid | 23,27 | 26 |  | 1 |
| Woods, Michael Scott | 55 |  |  | 1 |

**EXHIBITS OFFERED BY THE PETITIONER**

| *EXHIBIT* | *DESCRIPTION* | *OFFERED* | *ADMITTED* | *VOL* |
|---|---|---|---|---|
| 1 | Marriage License dated 12/12/2009 | 18 |  | 1 |
| 2 | Video of 12/12/2009 on DVD | 25 | 25 | 1 |
| 3 | Supporting Affidavit of Roger Farahmand | 30 |  | 1 |
| 4 | Roger Farahmand's Summary of Requests | 31 | 31 | 1 |

*THE COURT:* Sustained.

*MR. NACE:* We'll offer.

*THE COURT:* Does it have a number on it?

*MR. NACE:* Yes, Your Honor, Petitioner's 1.

*MR. CORBITT:* Predicate has not been issued.

*THE COURT:* Let me see it, please.

*MR. NACE:* Yes, Your Honor.

*(Document present to the Court)*

*THE COURT:* Mr. Nace, I have what appears to be a Xerox copy. I don't see a clerk's stamp on here anywhere.

*MR. NACE:* Your Honor, we have the original with another witness. That is a copy.

*THE COURT:* Why isn't the original of a marriage license on file with my clerk?

*MR. NACE:* From what I understand, to file it that was their responsibility through her family. But the original does exist.

*THE COURT:* Where is the original?

*MR. NACE:* My client can better answer that judge through another witness. Because of things missing in this case, our chain of custody, we want to make sure we're keeping things intact.

*THE COURT:* His objection is sustained at

this point in time.

MR. NACE: May I re-approach the witness?

THE COURT: Sure.

Q. (By Mr. Nace) Sir, re-handing you this particular exhibit, when you perform these weddings before, do you typically sign off as a witness having performed a wedding ceremony?

MR. CORBITT: Please the Court, objection as to any relevancy regarding what he's done in the past. We're only worried about --

THE COURT: Overruled.

INTERPRETER: Can you repeat the question?

Q. (By Mr. Nace) Yes. With regard to the eight to ten wedding ceremonies Mr. Ghaffari has performed in his years, does he typically sign and certify that the parties were united in marriage?

A. Usually I write the name of the couple, the people who are getting married, in the marriage portion and all the information in a piece of paper and they sign it.

Q. And there's no question in Mr. Ghaffari's mind that this piece of paper that I offered as Exhibit 1 is his signature and nobody else's?

A. This is my signature for sure.

MR. NACE: Pass the witness.

period.  This child does not leave the United States, period.

Mother is ordered to continue her psychological course of treatment with Dr. Woods, if that involves counseling, medication, or whatever, and to abide by and follow all of his orders and instructions. Mr. Gordon is a forensic guy, you can continue with him, or not.  I'm not ordering you to.  I'm not forbidding you to.  Dr. Woods is the main primary treatment guy.  You will continue in your treatment with Dr. Woods.

Everyone in this room understand that if somebody has a chemical imbalance in their brain, I don't hold it against them if they are dealing with it appropriately.

Now, I've got an eight-month-old kid.  And Mr. Nace, just so you'll know, while this testimony about another wedding is interesting, even assuming for the sake of discussion that some ceremony was performed, that license isn't on file, so I don't have a valid prior ceremonial marriage.  I may or I may not have a valid informal marriage and that would certainly be some evidence of it.  But you're miles from at the very least cohabitation.  So at least today, I'm not -- don't have any concerns about there being a bigamy situation.  That doesn't mean there isn't one.  I'm just saying today, in

STATE OF TEXAS

COUNTY OF COLLIN

I, Kimberly Tinsley, Official Court Reporter in and for the 401st District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $624.50 and was paid by Counsel for Petitioner, Roger Farahmand.

WITNESS MY OFFICIAL HAND on this, the 3rd day of April, 2014.

Digitally signed by Kimberly Tinsley
Date: 2014.04.03 22:42:50 -05'00'

Kimberly Tinsley, CSR
Texas CSR #3611
Official Court Reporter
401st District Court
Collin County, Texas
2100 Bloomdale Rd, Suite 30030
McKinney, Texas 75071
Telephone:  (972) 548-4247
E-mail: ktinsley@co.collin.tx.us
Expiration:  12/31/15



The State of Texas

Marriage License

County of

COLLIN

To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.

## GREETING:
### YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE

## RITES OF MATRIMONY

Between

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

and make due return to the Clerk of the County Court of said County within

Thirty days thereafter, certifying your action under this license.

Witness my official signature and seal of office

At office in McKinney, Texas, this,

the 4th day of December 2009

Stacey Kemp, County Clerk

Collin County, Texas

By _Patricia Crosswhite_ Deputy

P-1

I hereby certify that on the __12th__ day of __December__ 20__09__.

At __4__ O'Clock __p__ M. I united in Marriage the parties above named.

Witness my hand this __12th__ day of __December__ 2009.

_A. Ghafforie_

Signature of Person performing Ceremony

ASLAN GHAFFARI

Typed or printed name of person performing ceremony

Marriage performed in

P.H.D in economi  Title of person performing ceremony

____Collin____ County 1633 Piedmont Pl. Carrollton, Texas -   Address of person performing ceremony

Returned and filed for record the _____ day of _____, _____.

and recorded the _____ day of _____, _____ in the

In Document Number _____  Marriage License Record of Collin County

Stacey Kemp, County Clerk

By _____ Deputy

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009

at 3:28 PM

Stacey Kemp, County Clerk

By _____ Deputy

Returned and Filed for
Record the ____ day
of _____. ____
Stacey Kemp, County Clerk
By _____ Deputy

## Groom
Birthday: 07/05/1981
Place of Birth: Tehran, IRAN

## Bride
Birthday: 11/27/1980
Place of Birth: Tehran, IRAN

Section 2.204 of the Family Code
This license cannot be used prior to:
12/07/2009 3:28 PM

Section 2.201 of the Family Code
Must be used before:
01/04/2010

Section 2.202 of the Family Code
Persons authorized to conduct ceremony.

Printed material distributed as required by
Section 2.009 of the Family Code.

## Return License To
MARYAM PARVIZ KHYAVI
15025 FARMCOTE DR
RICHARDSON, TX 75080

Filed: 5/27/2014 9:51:59 AM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Wendy Hinojosa Deputy
Envelope ID: 1361640

## NO. <u>401-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | |
| MARYAM FARAHMAND | § | 401ST JUDICIAL DISTRICT |
| | § | |
| AND IN THE INTEREST OF | § | |
| | § | |
| ▓▓▓▓▓▓▓▓▓▓, | § | |
| A MINOR CHILD | § | COLLIN COUNTY, TEXAS |

# CERTIFICATE OF MARRIAGE

Respectfully submitted,

*/s/ Ike Vanden Eykel*

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201



Page 1 of 2

(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

## CERTIFICATE OF SERVICE

I certify that on May 27, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address _or_ by other means set forth in accordance with Rule 21a of the _Texas Rules of Civil Procedure_:

Robert S. Widner
The Widner Family Law Group, PLLC
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
robertwidner@gmail.com
972.692.8951 (fax)

_/s/ Ike Vanden Eykel_
**IKE VANDEN EYKEL**
Attorney for Petitioner



The State of Texas Marriage License

County of

## COLLIN

To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.

### GREETING:
### YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE
## RITES OF MATRIMONY

Between

**AMIR BAGHERKALANTARI**

and

**MARYAM PARVIZ KHYAVI**

and make due return to the Clerk of the County Court of said County within
Thirty days thereafter, certifying your action under this license.

Witness my official signature and seal of office

At office in McKinney, Texas, this,

the  4th  day of  December 2009

Stacey Kemp, County Clerk

Collin County, Texas

By _Patricia Crosswhite_ Deputy

---

I hereby certify that on the __12 th__ day of __December__      __2009__.

At __4__ O'Clock __p__ M. I united in Marriage the parties above named.

Witness my hand this __12 th__ day of __December__ 2009 .

_A. Ghafforie_
Signature of Person performing Ceremony

__ASLAN  GHAFFARI__
Typed or printed name of person performing ceremony

Marriage performed in

P.H.D in economy   Title of person performing ceremony

__Collin__ County 1633 Piedmont Pl. Carrollton, Texas ~   Address of person performing ceremony

---

Returned and filed for record the _____ day of _____ , _____ ,

and recorded the _____ day of _____ , _____ in the

In Document Number                    Marriage License Record of Collin County

Stacey Kemp, County Clerk

By _____ Deputy

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009

at 3:28 PM

Stacey Kemp, County Clerk

By _Patricia Crowne_ Deputy

Returned and Filed for

Record the _____ day

of_____. _____

Stacey Kemp, County Clerk

By _____ Deputy

## Groom
Birthday: 07/05/1981
Place of Birth: Tehran, IRAN

## Bride
Birthday: 11/27/1980
Place of Birth: Tehran, IRAN

Section 2.204 of the Family Code
This license cannot be used prior to:
12/07/2009 3:28 PM

Section 2.201 of the Family Code
Must be used before:
01/04/2010

Section 2.202 of the Family Code
Persons authorized to conduct ceremony.

Printed material distributed as required by
Section 2.009 of the Family Code.

## Return License To

MARYAM PARVIZ KHYAVI
15025 FARMCOTE DR
RICHARDSON, TX 75080

**Dawn Horak**

| | |
|---|---|
| **From:** | Ike Vanden Eykel <ike@koonsfuller.com> |
| **Sent:** | Friday, July 11, 2014 4:52 PM |
| **To:** | Dawn Horak |
| **Cc:** | Rebecca Tillery; Reagan K. Vernon; Robert Widner |
| **Subject:** | Re: Farahmand - Certificate of Conference - Motion to Strike |

In response to your inquiry, please be advised that the grounds for our pleading can be found within the body of that document, as well as our discovery production and disclosure responses. We do not agree to withdraw it. Your assertion as to the Judge's 'ruling' is patently false and possibly actionable and I would suggest that you read the entire transcript and reconsider your position. I'm happy to discuss the matter further if you wish to do so.

Ike

## Ike Vanden Eykel, Firm CEO

Ike@koonsfuller.com (Bio) (Website) (Vcard)

## Koons**Fuller**

1717 McKinney, Suite 1500, Dallas, Texas 75202, 214 871-2727, 214 871-0196 facsimile
5700 West Plano Parkway, Suite 2200, Plano, Texas 75093, 972 769-2727, 972 769-0313 facsimile
181 Grand Ave, Suite 225, Southlake, Texas 76092, 817 481-2710, 817 481-2637 facsimile
320 West Eagle Drive, Suite 200, Denton, Texas 76201, 940 442-6677, 940 442-6671 facsimile
109 North Post Oak Lane, Suite 425 Houston, Texas 77024, 713-789-5112, 713-789-5123 facsimile

Confidentiality Notice: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information exempt from disclosure under applicable law. Unauthorized review, use, disclosure, or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all original copies of the message. Thank you.

On Jul 11, 2014, at 12:38 PM, Dawn Horak <dgrams@msn.com> wrote:

Dear Counsel,

Please allow this correspondence to serve as a **certificate of conference** on Respondent's intent to file a **Motion to Strike** and for possible **Sanctions** on the following matter:

➢ On March 10, 2014, during a hearing, Petitioner presented the Court a duplicate of the purported "marriage license" of Respondent and a third party.

➢ On March 10, 2014, Petitioner's counsel of record, Bradford Nace, judicially admitted that same was <u>never</u> filed with the Clerk in the year 2009 or in the year 2010.

➢ On March 10, 2014, the Honorable Judge Rusch ruled that there was no "valid prior ceremonial marriage."

➢ Thus, although Judge Rusch has formally ruled that (1) there is no valid ceremonial marriage by and between Respondent and Amir Bagherkalantari, in May 2014 Petitioner's counsel of record filed same with the Court.

At your earliest convenience, please identify the basis or grounds for the filing AND advise if Petitioner is willing to formally withdraw Petitioner's Certificate of Marriage filed on Mary 27, 2014, at 9:51:59 a.m.

1

EXHIBIT
C
Blumberg No. 5208

I thank you for your time and consideration regarding this matter.

Sincerely,

Dawn M. Grams Horak
Dawn M. Grams, P.C.
P.O. Box 924, Grapevine, Texas, 76099
Telephone No.: 469-644-7442/Facsimile No.: 214-572-6893

**Circular 230 Notice.** The following disclaimer is included to comply with and in response to U.S. Treasury Department Circular 230 Regulations. ANY STATEMENTS CONTAINED HEREIN ARE NOT INTENDED OR WRITTEN BY THE WRITER TO BE USED, AND NOTHING CONTAINED HEREIN CAN BE USED BY YOU OR ANY OTHER PERSON, FOR THE PURPOSE OF (1) AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED TRANSACTION OR MATTER ADDRESSED HEREIN.

**CONFIDENTIALITY NOTICE:** This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential, and exempt from disclosure under applicable laws. Any dissemination, distribution, or copying of this communication is strictly prohibited without prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any and copies.

# ROGER FARAHMAND'S
# RECORD TAB 14

Filed: 7/15/2014 10:34:27 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Mindi Johns Deputy
Envelope ID: 1836401

## CAUSE NO. 417-56531-2013

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| .AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ▓▓▓▓▓▓▓▓▓ | § | |
| ▓▓▓▓▓▓▓▓▓ | § | |
| A MINOR CHILD. | § | COLLIN COUNTY, TEXAS |

## RESPONDENT'S HYBRID MOTION FOR PARTIAL SUMMARY JUDGMENT ON PETITIONER'S ALLEGATIONS OF PRIOR MARRIAGE TO AMIR BAGHERKALANTARI

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Maryam Farahmand, the Respondent in the above-styled and numbered cause, and files this Hybrid Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari. In support of this motion, Maryam Farahmand would respectfully show the Court as follows:

### I.    TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | Table of Contents | ............ | 1 |
| II. | Introduction: Parties, Pleadings, and Trial Setting | ............ | 5 |
| III. | Summary of Motion | ............ | 6 |

---

140712 Respondent's Hybrid Motion for Summary Judgment Final.doc                    Page 1

| IV. | | Summary Judgment Evidence | ............ | 8 |

| V. | | Arguments & Authorities | ............ | 9 |

A.      Respondent Seeks A Partial Motion For Summary Judgment, Based Upon The No Evidence Motion For Summary Judgment Standard, On Petitioner's Burden To Prove A Valid Former Marriage By And Between Respondent And Amir Bagherkalantari And Its Continued Validity (No Evidence Motion for Partial Summary Judgment)      ............      9

(1)      Standard for No Evidence Motion for Summary Judgment      ............      9

(2)      Petitioner Has Had Adequate Time for Discovery      ............      10

(3)      Basis of Motion      ............      11

a.      Challenged Element Number 1: No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony Per Tex. Fam. Code §2.202 (a)(1)      ............      17

b.      Challenged Element Number 2: No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(2)      ............      18

c.      Challenged Element Number 3: No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(3)      ............      20

d.      Challenged Element Number 4: No valid formal or ceremonial marriage - No Evidence      ............      21

of Person Authorized to Conduct Ceremony –
Tex. Fam. Code §2.202 (a)(4)

e.    Challenged Element Number 5: No      valid  ............  23
      formal or ceremonial marriage - No Evidence
      of Person Authorized to Conduct Ceremony –
      Tex. Fam. Code §2.202 (a)(5)

f.    Challenged Element Number 6: No valid  ............  24
      formal or ceremonial marriage - No Evidence
      of Person Authorized to Conduct Ceremony –
      Tex. Fam. Code §2.202 (b)

g.    Challenged Element Number 7: No      valid  ............  26
      formal or ceremonial marriage - No Evidence
      of Person Authorized to Conduct Ceremony –
      Tex. Fam. Code §2.202 (c)

h.    Challenged Element Number 8: No valid  ............  27
      formal or ceremonial marriage - No Evidence
      of Person Authorized to Conduct Ceremony –
      Tex. Fam. Code §2.202 (d)

i.    Challenged Element Number 9: No valid  ............  29
      formal or ceremonial marriage - No Evidence
      of Person Authorized to Conduct Ceremony –
      Tex. Fam. Code §2.202 (b).

j.    Challenged Element Number 10: No valid  ............  30
      formal or ceremonial marriage - No Evidence
      of Return of License – Tex. Fam. Code
      §2.206(a)

k.    Challenged Element Number 11: No valid  ............  31
      formal or ceremonial marriage - No Evidence
      of Offense for Non-Return of License – Tex.
      Fam. Code §2.206(b)

l.    Challenged Element Number 12: No valid  ............  33
      formal or ceremonial marriage - No Evidence

of Reasonable Appearance of Unauthorized Person – Tex. Fam. Code §2.302(1).

m. Challenged Element Number 13: No valid informal or common law marriage - No Evidence of Party Treating Marriage as Valid – Tex. Fam. Code §2.302(2). ............ 35

n. Challenged Element Number 14: No valid informal or common law marriage - No Evidence of Signed Declaration of Informal Marriage – Tex. Fam. Code §2.401 (a)(1). ............ 36

o. Challenged Element Number 15: No valid informal or common law marriage - No Evidence of Signed Declaration of Informal Marriage – Tex. Fam. Code §2.401 (a)(2). ............ 38

p. Challenged Element Number 16: No Evidence of No Evidence of Agreement to Have A Present, Immediate, and Permanent Marital Relationship ............ 40

q. Challenged Element Number 17: No Evidence of Agreement to be Husband and Wife ............ 41

r. Challenged Element Number 18: No valid informal or common law marriage - No Evidence of Holding Out ............ 42

s. Challenged Element Number 19: No valid informal or common law marriage - No Evidence of Holding Out ............ 43

t. Challenged Element Number 20: No Evidence of Continued Valid Marriage By And Between Respondent And Amir Bagherkalantari ............ 44

(4) Summary ............ 45

B.  Motion For Traditional Summary Judgment Based Upon Disproving An Essential Element Of Petitioner's Cause Of Action That Her Most Recent Marriage Is Void Due To A Prior Marriage – Either Formal or Informal ............ 46

 (1) Standard for Traditional Motion for Summary Judgment ............ 47

 (2) Basis of Motion ............ 48

  (a) Formal or Ceremonial Marriage ............ 48

   (1) Section 2.201 of the Texas Family Code ............ 51

   (2) Section 2.202 of the Texas Family Code ............ 53

   (3) Section 2.2032 of the Texas Family Code ............ 56

   (4) Section 2.206 of the Texas Family Code ............ 57

  (b) Informal or Common Law Marriage ............ 59

   (1) Section 2.401 of the Texas Family Code ............ 60

   (2) Section 2.401 of the Texas Family Code ............ 61

 (3) Summary ............ 63

VI.  Prayer ............ 63

## II. INTRODUCTION: PARTIES, PLEADINGS, AND TRIAL SETTING

1. The parties are as follows:

 a. Petitioner is Roger Arash Farahmand (hereinafter the "Petitioner").

 b. Respondent is Maryam Farahmand (hereinafter the "Respondent").

c.  The minor child is ████████████████████. He is represented by Diane L. Porter.

2.  The pleadings on file are summarized in Exhibit A attached hereto and incorporated herein by reference as if set forth fully herein.

3.  Discovery in this suit is governed by an Agreed Scheduling Order entered on or about May 2, 2014.

4.  This matter is not presently set for trial.

### III.  SUMMARY OF MOTION

5.  Respondent moves for partial summary judgment based upon both traditional summary judgment grounds and no-evidence summary judgment grounds. A party may, in a single motion, present grounds appropriate for a traditional summary judgment and grounds appropriate for a no-evidence summary judgment. *See Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004). This motion is sometimes called a hybrid motion for summary judgment. *See Young Ref. Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex. App. – Houston [1st Dist.] 2001, pet. denied). The party should specify the standard on which the summary judgment is sought. *See, e.g., Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 281 (Tex. App. – Houston [1st Dist.] 2004, no pet.). In the present case, Respondent shall present the basis for which she is entitled to partial summary judgment based upon Petitioner's allegations of a purported prior marriage by and between Respondent and Amir Bagherkalantari. Respondent

would show:

> ➢ Respondent seeks a motion for summary judgment, based upon the **no evidence motion for summary judgment** standard, on Petitioner's burden to prove a valid former marriage by and between Respondent and Amir Bagherkalantari and its continued validity. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981) and Tex. Fam. Code §1.102. As Petitioner is the party attacking the validity of the most recent marriage, Petitioner has the burden of proving a valid prior marriage. Respondent is challenging 20 elements that are the bases to prove either a formal or ceremonial marriage or an informal or common law marriage. Said challenged elements are identified in Paragraphs 16-50 below and summarized in Paragraph 15 below.

> ➢ Respondent seeks a motion for summary judgment, based upon the **traditional motion for summary judgment** standard, due to her disproving at least one (1) essential element of Petitioner's cause of action or burden of proof. Specifically, Respondent is providing competent summary judgment evidence that conclusively establishes that the following statutory requirements identified in the Texas Family Code that are required to establish a formal or ceremonial marriage have been disproved: §§2.201, 2.202, 2.203, and 2.206. Additionally, Respondent is

providing competent summary judgment evidence that conclusively establishes that the following statutory requirements identified in the Texas Family Code that are required to establish a informal or common law marriage have been disproved: §2.401.

## IV. SUMMARY JUDGMENT EVIDENCE

6. In support of Respondent's Motion for Summary Judgment, Respondent presents the following competent summary judgment evidence:

**Exhibit A** A true and correct duplicate of the Summary of Pleadings.

**Exhibit B** A true and correct duplicate of the Affidavitof Maryam Parviz-Khyavi Farahmand.

**Exhibit C** A true and correct duplicate of the Foreign Language Translation and Affidavit filed by Petitioner on or about June 13, 2014.

**Exhibit D** A true and correct duplicate of the following pages of the March 10, 2014, Hearing transcription: Pages 1-4, 13-19, 105, and Exhibit P-1.

**Exhibit E** A true and correct duplicate of Petitioner's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce.

**Exhibit F** A true and correct duplicate of the Affidavit of Dawn M. Grams Horak.

Each of the above-listed competent summary judgment evidence is incorporated herein by reference as if set forth fully herein for all purposes.

## V. ARGUMENTS & AUTHORITIES

7. Respondent incorporates Paragraphs 1-6 by reference as if fully set forth herein.

**A. RESPONDENT SEEKS A PARTIAL MOTION FOR SUMMARY JUDGMENT, BASED UPON THE NO EVIDENCE MOTION FOR SUMMARY JUDGMENT STANDARD, ON PETITIONER'S BURDEN TO PROVE A VALID FORMER MARRIAGE BY AND BETWEEN RESPONDENT AND AMIR BAGHERKALANTARI AND ITS CONTINUED VALIDITY (NO EVIDENCE MOTION FOR PARTIAL SUMMARY JUDGMENT)**

8. The purpose of the no-evidence summary judgment procedure, which is modeled after federal summary judgment practice, is to pierce the pleadings and evaluate the evidence to see if a trial is necessary. See *Benitz v. Gould Group*, 27 S.W.3d 109, 112 (Tex. App. – San Antonio 2000, no pet.).To accomplish this, the no-evidence summary judgment procedure is designed to isolate and dispose of claims or defenses not supported by facts. See *Cf. Celotex. Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986). In the present case, Respondent's Motion for Summary Judgment is proper because Petitioner has failed to provide evidence raising a genuine issue of material fact to prove a valid prior and existing marriage of Respondent, for which he has the burden of proof at trial.

**(1) STANDARD FOR NO EVIDENCE MOTION FOR SUMMARY JUDGMENT**

9. The purpose of the no-evidence summary judgment procedure, which is modeled after federal summary judgment practice, is to pierce the pleadings and evaluate the evidence to see if a trial is necessary. *Benitz v. Gould Group*, 27 S.W.3d

109, 112 (Tex. App. – San Antonio 2000, no pet.). To accomplish this, the no-evidence summary judgment procedure is designed to isolate and dispose of claims or defenses not supported by facts. *Cf. Celotex. Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986).* In the present case, Respondent's Motion for Summary Judgment is proper because Petitioner has failed to provide evidence raising a genuine issue of material fact on the essential elements to prove a valid marriage by and between Respondent and Amir Bagherkalantari.

## (2) PETITIONER HAS HAD ADEQUATE TIME FOR DISCOVERY

10. The no-evidence motion for summary judgment should be filed after the nonmovant has had "an adequate time for discovery." Tex. R. Civ. Pro. 166a(i); *Morehouse v. Chase Manhattan Bank,* 76 S.W.3d 608, 612 (Tex. App. – San Antonio 2002, no pet.). However, the rule does not require that discovery be completed. *Specialty Retailers v. Fuqua,* 29 S.W.3d 140, 145 (Tex. App. – Houston [14th Dist.] 2000, pet. denied.).

11. However, to further determine whether the nonmovant had an adequate time for discovery, courts examine *some* of the following factors: (a) the nature of the claim, (b) the evidence necessary to controvert the motion, (c) the length of time the case was on file, (d) the length of time the no-evidence motion was on file, (e) whether the movant requested stricter deadlines for discovery, (e) the amount of discovery already conducted, and (f) whether the discovery deadlines in place were specific or

vague. *Restaurant Teams Int'l v. MG Sec. Corp.,* 95 S.W.3d 336, 339 (Tex. App. - Dallas 2002, no pet.)(7 month old case); *Martinez v. City of San Antonio*, 40 S.W.3d 587, 591 (Tex. App. – San Antonio 2001, pet. denied)(5-year old case); *see also McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex. App. – Amarillo 1999, no pet.)(need for discovery minimal because issue was a question of law.) In the present case, this issue has been on the Court's docket from the date of March 28, 2014, the date of filing of the Original Petition to Declare Marriage Void. On or about Mary 2, 2014, the parties entered into an Agreed Scheduling Order providing that discovery would close on or about June 27, 2014. Thus, Petitioner has had adequate time for discovery.

## (3) BASIS OF MOTION

12. Respondent seeks partial summary judgment on Petitioner's allegation that "Respondent was already legally married" to Amir Bagherkalantari at the time of her marriage to Petitioner. *See* Page 2, Section I, Paragraph 7, entitled "Grounds" that, in relevant part, states, "The purported marriage is void and of no effect under the provisions of section 6.202 of the Texas Family Code because Respondent was already legally married." Tex. Fam. Code § 6.202.The Texas Family Code and supporting case law places the burden of proving a valid prior marriage on the person alleging same. Specifically, Section 1.102 of the Texas Family Code states, "When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes the most recent marriage

until one who asserts the validity of a prior marriage proves the validity of the prior marriage." Tex. Fam. Code §1.102. Petitioner's allegations against Respondent, as identified in his Original Petition to Declare Marriage Void, are as follows:

13. Page 2, Section I, Paragraph 7, entitled "Grounds" states,

> Petitioner and Respondent entered into a purported marriage on July 28, 2012. The purported marriage is void and of no effect under the provisions of section 6.202 of the Texas Family Code because Respondent was already legally married. The prior marriage of Respondent was to Amir Bagherkalantari and occurred o or about December 12, 2009. Respondent's marriage to Amir Bagherkalantari was never dissolved by divorce or annulment or terminated by the death of Amir Bagherkalantari.

14. In the present case, Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981). Section 1.102 of the Texas Family Code further states that the most recent marriage is presumed to be valid as against each marriage that precedes the most recent marriage until one who asserts the validity of a prior marriage proves the validity of the prior marriage. Tex. Fam. Code 1.102. The Court in *Loera v. Loera* held that the party attacking the validity of the marriage has a burden to 'introduce sufficient evidence, standing alone, to negate the dissolution of the prior marriage." *Loera v. Loera*, 815 S.W.2d 910, 911 (Tex. App. – Corpus Christi 1991, no writ).

15. Respondent seeks a partial no evidence summary judgment based upon Petitioner's failure to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the following challenged elements:

a. Challenged Element No. 1  No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony Per Tex. Fam. Code §2.202 (a)(1)

b. Challenged Element No. 2  No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(2)

c. Challenged Element No. 3  No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(3)

d. Challenged Element No. 4  No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code

§2.202 (a)(4)

e.    Challenged Element No.   5    No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(5)

f.    Challenged Element No.   6    No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (b)

g.    Challenged Element No.   7    No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (c)

h.    Challenged Element No.   8    No valid formal or ceremonial marriage - No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (d)

i.    Challenged Element No.   9    No valid formal or ceremonial marriage - No Evidence of Return of License –

Tex. Fam. Code §2.206(a)

j.    Challenged Element No.  10  No valid formal or ceremonial marriage - No Evidence of Offense for Non-Return of License – Tex. Fam. Code §2.206(b).

k.    Challenged Element No.  11  No valid formal or ceremonial marriage - No Evidence of Reasonable Appearance of Unauthorized Person – Tex. Fam. Code §2.302(1).

l.    Challenged Element No.  12  No valid informal or common law marriage - No Evidence of Party Treating Marriage as Valid – Tex. Fam. Code §2.302(2).

m.    Challenged Element No.  13  No valid informal or common law marriage - No Evidence of Signed Declaration of Informal Marriage – Tex. Fam. Code §2.401 (a)(1).

n.    Challenged Element No.  14  No valid informal or common law marriage - No Evidence of Signed

Declaration of Informal Marriage –
Tex. Fam. Code §2.401 (a)(2).

o. Challenged Element No. 15 No valid informal or common law marriage - No Evidence of Proceeding Commenced Before the Second Anniversary of the Date on Which the Parties Separated and Ceased Living Together – Tex. Fam. Code §2.401 (b)

p. Challenged Element No. 16 No valid informal or common law marriage - No Evidence of Agreement to Have A Present, Immediate, and Permanent Marital Relationship

q. Challenged Element No. 17 No valid informal or common law marriage - No Evidence of Agreement to be Husband and Wife

r. Challenged Element No. 18 No valid informal or common law marriage - No Evidence of Holding Out

s. Challenged Element No. 19 No valid informal or common law marriage - No Evidence of Muslim

Marriage Contract

t.   Challenged Element No. 20 No Evidence of continued valid marriage by and between Respondent and Amir Bagherkalantari.

**(a)   Challenged Element Number 1: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(1).**

16.   To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (a)(1) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.202 Code | PERSONS AUTHORIZED TO CONDUCT CEREMONY. (a) The following persons are authorized to conduct a marriage ceremony:<br><br>(1) a licensed or ordained Christian minister or priest;<br><br>. . . . . |
|---|---|

17.   Petitioner has no evidence to support Challenged Element No. 1 to prove that the statutory requirement identified in Section 2.202 (a)(1) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or

ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 1, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(b)  Challenged Element Number 2: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(2).**

18.    To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202

(a)(2) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.202 Code | PERSONS AUTHORIZED TO CONDUCT CEREMONY. (a) The following persons are authorized to conduct a marriage ceremony: |
|---|---|
| | . . . . |
| | (2) a Jewish rabbi; |
| | . . . . . |

19. Petitioner has no evidence to support Challenged Element No. 2 to prove that the statutory requirement identified in Section 2.202 (a)(2) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 2, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(c)     Challenged Element Number 3: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(3).**

20.     To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (a)(3) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.202 Code | PERSONS AUTHORIZED TO CONDUCT CEREMONY. (a) The following persons are authorized to conduct a marriage ceremony: |
|---|---|
| | . . . . . |
| | (3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony; |
| | . . . . . |

21.     Petitioner has no evidence to support Challenged Element No. 3 to prove that the statutory requirement identified in Section 2.202 (a)(3) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While

Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 3, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(d) Challenged Element Number 4: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(4).**

22. To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (a)(4) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.202 Code | PERSONS AUTHORIZED TO CONDUCT CEREMONY. (a) The following persons are authorized to conduct a marriage |
|---|---|

ceremony:

. . . .

(4) a justice of the supreme court, judge of the court of criminal appeals, justice of the courts of appeals, judge of the district, county, and probate courts, judge of the county courts at law, judge of the courts of domestic relations, judge of the juvenile courts, retired justice or judge of those courts, justice of the peace, retired justice of the peace, judge of a municipal court, retired judge of a municipal court, or judge or magistrate of a federal court of this state; and

. . . .

23. Petitioner has no evidence to support Challenged Element No. 4 to prove that the statutory requirement identified in Section 2.202 (a)(4) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 4, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage

of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(e)** **Challenged Element Number 5: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (a)(5).**

24. To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (a)(5) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.202 Code | PERSONS AUTHORIZED TO CONDUCT CEREMONY. |
|---|---|
| | . . . . |
| | (5) a retired judge or magistrate of a federal court of this state. |
| | . . . . |

25. Petitioner has no evidence to support Challenged Element No. 5 to prove that the statutory requirement identified in Section 2.202 (a)(5) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While

Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 5, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(f) Challenged Element Number 6: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (b).**

26. To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (b) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. Code | § 2.202 | PERSONS AUTHORIZED TO CONDUCT CEREMONY. |
| --- | --- | --- |
| | | . . . . |

(b) For the purposes of Subsection (a)(4), a retired judge or justice is a former judge or justice who is vested in the Judicial Retirement System of Texas Plan One or the Judicial Retirement System of Texas Plan Two or who has an aggregate of at least 12 years of service as judge or justice of any type listed in Subsection (a)(4).

(b-1) For the purposes of Subsection (a)(5), a retired judge or magistrate is a former judge or magistrate of a federal court of this state who is fully vested in the Federal Employees Retirement System under 28 U.S.C. Section 371 or 377.

. . . .

27.     Petitioner has no evidence to support Challenged Element No. 6 to prove that the statutory requirement identified in Section 2.202 (b) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 6, Respondent is entitled to summary judgment

on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(g)   Challenged Element Number 7: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (c).**

28.   To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (c) of the Texas Family Code were complied with by Petitioner and any third party:

| | |
|---|---|
| Tex. Fam. § 2.202 Code | PERSONS AUTHORIZED TO CONDUCT CEREMONY. <br> . . . . <br> (c) Except as provided by Subsection (d), a person commits an offense if the person knowingly conducts a marriage ceremony without authorization under this section. An offense under this subsection is a Class A misdemeanor. <br> . . . . |

29.   Petitioner has no evidence to support Challenged Element No. 7 to prove that the statutory requirement identified in Section 2.202 (c) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in

the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 7, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(h)** **Challenged Element Number 8: No Evidence of Person Authorized to Conduct Ceremony – Tex. Fam. Code §2.202 (d).**

30.     To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.202 (d) of the Texas Family Code were complied with by Petitioner and any third party:

Tex.    Fam.  §  2.202    PERSONS AUTHORIZED TO CONDUCT

Code                    CEREMONY.

                        . . . .

          (d) A person commits an offense if the person knowingly conducts a marriage ceremony of a minor whose marriage is prohibited by law or of a person who by marrying commits an offense under Section 25.01, Penal Code. An offense under this subsection is a felony of the third degree.

31. Petitioner has no evidence to support Challenged Element No. 8 to prove that the statutory requirement identified in Section 2.202 (d) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 8, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(i)    Challenged Element Number 9: No Evidence of Return of License – Tex. Fam. Code §2.206(a).**

32.    To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.206(a) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.206 Code | RETURN OF LICENSE; PENALTY. (a) The person who conducts a marriage ceremony shall record on the license the date on which and the county in which the ceremony is performed and the person's name, subscribe the license, and return the license to the county clerk who issued it not later than the 30th day after the date the ceremony is conducted. |
| --- | --- |

. . . .

33.    Petitioner has no evidence to support Challenged Element No. 9 to prove that the statutory requirement identified in Section 2.206(a) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage

ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 9, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(j)     Challenged Element Number 10: No Evidence of Offense for Non-Return of License – Tex. Fam. Code §2.206(b).**

34.     To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.206(b) of the Texas Family Code were complied with by Petitioner and any third party:

Tex.     Fam.   §   2.206     RETURN OF LICENSE;   PENALTY.

Code  . . . .

 (b) A person who fails to comply with this section commits an offense. An offense under this section is a misdemeanor punishable by a fine of not less than $200 and not more than $500.

35. Petitioner has no evidence to support Challenged Element No. 10 to prove that the statutory requirement identified in Section 2.206(b) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 10, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(k) Challenged Element Number 11: No Evidence of Reasonable Appearance of Unauthorized Person – Tex. Fam. Code §2.302(1).**

36. To prove a ceremonial or formal marriage transpired, the marriage must

comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown,* 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.302(1) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.302 Code | CEREMONY CONDUCTED BY UNAUTHORIZED PERSON. The validity of a marriage is not affected by the lack of authority of the person conducting the marriage ceremony if: (1) there was a reasonable appearance of authority by that person; . . . . |
|---|---|

37. Petitioner has no evidence to support Challenged Element No. 11 to prove that the statutory requirement identified in Section 2.302(1) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner

has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 11, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(l)     Challenged Element Number 12: No Evidence of Party Treating Marriage as Valid – Tex. Fam. Code §2.302(2).**

38.     To prove a ceremonial or formal marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302; *Brown v. Brown*, 256 S.W.2d 143, 143 (Tex. App. – Beaumont 153, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirements identified in Section 2.302(2) of the Texas Family Code were complied with by Petitioner and any third party:

| | |
|---|---|
| Tex. Fam. § 2.302 Code | CEREMONY CONDUCTED BY UNAUTHORIZED PERSON. The validity of a marriage is not affected by the lack of authority of the person conducting the marriage ceremony if: <br><br> . . . . <br><br> (2)   at least one party to the marriage participated in the ceremony in good faith and that party treats the marriage as valid; |

. . . .

39.    Petitioner has no evidence to support Challenged Element No. 12 to prove that the statutory requirement identified in Section 2.302 (2) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 12, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing formal or ceremonial marriage.

**(m)** **Challenged Element Number 13: No Evidence of Signed Declaration of Informal Marriage – Tex. Fam. Code §2.401 (a)(1).**

40. To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell,* 865 S.W.2d 929, 931 (Tex. 1993). All three statutory elements must exist at the same time for there to be a valid informal marriage. *Ballesteros v. Jones,* 985 S.W.2d 485, 489 (Tex. App. – San Antonio 1998, pet. denied); *Gary v. Gary,* 490 S.W.2ds 929, 935 (Tex. App. – Tyler 1973, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirement identified in Section 2.401(a)(1) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.401 Code | PROOF OF INFORMAL MARRIAGE. (a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that: (1) a declaration of their marriage has been signed as provided by this subchapter; . . . . . |
|---|---|

41. Petitioner has no evidence to support Challenged Element No. 13 to prove that the statutory requirement identified in Section 2.401 (a)(1) of the Texas Family

Code was complied with by Respondent and Amir Bagherkalantari. A formal or ceremonial marriage is proved by establishing compliance of the statutory requirements listed in the Family Code for obtaining a marriage license and participating in the marriage ceremony. *See* Tex. Fam. Code §§2.001-2.302. While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 13, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

**(n)    Challenged Element Number 14: No Evidence of Signed Declaration of Informal Marriage – Tex. Fam. Code §2.401 (a)(2).**

42.    To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell,*

865 S.W.2d 929, 931 (Tex. 1993). All three statutory elements must exist at the same time for there to be a valid informal marriage. *Ballesteros v. Jones,* 985 S.W.2d 485, 489 (Tex. App. – San Antonio 1998, pet. denied); *Gary v. Gary,* 490 S.W.2ds 929, 935 (Tex. App. – Tyler 1973, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirement identified in Section 2.401(a)(2) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. § 2.401 Code | PROOF OF INFORMAL MARRIAGE. (a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that: . . . . . (2) the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and they represented to others that they were married. . . . . . |

43.    Petitioner has no evidence to support Challenged Element No. 14 to prove that the statutory requirement identified in Section 2.401 (a)(2) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell,* 865 S.W.2d 929, 931 (Tex.

1993). While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 14, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

(o)    **Challenged Element Number 15: No Evidence of Proceeding Commenced Before the Second Anniversary of the Date on Which the Parties Separated and Ceased Living Together – Tex. Fam. Code §2.401 (b).**

44.    To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell,* 865 S.W.2d 929, 931 (Tex. 1993). All three statutory elements must exist at the same time for there to be a valid informal marriage. *Ballesteros v. Jones,* 985 S.W.2d 485, 489 (Tex. App. – San Antonio 1998, pet. denied); *Gary v. Gary,* 490 S.W.2ds 929, 935

(Tex. App. – Tyler 1973, writ ref'd n.r.e.). In the present case, Petitioner is unable to present competent summary judgment evidence that the statutory requirement identified in Section 2.401(b) of the Texas Family Code were complied with by Petitioner and any third party:

| Tex. Fam. Code § 2.401 | PROOF OF INFORMAL MARRIAGE. ...<br><br>(b) If a proceeding in which a marriage is to be proved as provided by Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married. |
|---|---|

. . . . .

45.     Petitioner has no evidence to support Challenged Element No. 15 to prove that the statutory requirement identified in Section 2.401 (b) of the Texas Family Code was complied with by Respondent and Amir Bagherkalantari. To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993). While Petitioner has provided a "blanket" statement, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element as it relates to Respondent and Amir Bagherkalantari.

As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 15, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

**(p)     Challenged Element Number 16: No Evidence of No Evidence of Agreement to Have A Present, Immediate, and Permanent Marital Relationship**

46.     To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993). Section 2.401(a)(2)of the Texas Family Code requires the parties agree to be married. Tex. Fam. Code 2.401(a)(2). To prove the parties agreed to be married, Petitioner must present competent summary judgment evidence that shows that Respondent and Amir Bagherkalantari intended to have a present, immediate, and permanent marital relationship and that they did, in fact, agree to be husband and wife. *Small v. McMaster,* 352 S.W.3d 280, 283 (Tex. App. –

Houston [14th Dist.] 2011, pet denied). In the present case, Petitioner is unable to present competent summary judgment evidence that Respondent and Amir Bagherkalantari intended to have a present, immediate, and permanent marital relationship as of December 12, 2009, the date of the alleged ceremony. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 16, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

**(q)    Challenged Element Number 17: No Evidence of Agreement to be Husband and Wife**

47.    To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993). Section 2.401(a)(2)of the Texas Family Code requires the parties agree to be married. Tex. Fam. Code 2.401(a)(2). To prove the parties agreed to be married, Petitioner must present competent summary judgment evidence that shows that Respondent and Amir Bagherkalantari intended to have a

present, immediate, and permanent marital relationship and that they did, in fact, agree to be husband and wife. *Small v. McMaster,* 352 S.W.3d 280, 283 (Tex. App. – Houston [14th Dist.] 2011, pet denied). In the present case, Petitioner is unable to present competent summary judgment evidence that Respondent and Amir Bagherkalantari agreed to be married as of December 12, 2009, the date of the alleged ceremony. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 17, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

**(r)    Challenged Element Number 18: No Evidence of Holding Out**

48.    To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell,* 865 S.W.2d 929, 931 (Tex. 1993). After agreeing to be married, the parties must represent to others in Texas that they are married. Tex. Fam. Code § 2.401(a)(2). In the present case, Petitioner is unable to present competent summary judgment evidence

that Respondent and Amir Bagherkalantari held themselves out as being married subsequent to the date of December 12, 2009, the date of the alleged ceremony. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 18, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

**(s)     Challenged Element Number 19: No Evidence of Muslim Marriage Contract**

49.     To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993). Section 2.401(a)(2)of the Texas Family Code requires the parties agree to be married. Tex. Fam. Code 2.401(a)(2). In the present case, there is no document evidencing a written marriage contract by and between Respondent and Amir Bagherkalantari. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and

Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 19, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a prior existing informal or common law marriage.

**(t)    Challenged Element Number 20: No Evidence of Continued Valid Marriage By And Between Respondent And Amir Bagherkalantari.**

50.    Petitioner has no evidence to support the requested relief of having the Court determine his marriage to Respondent is void pursuant to Section 6.202 of the Texas Family Code, as the burden is upon Petitioner to provide evidence that there is a continuing valid marriage by and between Respondent and Amir Bagherkalantari. Tex. Fam. Code § 1.102. While the Petitioner has provided a "blanket" statement, Petitioner is unable to meet its burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged element. Thus, Respondent is entitled to summary judgment on Petitioner's cause of action to declare marriage void. As Petitioner has the burden of proving the impediment of a prior marriage of Respondent and its continued validity, and Petitioner is unable to provide competent summary judgment evidence on Challenged Element No. 20, Respondent is entitled to summary judgment on the Petitioner's cause of action to declare the current marriage of Petitioner and Respondent void due to a continuing prior marriage of Respondent.

## (4) SUMMARY

51.     Petitioner has no evidence to rebut the presumption that his marriage to Respondent is invalid due to prior valid marriage by and between Respondent and Amir Bagherkalantari. The party attacking the presumption that the most recent marriage is valid must prove prior and existing marriage. Tex. Fam. Code 1.102. Petitioner lacks evidence to support a valid prior existing marriage, whether a formal ceremonial marriage or an informal or common law marriage, by and between Respondent and Amir Bagherkalantari. While the Petitioner has provided "blankets" in his pleadings, Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on Challenged Elements 1-20 identified above. The burden of proof is upon Petitioner to negate the presumption that his marriage to Respondent is void due to a valid prior marriage. Tex. Fam. Code § 1.102.

52.     In conclusion, summary judgment on behalf of Respondent is proper as Petitioner is unable to meet his burden of proof by presenting competent summary judgment evidence proving the impediment of a prior marriage of Respondent and its continued validity, which Petitioner has the burden of proof at trial. Specifically, summary judgment on behalf of Respondent is proper as Petitioner has failed, and is unable, to provide evidence raising a genuine issue of material fact on Challenged Elements 1-20 identified above which are necessary to prove a valid marriage in

existence by and between Respondent and Amir Bagherkalantari and, thus thereby, voiding Petitioner's and Respondent's marriage pursuant to the Section 6.202 of the Texas Family Code. As Petitioner is unable to meet its burden of proof by presenting competent summary judgment evidence raising a genuine issue of fact on the challenged elements, Respondent is entitled to summary judgment.

**B. MOTION FOR TRADITIONAL SUMMARY JUDGMENT BASED UPON HER DISPROVING AN ESSENTIAL ELEMENT OF PETITIONER'S CAUSE OF ACTION THAT HER MOST RECENT MARRIAGE IS VOID DUE TO A PRIOR VALID MARRIAGE – EITHER FORMAL OR INFORMAL**

53. Respondent can move for summary judgment based upon providing all the elements of the movant's claim or defense or disproves the facts of at least one element of the nonmovant's claim or defense. *See Johnson & Johnson Med. Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996); *see McIntyre v. Ramirez*, 109 S.WE.3d 741, 748 (Tex. 2003). In the present case, Respondent moves for summary judgment (based upon the traditional summary judgment standards) by proving that statutory requirements to prove either a valid ceremonial/formal marriage or an informal/common law marriage have not been met, thus, disproving at least one element of the nonmovant's claim AND by providing evidence that supports her affirmative defense that she did not enter into an informal marriage with Amir Bagherkalantari.

## (1)   STANDARD FOR TRADITIONAL MOTION FOR SUMMARY JUDGMENT

54.   This Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari is being in part filed pursuant to Rule 166a of the TEXAS RULES OF CIVIL PROCEDURE. Rule 166a of the TEXAS RULES OF CIVIL PROCEDURE states,

> For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

Tex. R. Civ. Pro. 166a.

55.   When a nonmovant moves for summary judgment based on the summary judgment evidence, the court can grant the motion only when the movant's evidence, as a matter of law, either proves all the elements of the movant's claim or defense or disproves the facts of at least one element of the nonmovant's claim or defense. *See, e.g. Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995). When a respondent moves for summary judgment on its affirmative defense, it must prove each element of its defense as a matter of law, leaving no issues of material fact. *See Johnson & Johnson Med. Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996); *see McIntyre v. Ramirez*, 109 S.WE.3d 741, 748 (Tex. 2003). In the present case,

Respondent is entitled to summary judgment by disproving at least one element of the nonmovant's claim or defense. As demonstrated herein, there are no genuine issues of material fact. It has long been held that summary judgment must be granted when only questions of law are presented and no genuine issues of material fact exist.

## (2) BASIS OF MOTION

56.    In the State of Texas, there are two (2) forms of marriages: (1) the formal marriage and (2) the informal marriage. Petitioner has alleged that a marriage was entered into by and between Respondent and Amir Bagherkalantari on or about December 12, 2009, thus, voiding Respondent's marriage to Petitioner on or about July 28, 2012, pursuant to Section 6.202 of the Texas Family Code. *See* Page 2, Section I, Paragraph 7, entitled "Grounds" of Petitioner's Original Petition to Declare Marriage Void. In the present case, Respondent can conclusively disprove at least one (1) element of Petitioner's burden of proving either an formal/ceremonial marriage or informal/common law marriage AND prove her affirmative defense of no prior marriage.

### (a)    Formal or Ceremonial Marriage

57.    In the State of Texas, a formal marriage is sometimes referred as a "ceremonial marriage" or a "licensed marriage." In formal marriages, the statutory requirements listed in the Family Code for obtaining a marriage license and participating in a marriage ceremony must be strictly adhered. *See* Tex. Fam. Code

§§2.001-2.302; *Brown v. Brown*, 256 S.W.2d 143, 143, (Tex. Ap. – Beaumont 1953, writ ref'd n.r.e.).

58. In the present case, the evidence conclusively establishes that the following statutory requirements necessary to form and evidence a valid formal or ceremonial marriage by and between Respondent and Amir Bagherkalantari were not complied with and, therefore, there has never been a valid formal or ceremonial marriage by and between Respondent and Amir Bagherkalantari:

| | | | |
|---|---|---|---|
| (1) | Tex. Code | Fam. § 2.201 | EXPIRATION OF LICENSE. If a marriage ceremony has not been conducted before the 90th day after the date the license is issued, the marriage license expires. |
| (2) | Tex. Code | Fam. § 2.202 | PERSONS AUTHORIZED TO CONDUCT CEREMONY. (a) The following persons are authorized to conduct a marriage ceremony:<br><br>(1) a licensed or ordained Christian minister or priest;<br><br>(2) a Jewish rabbi;<br><br>(3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony;<br><br>(4) a justice of the supreme court, judge of the court of criminal appeals, justice of the courts of appeals, judge of the district, county, and probate courts, judge of the county courts at law, judge of the courts of domestic relations, judge of the juvenile courts, retired justice or judge of those courts, justice of the peace, retired justice of the peace, judge of a municipal court, retired judge of a municipal court, or judge or |

magistrate of a federal court of this state; and

(5) a retired judge or magistrate of a federal court of this state.

(b) For the purposes of Subsection (a)(4), a retired judge or justice is a former judge or justice who is vested in the Judicial Retirement System of Texas Plan One or the Judicial Retirement System of Texas Plan Two or who has an aggregate of at least 12 years of service as judge or justice of any type listed in Subsection (a)(4).

(b-1) For the purposes of Subsection (a)(5), a retired judge or magistrate is a former judge or magistrate of a federal court of this state who is fully vested in the Federal Employees Retirement System under 28 U.S.C. Section 371 or 377.

(c) Except as provided by Subsection (d), a person commits an offense if the person knowingly conducts a marriage ceremony without authorization under this section. An offense under this subsection is a Class A misdemeanor.

(d) A person commits an offense if the person knowingly conducts a marriage ceremony of a minor whose marriage is prohibited by law or of a person who by marrying commits an offense under Section 25.01, Penal Code. An offense under this subsection is a felony of the third degree.

(3) Tex. Fam. § 2.203 Code

CEREMONY. (a) On receiving an unexpired marriage license, an authorized person may conduct the marriage ceremony as provided by this subchapter.

(b) A person may assent to marriage by the appearance of a proxy appointed in the affidavit authorized by Subchapter A if the person is:

| | |
|---|---|
| | (1) a member of the armed forces of the United States stationed in another country in support of combat or another military operation; and |
| | (2) unable to attend the ceremony. |
| (4) Tex. Fam. § 2.206 Code | RETURN OF LICENSE; PENALTY. (a) The person who conducts a marriage ceremony shall record on the license the date on which and the county in which the ceremony is performed and the person's name, subscribe the license, and return the license to the county clerk who issued it not later than the 30th day after the date the ceremony is conducted.<br><br>(b) A person who fails to comply with this section commits an offense. An offense under this section is a misdemeanor punishable by a fine of not less than $200 and not more than $500. |

59. Respondent is entitled to summary judgment on disproving the facts of at least one element of the nonmovant's claim. Essentially, Respondent's establishment of lack of adherence to statutory requirements of the Texas Family Code disproves at least one element of Petitioner's burden to prove a valid prior formal or ceremonial marriage by and between Respondent and Amir Bagherkalantari.

**(1)  SECTION 2.201 OF THE TEXAS FAMILY CODE**

60. Pursuant to Section 2.201 of the Texas Family Code, "If a marriage ceremony has not been conducted before the 90th day after the date the license is issued, the marriage license expires." *See* Tex. Fam. Code §2.201. In the present case,

Section 2.206(a) of the Texas Family Code, in relevant part, states, that the "person who conducts a marriage ceremony shall record on the license the date on which and the county in which the ceremony is performed and the person's name, subscribe the license, and return the license to the county clerk who issued it not later than the 30th day after the date the ceremony is conduct." *See* Tex. Fam. Code §2.206(a). On or about March 10, 2014, Mr. Ghaffari testified that he signed the purported marriage license on or about December 12, 2009, as follows:

Page

17

Line  Q. *(By Mr. Nace)* I'm going to hand you what we'll mark as Petitioner's 1. Can you identify this document for the record?

*INTERPRETER:* He said, "This is my signature."

So that would be a yes, you can identify this document for the record?

A. I don't remember very well, but this is my signature and this is my handwriting.

Q. And is this a true and correct copy?

A. As you heard, I don't remember it very well. But certainly this is my handwriting, and this is everything that I wrote.

*See* Exhibit D.

61.     On the same day, Petitioner's attorney judicially admitted that Petitioner is in possession of the original marriage license. *See* Exhibit D - Page 18, Lines 13-14, of the Hearing Transcript of March 10, 2014. Incontestably, the marriage license allegedly executed by Mr. Ghaffari on or about December 12, 2009, was **never** filed with the Collin County Clerk and has expired pursuant to Section 2.201 of the Texas Family Code. Respondent is entitled to summary judgment as she has disproved an essential element of Petitioner's cause of action wherein he has the burden of proving a valid prior formal or ceremonial marriage of Respondent.

## (2)   SECTION 2.202 OF THE TEXAS FAMILY CODE

62.     In the present case, and pursuant to the allegations of Petitioner on Page 2, Section I, Paragraph 7, entitled "Grounds" of Petitioner's Original Petition to Declare Marriage Void, a marriage occurred on or about December 12, 2009, by and between Respondent and Amir Bagherkalantari. *See* Exhibit E. Pursuant to Section 2.202 of the Texas Family Code, a person must be authorized to conduct the marriage ceremony. By Mr. Ghaffari's own testimony provided before the Court on March 10, 2014, Mr. Ghaffari is not qualified to conduct a marriage ceremony within the State of Texas pursuant to the requirements of Section 2.202 of the Texas Family Code. Respondent would respectfully show as follows:

- **Mr. Ghaffari is not a licensed or ordained Christian minister or priest, pursuant to Section 2.202(a)(1) of the Texas Family Code.**

Page

13

Line 15 *Q.* Mr. Ghaffari, I hope I pronounced your name correctly. Are you a licensed ordained Christian minister?

Line 18 *A.* No, I don't have no license.

Line 19 *Q.* Are you a priest?

Line 20 *A.* No.

- **Mr. Ghaffari is not a Jewish rabbi, pursuant to Section 2.202(a)(2) of the Texas Family Code.**

Page

13

Line 21 *Q.* Are you a Jewish rabbi?

Line 22 *MR. CORBITT:* Am I talking too loud, Judge?

Line 23 I'm sorry.

Line 24 *THE COURT:* I can hear you.

Line 25 *Q. (By Mr. Corbitt)* Mr. Ghaffari, are you a Jewish

Page Line 1 rabbi?

14

Line 2 *A.* No.

- **Mr. Ghaffari is not an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony, pursuant to Section 2.202(a)(3) of the Texas Family Code.**

Page

16

Line 5 Mr. Ghaffari, by what authority did you perform a wedding?

Line 7 *THE WITNESS:* In Islamic law there is no need to have any permission.

*THE COURT:* Well, are you an Imam?

*THE WITNESS:* No.

*THE COURT:* Are you telling me that anyone in Islamic law is authorized to perform a wedding?

*THE WITNESS:* That's my thought and understanding.

- **Mr. Ghaffari is not a justice of the supreme court, judge of the court of criminal appeals, justice of the courts of appeals, judge of the district, county, and probate courts, judge of the county courts at law, judge of the courts of domestic relations, judge of the juvenile courts, retired justice or judge of those courts, justice of the peace, retired justice of the peace, judge of a municipal court, retired judge of a municipal court, or judge or magistrate of a federal court of this state; and is not a retired judge or magistrate of a federal court of this state, pursuant to Sections 2.202(a)(4) and 2.202(a)(5) of the Texas Family Code.**

Page

14

*Q.* Are you a justice of the Supreme Court?

*A.* No.

*Q.* Are you a judge of the Court of Criminal Appeals?

*A.* No.

*Q.* Are you a justice of the Court of Appeals, of a district, or a county, or a probate court?

*A.* No.

*Q.* Are you or have you been a judge of a domestic relations or juvenile court?

*A.* No.

Line 14  *Q.* Are you a retired justice or judge of any of

Line 15  those courts that I asked just a minute ago?

Line 16  *A.* No.

*See* Exhibit D.

63.      Clearly, Mr. Ghaffari's sworn testimony evidences that he is not a person authorized to conduct a marriage pursuant to Section 2.202 of the Texas Family Code. Mr. Ghaffari's sworn statement that it is his belief that, under Islamic law, anyone can perform a marriage ceremony undeniably controverts the purpose of Section 2.202 of the Texas Family Code to identify persons authorized. (It should be further noted that on or about March 10, 2014, at a hearing before this court, Petitioner presented to the Court a purported marriage license signed by Mr. Ghaffari that identifies that Mr. Ghaffai performed the alleged ceremony and has the title of "Ph.D. in Economics.") A person with a Ph.D. in Economics is not qualified to conduct a marriage ceremony within the State of Texas pursuant to the requirements of Section 2.202 of the Texas Family Code. No marriage ceremony occurred by and between Respondent and Amir Bagherkalantari. Respondent is entitled to summary judgment as she has disproved an essential element of Petitioner's cause of action wherein he has the burden of proving a valid prior formal or ceremonial marriage of Respondent.

**(3)    SECTION 2.203 OF THE TEXAS FAMILY CODE**

64.      Section 2.203(a) of the Texas Family Code states, "On receiving an unexpired marriage license, an authorized person may conduct the marriage ceremony

as provided by this subchapter." *See* Tex. Fam. Code § 2.203(a). On or about March 10, 2014, at a hearing before this court, Petitioner presented to the Court a purported marriage license signed by Mr. Ghaffari. The document itself states that Mr. Ghaffari performed the ceremony and has the title of "Ph.D. in Economics." As extensively discussed in Paragraph 62 above, Mr. Ghaffari is not an authorized person pursuant to the Texas Family Code and did not perform a permanent Muslim wedding. Respondent is entitled to summary judgment as she has disproved an essential element or fact of Petitioner's cause of action wherein he has the burden of proving a valid prior marriage of Respondent.

**(4)    SECTION 2.206 OF THE TEXAS FAMILY CODE**

65.    Additionally, during the hearing on or about March 10, 2014, Petitioner's attorney made the following judicial admissions to the Court regarding the purported marriage license of Respondent and Amir Bagherkalantari:

Page

18

Line   10   *THE COURT:* Mr. Nace, I have what appears
Line   11   to be a Xerox copy. I don't see a clerk's stamp on here
Line   12   anywhere.
Line   13   *MR. NACE:* Your Honor, we have the original
Line   14   with another witness. That is a copy.
Line   15   *THE COURT:* Why isn't the original of a
Line   16   marriage license on file with my clerk?

*MR. NACE:* From what I understand, to file it that was their responsibility through her family. But the original does exist.

*THE COURT:* Where is the original?

*MR. NACE:* My client can better answer that judge through another witness. Because of things missing in this case, our chain of custody, we want to make sure we're keeping things intact.

*See* Exhibit D.

66.     By the Petitioner's attorney of record's own admissions, the original marriage license prepared by the County Clerk in the year 2009 <u>was never filed</u> and, by statute, expired on the thirty-first (31st) day following issuance. *See* Exhibit D. (Prior to September 2013, the marriage license expired on the thirty-first (31st day following issuance rather than the ninetieth (90th) day.) Petitioner's attorney further judicially admitted that it was the "responsibility through [Respondent's] family," to have the marriage license filed after the ceremony took place; however, the Texas Family Code unequivocally states that the officiate "shall record on the license the date on which and the county in which the ceremony is performed and the person's name, subscribe the license, and return the license to the county clerk who issued it not later than the 30th day after the date the ceremony is conducted." *See* Tex. Fam. Code §2.206. Thus, due to Respondent and Amir Bagherkalantari not being married, no marriage license is on file with the Collin County Clerk to evidence same. Respondent is entitled to

summary judgment as she has disproved an essential element or fact of Petitioner's cause of action wherein he has the burden of proving a valid prior marriage of Respondent.

**b.    Informal or Common Law Marriage**

67.    To prove an informal or common law marriage transpired, the marriage must comply with the statutory requirements listed in the Family Code by the parties agree to be married, live together in Texas as husband and wife, and hold themselves out as husband and wife to others, but who have obtained a marriage license or participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993). All three statutory elements must exist at the same time for there to be a valid informal marriage. *Ballesteros v. Jones,* 985 S.W.2d 485, 489 (Tex. App. – San Antonio 1998, pet. denied); *Gary v. Gary*, 490 S.W.2ds 929, 935 (Tex. App. – Tyler 1973, writ ref'd n.r.e.). In the present case, the evidence conclusively establishes that the statutory requirements necessary to form and evidence a valid informal or common law marriage by and between Respondent and Amir Bagherkalantari were not complied with and, therefore, there has never been a valid informal or common law marriage by and between Respondent and Amir Bagherkalantari: Section 2.401 of the Texas Family Code.

**(1)** **SECTION 2.401 OF THE TEXAS FAMILY CODE – NO SIGNED DECLARATION, NO COMMENCEMENT OF PROCEEDINGS WITHIN TWO (2) YEARS OF CESSATION OF CO-HABITATION**

68.     Respondent seeks a motion for summary judgment, based upon the traditional motion for summary judgment standard, on her affirmative defense that she did not enter into an informal marriage with Amir Bagherkalantari and, that pursuant to Section 2.401 of the Texas Family Code, it is rebuttably presumed that no informal marriage agreement occurred if a proceeding in which a marriage is to be proved is not commenced before the second anniversary of the date on which the parties separated and ceased living together.

69.     In the present case, Respondent did not sign a declaration stating that she was married to Amir Bagherkalantari. *See* Exhibit B, the Affidavit of Maryam Parviz-Khyvi Farahmand. Respondent married Petitioner on or about July 28, 2012. *See* Exhibit E - Original Petition to Declare Marriage Void and In the Alternative First Amended Petition for Divorce. Respondent ceased living with Amir Bagherkalantari in the year 2010. *See* Exhibit E, Page 2, Paragraph Numbered 7. No legal proceeding in which an alleged marriage by and between Respondent and Amir Bagherkalantari commenced prior to the year 2014, which is more than the second anniversary of the date on which the parties separated and ceased living together Thus, pursuant to Section 2.401 of the Texas Family Code, it is rebuttably presumed that no informal

marriage agreement occurred by and between Respondent and Amir Bagherkalantari.

Thus, there is no valid informal marriage of Respondent and Amir Bagherkalantari.

Respondent is entitled to summary judgment as she has disproved an essential element

of Petitioner's cause of action wherein he has the burden of proving a valid prior

marriage of Respondent.

**(2)  SECTION 2.401 OF THE TEXAS FAMILY CODE – NO INTENT TO HAVE A PRESENT, IMMEDIATE, AND PERMANENT MARITAL RELATIONSHIP**

70.    To prove an informal or common law marriage transpired, the marriage

must comply with the statutory requirements listed in the Family Code by the parties

agree to be married, live together in Texas as husband and wife, and hold themselves

out as husband and wife to others, but who have obtained a marriage license or

participated in a marriage ceremony. *See* Tex. Fam. Code §§2.401; *Russell v. Russell*,

865 S.W.2d 929, 931 (Tex. 1993). Section 2.401(a)(2)of the Texas Family Code

requires the parties agree to be married. Tex. Fam. Code 2.401(a)(2). In the present

case, Respondent would present the following competent summary judgment evidence

that conclusively proves that there was no agreement for a present, immediate, and

permanent marital relationship by and between Respondent and Amir Bagherkalantari

on or about December 12, 2009, the date of the alleged ceremony:

(a)    Affidavit of Respondent – Exhibit B; and

(b)     Foreing Language Translation and Affidavit of Purported Ceremony –

Exhibit C.

71.     The purported ceremony performed by Mr. Ghaffari was videotaped. *See*

Exhibit C. On or about June 13, 2014, Petitioner filed with the Clerk a document

entitled, "Foreign Language Translation and Affidavit," thereby submitting an English

translation of the video submitted as "Petitioner's Exhibit 2" at the March 10, 2014,

hearing before this Court along with an affidavit certifying that the translation is fair

and accurate. *See* Exhibit C. On Page 8, Time 1:27:55, of the Foreign Language

Translation and Affidavit, Respondent's father, in relevant part, states:

> I would like to thanks you all my dear friends, which traveled from near and far away **to attend this festivity**.
>
> Tonight, As you know, we are celebrating the marriage of my daughter my dear Maryam, and dear Amir. Unfortunately, Amir's families are in Iran and they could not attend. At this moment I would like to say hello to them and **I hoping to meet them soon and be all together in their wedding.**

*See* Page 8, Time 1:27:55, of the Foreign Language Translation and Affidavit.

Emphasis added. Clearly, the statements made by Petitioner's father, the wedding by

and between Respondent and Amir Bagherkalantari would occur **at a future date** in

the presence of Mr. Bagherkalantari's family. Respondent is entitled to summary

judgment as she has disproved a an essential element or fact of which Petitioner has the

burden of proving a valid prior marriage of Respondent.

72.    Therefore, there was no agreement by and between Respondent and Amir Bagherkalantari for a present, immediate, and permanent marital relationship on or about December 12, 2009, the date of the alleged ceremony, as evidenced by the Affidavit of Respondent and the statements of Respondent's father at the alleged ceremony. Respondent is entitled to summary judgment as she has disproved an essential element of Petitioner's cause of action wherein he has the burden of proving a valid prior marriage of Respondent.

## (3)    SUMMARY

73.    In conclusion, summary judgment on behalf of Respondent is proper as Respondent has conclusively disproved at least one (1) element of Petitioner's burden of proving either an formal/ceremonial marriage or informal/common law marriage AND has proved her affirmative defense of no prior marriage. Respondent is entitled to summary judgment.

## VI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Respondent Maryam Farahmand is entitled to summary judgment for the reasons asserted in this Hybrid Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari. Respondent asks the Court to grant this motion and enter summary judgment in favor of Respondent. Moreover, Respondent prays for such other and further relief to which she may be justly entitled.

Respectfully submitted,

**WIDNER FAMILY LAW GROUP, PLLC**

By: /s/ Robert S. Widner .
  **Robert S. Widner**
  Texas State Bar No. 00792092

2911 Turtle Creek Boulevard, Suite 405
Dallas, Texas, 75219

Telephone No.: 972-979-5700
Facsimile No.: 972-692-8951
Electronic Address:
robertwidner@gmail.com

and

**DAWN M. GRAMS, P.C.**

By: /s/ Dawn M. Grams Horak .
  **Dawn M. Grams Horak**
  Texas State Bar No. 24036667

P.O. Box 924
Grapevine, Texas, 76099

Telephone No.: 469-644-7442
Facsimile No.: 214-572-6893
Electronic Address:
    dgrams@msn.com
*of counsel to Widner Family Law Group, LLC*

**ATTORNEYS FOR RESPONDENT MARYAM FARAHMAND**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following parties via the manner reflected below, in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

Mr. Ike Vanden Eykel
Ms. Rebecca Tillery
Koons Fuller, P.C.
1717 McKinney Avenue, Suite 1500
Dallas, Texas, 75202

✓Facsimile 214-871-0196
  Certified Mail/Return Receipt Requested
  U.S. First Class Mail
✓Other
    ike@koonsfuller.com
    tillery@koonsfuller.com
    Reagan@koonsfuller.com
✓E-Service


Mr. Bradford Nace
Nace & Motley, LLC
100 Crescent Court, 7th Floor
Dallas, Texas, 75201

✓Facsimile 214-242-4333
  Certified Mail/Return Receipt Requested
  U.S. First Class Mail
✓Other bnace@nacemotley.com
  E-Service


Ms. Diana L. Porter
Diana L. Porter, P.C.
103 E. Virginia Street, Suite 201
McKinney, Texas 75069

  Facsimile 972-548-2349
  Certified Mail/Return Receipt Requested
  U.S. First Class Mail
✓Other
    dporter@collincountydivorce.com
    Pursuant to Request of Attorney


Certified to as of this 16th day of July, 2014.

_Ms. Dawn M. Grams Horak_
**DAWN M. GRAMS HORAK**

Location : All Civil & Family Courts    Images Help

# REGISTER OF ACTIONS
## CASE NO. 401-56531-2013

| | |
|---|---|
| In the Matter of the Marriage of Roger Arash Farahmand vs. Maryam Farahmand and in the Interest of ████████████ §§§§§ | Case Type: **Divorce with Children**<br>Date Filed: **12/30/2013**<br>Location: **401st District Court** |

---

### PARTY INFORMATION

| | | **Attorneys** |
|---|---|---|
| **Petitioner** | Farahmand, Roger Arash *Also Known As* FARAHMAND, ROGER A. | **Ike Vanden Eykel**<br>*Retained*<br>214-871-2727(W) |
| | | Bradford Nace<br>*Retained*<br>214-459-8289(W) |
| | | Rebecca Tillery<br>*Retained*<br>214-871-2727(W) |
| **Respondent** | Farahmand, Maryam | **Robert S Widner**<br>*Retained*<br>469-563-4800(W) |
| | | Dawn M. Grams Horak<br>*Retained*<br>469-644-7442(W) |
| | | ~~Pro Se~~Richard J Corbitt<br>*Retained*<br>214-744-1234(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | | |
|---|---|---|---|---|
| 12/30/2013 | **Original Petition for Divorce (OCA) $289.00**<br>*Emergency(ex parte) request for extraordinary relief, and request for temporary orders* | | | |
| 12/30/2013 | **Request for Citation $8.00**<br>*x1 waiting* | | | |
| 12/30/2013 | **Request for Temporary Restraining Order $8.00**<br>*x1 waiting* | | | |
| 12/30/2013 | **Order**<br>*Temporary Emergency Ex Parte Order and Order Setting Hearing* | | | |
| 12/30/2013 | **Citation** | | | |
| | Farahmand, Maryam | Served<br>Returned | 01/02/2014<br>01/02/2014 | |
| 12/30/2013 | **Temporary Restraining Order** | | | |
| | Farahmand, Maryam | Served<br>Returned | 01/02/2014<br>01/02/2014 | |
| 01/10/2014 | **Subpoena Return - Not DC Issued**<br>*Que Le Served 1/9/2014* | | | |
| 01/10/2014 | **Subpoena Return - Not DC Issued**<br>*Beth Cook served 1/9/2014* | | | |
| 01/14/2014 | **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) | | | |
| 01/14/2014 | **General Docket Entry**<br>*Matter reset* | | | |
| 01/14/2014 | **Order Extending**<br>*Extension of Temporary Emergency Ex Parte Order and Order Setting Hearing* | | | |
| 01/24/2014 | **Request for Copies $1.00/ pg** | | | |
| 01/24/2014 | **Subpoena Return - Not DC Issued**<br>*Aaron Lilly Served 1/23/2014* | | | |
| 01/27/2014 | **Original Answer**<br>*Respondent's Original Answer* | | | |
| 01/27/2014 | **Counter Petition $50.00**<br>*Original Counter-Petition for Divorce* | | | |
| 01/27/2014 | **Rule 11 Agreement**<br>*Rule 11 Agreement* | | | |
| 01/27/2014 | **Rule 11 Agreement** | | | |



|  |  |
|---|---|
|  | *Rule 11 Agreement* |
| 01/28/2014 | CANCELED **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
|  | *Reset* |
| 02/04/2014 | **Motion** |
|  | *Maryam Farahmand's Motion for Expedited Hearing for Interim Possession and Access* |
| 02/04/2014 | **Notice of Hearing** |
|  | *Notice of Hearing on Motion for Expedited Hearing for Interim Possession and Access* |
| 02/05/2014 | **General Docket Entry** |
|  | *No action taken by the Court* |
| 02/25/2014 | **Affidavit** |
|  | *Affidavit of Business Records of Hannah's House* |
| 02/26/2014 | **Affidavit** |
|  | *Business Records Affidavit of Hannah's House February* |
| 03/06/2014 | **Motion** |
|  | *Maryam Farahmand's Request to Expand Local 20-Minute Rule for Temporary Orders Hearing* |
| 03/07/2014 | **Subpoena Return - Not DC Issued** |
|  | *Served 3/6/2014 Aslan Ghaffari* |
| 03/07/2014 | **Subpoena Return - Not DC Issued** |
|  | *served 3/6/2014 Farid Rastegar* |
| 03/10/2014 | **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| 03/10/2014 | **General Docket Entry** |
|  | *Temp Hearing conducted; Ruling dictated; MJR* |
| 03/18/2014 | **Notice of Appearance** |
|  | *Appearance of Co-Counsel and Notice of Change in Lead Counsel* |
| 03/21/2014 | **Rule 11 Agreement** |
|  | *Rule 11 Agreement regarding possession* |
| 03/28/2014 | **Petition (Non - OCA) $70.00** |
|  | *Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 04/01/2014 | **Certificate of Deposition (Bill of Cost Form)** |
|  | *Maryam Farahmand Reporter Certification* |
| 04/04/2014 | **Certificate of Deposition (Bill of Cost Form)** |
|  | *Roger Farahmand* |
| 04/10/2014 | **Certificate of Deposition (Bill of Cost Form)** |
|  | *Reporters Certification Deposition of Maryam Farahmand March 4,2014* |
| 04/21/2014 | **Certificate** |
|  | *Certificate of Written Discovery* |
| 04/23/2014 | **Service Return** |
|  | *Return of service on Aslan Ghaffari on Notice of Intent to take Depo.* |
| 04/23/2014 | **Letter** |
|  | *Hearing Date 07/29/2014* |
| 04/24/2014 | **Request for Citation $8.00** |
| 04/24/2014 | **Request for Notice $8.00** |
| 04/25/2014 | **Motion** |
|  | *Motion for Substitution of Counsel* |
| 04/28/2014 | **Citation** |

| Farahmand, Maryam | Served | 05/02/2014 |
|---|---|---|
|  | Returned | 05/02/2014 |

|  |  |
|---|---|
| 04/28/2014 | **Notice** |

| Farahmand, Maryam | Served | 05/02/2014 |
|---|---|---|
|  | Returned | 05/02/2014 |

|  |  |
|---|---|
| 04/28/2014 | **Subpoena Return - Not DC Issued** |
|  | *Shahrbanoo Khanipour aka Mahnaz Keyani Subpoena served* |
| 05/01/2014 | **Designation of** |
|  | *Designation of Attorney in Charge* |
| 05/02/2014 | **Service Return** |
|  | *Maryam Farahmand Served Notice 05/02/2014* |
| 05/02/2014 | **Service Return** |
|  | *Maryam Farahmand Served Citation 05/02/2014* |
| 05/02/2014 | **Agreed Order** |
|  | *Agreed Scheduling Order* |
| 05/06/2014 | **Certificate** |
|  | *Certificate of Written Discovery* |
| 05/08/2014 | **Certificate** |
|  | *Certificate of Written Discovery* |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
|  | *Custodian of Records for Syed Shah* |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
|  | *Custodian of Records for Dr. Michael Scott Woods* |
| 05/09/2014 | **Subpoena Return - Not DC Issued** |
|  | *Custodian of Records for Thomas Janacek served subp 05/09/2014* |
| 05/16/2014 | **Petitioner's** |
|  | *Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness* |
| 05/16/2014 | **Service Return** |
|  | *Notice of intent to issue Subpoena Legacy Apartment Homes Served 05/14/14* |
| 05/19/2014 | **Notice of Hearing** |
|  | *Notice of Hearing on Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness* |
| 05/22/2014 | **Original Answer** |
|  | *Maryam Farahmand's Answer to Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
|  | *Dr Michael Scott Woods* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
|  | *CR for Syed Shah served Subpoena 05/22/2014* |
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
|  | *Custodian of Records for Thomas Janacek, M.D.* |

| | |
|---|---|
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | *Dr Robert Gordon* |
| 05/27/2014 | **Motion Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *M/Issuance of Letters Rogatory and Subpoena to Depose Out-of-State Witness* |
| 05/27/2014 | **Appearance of Counsel** |
| | *Notice of Appearance of Counsel* |
| 05/27/2014 | **Response** |
| | *Respondent's Response and Objections to Issuance of Letters Rogatory and Subpoena to Depose an Out-of-state Witness* |
| 05/27/2014 | **Certificate** |
| | *Certificate of Marriage* |
| 05/27/2014 | **General Docket Entry** |
| | *Letters Rogatory issued* |
| 05/27/2014 | **Order** |
| | *Order for Issuance of Letter Rogatory and Subpoena to Depose an Out of State Witness* |
| 05/29/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Post Legacy Apartments served Subpoena 05/28/2014* |
| 05/29/2014 | **Certificate** |
| | *Certificate of Written Responses to Discovery* |
| 06/03/2014 | **Request for Copies $1.00/ pg** |
| | *x10* |
| 06/05/2014 | **Subpoena Return - Not DC Issued** |
| | *Custodian of Records for Dr. Thomas Janacek served subpoena 06/04/2014* |
| 06/09/2014 | **Notice of Intention to Take Deposition by Written Questions** |
| | *Written Deposition Service transcription of deposition of written questions on Dr. Ghaffari and Bill of Costs* |
| 06/09/2014 | **Designation of** |
| | *Petitioner's Designation of Expert Witnesses* |
| 06/09/2014 | **Motion** |
| | *First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Centennial Medical Center of Frisco* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing Business Records Affidavit and Records - Centennial Medical Center Frisco* |
| 06/09/2014 | **Affidavit** |
| | *Business Records Affidavit - Post Legacy Apartments* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing of Business Records Affidavit - Post Legacy Apartments* |
| 06/09/2014 | **Notice** |
| | *Notice of Business Records and Affidavit Filing - Sayed Shah, M.D.* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Sayed Shah, M.D.* |
| 06/09/2014 | **Affidavit** |
| | *Medical Records and Affidavit* |
| 06/09/2014 | **Designation of** |
| | *Respondent's Designation of Expert Witnesses* |
| 06/09/2014 | **Certificate** |
| | *of Written Discovery* |
| 06/09/2014 | **Notice** |
| | *Notice of Filing Medical Records and Affidavit* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Dr. Robert Gordon* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Dr. Robert Gordon (UNDER SEAL)* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing Records and Affidavit* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 1 (UNDER SEAL)* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 2 (UNDER SEAL)* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Dr. Scott Woods* |
| 06/10/2014 | **Affidavit** |
| | *Medical Records and Affidavit - Dr. Scott Woods (UNDER SEAL)* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Frisco PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit - Frisco PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Plano PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Frisco PD Corrected* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit - Plano PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing BRA and Records - Arlington PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Arlington PD* |
| 06/10/2014 | **Notice** |
| | *Notice of Filing Business Records and Affidavit - Richardson PD* |
| 06/10/2014 | **Affidavit** |
| | *Business Records and Affidavit - Richardson PD* |
| 06/13/2014 | **Amended Motion** |
| | *Petitioner's First Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out of State Witness* |
| 06/13/2014 | **Affidavit** |

| | |
|---|---|
| | *Foreign Language Translation and Affidavit - Written Deposition Questions Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video English to Farsi* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Questions English to Farsi* |
| 06/13/2014 | **Original Answer** |
| | *Amicus Attorney's Original Answer in Suit Affecting the Parent- Child Relationship* |
| 06/13/2014 | **Designation of** |
| | *Designation of Attorney in Charge* |
| 06/13/2014 | **Notice** |
| | *Petitioner's Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/13/2014 | **Order** |
| | *of Letters Rogaroty and Subpoena for an Out of State Witness Amir Bagherkalantari* |
| 06/16/2014 | **Subpoena Return - Not DC Issued** |
| | *Mary F Wise aka Mariam Farahmand aka Mary Farahmand* |
| 06/16/2014 | **Motion** |
| | *Motion to Sign Temporary Orders* |
| 06/16/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Motion to Sign Temporary Orders* |
| 06/17/2014 | **Notice** |
| | *Notice of Intent to Take Oral and Video Taped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Amended** |
| | *First Amended Notice of Intent to Take Oral and Videotaped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Notice** |
| | *Petitioner's First Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/18/2014 | **Notice of Hearing** |
| | *on Motion to Sign Temporary Orders* |
| 06/18/2014 | **Amended Motion** |
| | *Petitioner's Second Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-Of-State Witness* |
| 06/18/2014 | **Request for Copies $1.00/ pg** |
| 06/18/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery - Requests for Admission* |
| 06/23/2014 | **Motion to Sign**  (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *TO's* |
| 07/29/2014 | **Hearing**  (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *on Petiton to void* |

---

**FINANCIAL INFORMATION**

| | | | | |
|---|---|---|---|---|
| | **Minor Child** ▮▮▮▮▮▮▮ | | | |
| | Total Financial Assessment | | | 2.00 |
| | Total Payments and Credits | | | 2.00 |
| | **Balance Due as of 06/18/2014** | | | **0.00** |
| | | | | |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47305-2014 | ▮▮▮▮▮▮▮▮ | (2.00) |
| | | | | |
| | | | | |
| | **Petitioner** Farahmand, Roger Arash | | | |
| | Total Financial Assessment | | | 530.00 |
| | Total Payments and Credits | | | 530.00 |
| | **Balance Due as of 06/18/2014** | | | **0.00** |
| | | | | |
| 12/30/2013 | Transaction Assessment | | | 284.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Payment | Receipt # DC-63819-2013 | FARAHMAND, ROGER A. | (300.00) |
| 03/18/2014 | Transaction Assessment | | | 2.00 |
| 03/18/2014 | Payment | Receipt # DC-19892-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/21/2014 | Transaction Assessment | | | 2.00 |
| 03/21/2014 | Payment | Receipt # DC-21274-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/28/2014 | Transaction Assessment | | | 72.00 |
| 03/28/2014 | Payment | Receipt # DC-23643-2014 | FARAHMAND, ROGER A. | (72.00) |
| 04/01/2014 | Transaction Assessment | | | 2.00 |
| 04/01/2014 | Payment | Receipt # DC-24382-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/04/2014 | Transaction Assessment | | | 2.00 |
| 04/04/2014 | Payment | Receipt # DC-25524-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/10/2014 | Transaction Assessment | | | 2.00 |
| 04/10/2014 | Payment | Receipt # DC-26831-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/17/2014 | Transaction Assessment | | | 2.00 |
| 04/17/2014 | Payment | Receipt # DC-29154-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/21/2014 | Transaction Assessment | | | 2.00 |
| 04/21/2014 | Payment | Receipt # DC-29986-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30921-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30945-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/24/2014 | Transaction Assessment | | | 8.00 |

| Date | Transaction | Receipt | Name | Amount |
|---|---|---|---|---|
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Payment | Receipt # DC-31124-2014 | Gary Sherman | (16.00) |
| 04/28/2014 | Transaction Assessment | | | 2.00 |
| 04/28/2014 | Payment | Receipt # DC-32057-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33663-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33664-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/06/2014 | Transaction Assessment | | | 2.00 |
| 05/06/2014 | Payment | Receipt # DC-34317-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/08/2014 | Transaction Assessment | | | 2.00 |
| 05/08/2014 | Payment | Receipt # DC-35500-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/09/2014 | Transaction Assessment | | | 2.00 |
| 05/09/2014 | Payment | Receipt # DC-36083-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/09/2014 | Transaction Assessment | | | 2.00 |
| 05/09/2014 | Payment | Receipt # DC-36086-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/09/2014 | Transaction Assessment | | | 2.00 |
| 05/09/2014 | Payment | Receipt # DC-36091-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/16/2014 | Transaction Assessment | | | 2.00 |
| 05/16/2014 | Payment | Receipt # DC-38273-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/19/2014 | Transaction Assessment | | | 2.00 |
| 05/19/2014 | Payment | Receipt # DC-38487-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/19/2014 | Transaction Assessment | | | 2.00 |
| 05/19/2014 | Payment | Receipt # DC-38777-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40326-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40332-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40347-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/23/2014 | Transaction Assessment | | | 2.00 |
| 05/23/2014 | Payment | Receipt # DC-40363-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | Payment | Receipt # DC-40684-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/29/2014 | Transaction Assessment | | | 2.00 |
| 05/29/2014 | Payment | Receipt # DC-41719-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/29/2014 | Transaction Assessment | | | 2.00 |
| 05/29/2014 | Payment | Receipt # DC-41844-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/03/2014 | Transaction Assessment | | | 10.00 |
| 06/03/2014 | Payment | Receipt # DC-42961-2014 | Julio C Arrobas | (10.00) |
| 06/05/2014 | Transaction Assessment | | | 2.00 |
| 06/05/2014 | Payment | Receipt # DC-43854-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45391-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45429-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45505-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45521-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45531-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45534-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45542-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45545-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45551-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45560-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45633-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45682-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45693-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45697-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45715-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45759-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45760-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45768-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45770-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45775-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45782-2014 | FARAHMAND, ROGER A. | (2.00) |

| Date | Description | Receipt | Party | Amount |
|---|---|---|---|---|
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45783-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45810-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45814-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45876-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45878-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47026-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47216-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47219-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47220-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47225-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/16/2014 | Transaction Assessment | | | 2.00 |
| 06/16/2014 | Payment | Receipt # DC-47344-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/16/2014 | Transaction Assessment | | | 2.00 |
| 06/16/2014 | Payment | Receipt # DC-47765-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/17/2014 | Transaction Assessment | | | 2.00 |
| 06/17/2014 | Payment | Receipt # DC-48013-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/17/2014 | Transaction Assessment | | | 2.00 |
| 06/17/2014 | Payment | Receipt # DC-48039-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/17/2014 | Transaction Assessment | | | 2.00 |
| 06/17/2014 | Payment | Receipt # DC-48096-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/18/2014 | Transaction Assessment | | | 2.00 |
| 06/18/2014 | Payment | Receipt # DC-48265-2014 | FARAHMAND, ROGER A. | (2.00) |
| 06/18/2014 | Transaction Assessment | | | 2.00 |
| 06/18/2014 | Payment | Receipt # DC-48541-2014 | Koons Fuller | (2.00) |

**Respondent Farahmand, Maryam**
Total Financial Assessment   92.00
Total Payments and Credits   92.00
**Balance Due as of 06/18/2014**   **0.00**

| Date | Description | Receipt | Party | Amount |
|---|---|---|---|---|
| 01/24/2014 | Transaction Assessment | | | 2.00 |
| 01/24/2014 | Payment | Receipt # DC-05866-2014 | Farahmand, Maryam | (2.00) |
| 01/27/2014 | Transaction Assessment | | | 2.00 |
| 01/27/2014 | Payment | Receipt # DC-06362-2014 | Farahmand, Maryam | (2.00) |
| 01/27/2014 | Transaction Assessment | | | 52.00 |
| 01/27/2014 | Payment | Receipt # DC-06370-2014 | Farahmand, Maryam | (52.00) |
| 01/28/2014 | Transaction Assessment | | | 2.00 |
| 01/28/2014 | Payment | Receipt # DC-06600-2014 | Farahmand, Maryam | (2.00) |
| 01/28/2014 | Transaction Assessment | | | 2.00 |
| 01/28/2014 | Payment | Receipt # DC-06623-2014 | Farahmand, Maryam | (2.00) |
| 02/05/2014 | Transaction Assessment | | | 2.00 |
| 02/05/2014 | Payment | Receipt # DC-08569-2014 | Farahmand, Maryam | (2.00) |
| 02/25/2014 | Transaction Assessment | | | 2.00 |
| 02/25/2014 | Payment | Receipt # DC-14149-2014 | Farahmand, Maryam | (2.00) |
| 02/26/2014 | Transaction Assessment | | | 2.00 |
| 02/26/2014 | Payment | Receipt # DC-14447-2014 | Farahmand, Maryam | (2.00) |
| 03/06/2014 | Transaction Assessment | | | 2.00 |
| 03/06/2014 | Payment | Receipt # DC-16467-2014 | Farahmand, Maryam | (2.00) |
| 04/04/2014 | Transaction Assessment | | | 2.00 |
| 04/04/2014 | Payment | Receipt # DC-25346-2014 | Farahmand, Maryam | (2.00) |
| 04/25/2014 | Transaction Assessment | | | 2.00 |
| 04/25/2014 | Payment | Receipt # DC-31710-2014 | Farahmand, Maryam | (2.00) |
| 05/01/2014 | Transaction Assessment | | | 2.00 |
| 05/01/2014 | Payment | Receipt # DC-32957-2014 | Farahmand, Maryam | (2.00) |
| 05/22/2014 | Transaction Assessment | | | 2.00 |
| 05/22/2014 | Payment | Receipt # DC-39989-2014 | Farahmand, Maryam | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | Payment | Receipt # DC-40611-2014 | Farahmand, Maryam | (2.00) |
| 05/27/2014 | Transaction Assessment | | | 2.00 |
| 05/27/2014 | Payment | Receipt # DC-40631-2014 | Farahmand, Maryam | (2.00) |
| 06/09/2014 | Transaction Assessment | | | 2.00 |
| 06/09/2014 | Payment | Receipt # DC-45432-2014 | Farahmand, Maryam | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45553-2014 | Farahmand, Maryam | (2.00) |
| 06/10/2014 | Transaction Assessment | | | 2.00 |
| 06/10/2014 | Payment | Receipt # DC-45554-2014 | Farahmand, Maryam | (2.00) |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47308-2014 | Farahmand, Maryam | (2.00) |
| 06/16/2014 | Transaction Assessment | | | 2.00 |
| 06/16/2014 | Payment | Receipt # DC-47674-2014 | Farahmand, Maryam | (2.00) |
| 06/18/2014 | Transaction Assessment | | | 2.00 |
| 06/18/2014 | Payment | Receipt # DC-48571-2014 | Farahmand, Maryam | (2.00) |

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| .AND | § | 401st JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, | § | |
| A MINOR CHILD. | § | COLLIN COUNTY, TEXAS |

## AFFIDAVIT OF MARYAM PARVIZ-KHYAVI FARAHMAND

| | |
|---|---|
| COUNTY OF DALLAS | § |
| | § |
| STATE OF TEXAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared MARYAM PARVIZ-KHYAVI FARAHMAND, whose identity was proved to me by her Texas driver's license, and whose signature is affixed hereto, and, who, after first being duly sworn on her oath did say she is over the age of 18 years, has never been convicted of a felony, and is competent to make this affidavit, that she has read this Affidavit, has knowledge of the fact contained herein, and that they are all true and correct.

1.   "My name is MARYAM PARVIZ-KHYAVI FARAHMAND.

2.   I had a relationship with AMIR BAGHERKALANTARI. AMIR BAGHERKALANTARI and I were engaged for a short time, but such relationship terminated in the year 2010.

3.   I never married AMIR BAGHERKALANTARI.



4.    I lived with AMIR BAGHERKALANTARI for brief periods.

5.    I never signed any declaration stating that I was married to AMIR BAGHERKALANTARI or agreed to marry AMIR BAGHERKALANTARI at or on any future date.

6.    I never signed a Muslim marriage contract with AMIR BAGHERKALANTARI or any of his family members.

7.    I never gave any person my permission or the authority to enter into a marriage contract on my behalf to AMIR BAGHERKALANTARI.

8.    I did not give a marriage license or marriage certificate to Dr. Aslan Ghaffari to evidence a marriage to AMIR BAGHERKALANTARI in the year 2009.

9.    I did not ask Dr. Aslan Ghaffari to sign a marriage license or marriage certificate in the year 2009.

10.   The factual statements contained in paragraphs numbered 1-9 above are of my own personal knowledge and are true and correct."

FURTHER I SAYETH NOT.

_____(signature)
MARYAM PARVIZ-KHYAVI FARAHMAND

_____(signature)
**MARYAM PARVIZ-KHYAVI FARAHMAND**

**COUNTY OF DALLAS** §
§
**STATE OF TEXAS** §

    This instrument was ACKNOWLEDGED, SWORN TO, and SUBSCRIBED BEFORE ME, the undersigned notary, _Brianne K. Phillips_ (name of notary), on the 8th day of May, 2014, by MARYAM PARVIZ-KHYAVI FARAHMAND, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the affidavit and acknowledged to me that she executed the same in his authorized capacity, and that by her signature on the affidavit she executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

_____(signature)
**NOTARY**

**Notary Stamp**

**BRIANNE K. PHILLIPS**
Notary Public, State of Texas
My Commission Expires
March 26, 2017

Filed: 6/13/2014 2:39:03 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Angela Alexander Deputy
Envelope ID: 1537545

*THIS DOCUMENT CONTAINS SENSITIVE INFORMATION.*

## NO. <u>401-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| ROGER ARASH FARAHMAND AND MARYAM FARAHMAND | § § § § | 401ST JUDICIAL DISTRICT |
| AND IN THE INTEREST OF █████████ , A MINOR CHILD | § § § § § | COLLIN COUNTY, TEXAS |

### <u>FOREIGN LANGUAGE TRANSLATION AND AFFIDAVIT</u>

To:    MARYAM FARAHMAND (hereinafter referred to as "Respondent"), by and through her attorneys of record, Robert S. Widner, The Widner Family Group, PLLC, 2911 Turtle Creek Blvd., Suite 405, Dallas, TX 75219, robertwidner@gmail.com; and Dawn M. Grams Horak, Dawn M. Grams P.C., P.O. Box 924, Grapevine, Texas 76099, dgrams@msn.com.

Petitioner, Roger Arash Farahmand, hereby submits an English translation, together with an affidavit certifying that the translation is fair and accurate a copy of which is attached hereto as Exhibit A and incorporated herein as if recited verbatim, of the Farsi portions of the video placed into evidence as "Petitioner's Exhibit 2" at the March 10, 2014, hearing before this Court.

These records will be offered in evidence on the trial of the captioned cause pursuant to Rule 1009(a) of the TEXAS RULES OF EVIDENCE.



EXHIBIT
C

Blumberg No. 5208

Foreign Language Translation and Affidavit – Video

Respectfully submitted,

*/s/ Rebecca Tillery*

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201
(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

Foreign Language Translation and Affidavit – Video

## CERTIFICATE OF SERVICE

I certify that on June 13, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address _or_ by other means set forth in accordance with Rule 21a of the *Texas Rules of Civil Procedure*:

> Robert S. Widner
> The Widner Family Law Group, PLLC
> 2911 Turtle Creek Blvd., Suite 405
> Dallas, Texas 75219
> robertwidner@gmail.com
> 972.692.8951 (fax)
>
> Dawn M. Grams Horak
> Dawn M. Grams, P.C.
> P. O. Box 924
> Grapevine, Texas 76099
> dgrams@msn.com
> 214-572-6893 (fax)
>
> Diana L. Porter
> Diana L. Porter, P.C.
> 103 E. Virginia Street, Suite 201
> McKinney, Texas 75069
> dporter@collincountydivorce.com
> 972-548-2349 (fax)

_/s/ Rebecca Tillery_
**REBECCA TILLERY**
Attorney for Petitioner

Foreign Language Translation and Affidavit – Video



# INTERLINGUA USA

**Translations – Interpretations – Private & Group Classes**
16801 Addison Road, Suite 110 · Addison, Texas 75001
Phone: 972 818 3455 - Fax: 972 818 3742
rosa@interlinguausa.com - www.interlinguausa.com

STATE OF TEXAS     )
                         )

COUNTY OF DALLAS  )

### CERTIFICATION

I certify that to the best of my knowledge and belief the foregoing is a true and correct rendition into English of the original document in Farsi and that the translator is proficient in both languages. Our File number is TR16825_Petitioner's_Exhibit_2_Cause_No._401-56531-2010/IMOM_Farahmand_English Translation.

Interlingua USA

_____
Joe Hedderich
Marketing Director

STATE OF TEXAS     )
                         )

COUNTY OF DALLAS  )

Before me, the undersigned, a Notary Public, on this day personally appeared, Joe Hedderich, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE
This 13th Day of June, 2014.

_____
Rosa Hernández
Notary Public
My Commission expires 11/25/2016









Disclosure: We don't agree or disagree with the contents of this document; we are just providing translation service. Page 4 of 11

14:43

**(Conductor)** With the Name of Allah Most Gracious Most Merciful

Praise the Lord that the foundations are laid on the continuity of the roots of conjugal affection and attachment to the headband based Marriage was based on.

Combining family and lives life to the fertile with smiling child who brings happiness and warmth.

Endless greeting to the prophets and servants which encouraged this essential traditions.

Mostly, with endless greeting to our most beloved Prophet, which he declared marriage as one of his traditions

Ms. Maryam Parviz, will you appoint me as your agent and proxy to marry you to Mr. Amir Bagher Kalantary with marriage- portion of one volume of the Holy Book of Quran, with intention of fourteen Saints, fourteen steam of golden flower. Will you give me the power of attorney to marry you?

16:32

Bride is out to pick some flower.

(Laughing)

16:40

**(Conductor)** My dear Maryam, Ms. Maryam, Are ready to give me the power of attorney to marry you to Mr. Amir Bagher Kalantary, with mentioned marriage-portion.

Are you ready and willing to be with each other for better and worse, for richer or poorer, in sickness and in health?

17:00

The bride is out to get rose water

**(Conductor)** Ms. Maryam, Are ready to give me the power of attorney to marry you to Mr. Amir Bagher Kalantary, with mentioned marriage-portion.

Are you ready and willing to be with each other for better and worse, for richer or poorer, in sickness and in health?

18:03

**(Wife)** With my mother and my father permission, yes I do

18:11

**(Conductor)** Okay Sir, will you give me your power of attorney to..........

18:26

**(Husband)** With my mother and my father permission and rest of elders, yes I do

18:48

**(Conductor)** Reading in Arabic

At this time I am pronouncing you legal Husband and wife. I am hoping during your lifetime you always be Happy, joyful, blissful and I am hopping you always have a fulfill of happiness and prosperity in your family.

19:53

Joyful cheer

19:56

Give me a moment....

20:00

I like to read a poem.

20:01

Please, go head

20:03

Please allow me to read a poem from Hafez. Book of Hafez is like Quran to us.

This is Islamic Tradition

This old poem from Hafez is a very beauteous for this moment.

It says:

1- When, in prayer, to me recollection of the curve of Thy eye-brow—came.
   (Over me such) a state passed that, into lament, the prayer-arch—came.

2- Clear, became wine; and intoxicated, became the birds of the sward:
   The season of being a lover; and to foundation, the work – came.

3- From the world's quarter, I perceive welfare's perfume:
   Gladness, the rose brought; and joyous the morning breeze—came.

4- The flowery heart-allurers (the rose, the hyacinth, the sweet basil) all put on jewels (of flowers):
   Our heart-ravisher, who is with beauty God-given—came.


22:14

From mother of Maryam for Maryam and Amir

Cheering and clapping.


22:48

From relatives of our beloved Shamssi.

Cheering and clapping.


31:30

End of the first part


31:31

Music and clapping


34:55

Music, dancing and guests singing cherish songs with pre-recorded music.

1:12:20

We have the maid of honor here; it is her sister, with the knife to give to bride and groom.

Amir Khan, I am telling you, the best way to get the knife is CASH, cold hard cash.

Amir, are you listening? (. . . . Everybody talking to each other...)

You try to be handsome but I don't know if it will work.

1:25:56

One two three, eyes on me. Hi, Hi, I am Mahsa and I hope everyone have a great night. I just want to say congratulation to dear Maryam and dear Amir. I honestly could not ask a sister better than you. Beautifully, you always have been for me through thick and thin. I love you so much. And we fight a lot and I took your cloth but, I mean this is what sister does a lot. I mean, I still could borrow your cloth. So . . . . Right? (Woman's voice) you can borrow the wedding dress . . . . What? . . . . . .I can borrow the wedding dress? . . . . . It would be awesome. I am just joking, but honestly, I wish you guy the best in life, happy healthy marriage and . . . . (Man's voice) thank you every body for coming. . . . . (Maha's voice). . . . .Thank all of you for coming. . . . . . . I don't know what to say. . . . . I am speechless. . . . I am . . . . . Because this is the biggest night of my life. . . . . . not really . . . . .it is one of the biggest night of her life! But. . . . you know . . . that's awesome. . . Come here. . . . . Clapping . . . . . . .

1:27:55

I would like to thanks you all my dear friends, which traveled from near and far away to attend this festivity.

Tonight, As you know, we are celebrating the marriage of my daughter my dear Maryam, and dear Amir. Unfortunately, Amir's families are in Iran and they could not attend. At this moment I would like to say hello to them and I hoping to meet them soon and be all together in their wedding.

On behalf of myself and my family, I would like to congratulate to this union and may always be in peace, healthy and being stable.

Thank you and thankful for coming

At the end, I would like to read a vesicle from Hafez:

The star gleamed; and the moon of assembly—became

Of our affrighted heart, the consoler and comforter--became

1:32:43

Hello, Shalom, congratulation to you both, you and Amir. You make a beautiful couple. I just wanted to kind of say since I have known you for quite a while, since you started your PHD, a long time ago, and I helped you a little bit in that lab to get started, that, I think that you are beautiful and intelligent young lady, and I wish you and Amir the most happiest of times, the greatest of time and a wonderful, loving marriage. You've accomplished some of the greatest things that anybody could accomplish. A patted and now you are starting your family, your life and I wish you the very best and keep up with me, with the Zenotch staff. UTS not UT. This fall down. So give me a call. Call me.

1:33:25

Maryam and Amir, congratulation! Best wishes in the future and beautiful wedding, beautiful party. Congratulation.

1:33:30

And your dress was amazing, good choice on that one.

1:33:34

Yes. Great dress and great shoes. Love the shoes.

1:33:37

Love you, congratulations Amir. It was nice to meet you Sir.

1:33:48

Okay Maryam . . . . . Guess what time it is? . . . . . . . it is flip time!

Okay so I hope you have an awesome wedding and I know you did because I was there. And yeah, we are going to go home and we are gonna totally get waste face, again because I have more alchy! And I love you I love Amir and I love everyone. Best of luck.

Guy: Congratulations

Girl: Say something in Farsi

Guy: I don't know that.

Girl: Didn't I teach you well?

Guy: No

Girl: What the douche. I am just kidding. Okay? Love you!

1:34:42

Dear Maryam and dear Amir (. . . . . . . ) wishing you good luck. God willing you would have luck. Have a durable life with lots of energetic babies like this one! Together be sustainable.

1:34:50

I also congratulate, I wish you many years of happiness and success and get old together.

1:35:22

Dear Maryam and dear Amir, wishing you lots of luck. And get old together. Dear Maryam, as you know I always loved you like my own nice. We are having such a good time in your wedding. Everything I did for (. . . . . . . ) wedding, I am doing it for you too. I hope you would celebrate your wedding anniversaries and like you, your little kids call me aunty too. I love you and wishing you best of luck.

1:36:19

Dear Maryam and dear Amir, I wish a very very fine life for you. Marriage is not love, it is devotion, it is self-sacrifice, working on issues. I wish you luck. Be successful.

1:37:02

Dear Maryam tonight was such a lovely night also dear Amir, I would like to congratulate you one more time. I wish you luck and I hope you would have a long life together. Thank you for inviting us. We are very happy and we are very thankful. We wish you prosperity and security.

1:37:25

Myself too. We had a lovely night. For years, It was one of my wishes. We had very good time. We hope next to you, with happiness, you two live together for years to come. Also I would like to thank Mr. Parviz, Shamsi Jan and Mahsa Jan. you worked very hard.

1:37:14

Hi Maryam Joon, I just want to say congratulations. We had such a great night tonight and I wish you the best and I love you very much.

1:38:23

I want to wish you the best. Have a long and happy life with Amir and I love you very much. And remember Preston wood, when I came to that school and we were playing with ( . . . . . . . . . ) and you probably don't remember that, so that's all and I wish you the best. I love you.

1:38:42

End of tape

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

TRIAL COURT CAUSE NO. 401-56531-2013

| | |
|---|---|
| IN THE MATTER OF ) | IN THE DISTRICT COURT |
| THE MARRIAGE OF ) | |
| ROGER ARASH FARAHMAND ) | |
| AND ) | COLLIN COUNTY, TEXAS |
| MARYAM FARAHMAND ) | |
| ) | |
| AND IN THE INTEREST OF ) | |
| ███████████ ) | 401st JUDICIAL DISTRICT |

---

**HEARING**

---

On the 10th day of March, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Mark J. Rusch, Judge Presiding, held in McKinney, Collin County, Texas.

Proceedings reported by computerized machine shorthand.

Blumberg No. 5208

EXHIBIT
**D**

**APPEARANCES**

Bradford Winston Nace      SBOT NO. 24007726
Attorney at Law
100 Crescent Court
7th Floor
Dallas, TX   75201
Telephone:   (214)459-8289

                    *Attorney for Petitioner Roger Farahmand*


Richard J. Corbitt        SBOT NO. 04817000
Attorney At Law
6440 N. Central Expwy.
Suite 402
Dallas, TX   75208
Telephone:   (214)744-1234

                    *Attorney for Respondent Maryam Farahmand*

VOLUME 1

**HEARING**

*March 10, 2014*                                    *PAGE*    *VOL*

Proceedings begin  ..............................5      1

*Witness Direct   Cross   Voir Dire*
ASLAN GHAFFARI
    By Mr. Nace          11                                   1
    By Mr. Corbitt                        13                  1
    By Mr. Nace          17                                   1
    By Mr. Corbitt                20                          1
    By Mr. Nace          21                                   1

FARID RASTEGAR
    By Mr. Nace          23                                   1
    By Mr. Corbitt                26                          1
    By Mr. Nace          27                                   1

ROGER FARAHMAND
    By Mr. Nace          29                                   1
    By Mr. Corbitt                38                          1

MICHAEL SCOTT WOODS
    By the Court         55                                   1

ROBERT GORDON
    By the Court         68                                   1


Court's Ruling ..............................75      1

Adjourned ..................................104      1

Reporter's Certificate ......................105      1

**ALPHABETICAL WITNESS INDEX**

|                        | *DIRECT* | *CROSS* | *VOIR DIRE* | *VOL* |
|------------------------|----------|---------|-------------|-------|
| Farahmand, Roger       | 29       | 38      |             | 1     |
| Ghaffari, Aslan        | 11,17    | 20      | 13          | 1     |
| Ghaffari, Aslan        | 21       |         |             | 1     |
| Gordon, Robert         | 68       |         |             | 1     |
| Rastegar, Farid        | 23,27    | 26      |             | 1     |
| Woods, Michael Scott   | 55       |         |             | 1     |

**EXHIBITS OFFERED BY THE PETITIONER**

| *EXHIBIT* | *DESCRIPTION* | *OFFERED* | *ADMITTED* | *VOL* |
|-----------|---------------|-----------|------------|-------|
| 1 | Marriage License dated 12/12/2009 | 18 | | 1 |
| 2 | Video of 12/12/2009 on DVD | 25 | 25 | 1 |
| 3 | Supporting Affidavit of Roger Farahmand | 30 | | 1 |
| 4 | Roger Farahmand's Summary of Requests | 31 | 31 | 1 |

A.     97.

Q.     And in your 97 years of life, approximately how many years of marriage -- how many marriages have you performed?

A.     Approximately eight to ten people.

Q.     And are you qualified to perform marriages in the State of Texas?

        MR. CORBITT:  Objection, speculation on the part of this witness until the witness has proven that he has so.  May I take the witness on voir dire?

        THE COURT:  Sure.

        MR. CORBITT:  Please the Court.

                **VOIR DIRE EXAMINATION**

BY MR. CORBITT:

Q.     Mr. Ghaffari, I hope I pronounced your name correctly.  Are you a licensed ordained Christian minister?

A.     No, I don't have no license.

Q.     Are you a priest?

A.     No.

Q.     Are you a Jewish rabbi?

        MR. CORBITT:  Am I talking too loud, Judge?  I'm sorry.

        THE COURT:  I can hear you.

Q.     (By Mr. Corbitt) Mr. Ghaffari, are you a Jewish

rabbi?

A.  No.

Q.  Are you a justice of the Supreme Court?

A.  No.

Q.  Are you a judge of the Court of Criminal Appeals?

A.  No.

Q.  Are you a justice of the Court of Appeals, of a district, or a county, or a probate court?

A.  No.

Q.  Are you or have you been a judge of a domestic relations or juvenile court?

A.  No.

Q.  Are you a retired justice or judge of any of those courts that I asked just a minute ago?

A.  No.

Q.  Mr. Ghaffari, you said I think it was a wedding, did you not, sir?

A.  I'm sure it was a wedding.

Q.  Excuse me.  Was that his testimony?  I'm sorry. I feel rude about this.  Was that his testimony just a minute ago, to Ms. Kim, I think it was a wedding?

MR. NACE:  Object to --

THE COURT:  He's asking did he say the words "I think it was a wedding."

A.    I saw it was a wedding.

MR. CORBITT:  Thought, is that what I just heard Mr. Translator?  Thought?

INTERPRETER:  No.

MR. CORBITT:  What was the word?  Say what he just said, please.  I'm sorry.  My fault.

THE COURT:  He didn't understand what you said.  Can you repeat?

INTERPRETER:  I saw a wedding.

MR. CORBITT:  Okay.  Did he answer my question?  I think it was a wedding, did he use that exact terminology?

MR. NACE:  Object to the compound question.

THE COURT:  Sustained.  Respectfully, that's a weight not admissibility thing.

MR. CORBITT:  Please the Court, with regard to purpose of voir dire, we'll pass the witness at this particular juncture in time.  But we will make an objection under Family Code 2.202 that he is not qualified to conduct a wedding in the State of Texas.

THE COURT:  Mr. Ghaffari --

MR. CORBITT:  And I will also state that the Court can take judicial knowledge of the fact that Mr. Farahmand was the Petitioner in this cause, and he files the petition on December 30th, 2013, at 2:02 p.m.

and he specifically stated that the parties were married as husband and wife on or about July 28th, 2012.

THE COURT: I'll be happy to take judicial notice of the pleadings in this matter.

Mr. Ghaffari, by what authority did you perform a wedding?

THE WITNESS: In Islamic law there is no need to have any permission.

THE COURT: Well, are you an Imam?

THE WITNESS: No.

THE COURT: Are you telling me that anyone in Islamic law is authorized to perform a wedding?

THE WITNESS: That's my thought and understanding.

THE COURT: Okay. And just so that I understand, I know that there are several subdivisions of Islam, Sunni, for example, Shi'ite. What subdivision are you?

THE WITNESS: Shi'ite.

THE COURT: Thank you. So the world will know, I'm not an expert under Islamic law, but at least I've got his testimony that he is authorized to do that. That would, at least at this point in time, cover him as far as 2.02 is concerned. Mr. Nace.

MR. NACE: Thank you, Your Honor.

**DIRECT EXAMINATION (CONTINUED)**

BY MR. NACE:

Q. Who had contacted you, if you recall, originally to perform this wedding?

A. I do not remember it very well, but definitely could be one of their family members or father.

MR. NACE: May I approach the witness?

THE COURT: You may.

Q. (By Mr. Nace) I'm going to hand you what we'll mark as Petitioner's 1. Can you identify this document for the record?

INTERPRETER: He said, "This is my signature."

Q. So that would be a yes, you can identify this document for the record?

A. I don't remember very well, but this is my signature and this is my handwriting.

Q. And is this a true and correct copy?

A. As you heard, I don't remember it very well. But certainly this is my handwriting, and this is everything that I wrote.

Q. On that particular document it says at the top Rights of Matrimony, correct?

MR. CORBITT: Objection, Your Honor, speaks for itself. It's not introduced into evidence.

THE COURT: Sustained.

MR. NACE: We'll offer.

THE COURT: Does it have a number on it?

MR. NACE: Yes, Your Honor, Petitioner's 1.

MR. CORBITT: Predicate has not been issued.

THE COURT: Let me see it, please.

MR. NACE: Yes, Your Honor.

(Document present to the Court)

THE COURT: Mr. Nace, I have what appears to be a Xerox copy. I don't see a clerk's stamp on here anywhere.

MR. NACE: Your Honor, we have the original with another witness. That is a copy.

THE COURT: Why isn't the original of a marriage license on file with my clerk?

MR. NACE: From what I understand, to file it that was their responsibility through her family. But the original does exist.

THE COURT: Where is the original?

MR. NACE: My client can better answer that judge through another witness. Because of things missing in this case, our chain of custody, we want to make sure we're keeping things intact.

THE COURT: His objection is sustained at

this point in time.

MR. NACE: May I re-approach the witness?

THE COURT: Sure.

Q. (By Mr. Nace) Sir, re-handing you this particular exhibit, when you perform these weddings before, do you typically sign off as a witness having performed a wedding ceremony?

MR. CORBITT: Please the Court, objection as to any relevancy regarding what he's done in the past. We're only worried about --

THE COURT: Overruled.

INTERPRETER: Can you repeat the question?

Q. (By Mr. Nace) Yes. With regard to the eight to ten wedding ceremonies Mr. Ghaffari has performed in his years, does he typically sign and certify that the parties were united in marriage?

A. Usually I write the name of the couple, the people who are getting married, in the marriage portion and all the information in a piece of paper and they sign it.

Q. And there's no question in Mr. Ghaffari's mind that this piece of paper that I offered as Exhibit 1 is his signature and nobody else's?

A. This is my signature for sure.

MR. NACE: Pass the witness.

STATE OF TEXAS

COUNTY OF COLLIN

I, Kimberly Tinsley, Official Court Reporter in and for the 401st District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $624.50 and was paid by Counsel for Petitioner, Roger Farahmand.

WITNESS MY OFFICIAL HAND on this, the 3rd day of April, 2014.

Digitally signed by Kimberly Tinsley
Date: 2014.04.03 22:42:50 -05'00'

Kimberly Tinsley, CSR
Texas CSR #3611
Official Court Reporter
401st District Court
Collin County, Texas
2100 Bloomdale Rd, Suite 30030
McKinney, Texas 75071
Telephone: (972) 548-4247
E-mail: ktinsley@co.collin.tx.us
Expiration: 12/31/15



The STATE OF TEXAS

Marriage License

COUNTY OF

**COLLIN**

To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.

## GREETING:

**YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE**



**RITES OF MATRIMONY**

Between
*AMIR BAGHERKALANTARI*
and
*MARYAM PARVIZ KHYAVI*

and make due return to the Clerk of the County Court of said County within
Thirty days thereafter, certifying your action under this license.

Witness my official signature and seal of office
At office in McKinney, Texas, this,
the 4th day of December 2009
Stacey Kemp, County Clerk
Collin County, Texas
By *Patricia Crosswhite* Deputy

P-1

I hereby certify that on the __12 th__ day of __December__ 20 __09__.
At __4__ O'Clock __p__ M. I united in Marriage the parties above named.

Witness my hand this __12 th__ day of __December 2009__.

*A. Ghafforie*
Signature of Person performing Ceremony

ASLAN GHAFFARI
Typed or printed name of person performing ceremony

Marriage performed in

P.H.D in CCoروnem Title of person performing ceremony

__Collin__ County 1633 Piedmont Pl. Carrollton, Texas -
Address of person performing ceremony

Returned and filed for record the _____ day of _____, _____.
and recorded the _____ day of _____, _____ in the
In Document Number
Marriage License Record of Collin County
Stacey Kemp, County Clerk
By _____ Deputy

Filed: 3/28/2014 2:21:01 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Robin Whitehead Deputy

## NO. 401-56531-2013

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| ROGER ARASH FARAHMAND AND | § § | |
| MARYAM FARAHMAND | § § | 401ST JUDICIAL DISTRICT |
| AND IN THE INTEREST OF | § § | |
| ██████████ , A MINOR CHILD | § § § | COLLIN COUNTY, TEXAS |

## ORIGINAL PETITION TO DECLARE MARRIAGE VOID AND IN THE ALTERNATIVE FIRST AMENDED PETITION FOR DIVORCE

1.  *Discovery Level*

Discovery in this case is intended to be conducted under level 2 of rule 190

of the Texas Rules of Civil Procedure.

2.  *Objection to Assignment of Case to Associate Judge*

Petitioner objects to the assignment of this matter to an associate judge for a

trial on the merits or presiding at a jury trial.

3.  *Parties*

This suit is brought by Roger Arash Farahmand, Petitioner.

4.  *Jurisdiction*

Roger Arash Farahmand is domiciled in Texas.

EXHIBIT
**E**

Blumberg No. 5208

5.   *Service*

Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Respondent's attorney of record, Richard J. Corbitt, Law Office of Richard J. Corbitt, P.C., 6440 N. Central Expressway, Suite 402, Dallas, Texas 75206.

6.   *Protective Order Statement*

No protective order under Title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

I.

## ORIGINAL PETITION TO DECLARE MARRIAGE VOID AND SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP

7.   *Grounds*

Petitioner and Respondent entered into a purported marriage on July 28, 2012. The purported marriage is void and of no effect under the provisions of section 6.202 of the Texas Family Code because Respondent was already legally married. The prior marriage of Respondent was to Amir Bagherkalantari and occurred on or about December 12, 2009. Respondent's marriage to Amir Bagherkalantari was never dissolved by divorce or annulment or terminated by the death of Amir Bagherkalantari.

8.  *Child*

Petitioner and Respondent are parents of the following child of this purported marriage who is not under the continuing jurisdiction of any other court:

Name: █████████████████████
Sex: Male
Birth date: ████ ████

There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child the subject of this suit.

Information required by section 154.181(b) of the Texas Family Code is provided as follows: Blue Cross, Blue Shield is in effect for the child.

No property of consequence is owned or possessed by the child the subject of this suit.

The appointment of Petitioner and Respondent as joint managing conservators would not be in the best interest of the child. Roger Arash Farahmand, on final hearing, should be appointed sole managing conservator, with all the rights and duties of a parent sole managing conservator. Maryam Farahmand should be appointed possessory conservator with possession and access as determined appropriate following a psychological evaluation and drug and alcohol evaluation, monitoring and supervision with all the rights and duties of a parent conservator. Roger Arash Farahmand should be designated as the

conservator who has the exclusive right to designate the child's primary residence, along with all other rights and duties of a sole managing conservator.

In the alternative, Roger Arash Farahmand requests that he and Maryam Farahmand be designated joint managing conservators and that he have the exclusive right to designate the primary residence of the child with the exclusive right to make decisions concerning the child's education, the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures, and the exclusive right to consent to psychiatric and psychological treatment of the child. Roger Arash Farahmand requests that Maryam Farahmand be awarded possession and access as the Court deems to be in the best interest of the child, and considering the safety and welfare of the child. Roger Arash Farahmand should be awarded possession of the child at all other times not otherwise awarded to Maryam Farahmand.

In all alternatives, Roger Arash Farahmand requests that payments for the support of the child and medical support should be ordered in an amount supported by the guidelines set forth in the Texas Family Code and paid in the manner specified by the Court. Roger Arash Farahmand requests that the payments for the support of the child survive the death of Maryam Farahmand and become the obligation of Maryam Farahmand's estate. Roger Arash Farahmand also requests that Maryam Farahmand seek and follow all recommendations by a qualified

psychiatrist and psychologist as well as to submit to random drug testing, upon request by either Roger Arash Farahmand and/or qualified testing facility.

9. *Confirmation of Name*

Respondent's name before the purported marriage was Maryam Parviz-Khyavi, and this former name should be confirmed by the Court as her lawful name.

10. *Property*

Petitioner requests that the Court find the marriage relationship is meretricious and property acquired or accumulated during the void marriage by the parties should not be treated as community property and not be subject to a just and right division.

11. *Request for Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Bradford Nace of Nace & Motley, LLC and Ike Vanden Eykel, Rebecca Tillery and the firm of KoonsFuller, P.C., licensed attorneys, to preserve and protect the child's rights. Respondent should be ordered to pay reasonable attorney's fees, expenses, and costs through trial and appeal, and a judgment should be rendered in favor of these attorneys and against Respondent and be ordered paid directly to Petitioner's attorneys, who may enforce the judgment in the attorney's own name. Petitioner requests postjudgment interest as allowed by law.

## II.

## IN THE ALTERNATIVE, FIRST AMENDED PETITION FOR DIVORCE

In the alternative and without waiving any relief requested in the foregoing suit to declare marriage void, Petitioner brings this suit for divorce and files his First Amended Petition for Divorce.

12. *Domicile*

Petitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

13. *Protective Order Statement*

No protective order under title 4 of the Texas Family Code is in effect, and no application for a protective order is pending with regard to the parties to this suit.

14. *Dates of Marriage and Separation*

The parties were married on or about July 28, 2012 and ceased to live together as husband and wife on or about December 30, 2013.

15. *Grounds for Divorce*

The marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

16. *Property*

Petitioner requests the Court to divide their estate in a manner that the Court deems just and right, as provided by law.

17. *Separate Property*

Petitioner owns certain separate property that is not part of the community estate of the parties, and Petitioner requests the Court to confirm that separate property as Petitioner's separate property and estate.

18. *Collin County Standing Order Regarding Children, Property and the Conduct of the Parties*

The Collin County Standing Order Regarding Children, Property and the Conduct of the Parties is attached hereto in compliance with the standing order of the Collin County District Courts and is incorporated herein by reference.

19. *Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for Petitioner to secure the services of Bradford Nace of Nace & Motley, LLC and Ike Vanden Eykel, Rebecca Tillery and the firm of KoonsFuller, P.C., licensed attorneys, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Respondent and in favor of Petitioner for the use and benefit of

ORIGINAL PETITION TO DECLARE MARRIAGE VOID AND IN THE
ALTERNATIVE FIRST AMENDED PETITION FOR DIVORCE                Page 7

Petitioner's attorneys and be ordered paid directly to Petitioner's attorneys, who may enforce the judgment in the attorney's own name. Petitioner requests postjudgment interest as allowed by law.

20. *Prayer*

Petitioner prays that the Court enter its order declaring void the marriage of Petitioner and Respondent.

In the alternative, Petitioner prays that the Court grant a divorce and all other relief requested in this petition.

Petitioner prays for attorney's fees, expenses, and costs as requested above.

Petitioner prays for general relief.

Respectfully submitted,

IKE VANDEN EYKEL
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
KOONSFULLER
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201
(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

## CERTIFICATE OF SERVICE

I certify that on March ____, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address or by other means set forth in accordance with Rule 21a of the *Texas Rules of Civil Procedure*:

Richard J. Corbitt
Richard J. Corbitt & Associates, P.C.
6440 N. Central Expressway, Suite 402
Dallas, Texas 75206

**REBECCA TILLERY**
Attorney for Petitioner

## NO. 417-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| M.J.J., A CHILD | § | COLLIN COUNTY, TEXAS |

## AFFIDAVIT

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF TARRANT | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Dawn M. Grams Horak, whose identity was proved to me by her Texas driver's license, and whose signature is affixed hereto, and, who, after first being duly sworn on her oath did say she is over the age of 18 years, has never been convicted of a felony, and is competent to make this affidavit, that she has read this Affidavit, has knowledge of the fact contained herein, and that they are all true and correct.

1. "My name is Dawn M. Grams Horak (hereinafter referred to as "Horak"). I am of counsel to the Widner Family Law Group, PLLC, lead counsel for the Respondent in the above styled and numbered cause. I am the managing partner of Dawn M. Grams, P.C.

2. I am an attorney of record in the above styled and numbered cause of action.



3.     Attached to Respondent's Hybrid Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari are _____ pages of records from Dawn M. Grams, P.C. I am the custodian of the records of Dawn M. Grams, P.C. Attached to Respondent's Hybrid Motion for Partial Summary Judgment on Petitioner's Allegations of Prior Marriage to Amir Bagherkalantari are true and correct duplicates of the original records:

**Exhibit A**     A true and correct duplicate of the Summary of Pleadings.

**Exhibit C**     A true and correct duplicate of the Foreign Language Translation and Affidavit filed by Petitioner on or about June 13, 2014.

**Exhibit D**     A true and correct duplicate of the following pages of the March 10, 2014, Hearing transcription: Pages 1-4, 13-19, 105, and Exhibit P-1.

**Exhibit E**     A true and correct duplicate of Petitioner's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce.

Exhibit A, Exhibit C, Exhibit D, and Exhibit E are kept by Dawn M. Grams, P.C., in the regular course of business, and it was the regular course of business of Dawn M. Grams, P.C.,for an employee or representative of Dawn M. Grams, P.C., with knowledge of the act, event, condition, opinion, or diagnosis that was recorded, to make this record or to transmit the information to be included in this record. The record was made at or near the time or reasonably soon after the act, event, condition, opinion, or diagnosis that was recorded. The records attached to this affidavit are the originals or exact duplicates of the originals.

4.     The factual statements contained herein are of my own personal knowledge and are true and correct."

_____
**DAWN M. GRAMS HORAK**

SWORN TO AND SUBSCRIBED before me on this 15th day of July, 2014.

_Laurie Tamasi_

**NOTARY PUBLIC in and for the State of Texas**

**My Commission Expires:** Sept. 19, 2017

LAURIE TAMASI
Notary Public, State of Texas
My Commission Expires
September 19, 2017

# ROGER FARAHMAND'S
# RECORD TAB 15

Filed: 7/31/2014 5:51:06 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Carla Mahan Deputy
Envelope ID: 2014948

*THIS DOCUMENT CONTAINS SENSITIVE DATA.*

## NO. <u>417-56531-2013</u>

| | | |
|---|---|---|
| **A SUIT TO DECLARE VOID** | § | **IN THE DISTRICT COURT** |
| **THE MARRIAGE OF** | § | |
| | § | |
| **ROGER ARASH FARAHMAND** | § | |
| **AND** | § | **417TH JUDICIAL DISTRICT** |
| **MARYAM FARAHMAND** | § | |
| | § | |
| **AND IN THE INTEREST OF** | § | |
| █████ **, A CHILD** | § | **COLLIN COUNTY, TEXAS** |

## PETITIONER'S SPECIAL EXCEPTIONS AND MOTION TO STRIKE RESPONDENT'S "FIRST VERIFIED MOTION FOR CONTINUANCE"

Petitioner, Roger A. Farahmand, specially excepts to Respondent, Maryam

Farahmand's "First Verified Motion for Continuance" and asks the Court to order

Respondent to replead and cure her pleading defects, and if Respondent fails to

cure her pleading defects, Petitioner asks the Court to enter an order striking

Respondent's pleading.

## SPECIAL EXCEPTIONS

Petitioner specially excepts to Respondent's "First Verified Motion for

Continuance" because it contains personal, private and inflammatory allegations

and statements, evidentiary "facts," inadmissible hearsay, and attaches

unauthenticated documents, all of which is inappropriate and in violation of the

Texas Family Code's prohibition of the inclusion of evidentiary facts within

pleadings. Texas Family Code § 6.402(c) states, "The court shall strike an allegation of evidentiary fact from the pleadings on the motion of a party or on the court's own motion."

The portions of Respondent's pleading to which Petitioner specially excepts are too voluminous to include in the body of this motion. For the Court's ease of review, a true and correct copy of Respondent's pleading has been attached to this Motion as Exhibit A. The portions Petitioner believes are inappropriate and in violation of Texas Family Code § 6.402(c) have been redacted by Petitioner, and Petitioner requests that the Court order Respondent to cure said pleading defects by a time and date certain.

## MOTION TO STRIKE

If Respondent fails to cure her pleading defects by a time and date certain, Petitioner asks the Court to strike the portions of Respondent's pleading that are inappropriate, as reflected in Exhibit A.

## ATTORNEY'S FEES

Due to Respondent's filing of a pleading in violation of the Texas Family Code, it was necessary for Petitioner to secure the services of the below attorneys to prepare and prosecute this Motion. Judgment for attorney's fees, expenses, and costs for the preparation of this Motion should be granted against Respondent and in favor of Petitioner for the use and benefit of Petitioner's attorneys and should be

paid directly to Petitioner's attorneys, who may enforce the judgment in the attorneys' own names. Petitioner requests post-judgment interest as allowed by law.

**PRAYER**

For these reasons, Petitioner asks the Court to grant his Special Exceptions and Motion to Strike, award attorney's fees, and grant him any further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ Rebecca Tillery*

---

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax
    -and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**

100 Crescent Court, 7th Floor
Dallas, Texas 75201
(214) 459-8289
(214) 242-4333 Fax


Attorneys for Roger Arash
Farahmand


## CERTIFICATE OF CONFERENCE

Counsel for Petitioner communicated with Counsel for Respondent concerning the merits of this motion. Counsel for Petitioner and Counsel for Respondent were unable to reach an agreement concerning the matters raised by this motion.

*/s/ Rebecca Tillery*

_____

Rebecca Tillery


## CERTIFICATE OF SERVICE

I certify that on July 31, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address _or_ by other means set forth in accordance with Rule 21a of the *Texas Rules of Civil Procedure*:

Robert S. Widner
The Widner Family Law Group, PLLC
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
robertwidner@gmail.com

Dawn M. Grams Horak
Dawn M. Grams, P.C.
P.O. Box 924
Grapevine, Texas 76099
dgrams@msn.com
214-572-6893 (fax)

Diana L. Porter
Diana L. Porter, P.C.
103 E. Virginia Street, Suite 201
McKinney, Texas 75069
dporter@collincountydivorce.com

*/s/ Rebecca Tillery*
**REBECCA TILLERY**
Attorney for Petitioner

Filed: 7/10/2014 12:15:17 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Lisa Sharpe Deputy
Envelope ID: 1782144

## NO. 417-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███ , A CHILD | § | COLLIN COUNTY, TEXAS |

## RESPONDENT'S FIRST VERIFIED MOTION FOR CONTINUANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Maryam Farahmand, the Respondent and Counter-Petitioner in the above-styled and numbered cause, and files this First Verified Motion for Continuance for the hearing set for July 29, 2014, on Petitioner's Petition to Declare Marriage Void. In support of thereof, Maryam Farahmand would respectfully show the Court as follows:

1.    Petitioner's initial allegations of a prior marriage of Respondent occurred on or about **March 10, 2014**, at a hearing in this Court. Petitioner's identified Amir Bagherkalantari as the alleged prior spouse of Respondent at this time. *See* Exhibit A.

~~2.    On or about Thursday, May 8, 2014, Amir Bagherkalantari stated to~~

---

Respondent's First Verified Motion for Continuance                1 | P a g e



EXHIBIT

A

~~Page 6 of 46~~

~~Respondent, Maryam Farahmand, that he was going to see how much the Petitioner, Roger Farahmand offered to pay him for his testimony. Thus, there appears to be either witness tampering or the possibility of witness tampering.~~

3. ~~On or about Tuesday, June 24, 2014, Brenda Rodgers spoke with the Court Coordinator for the 401st Judicial District Court of Collin County, Texas, and was advised that the court's docket was closed for the month of July. The Court Coordinator further advised that any setting presently on the docket would be heard, but there would be "NO additions, NO deletions, NO substitutions, NO changes whatsoever." See Exhibit B-1. As a result thereof, Respondent did not file her Motion for Summary Judgment, as same would not be considered or heard before the court on or before the Tuesday, July 29, 2014, hearing date. See Exhibit B.~~

4. The parties were last before the Court on or about Tuesday, May 27, 2014. *See* Exhibit D. ~~During the time period of Tuesday, May 27, 2014, and Friday, June 27, 2014, Petitioner filed more than fifty (50) documents with the Court. In addition to the more than fifty (50) documents filed, Petitioner remits up to three (3) to four (4) letters to Respondent's counsel on an almost daily basis. See Exhibit B.~~

---

Respondent's First Verified Motion for Continuance                    2 | P a g e

5. On **May 27, 2014**, Petitioner filed a document entitled "Certificate of Marriage." *See* Exhibit E. At the hearing on March 10, 2014, the Honorable Judge Mark J. Ruseh ruled, in relevant part, that no marriage license by and between Respondent and Amir Bagherkalantari was ". . .on file, so [he] [didn't] have a valid prior ceremonial marriage." *See* Exhibit D = Hearing Transcript, Page 77, Lines 18-20. Disregarding this ruling, Petitioner files same misrepresenting that same is valid. *See* Exhibit E.

6. Respondent would further show that Aslan Ghaffari, on behalf of and at the request of Petitioner, provided false sworn testimony at the March 10, 2014, hearing and that the signature on the alleged marriage certificate is not Mr. Ghaffari's signature. Specifically, in the years 2005-2011, Mr. Ghaffari executed various legal documents. *See* Exhibit F. In aforementioned legal documents, Mr. Ghaffari correctly spelled his name: G-H-A-F-F-A-R-I. *See* Exhibit F. However, on the purported "marriage license," Mr. Ghaffari's name is spelled: G-H-A-F-F-O-R-I-E. *See* Exhibit E. How would a man who is eighty-(80) plus years old misspell his own last name? Because it is not his signature!

7. On or about June 9, 2014, Petitioner designated Madoud Anasri as the expert to testify as to a "Persian Muslim wedding." However, Petitioner's

designated expert is the father of Roger's Farahmand's business partner and very close friend, Shaya Ansari. In fact, Roger Farahmand himself indicated during his March 4, 2014 deposition that he owns property with Shaya Ansari and that Shaya is "a dear friend, like — like my brother." Clearly, the expert testimony of Madoud Anasri will be biased, as his own son has a financial stake in the outcome of the proceedings. Relevant portions of the deposition of Petitioner are as follows:

**Owns property in Las Vegas, Nevada with Shaya Ansari:**

*P102*

Q. Okay. Any other property save and except the ones you've testified to so far, Mr. Farahmand?
A. No. I've testified to four.
Q. Yes, sir, you have. In the United States.
A. I think I have one in Vegas, *Las Vegas.*
Q. Okay.
A. Or through Badmand Holdings and another friend of mine.
Q. What's your friend's name, please?
A. Shaya.

*P103*

Q. Could you spell it for us?
A. S-H-A-Y-A.
Q. Uh-huh.
A. Ansari, A-N-S-A-R-I.

**Owns rental property with Shaya Ansari in Cabo San Lucas, Mexico:**

*P104*

Q. And where is this property located?
A. *Cabo San Lucas.*
Q. What's the date of purchase?
A. 2006.

P105

Q. What was the purchase price?
A. At that time, I think it was half a million.
Q. It's not a timeshare, is it, sir?
A. No.
Q. Okay. And is it -- is it -- do you rent it out or do you...
A. I don't.
Q. Is it -- who does, if they do?
A. *Shaya.*
Q. Okay. So he -- *Mr. Shaya* is your -- I don't want to use the wrong word here -- partner or associate in this property, also?
A. Yes.
Q. Okay.
A. He's a dear friend, like -- like my brother.
Q. Okay. Is there only two of you?
A. Yes.
Q. Could you give me the address of that property, please?
A. Sure.
Q. Thank you.
A. *Pedregal, Cabo San Lucas.*

### Owns a Boat with Shaya Ansari:

P109

Do you have an interest in a *boat*?
A. Possibly.
Q. Okay. Could you tell the Court what "maybe" means as far as your interest in a boat?

A. Yes. I don't know if my partner has sold the interest or we still possess it or what happened.

Q. Is this your partner Tom?

A. No, Tom's not my partner.

Q. Okay. Please forgive me, then. You said partner. I hadn't heard anything about a partner except Shaya -- Shaya -- Shaya.

A. You've never asked, but *Shaya's* my partner, yes --

Q. Okay.

A. -- in that situation.

Q. Is that the partner in the boat, also?

A. Yes.

~~*See* Exhibit C. Madoud Anasri lives in New Jersey and was not made available for a deposition and did not provide an expert report. Thus, how can Respondent prepare for his anticipated testimony when no information has been provided for review?~~

8. Petitioner's Petition to Declare Marriage Void is set for hearing on **July 29, 2014 at 9:00 a.m.** *See* Exhibit A. This hearing will determine the validity of Respondent's marriage to Petitioner. Respondent should be afforded the opportunity to adequately prepare for same. ~~Due to Petitioner filing more than fifty (50) documents in less than thirty-five (35) days prior to the deadline for completion of discovery and amending the pleadings on file, not including designating an out-of-state expert whose son will be financially affected by the~~

~~ruling of the court,~~ Respondent has not been able to adequately prepare for the July 29th hearing date.

9. Due to the reasons set forth in this Motion, Respondent respectfully asks this Court for a brief continuance to allow for the Respondent to adequately prepare for the hearing Petitioner's Petition to Declare Marriage Void that is currently set for hearing on July 29, 2014 at 9:00 a.m. and to allow the Respondent an opportunity to file and have this Court hear motions including, but not limited to, the following prior to the final setting on July 29, 2014: Motion to Strike or Exclude Experts and Motion for Summary Judgment on Marriage Issue.

10. This continuance is not sought solely for delay but that justice may be done. *See* Exhibit B.

WHEREFORE, PREMISES CONSIDERED, the Respondent, Maryam Farahmand, asks this Court to continue the hearing that is currently set for July 29, 2014, at 9:00 a.m. on Petitioner's Petition to Declare Marriage Void and reset same for a future date or for at least one hundred and twenty (120) days and modify all deadlines identified in the Agreed Scheduling Order to adhere to same. Respondent further asks for any and all such other relief, either at law or equity to which she may show herself to be justly entitled including, but not limited to, attorney's fees

and expenses.

Respectfully submitted,

**WIDNER FAMILY LAW GROUP, PLLC**

By: /s/ Robert S. Widner            .
    **Robert S. Widner**
    Texas State Bar No. 00792092

2911 Turtle Creek Boulevard, Suite 405
Dallas, Texas, 75219

Telephone No.:            972-979-5700
Facsimile No.:            972-692-8951
Electronic Address robertwidner@gmail.com

and

**DAWN M. GRAMS, P.C.**

By: /s/ Dawn M. Grams Horak            .
    **Dawn M. Grams Horak**
    Texas State Bar No. 24036667

P.O. Box 924
Grapevine, Texas, 76099

Telephone No.:            469-644-7442
Facsimile No.:            214-572-6893
Electronic Address:      dgrams@msn.com

*of counsel to Widner Family Law Group, LLC*

**ATTORNEYS FOR RESPONDENT AND**

## COUNTER-PETITIONER
## MARYAM FARAHMAND
## CERTIFICATE OF CONFERENCE

I, the undersigned attorney, Dawn M. Grams Horak, hereby certify to the Court that I have attempted to confer with opposing counsel in an effort to resolve the issues contained in this motion without the necessity of Court intervention. Specifically, I have contacted counsel for Petitioner on multiple occasions via electronic correspondence and opposing counsel has stated that they would not be in agreement with same.

Therefore, the parties have not been able to come to an amicable resolution to this matter without the necessity of the Court's intervention.

Certified to as of this 10th day of July, 2014.

/s/ Dawn M. Grams Horak
**DAWN M. GRAMS HORAK**

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following parties via the manner reflected below, in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

Mr. Ike Vanden Eykel  
Ms. Rebecca Tillery  
Koons Fuller, P.C.  
1717 McKinney Avenue, Suite 1500  
Dallas, Texas, 75202  

✓**Facsimile 214-871-0196**  
Certified Mail/Return Receipt Requested  
U.S. First Class Mail  
✓**Other**  
    ike@koonsfuller.com  
    tillery@koonsfuller.com  
    Reagan@koonsfuller.com  
✓**E-Service**

Mr. Bradford Nace  
Nace & Motley, LLC  
100 Crescent Court, 7th Floor  
Dallas, Texas, 75201  

✓ **Facsimile 214-242-4333**  
Certified Mail/Return Receipt Requested  
U.S. First Class Mail  
✓ **Other        bnace@nacemotley.com**  
✓**E-Service**

Ms. Diana L. Porter  
Diana L. Porter, P.C.  
103 E. Virginia Street, Suite 201  
McKinney, Texas 75069  

Facsimile 972-548-2349  
Certified Mail/Return Receipt Requested  
U.S. First Class Mail  
✓**Other**  
✓**dporter@collincountydivorce.com**  
    **Pursuant to Request of Attorney**

Certified to as of this ⟨illegible⟩ day of July, 2014.

/s/Dawn M. Grams Horak

**DAWN M. GRAMS HORAK**

REPORTER'S RECORD

VOLUME 1 OF 1 VOLUME

TRIAL COURT CAUSE NO. 401-56531-2013

| | |
|---|---|
| IN THE MATTER OF ) | IN THE DISTRICT COURT |
| THE MARRIAGE OF ) | |
| ROGER ARASH FARAHMAND ) | |
| AND ) | COLLIN COUNTY, TEXAS |
| MARYAM FARAHMAND ) | |
| ) | |
| AND IN THE INTEREST OF ) | |
| ████████████████ ) | 401st JUDICIAL DISTRICT |

———————————————————————————

**HEARING**

———————————————————————————

On the 10th day of March, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Mark J. Rusch, Judge Presiding, held in McKinney, Collin County, Texas.

Proceedings reported by computerized machine shorthand.

Kimberly Tinsley, CSR #3611
(972) 548-4247



**APPEARANCES**

Bradford Winston Nace     SBOT NO. 24007726
Attorney at Law
100 Crescent Court
7th Floor
Dallas, TX   75201
Telephone:   (214)459-8289

        *Attorney for Petitioner Roger Farahmand*


Richard J. Corbitt     SBOT NO. 04817000
Attorney At Law
6440 N. Central Expwy.
Suite 402
Dallas, TX   75208
Telephone:   (214)744-1234

        *Attorney for Respondent Maryam Farahmand*

VOLUME 1

**HEARING**

*March 10, 2014*                                    *PAGE*    *VOL*

Proceedings begin  ...........................5      1

*Witness Direct    Cross    Voir Dire*
ASLAN GHAFFARI
     By Mr. Nace         11                                    1
     By Mr. Corbitt                          13              1
     By Mr. Nace         17                                    1
     By Mr. Corbitt              20                            1
     By Mr. Nace         21                                    1

FARID RASTEGAR
     By Mr. Nace         23                                    1
     By Mr. Corbitt              26                            1
     By Mr. Nace         27                                    1

ROGER FARAHMAND
     By Mr. Nace         29                                    1
     By Mr. Corbitt              38                            1

MICHAEL SCOTT WOODS
     By the Court        55                                    1

ROBERT GORDON
     By the Court        68                                    1


Court's Ruling  ...............................75    1

Adjourned  ..................................104    1

Reporter's Certificate  ....................105     1

## ALPHABETICAL WITNESS INDEX

| | DIRECT | CROSS | VOIR DIRE | VOL |
|---|---|---|---|---|
| Farahmand, Roger | 29 | 38 | | 1 |
| Ghaffari, Aslan | 11,17 | 20 | 13 | 1 |
| Ghaffari, Aslan | 21 | | | 1 |
| Gordon, Robert | 68 | | | 1 |
| Rastegar, Farid | 23,27 | 26 | | 1 |
| Woods, Michael Scott | 55 | | | 1 |

## EXHIBITS OFFERED BY THE PETITIONER

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 1 | Marriage License dated 12/12/2009 | 18 | | 1 |
| 2 | Video of 12/12/2009 on DVD | 25 | 25 | 1 |
| 3 | Supporting Affidavit of Roger Farahmand | 30 | | 1 |
| 4 | Roger Farahmand's Summary of Requests | 31 | 31 | 1 |

Kimberly Tinsley, CSR #3611
(972) 548-4247

THE COURT: Sustained.

MR. NACE: We'll offer.

THE COURT: Does it have a number on it?

MR. NACE: Yes, Your Honor, Petitioner's 1.

MR. CORBITT: Predicate has not been issued.

THE COURT: Let me see it, please.

MR. NACE: Yes, Your Honor.

(Document present to the Court)

THE COURT: Mr. Nace, I have what appears to be a Xerox copy. I don't see a clerk's stamp on here anywhere.

MR. NACE: Your Honor, we have the original with another witness. That is a copy.

THE COURT: Why isn't the original of a marriage license on file with my clerk?

MR. NACE: From what I understand, to file it that was their responsibility through her family. But the original does exist.

THE COURT: Where is the original?

MR. NACE: My client can better answer that judge through another witness. Because of things missing in this case, our chain of custody, we want to make sure we're keeping things intact.

THE COURT: His objection is sustained at

this point in time.

MR. NACE: May I re-approach the witness?

THE COURT: Sure.

Q. (By Mr. Nace) Sir, re-handing you this particular exhibit, when you perform these weddings before, do you typically sign off as a witness having performed a wedding ceremony?

MR. CORBITT: Please the Court, objection as to any relevancy regarding what he's done in the past. We're only worried about --

THE COURT: Overruled.

INTERPRETER: Can you repeat the question?

Q. (By Mr. Nace) Yes. With regard to the eight to ten wedding ceremonies Mr. Ghaffari has performed in his years, does he typically sign and certify that the parties were united in marriage?

A. Usually I write the name of the couple, the people who are getting married, in the marriage portion and all the information in a piece of paper and they sign it.

Q. And there's no question in Mr. Ghaffari's mind that this piece of paper that I offered as Exhibit 1 is his signature and nobody else's?

A. This is my signature for sure.

MR. NACE: Pass the witness.

period.  This child does not leave the United States, period.

Mother is ordered to continue her psychological course of treatment with Dr. Woods, if that involves counseling, medication, or whatever, and to abide by and follow all of his orders and instructions. Mr. Gordon is a forensic guy, you can continue with him, or not.  I'm not ordering you to.  I'm not forbidding you to.  Dr. Woods is the main primary treatment guy.  You will continue in your treatment with Dr. Woods.

Everyone in this room understand that if somebody has a chemical imbalance in their brain, I don't hold it against them if they are dealing with it appropriately.

Now, I've got an eight-month-old kid.  And Mr. Nace, just so you'll know, while this testimony about another wedding is interesting, even assuming for the sake of discussion that some ceremony was performed, that license isn't on file, so I don't have a valid prior ceremonial marriage.  I may or I may not have a valid informal marriage and that would certainly be some evidence of it.  But you're miles from at the very least cohabitation.  So at least today, I'm not -- don't have any concerns about there being a bigamy situation.  That doesn't mean there isn't one.  I'm just saying today, in

STATE OF TEXAS

COUNTY OF COLLIN

I, Kimberly Tinsley, Official Court Reporter in and for the 401st District Court of Collin County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $624.50 and was paid by Counsel for Petitioner, Roger Farahmand.

WITNESS MY OFFICIAL HAND on this, the 3rd day of April, 2014.

Digitally signed by Kimberly Tinsley
Date: 2014.04.03 22:42:50 -05'00'

Kimberly Tinsley, CSR
Texas CSR #3611
Official Court Reporter
401st District Court
Collin County, Texas
2100 Bloomdale Rd, Suite 30030
McKinney, Texas 75071
Telephone:  (972) 548-4247
E-mail: ktinsley@co.collin.tx.us
Expiration:  12/31/15



The STATE OF TEXAS
COUNTY OF

## COLLIN

*To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.*

# GREETING:
## YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE
## RITES OF MATRIMONY

*Between*

### AMIR BAGHERKALANTARI

*and*

### MARYAM PARVIZ KHYAVI

*and make due return to the Clerk of the County Court of said County within*

*Thirty days thereafter, certifying your action under this license.*

*Witness my official signature and seal of office*

*At office in McKinney, Texas, this,*

*the 4th day of December 2009*

*Stacey Kemp, County Clerk*

*Collin County, Texas*

P-1

*By* Patricia Crosswhite *Deputy*

---

*I hereby certify that on the* 12 th *day of* December *20 09.*

*At* 4 *O'Clock* p *M. I united in Marriage the parties above named.*

**Witness** *my hand this* 12 th *day of* December 2009.

A. Ghafforie
<span style="font-size:small">Signature of Person performing Ceremony</span>

ASLAN GHAFFARI
<span style="font-size:small">Typed or printed name of person performing ceremony</span>

*Marriage performed in*

P.H.D in ccomomo <span style="font-size:small">Title of person performing ceremony</span>

Collin *County* 1633 Piedmont Pl. Carrollton, Texas - <span style="font-size:small">Address of person performing ceremony</span>

*Returned and filed for record the* _____ *day of* _____, _____.

*and recorded the* _____ *day of* _____, _____ *in the*

*In Document Number* *Marriage License Record of Collin County*

*Stacey Kemp, County Clerk*

*By* _____ *Deputy*

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009

at 3:28 PM

Stacey Kemp, County Clerk

By _____ Deputy

Returned and Filed for

Record the _____ day

of _____. ____

Stacey Kemp, County Clerk

By _____ Deputy

**Groom**

Birthday: 07/05/1981

Place of Birth: Tehran, IRAN

**Bride**

Birthday: 11/27/1980

Place of Birth: Tehran, IRAN

Section 2.204 of the Family Code
This license cannot be used prior to:
12/07/2009 3:28 PM

Section 2.201 of the Family Code
Must be used before:
01/04/2010

Section 2.202 of the Family Code
Persons authorized to conduct ceremony.

Printed material distributed as required by
Section 2.009 of the Family Code.

## Return License To

MARYAM PARVIZ KHYAVI

15025 FARMCOTE DR

RICHARDSON, TX 75080

## NO. 417-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417th JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| M.J.J., A CHILD | § | COLLIN COUNTY, TEXAS |

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared Dawn M. Grams Horak, who, after being duly sworn, stated under oath that she is one of the attorney's of record for the Respondent, Maryam Farahmand in the above styled number and cause; that she has read the motion; and that the statements contained in the following paragraphs are within her personal knowledge and are true and correct. 4, 9, 1c

Also, See Exhibit B-1.

_____
**DAWN M. GRAMS HORAK**

SWORN TO AND SUBSCRIBED before me on this 9th day of July, 2014.

_____
**NOTARY PUBLIC in and for the State of Texas**

My Commission Expires: 9|19|17

LAURIE TAMASI
Notary Public, State of Texas
My Commission Expires
September 19, 2017

EXHIBIT
**B**
Blumberg No. 5205

## Dawn Horak

| | |
|---|---|
| **From:** | Brenda Rodgers <brendalrodgers@gmail.com> |
| **Sent:** | Tuesday, June 24, 2014 3:55 PM |
| **To:** | Dawn Horak |
| **Cc:** | Bob Widner |
| **Subject:** | Re: FW: Farahmand |

███████████ I was unsuccessful in getting the MSJ set before or on July 29. The Court Coordinator was very adamant about the docket being closed for the month of July. She also stated that the 401st Judge does not hear motions by submission anyway. She will not let us remove our Mtn to Compel and add the MSJ in its place either. She stated NO additions, NO deletions, NO substitutions – NO changes whatsoever. I let Bob know this ███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███

Thanks,
Brenda

Redacted due to Attorney Work
Product. Only Relevant Portions
provided. All other, subject to
privilege



NO. 401-56531-2013

| IN THE MATTER OF | * | IN THE 401ST |
| THE MARRIAGE OF | * | |
| | * | |
| ROGER ARASH FARAHMAND | * | |
| AND | * | JUDICIAL DISTRICT COURT |
| MARYAM FARAHMAND | * | |
| | * | |
| AND IN THE INTEREST OF | * | |
| ▆▆▆▆▆▆▆▆▆▆▆▆ | * | |
| A MINOR CHILD | * | COLLIN COUNTY, TEXAS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF ROGER FARAHMAND

Taken for the Respondent

March 4, 2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF ROGER FARAHMAND, produced as a witness at the instance of the Respondent, and duly sworn, was taken in the above-styled and numbered cause on March 4, 2014, from 2:07 p.m. to 5:38 p.m., before Pennie Futrell, CSR in and for the State of Texas, reported by machine shorthand, at the Law Offices of Richard J. Corbitt, P.C., 6440 N. Central Expressway, Suite 700, Dallas, Texas 75206, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.



                            APPEARANCES

FOR THE PETITIONER:

      Mr. Bradford Nace
      NACE & MOTLEY, LLP
      100 Crescent Court
      7th Floor
      Dallas, Texas 75201
      Telephone:       214.459.8289
      Facsimile:       214.242.4333
      E-mail:          bnace@nacemotley.com


FOR THE RESPONDENT:

      Mr. Richard J. Corbitt
      LAW OFFICE OF RICHARD J. CORBITT, P.C.
      6440 N. Central Expressway
      Suite 402
      Dallas, Texas 75206
      Telephone:       214.744.1234
      Facsimile:       214.754.0515
      E-mail:          corbittlaw@gmail.com


ALSO PRESENT:

      Mr. Randy Johnson - Videographer
      Ms. Maryam Farahmand

I N D E X

APPEARANCES........................................ 2

EXAMINATION OF ROGER FARAHMAND

    Direct Examination by Mr. Corbitt................ 4

SIGNATURE AND CORRECTION PAGE........................190

CERTIFICATE..........................................192

E X H I B I T S

NO.               DESCRIPTION                        PAGE

(None)

CERTIFIED QUESTIONS:

Page 20, line 1

Page 30, line 21

Page 33, line 13

Page 68, line 17

Page 119, line 6

INFORMATION TO BE PROVIDED:

Page 97, line 18

Page 104, line 7

Page 114, line 6

Page 120, line 3

Page 120, line 15

have, if you do?

A. I don't have it. I'm sorry, I got to clarify that. I withdraw what I said before. Badmand Holdings has an interest.

Q. Okay. Okay. I didn't hear that. I'm sorry.

A. No, I didn't say it, and I apologize.

Q. What was the date of purchase there?

A. I don't know if it was 2009, '10, on one of those dates, October '9 or October '10.

Q. And how much was that purchased for, if you know?

A. 130,000.

Q. All right. Do you know fair market value now, if you do?

A. I don't know.

Q. Okay. Any other property save and except the ones you've testified to so far, Mr. Farahmand?

A. No. I've testified to four.

Q. Yes, sir, you have. In the United States.

A. I think I have one in Vegas, Las Vegas.

Q. Okay.

A. Or through Badmand Holdings and another friend of mine.

Q. What's your friend's name, please?

A. Shaya.

Q. Could you spell it for us?

A. S-H-A-Y-A.

Q. Uh-huh.

A. Ansari, A-N-S-A-R-I.

Q. And what interest -- ownership interest do you have in it, sir?

A. I -- very minor, through a company, third party.

Q. Through Badmand?

A. Yes.

Q. Okay. What was the date of purchase?

A. 2009 or '10 again.

Q. Do you know the fair -- excuse me, strike that.

Do you know the purchase price?

A. I don't remember.

Q. Okay, sir. Do you know the value now, if you do?

A. I don't remember.

Q. Well --

A. I have no idea.

Q. Okay. That's fair.

Any other properties in the United States that you have a interest in of any kind, whether it be use of benefit or ownership?

A. I'm trying to think if the business has bought

Q. What was the purchase price?

A. At that time, I think it was half a million.

Q. It's not a timeshare, is it, sir?

A. No.

Q. Okay. And is it -- is it -- do you rent it out or do you...

A. I don't.

Q. Is it -- who does, if they do?

A. Shaya.

Q. Okay. So he -- Mr. Shaya is your -- I don't want to use the wrong word here -- partner or associate in this property, also?

A. Yes.

Q. Okay.

A. He's a dear friend, like -- like my brother.

Q. Okay. Is there only two of you?

A. Yes.

Q. Could you give me the address of that property, please?

A. Sure.

Q. Thank you.

A. Pedregal, Cabo San Lucas.

Q. And that's residential?

A. Yes.

Q. Down at the good end?

Do you have an interest in a boat?

A. Possibly.

Q. Okay. Could you tell the Court what "maybe" means as far as your interest in a boat?

A. Yes. I don't know if my partner has sold the interest or we still possess it or what happened.

Q. Is this your partner Tom?

A. No, Tom's not my partner.

Q. Okay. Please forgive me, then.

You said partner. I hadn't heard anything about a partner except Shaya -- Shaya -- Shaya.

A. You've never asked, but Shaya's my partner, yes --

Q. Okay.

A. -- in that situation.

Q. Is that the partner in the boat, also?

A. Yes.

Q. Okay. What kind of boat is it, please?

A. I don't know. It's a boat. I have a picture of -- I mean, I have a little model of it.

Q. Have you ever been on it?

A. Yes.

Q. Does it have a outboard or inboard?

A. I don't know. I -- I get seasick. I love fishing but I get seasick.

Location : All Civil & Family Courts   Images  Help

# REGISTER OF ACTIONS
## CASE NO. 417-56531-2013

| In the Matter of the Marriage of Roger Arash Farahmand vs. Maryam Farahmand and in the Interest of ▇▇▇▇▇▇▇▇▇ | § § § § § | Case Type: **Divorce with Children** Date Filed: **12/30/2013** Location: **417th District Court** Case Number History: **401-56531-2013** |
|---|---|---|

---

### PARTY INFORMATION

---

|  |  | **Attorneys** |
|---|---|---|
| Petitioner | Farahmand, Roger Arash *Also Known As* FARAHMAND, ROGER A. | Ike Vanden Eykel *Retained* 214-871-2727(W) |
|  | ▇▇▇▇▇▇▇▇ | Bradford Nace *Retained* 214-459-8289(W) |
|  |  | Rebecca Tillery *Retained* 214-871-2727(W) |
| Respondent | Farahmand, Maryam | Robert S Widner *Retained* 972-979-5700(W) |
|  | ▇▇▇▇▇ | Dawn M. Grams Horak *Retained* 469-644-7442(W) |
|  |  | ~~Pro Se~~ Richard J Corbitt *Retained* 214-744-1234(W) |

---

### EVENTS & ORDERS OF THE COURT

---

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 12/30/2013 | **Original Petition for Divorce (OCA) $289.00** *Emergency(ex parte) request for extraordinary relief, and request for temporary orders* |
| 12/30/2013 | **Request for Citation $8.00** *x1 waiting* |
| 12/30/2013 | **Request for Temporary Restraining Order $8.00** *x1 waiting* |
| 12/30/2013 | **Order** *Temporary Emergency Ex Parte Order and Order Setting Hearing* |
| 12/30/2013 | **Citation** |

| | | | |
|---|---|---|---|
| | Farahmand, Maryam | Served | 01/02/2014 |
| | | Returned | 01/02/2014 |

| 12/30/2013 | **Temporary Restraining Order** |
|---|---|

| | | | |
|---|---|---|---|
| | Farahmand, Maryam | Served | 01/02/2014 |
| | | Returned | 01/02/2014 |

| | |
|---|---|
| 01/10/2014 | **Subpoena Return - Not DC Issued** *Que Le Served 1/9/2014* |
| 01/10/2014 | **Subpoena Return - Not DC Issued** *Beth Cook served 1/9/2014* |
| 01/14/2014 | **Temporary Orders Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| 01/14/2014 | **General Docket Entry** *Matter reset* |
| 01/14/2014 | **Order Extending** *Extension of Temporary Emergency Ex Parte Order and Order Setting Hearing* |
| 01/24/2014 | **Request for Copies $1.00/ pg** |
| 01/24/2014 | **Subpoena Return - Not DC Issued** *Aaron Lilly Served 1/23/2014* |
| 01/27/2014 | **Original Answer** *Respondent's Original Answer* |
| 01/27/2014 | **Counter Petition $50.00** *Original Counter-Petition for Divorce* |
| 01/27/2014 | **Rule 11 Agreement** *Rule 11 Agreement* |



EXHIBIT
**D**

Blumberg No. 5208

| 01/27/2014 | Rule 11 Agreement |
| | *Rule 11 Agreement* |
| 01/28/2014 | CANCELED  Temporary Orders Hearing  (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Reset* |
| 02/04/2014 | Motion |
| | *Maryam Farahmand's Motion for Expedited Hearing for Interim Possession and Access* |
| 02/04/2014 | Notice of Hearing |
| | *Notice of Hearing on Motion for Expedited Hearing for Interim Possession and Access* |
| 02/05/2014 | General Docket Entry |
| | *No action taken by the Court* |
| 02/25/2014 | Affidavit |
| | *Affidavit of Business Records of Hannah's House* |
| 02/26/2014 | Affidavit |
| | *Business Records Affidavit of Hannah's House February* |
| 03/06/2014 | Motion |
| | *Maryam Farahmand's Request to Expand Local 20-Minute Rule for Temporary Orders Hearing* |
| 03/07/2014 | Subpoena Return - Not DC Issued |
| | *Served 3/6/2014 Aslan Ghaffari* |
| 03/07/2014 | Subpoena Return - Not DC Issued |
| | *served 3/6/2014 Farid Rastegar* |
| 03/10/2014 | Temporary Orders Hearing  (9:00 AM) (Judicial Officer Rusch, Mark) |
| 03/10/2014 | General Docket Entry |
| | *Temp Hearing conducted; Ruling dictated; MJR* |
| 03/18/2014 | Notice of Appearance |
| | *Appearance of Co-Counsel and Notice of Change in Lead Counsel* |
| 03/21/2014 | Rule 11 Agreement |
| | *Rule 11 Agreement regarding possession* |
| 03/28/2014 | Petition (Non - OCA) $70.00 |
| | *Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 04/01/2014 | Certificate of Deposition (Bill of Cost Form) |
| | *Maryam Farahmand Reporter Certification* |
| 04/04/2014 | Certificate of Deposition (Bill of Cost Form) |
| | *Roger Farahmand* |
| 04/10/2014 | Certificate of Deposition (Bill of Cost Form) |
| | *Reporters Certification Deposition of Maryam Farahmand March 4, 2014* |
| 04/21/2014 | Certificate |
| | *Certificate of Written Discovery* |
| 04/23/2014 | Service Return |
| | *Return of service on Aslan Ghaffari on Notice of Intent to take Depo.* |
| 04/23/2014 | Letter |
| | *Hearing Date 07/29/2014* |
| 04/24/2014 | Request for Citation $8.00 |
| 04/24/2014 | Request for Notice $8.00 |
| 04/25/2014 | Motion |
| | *Motion for Substitution of Counsel* |
| 04/28/2014 | Citation |
| | Farahmand, Maryam | Served | 05/02/2014 |
| | | Returned | 05/02/2014 |
| 04/28/2014 | Notice |
| | Farahmand, Maryam | Served | 05/02/2014 |
| | | Returned | 05/02/2014 |
| 04/28/2014 | Subpoena Return - Not DC Issued |
| | *Shahrbanoo Khanipour aka Mahnaz Keyani Subpoena served* |
| 05/01/2014 | Designation of |
| | *Designation of Attorney in Charge* |
| 05/02/2014 | Service Return |
| | *Maryam Farahmand Served Notice 05/02/2014* |
| 05/02/2014 | Service Return |
| | *Maryam Farahmand Served Citation 05/02/2014* |
| 05/02/2014 | Agreed Order |
| | *Agreed Scheduling Order* |
| 05/06/2014 | Certificate |
| | *Certificate of Written Discovery* |
| 05/08/2014 | Certificate |
| | *Certificate of Written Discovery* |
| 05/09/2014 | Subpoena Return - Not DC Issued |
| | *Custodian of Records for Syed Shah* |
| 05/09/2014 | Subpoena Return - Not DC Issued |
| | *Custodian of Records for Dr. Michael Scott Woods* |
| 05/09/2014 | Subpoena Return - Not DC Issued |
| | *Custodian of Records for Thomas Janacek served subp 05/09/2014* |
| 05/16/2014 | Petitioner's |
| | *Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness* |
| 05/16/2014 | Service Return |
| | *Notice of intent to issue Subpoena Legacy Apartment Homes Served 05/14/14* |
| 05/19/2014 | Notice of Hearing |
| | *Notice of Hearing on Petitioner's Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-of-State Witness* |
| 05/22/2014 | Original Answer |
| | *Maryam Farahmand's Answer to Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 05/23/2014 | Subpoena Return - Not DC Issued |
| | *Dr Michael Scott Woods* |
| 05/23/2014 | Subpoena Return - Not DC Issued |
| | *CR for Syed Shah served Subpoena 05/22/2014* |
| 05/23/2014 | Subpoena Return - Not DC Issued |

| | Custodian of Records for Thomas Janacek, M.D. |
|---|---|
| 05/23/2014 | **Subpoena Return - Not DC Issued** |
| | Dr Robert Gordon |
| 05/27/2014 | **Motion Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | M/Issuance of Letters Rogatory and Subpoena to Depose Out-of-State Witness |
| 05/27/2014 | **Appearance of Counsel** |
| | Notice of Appearance of Counsel |
| 05/27/2014 | **Response** |
| | Respondent's Response and Objections to Issuance of Letters Rogatory and Subpoena to Depose an Out-of-state Witness |
| 05/27/2014 | **Certificate** |
| | Certificate of Marriage |
| 05/27/2014 | **General Docket Entry** |
| | Letters Rogatory issued |
| 05/27/2014 | **Order** |
| | Order for Issuance of Letter Rogatory and Subpoena to Depose an Out of State Witness |
| 05/29/2014 | **Subpoena Return - Not DC Issued** |
| | Custodian of Records for Post Legacy Apartments served Subpoena 05/28/2014 |
| 05/29/2014 | **Certificate** |
| | Certificate of Written Responses to Discovery |
| 06/03/2014 | **Request for Copies $1.00/ pg** |
| | x10 |
| 06/05/2014 | **Subpoena Return - Not DC Issued** |
| | Custodian of Records for Dr. Thomas Janacek served subpoena 06/04/2014 |
| 06/09/2014 | **Notice of Intention to Take Deposition by Written Questions** |
| | Written Deposition Service transcription of deposition of written questions on Dr. Ghaffari and Bill of Costs |
| 06/09/2014 | **Designation of** |
| | Petitioner's Designation of Expert Witnesses |
| 06/09/2014 | **Motion** |
| | First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses |
| 06/09/2014 | **Affidavit** |
| | Medical Records and Affidavit - Centennial Medical Center of Frisco |
| 06/09/2014 | **Notice** |
| | Notice of Filing Business Records Affidavit and Records - Centennial Medical Center Frisco |
| 06/09/2014 | **Affidavit** |
| | Business Records Affidavit - Post Legacy Apartments |
| 06/09/2014 | **Notice** |
| | Notice of Filing of Business Records Affidavit - Post Legacy Apartments |
| 06/09/2014 | **Notice** |
| | Notice of Business Records and Affidavit Filing - Sayed Shah, M.D. |
| 06/09/2014 | **Affidavit** |
| | Medical Records and Affidavit - Sayed Shah, M.D. |
| 06/09/2014 | **Affidavit** |
| | Medical Records and Affidavit |
| 06/09/2014 | **Designation of** |
| | Respondent's Designation of Expert Witnesses |
| 06/09/2014 | **Certificate** |
| | of Written Discovery |
| 06/09/2014 | **Notice** |
| | Notice of Filing Medical Records and Affidavit |
| 06/10/2014 | **Notice** |
| | Notice of Filing BRA and Records - Dr. Robert Gordon |
| 06/10/2014 | **Affidavit** |
| | Medical Records and Affidavit - Dr. Robert Gordon (UNDER SEAL) |
| 06/10/2014 | **Notice** |
| | Notice of Filing Records and Affidavit |
| 06/10/2014 | **Affidavit** |
| | Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 1 (UNDER SEAL) |
| 06/10/2014 | **Affidavit** |
| | Medical Records and Affidavit - Texas Health Presbyterian Plano Hospital Part 2 (UNDER SEAL) |
| 06/10/2014 | **Notice** |
| | Notice of Filing BRA and Records - Dr. Scott Woods |
| 06/10/2014 | **Affidavit** |
| | Medical Records and Affidavit - Dr. Scott Woods (UNDER SEAL) |
| 06/10/2014 | **Affidavit** |
| | Business Records and Affidavit - Frisco PD |
| 06/10/2014 | **Notice** |
| | Notice of Filing of Records and Affidavit - Frisco PD |
| 06/10/2014 | **Affidavit** |
| | Business Records and Affidavit - Plano PD |
| 06/10/2014 | **Notice** |
| | Notice of Filing BRA and Records - Frisco PD Corrected |
| 06/10/2014 | **Notice** |
| | Notice of Filing of Records and Affidavit - Plano PD |
| 06/10/2014 | **Notice** |
| | Notice of Filing BRA and Records - Arlington PD |
| 06/10/2014 | **Affidavit** |
| | Business Records and Affidavit - Arlington PD |
| 06/10/2014 | **Notice** |
| | Notice of Filing Business Records and Affidavit - Richardson PD |
| 06/10/2014 | **Affidavit** |
| | Business Records and Affidavit - Richardson PD |
| 06/13/2014 | **Amended Motion** |
| | Petitioner's First Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out of State Witness |

| | |
|---|---|
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Deposition Questions Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video Farsi to English* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Video English to Farsi* |
| 06/13/2014 | **Affidavit** |
| | *Foreign Language Translation and Affidavit - Written Questions English to Farsi* |
| 06/13/2014 | **Original Answer** |
| | *Amicus Attorney's Original Answer in Suit Affecting the Parent- Child Relationship* |
| 06/13/2014 | **Designation of** |
| | *Designation of Attorney in Charge* |
| 06/13/2014 | **Notice** |
| | *Petitioner's Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/13/2014 | **Order** |
| | *of Letters Rogaroty and Subpoena for an Out of State Witness Amir Bagherkalantari* |
| 06/16/2014 | **Subpoena Return - Not DC Issued** |
| | *Mary F Wise aka Mariam Farahmand aka Mary Farahmand* |
| 06/16/2014 | **Motion** |
| | *Motion to Sign Temporary Orders* |
| 06/16/2014 | **Notice of Hearing** |
| | *Notice of Hearing on Motion to Sign Temporary Orders* |
| 06/17/2014 | **Notice** |
| | *Notice of Intent to Take Oral and Video Taped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Amended** |
| | *First Amended Notice of Intent to Take Oral and Videotaped Deposition of Taher El-Badawi* |
| 06/17/2014 | **Notice** |
| | *Petitioner's First Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/18/2014 | **Notice of Hearing** |
| | *on Motion to Sign Temporary Orders* |
| 06/18/2014 | **Amended Motion** |
| | *Petitioner's Second Amended Motion for Issuance of Letters Rogatory and Subpoena to Depose an Out-Of-State Witness* |
| 06/18/2014 | **Request for Copies $1.00/ pg** |
| 06/18/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 06/18/2014 | **General Docket Entry** |
| | *order on letters rogatory signed* |
| 06/18/2014 | **Amended Order** |
| | *of Letters Rogatory and Subpoena for an Out-of-State Witness, Amir Bagherkalantari* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Taher El-Badawi PhD subpoena served* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Depostion/Subpoena Duces Tecum for Mary F. Wise and Request for Sanctions* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Deposition/Subpoena Duces Tecum for Jocelyn McGregor and Request for Sanctions* |
| 06/19/2014 | **Motion to Quash** |
| | *Motion to Quash the Subpoena for Witness Deposition/Subpoena Duces Tecum for JT Langford a/k/a Tom Langford and Request for Sanctions* |
| 06/19/2014 | **Notice** |
| | *Petitioner's Second Amended Notice of Intent to Take Oral and Video Taped Deposition of Amir Bagherkalantari* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *JT Langford a/k/a Tom Langford* |
| 06/19/2014 | **Subpoena Return - Not DC Issued** |
| | *Jocelyn McGregor* |
| 06/19/2014 | **Letter** |
| | *Ntc ltr of new time of depo* |
| 06/19/2014 | **Letter** |
| | *Ntc Ltr re new date & time of Depo* |
| 06/19/2014 | **Letter** |
| | *Ntc Ltr of new date & time of Depo* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of Mary Wise and Request for Sanctions* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of Jocelyn McGregor and Request for Sanctions* |
| 06/20/2014 | **Motion to Quash** |
| | *Motion to Quash the Deposition of JT Langford AKA Tom Langford and Request for Sanctions* |
| 06/20/2014 | **Notice of Hearing** |
| | *Notice of Hearing* |
| 06/23/2014 | CANCELED **Motion to Sign** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *Per Attorney* |
| | *TO's* |
| 06/23/2014 | **Letter** |
| | *Progress Report for Maryam Farahmand* |
| 06/24/2014 | **Affidavit** |
| | *Business Records and Affidavit of University of Texas At Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavit of University of Texas at Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Notice of Filing of Records and Affidavits of Dallas Police Department* |
| 06/24/2014 | **Affidavit** |
| | *Business Records and Affidavits of Dallas Police Department* |
| 06/24/2014 | **Notice** |
| | *Second Notice of Filing of Records and Affidavit of the Frisco Police Department* |
| 06/24/2014 | **Affidavit** |
| | *Second Business Records and Affidavit of Frisco Police Department* |

| | |
|---|---|
| 06/27/2014 | **Motion** |
| | *Respondent's Motion for Protective Order Due to Written Objection to Depositions Seeking Affirmative Relief* |
| 06/27/2014 | **Notice of Hearing** |
| 06/27/2014 | **Amended Answer** |
| | *Petitioner's First Supplemental and Amended Answer to Petitioner's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce* |
| 06/27/2014 | **Amended Answer** |
| | *Maryam Farahmand's First Amended Answer to Original Petition to Declare Marriage Void* |
| 06/27/2014 | **Certificate** |
| | *Respondent's Certificate of Written Discovery* |
| 06/27/2014 | **Amended Petition** |
| | *First Amended Petition to Declare Marriage Void and in the Alternative Second Amended Petition for Divorce* |
| 06/30/2014 | **Certificate** |
| | *Certificate of Written Discovery* |
| 06/30/2014 | **Supplemental** |
| | *Respondent's First Supplemental and Amended Counter-Petition for Divorce* |
| 07/01/2014 | **Subpoena Return - Not DC Issued** |
| | *Shamsi Damavandi served subpoena 07/01/2014* |
| 07/02/2014 | **Motion** |
| | *Respondent's Motion for Protective Order Due to Objection to Depositions* |
| 07/08/2014 | **Administrative Order** |
| | *Administrative Order of Assignment (transferring case to the 417th)* |
| 07/09/2014 | **Letter** |
| | *Letter regarding Transfer to 417th and status of case* |
| 07/29/2014 | **Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |
| | *on Petiton to void* |
| 07/29/2014 | **Motion To Compel** (9:00 AM) (Judicial Officer Rusch, Mark) |
| 07/29/2014 | **Protective Order Hearing** (9:00 AM) (Judicial Officer Rusch, Mark) |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | **Minor Child** ███████████████ | | | |
| | Total Financial Assessment | | | 2.00 |
| | Total Payments and Credits | | | 2.00 |
| | **Balance Due as of 07/09/2014** | | | **0.00** |
| 06/13/2014 | Transaction Assessment | | | 2.00 |
| 06/13/2014 | Payment | Receipt # DC-47305-2014 | ████████████████ | (2.00) |

| | | | | |
|---|---|---|---|---|
| | **Petitioner** Farahmand, Roger Arash | | | |
| | Total Financial Assessment | | | 556.00 |
| | Total Payments and Credits | | | 556.00 |
| | **Balance Due as of 07/09/2014** | | | **0.00** |
| 12/30/2013 | Transaction Assessment | | | 284.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Transaction Assessment | | | 8.00 |
| 12/30/2013 | Payment | Receipt # DC-63819-2013 | FARAHMAND, ROGER A. | (300.00) |
| 03/18/2014 | Transaction Assessment | | | 2.00 |
| 03/18/2014 | Payment | Receipt # DC-19892-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/21/2014 | Transaction Assessment | | | 2.00 |
| 03/21/2014 | Payment | Receipt # DC-21274-2014 | FARAHMAND, ROGER A. | (2.00) |
| 03/28/2014 | Transaction Assessment | | | 72.00 |
| 03/28/2014 | Payment | Receipt # DC-23643-2014 | FARAHMAND, ROGER A. | (72.00) |
| 04/01/2014 | Transaction Assessment | | | 2.00 |
| 04/01/2014 | Payment | Receipt # DC-24382-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/04/2014 | Transaction Assessment | | | 2.00 |
| 04/04/2014 | Payment | Receipt # DC-25524-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/10/2014 | Transaction Assessment | | | 2.00 |
| 04/10/2014 | Payment | Receipt # DC-26831-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/17/2014 | Transaction Assessment | | | 2.00 |
| 04/17/2014 | Payment | Receipt # DC-29154-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/21/2014 | Transaction Assessment | | | 2.00 |
| 04/21/2014 | Payment | Receipt # DC-29986-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30921-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/23/2014 | Transaction Assessment | | | 2.00 |
| 04/23/2014 | Payment | Receipt # DC-30945-2014 | FARAHMAND, ROGER A. | (2.00) |
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Transaction Assessment | | | 8.00 |
| 04/24/2014 | Payment | Receipt # DC-31124-2014 | Gary Sherman | (16.00) |
| 04/28/2014 | Transaction Assessment | | | 2.00 |
| 04/28/2014 | Payment | Receipt # DC-32057-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33663-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/02/2014 | Transaction Assessment | | | 2.00 |
| 05/02/2014 | Payment | Receipt # DC-33664-2014 | FARAHMAND, ROGER A. | (2.00) |
| 05/06/2014 | Transaction Assessment | | | 2.00 |
| 05/06/2014 | Payment | Receipt # DC-34317-2014 | FARAHMAND, ROGER A. | (2.00) |

Filed: 5/27/2014 9:51:59 AM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Wendy Hinojosa Deputy
Envelope ID: 1361640

## NO. <u>401-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| ROGER ARASH FARAHMAND AND MARYAM FARAHMAND | § § § § § | 401ST JUDICIAL DISTRICT |
| AND IN THE INTEREST OF ███████████ ███████ A MINOR CHILD | § § § § § | COLLIN COUNTY, TEXAS |

# CERTIFICATE OF MARRIAGE

Respectfully submitted,

*/s/ Ike Vanden Eykel*

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201



Page 1 of 2

(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

## CERTIFICATE OF SERVICE

I certify that on May 27, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address _or_ by other means set forth in accordance with Rule 21a of the _Texas Rules of Civil Procedure_:

Robert S. Widner
The Widner Family Law Group, PLLC
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
robertwidner@gmail.com
972.692.8951 (fax)

_/s/ Ike Vanden Eykel_
**IKE VANDEN EYKEL**
Attorney for Petitioner

Page 2 of 2



# The STATE OF TEXAS
## Marriage License
### COUNTY OF

**COLLIN**

*To Any Person Authorized by the Laws of the State of Texas
To Celebrate The Rites of Matrimony in the State of Texas.*

## GREETING:
## YOU ARE HEREBY AUTHORIZED TO SOLEMNIZE THE



## RITES OF MATRIMONY

*Between*
AMIR BAGHERKALANTARI
*and*
MARYAM PARVIZ KHYAVI

*and make due return to the Clerk of the County Court of said County within
Thirty days thereafter, certifying your action under this license.*

*Witness my official signature and seal of office
At office in McKinney, Texas, this,
the 4th day of December 2009*

*Stacey Kemp, County Clerk
Collin County, Texas
By* Patricia Crowthir *Deputy*

---

*I hereby certify that on the* 12 th *day of* December 2009.
*At* 4 *O'Clock* p *M. I united in Marriage the parties above named.*

*Witness my hand this* 12 th *day of* December 2009.

A. Ghaffarie
Signature of Person performing Ceremony

ASLAN GHAFFARI
Typed or printed name of person performing ceremony

*Marriage performed in*

P.H.D in economy Title of person performing ceremony

Collin *County* 1633 Piedmont Pl. Carrollton, Texas - Address of person performing ceremony

*Returned and filed for record the _____ day of _____, _____,
and recorded the _____ day of _____, _____ in the
In Document Number* *Marriage License Record of Collin County
Stacey Kemp, County Clerk
By _____ Deputy*

# Marriage License

AMIR BAGHERKALANTARI

and

MARYAM PARVIZ KHYAVI

Issued the 4th day of December 2009

at 3:28 PM

Stacey Kemp, County Clerk

By _Patricia Crouch_ Deputy

Returned and Filed for

Record the ____ day

of _____. ____

Stacey Kemp, County Clerk

By _____ Deputy

## Groom

Birthday: 07/05/1981

Place of Birth: Tehran, IRAN

## Bride

Birthday: 11/27/1980

Place of Birth: Tehran, IRAN

Section 2.204 of the Family Code

This license cannot be used prior to:

12/07/2009 3:28 PM

Section 2.201 of the Family Code

Must be used before:

01/04/2010

Section 2.202 of the Family Code

Persons authorized to conduct ceremony.

Printed material distributed as required by Section 2.009 of the Family Code.

## Return License To

MARYAM PARVIZ KHYAVI

15025 FARMCOTE DR

RICHARDSON, TX 75080

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

_A. Ghaffari_

_____
Signature of Witness

_____
Signature of First Party

ASLAN   GHAFFARI

_____
Print name of Witness

_____
Print name of First Party

_____
Signature of Witness

_____
Signature of First Party

_____
Print name of Witness

_____
Print name of First Party

State of  TEXAS  }
County of  DENTON  }
On  SEPT  16, 2005   before me,  KELLY   WILSON                            ,
appeared  ASLAN  GHAFFARI
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

_____
Signature of Notary

> **KELLY WILSON**
> NOTARY PUBLIC STATE OF TEXAS
> COMMISSION EXPIRES
> **MAY 29, 2007**

Affiant _____Known__ X Produced ID
Type of ID  TXDL# 09990271
                                              (Seal)

State of  }
County of  }
On                before me,                                             ,
appeared
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

_____
Signature of Notary

Aslan   Ghaffari
1633  Piedmont Place
Carrollton, Texas
               75007

Affiant _____Known_____Produced ID
Type of ID _____
                                              (Seal)

_____
Signature of Preparer

_____
Print Name of Preparer

_____
Address of Preparer

Page 2

EXHIBIT
**F**

it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

This instrument was prepared based on information furnished by the parties, and no independent title search has been made.

_A. Ghaffari_
Aslan Ghaffari

STATE OF TEXAS )

COUNTY OF DALLAS )

This instrument was acknowledged before me on January 16, 2009, by Aslan Ghaffari.

BRIDGETTE M. AVILA
MY COMMISSION EXPIRES
February 26, 2011

_Bridgette M. Avila_
Notary Public, State of Texas

General Warranty Deed, Page 2

Doc-163

current year have been prorated and are assumed by Grantee. This conveyance is made and accepted subject to any and all validly existing restrictions, mineral reservations and interests, conditions, covenants, easements, and rights of way, if any, applicable to and enforceable against the above described property as now reflected by the records of the County Clerk in said County and State and to any applicable zoning laws or ordinances.

But it is expressly agreed and stipulated that the Vendor's Lien and the Superior Title are retained and reserved in favor of the payee in said note against the above described property, premises and improvements, until said note, and all interest thereon is fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

When this deed is executed by one person, or when the Grantee is one person, the instrument shall read as though pertinent verbs and pronouns were changed to correspond, and when executed by or to a corporation the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "Successors and assigns".

Dated this the      29th day of      December, 2011

_M. Ghaffari_
MAHIN GHAFFARI

_A. Ghaffari_
ASLAN GHAFFARI

THE STATE OF TEXAS
COUNTY OF _Denton_

This instrument was acknowledged before me on _12-29-11_, by _Mahin Ghaffari and Aslan Ghaffari._

SANDRA J. LANKOW
Notary Public
State of Texas
Comm. Expires 07-01-2015

Notary Public, State of Texas

THE STATE OF _____

COUNTY OF _____

This instrument was acknowledged before me on _____, by _____
_____ of _____
on behalf of said corporation.

Notary Public, State of _____

RETURN TO:
HUSSAIN RAJANI
1633 PIEDMONT PLACE
CARROLLTON, TX 75007

Page 2 of 2

PB554-2.100

# ROGER FARAHMAND'S
# RECORD TAB 16

Filed: 7/31/2014 5:51:06 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Carla Mahan Deputy
Envelope ID: 2014948

*THIS DOCUMENT CONTAINS SENSITIVE DATA.*

## NO. <u>417-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID<br>THE MARRIAGE OF | § <br> § <br> § | IN THE DISTRICT COURT |
| ROGER ARASH FARAHMAND<br>AND<br>MARYAM FARAHMAND | § <br> § <br> § | 417TH JUDICIAL DISTRICT |
| AND IN THE INTEREST OF<br>▮., A CHILD | § <br> § <br> § | COLLIN COUNTY, TEXAS |

417TH JUDICIAL DISTRICT

## PETITIONER'S SPECIAL EXCEPTIONS AND MOTION TO STRIKE RESPONDENT'S "FIRST MOTION TO COMPEL, MOTION FOR SANCTIONS FOR EGREGIOUS CONDUCT BY A LICENSED ATTORNEY AND HIS CLIENT PARTY AND MOTION FOR INTERIM ATTORNEY FEES AND EXPENSES"

Petitioner, Roger A. Farahmand, specially excepts to Respondent, Maryam Farahmand's "First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses" and asks the Court to order Respondent to replead and cure her pleading defects, and if Respondent fails to cure her pleading defects, Petitioner asks the Court to enter an order striking Respondent's pleading.

### SPECIAL EXCEPTIONS

Petitioner specially excepts to Respondent's "First Motion to Compel, Motion for Sanctions for Egregious Conduct by a Licensed Attorney and His Client Party and Motion for Interim Attorney Fees and Expenses" because it

contains personal, private and inflammatory allegations and statements, and evidentiary "facts," all of which is inappropriate and in violation of the Texas Family Code's prohibition of the inclusion of evidentiary facts within pleadings. Texas Family Code § 6.402(c) states, "The court shall strike an allegation of evidentiary fact from the pleadings on the motion of a party or on the court's own motion."

The portions of Respondent's pleading to which Petitioner specially excepts are too voluminous to include in the body of this motion. For the Court's ease of review, a true and correct copy of Respondent's pleading has been attached to this Motion as Exhibit A. The portions Petitioner believes are inappropriate and in violation of Texas Family Code § 6.402(c) have been redacted by Petitioner, and Petitioner requests that the Court order Respondent to cure said pleading defects by a time and date certain

## MOTION TO STRIKE

If Respondent fails to cure her pleading defects by a time and date certain, Petitioner asks the Court to strike the portions of Respondent's pleading that are inappropriate, as reflected in Exhibit A.

## ATTORNEY'S FEES

Due to Respondent's filing of a pleading in violation of the Texas Family Code, it was necessary for Petitioner to secure the services of the below attorneys

to prepare and prosecute this Motion. Judgment for attorney's fees, expenses, and costs for the preparation of this Motion should be granted against Respondent and in favor of Petitioner for the use and benefit of Petitioner's attorneys and should be paid directly to Petitioner's attorneys, who may enforce the judgment in the attorneys' own names. Petitioner requests post-judgment interest as allowed by law.

## PRAYER

For these reasons, Petitioner asks the Court to grant his Special Exceptions and Motion to Strike, award attorney's fees, and grant him any further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ Rebecca Tillery*

---

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax

-and-

**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201
(214) 459-8289
(214) 242-4333 Fax


Attorneys for Roger Arash
Farahmand

## CERTIFICATE OF CONFERENCE

Counsel for Petitioner communicated with Counsel for Respondent concerning the merits of this motion. Counsel for Petitioner and Counsel for Respondent were unable to reach an agreement concerning the matters raised by this motion.

*/s/ Rebecca Tillery*

_____

Rebecca Tillery

## CERTIFICATE OF SERVICE

I certify that on July 31, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address _or_ by other means set forth in accordance with Rule 21a of the _Texas Rules of Civil Procedure_:

Robert S. Widner
The Widner Family Law Group, PLLC
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
robertwidner@gmail.com

Dawn M. Grams Horak
Dawn M. Grams, P.C.
P.O. Box 924
Grapevine, Texas 76099
dgrams@msn.com
214-572-6893 (fax)

Diana L. Porter
Diana L. Porter, P.C.
103 E. Virginia Street, Suite 201
McKinney, Texas 75069
dporter@collincountydivorce.com

_/s/ Rebecca Tillery_
**REBECCA TILLERY**
Attorney for Petitioner

Filed: 6/9/2014 3:10:16 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Mindi Johns Deputy
Envelope ID: 1485473

THIS DOCUMENT CONTAINS SENSITIVE DATA.

## NO. 401-56531-2013

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 401ST JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| M.J.F., A CHILD | § | COLLIN COUNTY, TEXAS |
| | § | |

### FIRST MOTION TO COMPEL, MOTION FOR SANCTIONS ~~FOR EGREGIOUS CONDUCT BY A LICENSED ATTORNEY AND HIS CLIENT PARTY~~ AND MOTION FOR INTERIM ATTORNEY FEES AND EXPENSES

This First Motion to Compel, Motion for Sanctions ~~for Egregious Conduct by a Licensed Attorney/Party~~ and Motion for Interim Attorney Fees and Expenses is brought by MARYAM FARAHMAND and served on ROGER ARASH FARAHMAND.

### ~~I.   SUMMARY OF MOTION~~

1. ~~Roger Arash Farahmand is Petitioner and a Licensed Attorney in the State of Texas, except for the period his license was suspended.[1]~~

2. ~~Mr. Farahmand has participated in conduct of harassing and intimidating behavior which has substantially raised the cost of litigation, by failing to answer~~

---

[1]



EXHIBIT

Page 6 of 21

questions in a court hearing, then failing to answer 58 questions during his deposition, hiring two alleged private investigators (including one who falsely asserts they are a private investigator but is not, to "frisk" the baby at the end of visitations at Hannah's House and another private investigator to falsely assert to Hannah's House that they were hired by Maryam Farahmand) taking the intimidation to court ordered visitation and involving the 10 month old child and Hannah's House which is shocking and unacceptable.

3. ROGER ARASH FARAHMAND filed a lawsuit against MARYAM FARAHMAND's mother on January 27, 2014 to harass and intimidate in the 366th Judicial District Court of Collin County.

4. Even more egregious, Respondent has had $20,000.00 of her attorney fees wasted on a deposition where Mr. Farahmand purposely tried to evade answering over 100 QUESTIONS playing "dumb" to such challenging questions as how much do you pay your nanny and how much money do you make, and wasting the cost of the deposition, time of the deposition, and the attorney fees answering no questions about assets and producing no documents about assets after the judge told him

"But Mr. Nace, explain to your very brilliant tax attorney client that I'm going to want to know where every penny in his estate is, whether it's his separate property, whether it's community property, whether it's in a family trust or some other kind of business entity, whether it's

2 | P a g e

*structured or not, every account, every stock, every bond, every spec of dirt, every vehicle, everything." (Page 82 of the Ruling dated March 10, 2014).*

5. ~~Petitioner has caused former counsel to expend over $20,000.00 using these delay tactics and Respondent has had to hire a new law firm to protect her interest.~~

~~5. After not cooperating in his deposition or at the court hearing and providing responsive answers, he has hired the law firm of Koons Fuller and four additional lawyers Rebecca Tillery, Ike Vanden Eykel, Regan Vernon, Lindsey Vanden Eykel hoping this protects his egregious and non-cooperative conduct, retaining his original lawyer, and now is trying to take the Respondent on a wild goose chase to Los Angeles to conduct one deposition.~~

## II. FAILURE TO ANSWER QUESTIONS IN HIS DEPOSITION

The deposition of ROGER A. FARAHMAND was taken on March 4, 2014. Roger Farahmand ~~was untruthful and~~ failed to answer over 58 questions by claiming he "doesn't know" ~~and in abusive pattern of delay and to frustrate justice.~~

11. ROGER A. FARAHMAND claims to "not know" what his current caseload is as a lawyer.[2]

12. ROGER A. FARAHMAND claims he has stocks but "doesn't know" what

---

[2] Roger Farahmand Dep. 25:5-16

3 | P a g e

they are.[3]

13.     ROGER A. FARAHMAND claims he "doesn't know" what the value of his mutual funds are.[4]

14.     ROGER A. FARAHMAND answers he "doesn't know" what the profits were for his Law Firm in 2013.[5]

15.     ROGER A. FARAHMAND claims he ~~"doesn't know" how much money he put into the mutual funds.~~[6]

16.     ROGER A. FARAHMAND claims he ~~"doesn't know" what he pays the Nanny he hired to take care of his son.~~[7]

17.     ROGER A. FARAHMAND answers he had "zero profits" for his Law Firm in 2012.[8]

18.     ~~ROGER A. FARAHMAND is unclear and claims he "doesn't know" if he's done business with a federally-indicted individual, Borna Faizy, who ROGER A. FARAHMAND claims to be a friend.~~[9]

19.     ~~ROGER A. FARAHMAND nonresponsive and refuses to answer if he takes a salary from his law firm.~~[10]

---

[3] Roger Farahmand Dep. 119:15-16
[4] Roger Farahmand Dep. 120:5-6
[5] Roger Farahmand Dep. 27:9-10
[6] Roger Farahmand Dep. 120:11-12
[7] Roger Farahmand Dep. 81:15-16
[8] Roger Farahmand Dep. 26:23-24
[9] Roger Farahmand Dep. 90:12-13
[10] Roger Farahmand Dep. 28:20-25

4 | P a g e

20. ~~ROGER A. FARAHMAND says he "doesn't remember" if he took a salary from his Law firm in 2013.~~[11]

21. ROGER A. FARAHMAND claims Ms. Farahmand helped him in his Law firm but claims he "doesn't know" when.[12]

22. ROGER A. FARAHMAND says that he is able to pay for daily expenses including his son's because he has "done well in the past" ~~but is nonresponsive as to where that money presently comes from.~~[13]

23. ROGER A. FARAHMAND is nonresponsive about questions pertaining to ~~the rejection of~~ his application to the California State bar ~~by their moral character committee.~~[14]

24. ROGER A. FARAHMAND claims he "doesn't know" if his net worth is $1 million, $2 million, or $3 million or more.[15]

25. ROGER A. FARAHMAND claims that he clients in the state of California. ~~However, according to the California State bar he is not licensed to practice law in the state of California.~~[16]

26. ROGER A. FARAHMAND claims he does NOT practice in the area of immigration. ~~However, according to the State Bar of Texas, Immigration is one of~~

---

[11] Roger Farahmand Dep. 28:20-25
[12] Roger Farahmand Dep. 31:12-24
[13] Roger Farahmand Dep. 79:9-15
[14] Roger Farahmand Dep. 13:3-20 18:1-25 19:1-25 20:1-20
[15] Roger Farahmand Dep. 79:16-24
[16] Roger Farahmand Dep. 26:16-20

~~the 3 areas he practices.~~[17]

27.     ROGER A. FARAHMAND claims he "~~doesn't know~~" how long he was married to his ex-wife.[18]

28.     ROGER A. FARAHMAND claims he "~~doesn't know~~" what his annual profit was for 2012.[19]

29.     ROGER A. FARAHMAND claims he "~~doesn't know~~" what his annual profit is for 2013.[20]

30.     ROGER A. FARAHMAND is asked about his company, Interhealth, Inc. He claims he "~~doesn't know~~" what his position is in that business.[21]

31.     ROGER A. FARAHMAND claims he did take money from Interhealth, Inc. but "doesn't know" how much money he took.[22]

32.     ROGER A. FARAHMAND claims he is the general manager of Interhealth, Inc. but says he "~~doesn't know~~" whether or not there are any other directors or members.[23]

33.     ~~ROGER A. FARAHMAND is a member of the company Enterhealth Online, LLC. The business address is listed as Roger's Law firm according to the Texas Secretary of state records.~~ Yet when asked what his position is he answers "I don't

[17] Roger Farahmand Dep. 8:22-24
[18] Roger Farahmand Dep.21:25-22:1
[19] Roger Farahmand Dep. 26:23-25 27:1-10
[20] Roger Farahmand Dep. 27:14-15
[21] Roger Farahmand Dep. 32:22-25 33:1-5
[22] Roger Farahmand Dep. 37:12-19
[23] Roger Farahmand Dep. 39:3-5

6 | P a g e

know".[24]

34. ROGER A. FARAHMAND is asked if there is any document or instrument showing what his position is with Enterhealth online, LLC. He answers "I don't know".[25]

35. ROGER A. FARAHMAND says he "doesn't know" if he has any ownership interest in Enterhealth Online, LLC.[26]

36. ROGER A. FARAHMAND claims he "doesn't know" when he got involved with Enterhealth Online, LLC.[27]

37. ROGER A. FARAHMAND claims he "doesn't know" what Enterhealth Online, LLC does.[28]

38. ~~ROGER A. FARAHMAND "doesn't know" what Enterhealth Online did when he was current with company.~~[29]

39. ROGER A. FARAHMAND ~~is listed as a manager/ officer of the company CSI Staffing, LLC but~~ claims he "doesn't know" what it does or who its members are.[30]

40. ROGER A. FARAHMAND claims that he "doesn't know" if he had any

[24] Roger Farahmand Dep. 40:7-8
[25] Roger Farahmand Dep. 40-9-12
[26] Roger Farahmand Dep. 40:13-15
[27] Roger Farahmand Dep. 40:16-17
[28] Roger Farahmand Dep. 40:18-20
[29] Roger Farahmand Dep. 41:16-27
[30] Roger Farahmand Dep. 44:9-11

income or revenue from his company, Globalhealth Inc. in 2012, 2013 & 2014.[31]

41.    ROGER A. FARAHMAND claims he "doesn't know" if he is familiar with Principle Health management Inc. ~~according to the Texas Secretary of State records he is an officer and the President.~~[32]

42.    ROGER A. FARAHMAND is ~~listed as a director for Interhealth Staffing, Inc. according to the Texas Secretary of State records. However,~~ he claims he is unsure if he ran the business or not and "doesn't know" if he has any ownership in it.[33]

43.    ROGER A. FARAHMAND ~~is listed as the President of Progressive Healthcare Management, Inc. according to the Texas Secretary of State records.~~ He claims he "doesn't know" if he's familiar with it or not.[34]

44.    ROGER A. FARAHMAND ~~is listed as the President of Olympia Healthcare, Inc. according to the Texas Secretary of State records. He~~ claims he doesn't hold any position for that company nor does he have an ownership interest.[35]

45.    ROGER A. FARAHMAND claims he received money or income for the Renner Pharmacy in 2013 but "doesn't know" how much.[36]

46.    ROGER A. FARAHMAND claims he might have taken $5000 from the Renner Pharmacy on a monthly occasion but "doesn't know" when or how many

---

[31] Roger Farahmand Dep. 46:19-23 47:7-8
[32] Roger Farahmand Dep. 51:18-20 51:18-25 52:1-7
[33] Roger Farahmand Dep. 51:6-8
[34] Roger Farahmand Dep. 52:10-13
[35] Roger Farahmand Dep. 53:3-11
[36] Roger Farahmand Dep. 57:6-10

times.[37]

47.     ROGER A. FARAHMAND claims he "doesn't know" if the money he took from the Renner Pharmacy is going to be reflected in him tax returns.[38]

48.     ROGER A. FARAHMAND claims he "doesn't know" if Ms. Farahmand was ever the President of the Renner Pharmacy. [39]

49.     ROGER A. FARAHMAND claims that he might have had an indirectly been involved in removing Ms. Farahmand's name as the President of the Renner Pharmacy at the Chase Bank. However, he claims he "doesn't know" if it was after or before the divorce.[40]

50.     ~~ROGER A. FARAHMAND is unsure if the Nanny he hired to take care of his son speaks English.~~[41]

51.     ~~ROGER A. FARAHMAND claims he has property in Mammoth Lakes, California but "doesn't know" how much was paid for it.~~[42]

52.     ROGER A. FARAHMAND claims he has property in Las Vegas, Nevada but "doesn't remember" how much was paid for it.[43]

53.     ~~ROGER A. FARAHMAND claims he's "not sure" how much payment he~~

---

[37] Roger Farahmand Dep. 57:16-23
[38] Roger Farahmand Dep. 57:24-25 58:1
[39] Roger Farahmand Dep. 62:8-11
[40] Roger Farahmand Dep. 63:1-25 64:1-25 65:1-15
[41] Roger Farahmand Dep. 81:23-24
[42] Roger Farahmand Dep. 96:1-7
[43] Roger Farahmand Dep. 103:13-21

9 | P a g e

~~makes on the 3 BMW payments.~~[44]

54.     ROGER A. FARAHMAND claims at first that he is unsure if he owns a boat.[45]

55.     ROGER A. FARAHMAND then claims that he "doesn't know" if his partner, Shaya Ansari who ROGER A. FARAHMAND claims to be like a brother to him, has sold ROGER A. FARAHMAND's share for the boat.[46]

56.     ROGER A. FARAHMAND claims he "doesn't know" what kind of boat it is that he has an interest it, but he says he has been on it.[47]

57.     ROGER A. FARAHMAND claims he "doesn't know" what the purchase price of the boat ~~he has an interest in was.~~[48]

58.     ROGER A. FARAHMAND is unclear about the date of purchase of the boat.[49]

59.     ROGER A. FARAHMAND initially claims he "doesn't know" how much he has in his Farmer's Merchant bank account. Then he estimates it to be negative $1.8 million.[50]

60.     ~~ROGER A. FARAHMAND claims that he doesn't know how much he has in his bank account in China.~~[51]

---

[44] Roger Farahmand Dep. 107:9-16
[45] Roger Farahmand Dep. 108:22-25 109:1-2
[46] Roger Farahmand Dep. 109:3-6
[47] Roger Farahmand Dep. 109:18-19
[48] Roger Farahmand Dep. 110:12-13
[49] Roger Farahmand Dep. 110:14-16
[50] Roger Farahmand Dep. 110:11-17
[51] Roger Farahmand Dep. 112:24-25 113:1-10

61.    ROGER A. FARAHMAND is unsure how much he has in his Compass bank account.[52]

62.    ROGER A. FARAHMAND claims he "doesn't know" what a money market is, even though he is a tax attorney.[53]

63.    ~~ROGER A. FARAHMAND claims he "doesn't know" what the value of the jewelry he owns is.~~[54]

64.    ~~ROGER A. FARAHMAND answers "I don't know" when asked if he made any insurance claims regarding stolen rugs within the last 3 years.~~[55]

65.    ROGER A. FARAHMAND claims he "doesn't know" what time he cancelled the flight we were supposed to catch to go to Florida on Dec 28, 2013 ~~before he kidnapped the baby.~~[56]

66.    ROGER A. FARAHMAND claimed that he had "30" recording of Mrs. Farahmand that he would provide as a part of discovery. ~~However he has only turned over 4.~~[57]

67.    ROGER A. FARAHMAND answered "I don't know" when asked how much cash he has in the primary residence.[58]

---

[52] Roger Farahmand Dep. 113:11-15
[53] Roger Farahmand Dep. 120:17-18
[54] Roger Farahmand Dep. 120:24-25 121:1-6

[55] Roger Farahmand Dep. 129:17-18
[56] Roger Farahmand Dep. 163:3-4
[57] Roger Farahmand Dep. 170:15-21
[58] Roger Farahmand Dep. 185:10-12

11 | P a g e

68. ~~ROGER A. FARAHMAND is unsure and nonresponsive about taking a percentage of the money brought in by another lawyer at the Farahmand Law Firm.[59]~~

69. ~~ROGER A. FARAHMAND is nonresponsive when asked if he receives an income from a company he owns, Badmand Holding.[60]~~

Discovery of all non-privileged information is permitted if relevant to the subject of the lawsuit including, but not limited to, inadmissible evidence, so long as the request is reasonably calculated to lead to the discovery of admissible evidence.[61] In addition, a party may obtain discovery of the existence and contents of documents and tangible things "that constitute or contain matters relevant to the subject matter of the action."[62] The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial."[63]

### ~~III. HIRING OF TWO PRIVATE INVESTIGATORS TO HARRASS~~

*~~Private Investigator - Duane Kreuger~~*

70. ~~(MARYAM FARAHMAND) was informed on April 27, 2014 by Mrs. Betty Stone, the director of Hannah's House that a private investigator by the name of Duane Kreuger showed up that week and claimed that he was hired by MARYAM~~

---

[59] Roger Farahmand Dep. 72:14-20
[60] Roger Farahmand Dep. 89:3-9
[61] Tex. R. Civ. P. 192.3(a).
[62] Tex. R. Civ. P. 192.3(b).
[63] *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 553 (Tex. 1990).

FARAHMAND to come check the Hannah's house facility. Mrs. Stone asked Mr. Kreuger about who hired him and he said "it was the mom" (MARYAM FARAHMAND) and "she's trying to throw you guys under the bus". Mr. Krueger has committed what is called "pretexting", acting like you are someone you are not or working for someone that has never hired you.

*Tiffany Allison*

71. Ms. Tiffany Allison started following MARYAM FARAHMAND and her parents on when visitations took place at MARYAM FARAHMAND's parent's home in March. At the start of each visitation she would follow them to their home and stay in the alley area of their home. As MARYAM FARAHMAND and her parents came out of their garage to take ███████ back, she would be waiting in the alley and follow them to the switch out site (Plano Police/Library on Independence Rd. & Micarta). There was a police report filed by MARYAM FARAHMAND's parents re: their concern about Ms. Allison following them. Ms. Allison reported to the police that she is a Private Investigator hired by Roger Farahmand but this is a lie, she is not a licensed investigator in the State of Texas. Roger Farahmand also presented himself to the Police officer re: Ms. Allison being a PI he hired. Also when directly asked by MARYAM FARAHMAND's mother, she claimed she was a Private investigator. However, she is NOT a registered PI. This person is "frisking" the baby, tormenting a ten month old child at the end of every visit in an

attempt to intimate the mother.

*Relief Requested*

Respondent is asking for sanctions/and or reimbursement for the first $20,000.00 in lawyer's fees she has expended;

Asking for $30,000.00 in interim attorney fees to be on an equal level from the "dream team" of lawyers and new lawyers he has added;

Award expenses of $1500.00 to attend the deposition in Los Angeles;

Requesting sanctions for $1,500.00 to pay for a new deposition of Mr. Farahmand (for both court reporter and videographer)

An additional ten hours of deposition time with Mr. Farahmand and an order for him to be compelled to answer questions in his deposition; and

We are also requesting he provide us an inventory within the next 15 days.

Robert S. Widner, of the Widner Family Law Group, 2911 Turtle Creek Blvd., Ste. 405, Dallas, TX, 75219, (469) 563-4800, (972) 692-8951, and State Bar number 00792092 has been employed to represent MARYAM FARAHMAND along with Dawn Horak, who is *Of Counsel* with the Widner Family Law Group. Respondent requests that sanctions, attorney fees and deposition costs be paid to the law firm by a date certain.

Respondent MARYAM FARAHMAND prays that the Court grant this motion.

14 | P a g e

Respectfully submitted,

The Widner Family Law Group
2911 Turtle Creek Blvd., Suite 405
Dallas, TX 75219
Tel: (972) 979-5700
Fax: (972) 692-8951


/s/ Robert S. Widner

By:_____

Robert S. Widner
State Bar No. 00792092
Dawn M. Grams Horak, of Counsel
State Bar No. 24036667
Shanin Turner
State Bar No. 24088559
E-Mail: robertwidner@gmail.com
Attorneys          for          MARYAM
FARAHMAND


## Certificate of Conference

I certify that a reasonable effort has been made to resolve the discovery

dispute without necessity of court intervention and has failed.

/s/ Robert S. Widner

_____

Robert S. Widner
Attorney for MARYAM FARAHMAND

15 | P a g e

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on June 9, 2014.

/s/ Robert S. Widner

_____

Robert S. Widner
Attorney for MARYAM FARAHMAND

# ROGER FARAHMAND'S
# RECORD TAB 17

Filed: 7/31/2014 5:51:06 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Carla Mahan Deputy
Envelope ID: 2014948

*THIS DOCUMENT CONTAINS SENSITIVE DATA.*

## NO. <u>417-56531-2013</u>

| | | |
|---|---|---|
| A SUIT TO DECLARE VOID | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 417TH JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ███., A CHILD | § | COLLIN COUNTY, TEXAS |

### <u>PETITIONER'S SPECIAL EXCEPTIONS AND MOTION TO STRIKE RESPONDENT'S "FIRST AMENDED ANSWER TO ORIGINAL PETITION TO DECLARE MARRIAGE VOID"</u>

Petitioner, Roger A. Farahmand, specially excepts to Respondent, Maryam Farahmand's "First Amended Answer to Original Petition to Declare Marriage Void" and asks the Court to order Respondent to replead and cure her pleading defects, and if Respondent fails to cure her pleading defects, Petitioner asks the Court to enter an order striking Respondent's pleading.

### SPECIAL EXCEPTIONS

Petitioner specially excepts to Respondent's "First Amended Answer to Original Petition to Declare Marriage Void" because it contains personal, private and inflammatory allegations and statements, and evidentiary "facts," all of which is inappropriate and in violation of the Texas Family Code's prohibition of the inclusion of evidentiary facts within pleadings. Texas Family Code § 6.402(c)

PETITIONER'S SPECIAL EXCEPTIONS AND MOTION TO STRIKE RESPONDENT'S
"FIRST AMENDED ANSWER TO ORIGINAL PETITION TO DECLARE MARRIAGE VOID"

Page 1 of 13<sup>1</sup>

states, "The court shall strike an allegation of evidentiary fact from the pleadings on the motion of a party or on the court's own motion."

The portions of Respondent's pleading to which Petitioner specially excepts are too voluminous to include in the body of this motion. For the Court's ease of review, a true and correct copy of Respondent's pleading has been attached to this Motion as Exhibit A. The portions Petitioner believes are inappropriate and in violation of Texas Family Code § 6.402(c) have been redacted by Petitioner, and Petitioner requests that the Court order Respondent to cure said pleading defects by a time and date certain.

## MOTION TO STRIKE

If Respondent fails to cure her pleading defects by a time and date certain, Petitioner asks the Court to strike the portions of Respondent's pleading that are inappropriate, as reflected in Exhibit A.

## ATTORNEY'S FEES

Due to Respondent's filing of a pleading in violation of the Texas Family Code, it was necessary for Petitioner to secure the services of the below attorneys to prepare and prosecute this Motion. Judgment for attorney's fees, expenses, and costs for the preparation of this Motion should be granted against Respondent and in favor of Petitioner for the use and benefit of Petitioner's attorneys and should be paid directly to Petitioner's attorneys, who may enforce the judgment in the

attorneys' own names. Petitioner requests post-judgment interest as allowed by law.

**PRAYER**

For these reasons, Petitioner asks the Court to grant his Special Exceptions and Motion to Strike, award attorney's fees, and grant him any further relief to which he may be justly entitled.

Respectfully submitted,

*/s/ Rebecca Tillery*

**IKE VANDEN EYKEL**
State Bar No. 20485500
E-mail: ike@koonsfuller.com
**REBECCA TILLERY**
State Bar No. 24060729
E-mail: tillery@koonsfuller.com
**KOONSFULLER**
**A Professional Corporation**
1717 McKinney Avenue, Suite 1500
Dallas, Texas 75202
(214) 871-2727
(214) 871-0196 Fax
         -and-
**Bradford Nace**
State Bar No. 24007726
E-mail: bnace@nacemotley.com
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas 75201
(214) 459-8289
(214) 242-4333 Fax

Attorneys for Roger Arash Farahmand

## CERTIFICATE OF CONFERENCE

Counsel for Petitioner communicated with Counsel for Respondent concerning the merits of this motion. Counsel for Petitioner and Counsel for Respondent were unable to reach an agreement concerning the matters raised by this motion.

*/s/ Rebecca Tillery*

_____

Rebecca Tillery

## CERTIFICATE OF SERVICE

I certify that on July 31, 2014, a true copy of the above was e-served on attorneys of record by transmitting a copy to the EFSP during e-filing for transmission to the designated email address *or* by other means set forth in accordance with Rule 21a of the *Texas Rules of Civil Procedure*:

Robert S. Widner
The Widner Family Law Group, PLLC
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219
robertwidner@gmail.com

Dawn M. Grams Horak
Dawn M. Grams, P.C.
P.O. Box 924
Grapevine, Texas 76099
dgrams@msn.com
214-572-6893 (fax)

Diana L. Porter
Diana L. Porter, P.C.
103 E. Virginia Street, Suite 201
McKinney, Texas 75069
dporter@collincountydivorce.com

*/s/ Rebecca Tillery*

_____

**REBECCA TILLERY**
Attorney for Petitioner

PETITIONER'S SPECIAL EXCEPTIONS AND MOTION TO STRIKE RESPONDENT'S
"FIRST AMENDED ANSWER TO ORIGINAL PETITION TO DECLARE MARRIAGE VOID"

Page 4 of 134

Filed: 6/27/2014 3:27:00 PM
Andrea S. Thompson
District Clerk
Collin County, Texas
By Tina Chandler Deputy
Envelope ID: 1671664

## NO. <u>401-56531-2013</u>

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ROGER ARASH FARAHMAND | § | |
| AND | § | 401ST JUDICIAL DISTRICT |
| MARYAM FARAHMAND | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ████████████████████ | § | COLLIN COUNTY, TEXAS |
| A CHILD | § | |

## <u>MARYAM FARAHMAND'S FIRST AMENDED ANSWER TO ORIGINAL PETITION TO DECLARE MARRIAGE VOID</u>

MARYAM FARAHMAND, Counter-Petitioner, files this Answer to Roger Arash Farahmand's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce.

### 1. *General Denial*

MARYAM FARAHMAND enters a general denial of the claims made in Roger Arash Farahmand's Original Petition to Declare Marriage Void and in the Alternative First Amended Petition for Divorce and all amendments thereto.

### 2. *Defenses*

MARYAM FARAHMAND and ROGER FARAHMAND entered into a legitimate marriage on or about July 28, 2012. MARYAM FARAHMAND was not previously married at the time she entered into the marriage

1



EXHIBIT
A

relationship with ROGER FARAHMAND. Prior to her relationship with ROGER FARAHMAND, MARYAM FARAHMAND and Amir Bagherkalantari had a dating relationship in 2009. Contrary to ROGER FARAHMAND's claim:

A. No Prior Marriage

1. Although a marriage license was issued to Maryam Farahmand and Amir Bagherkalantari in December of 2009, Maryam Farahmand and Amir Bagherkalantari did not get married to each other (formally or informally) within 31 days after the issuance of the license on December 12, 2009. Thus, the marriage license expired pursuant to Section 2.201 of the Texas Family Code (issued prior to September 1, 2013). Further, no license was filed with the Collin County Clerk at any time after December 12, 2009.

2. A formal wedding ceremony did not occur between Maryam Farahmand and Amir Bagherkalantari. In fact, Maryam Farahmand and Amir Bagherkalantari did not cohabitate for more than two weeks, had a fight on the night of the engagement party, dated sporadically, and ended their dating relationship/engagement completely in August of 2010.

3. Assuming, *arguendo*, that a marriage ceremony had actually occurred on December 12, 2009, the person reflected on the

2

"marriage license" as the person performing the ceremony was identified as P.H.D. (sic) in economics. Pursuant to Section 2.02 of the Texas Family Code, such a person is not authorized to conduct a marriage ceremony in Texas. Any such marriage would be invalid and the person performing the ceremony could be charged with a misdemeanor offense.

B. No Prior Informal/Common Law Marriage

1.     Additionally, should Roger Farahmand attempt to claim an informal marriage between Maryam Farahmand and Amir Bagherkalantari, it has been more than two years since Maryam Farahmand and Amir Bagherkalantari ended their dating relationhip/engagement  and no proceedings were initiated within that two-year time period to prove an "informal marriage". Therefore, it is a rebuttable presumption that Maryam Farahmand and Amir Bagherkalantari did not enter into an agreement to be married pursuant to Section 2.401 of the Texas Family Code. Additionally, neither Maryam Farahmand nor Amir Bagherkalantari are and/or have claimed an informal marriage between them. Therefore, Roger Farahmand would not be a proper party to make an informal marriage claim.

2.     Maryam Farahmand and Amir Bagherkalantari did not intend to have a present, immediate, and permanent marital relationship prior to or at any time after December of 2009, nor did they agree to be husband

3

and wife. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex.App.-Houston [14th Dist.] 2011, pet. Denied). An agreement to be married at some time in the future is insufficient to show that a marriage was "present and immediate". See *Aguilar v. State*, 715 S.W.2d 645, 648(Tex.Crim.App.1986); *Texas Employers' Ins. v. Borum*, 834 S.W.2d 395, 399 n.3 (Tex.App.-San Antonio 1992, writ denied).

3. Maryam Farahmand and Amir Bagherkalantari did not live together as husband and wife prior to or at any time after December of 2009.

4. Maryam Farahmand and Amir Bagherkalantari did not represent to others in Texas that they were married prior to or at any time after December of 2009.

5. The ceremony that Maryam participated in did not constitute a Muslim marriage ceremony because it lacked the requirements of a written contract, among many other requirements, and did not constitute a "Shia" marriage because the parties did not intend it, and it lacked the requirements for one. The Motion for Partial Summary Judgment and it's arguments are incorporated by reference in this Amended Answer.

C. Roger Farahmand is presumably attempting to raise a prior marriage claim for the purposes of a tactical advantage, to confuse the issues,

4

to deny Maryam Farahmand her community property interests, to deny Maryam Farahmand her community and separate property claims, to illegitimate the child born of the marriage, to harass, embarrass, and annoy Maryam Farahmand, and to increase the costs of litigation.

In addition, Roger Farahmand asserts this claim, not based in fact and law and it is sanctionable, or in the alternative, Respondent Maryam Farahmand is entitled to a declaratory judgment and attorney fees.

Roger Farahmand has avoided production of any documents concerning his business interests, largely to avoid exposure that he hasn't filed taxes or declared income on pharmacies he put under the control of Maryam Farahmand, cars he owns free and clear, houses he owns, that violated standing orders of the court to change control of these bank accounts handling over one million dollars in revenues.

In addition to his sanctionable conduct, Roger Farahmand has listed as an expert, the father of one of his major business partners, who has an indirect financial interest in the outcome of assertion of Roger's claim that Maryam Farahmand was married before. He has provided an expert with a huge conflict of interest, and indirect pecuniary reward, to perpetuate this legal claim with no basis in fact and law, and his expert should be struck for having an indirect financial impact by supporting this baseless claim and Roger

5

~~Faramand's pleadings should be struck, because they have no expert without a hidden agenda.~~

### 3.    *Attorney's Fees, Expenses, Costs, and Interest*

It was necessary for MARYAM FARAHMAND to secure the services of Robert S. Widner of the Widner Family Law Group, a licensed attorney, to prepare and defend this suit. To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Counter-Respondent an din favor of Counter-Petitioner for the use and benefit of Counter-Petitioner's attorney and be ordered paid directly to the Counter-Petitioner's attorney, who may enforce the judgment in the attorney's own name. Counter-Petitioner requests post-judgment interest as allowed by law.

### 4.    *Prayer*

MARYAM FARAHMAND prays that Petitioner take nothing by his suit, that the Court deny Petitioner's request to declare the parties' marriage void, that the Court affirm MARYAM FARAHMAND's defenses, and that MARYAM FARAHMAND be granted all relief requested in this Answer.

MARYAM FARAHMAND prays for attorney's fees, expenses, costs, and interest as requested above.

6

MARYAM FARAHMAND prays for general relief.

Respectfully submitted,

**Widner Family Law Group**
2911 Turtle Creek Blvd., Suite 405
Dallas, Texas 75219

/s/ Robert S. Widner

By: _____
　　　Robert S. Widner
　　　Attorney for Counter-Petitioner
　　　State Bar No. 00792092
　　　Email: robertwidner@gmail.com

**DAWN M. GRAMS, P.C.**

By:_/s/ Dawn M. Grams Horak　　　　　.
Dawn M. Grams Horak
Texas State Bar No. 24036667
P.O. Box 924
Grapevine, Texas, 76099

| Telephone No.: | 469-644-7442 |
| Facsimile No.: | 214-572-6893 |
| Electronic Address: | dgrams@msn.com |

*of counsel to Widner Family Law Group,
PLLC*

*ATTORNEYS FOR RESPONDENT AND
COUNTER-PETITIONER
MARYAM FARAHMAND*

**<u>CERTIFICATE OF SERVICE</u>**

7

This is to certify that a true and correct copy of the above and foregoing has been forwarded to the following parties via the manner reflected below, in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

Mr. Ike Vanden Eykel
Ms. Rebecca Tillery
**Koons Fuller, P.C.**
1717 McKinney Avenue, Suite 1500
Dallas, Texas, 75202
*Facsimile 214-871-0196*
*Certified Mail/Return Receipt Requested*
*U.S. First Class Mail*
*Via Email:*
*ike@koonsfuller.com*
*tillery@koonsfuller.com*
*Reagan@koonsfuller.com*

Mr. Bradford Nace
**Nace & Motley, LLC**
100 Crescent Court, 7th Floor
Dallas, Texas, 75201
*Facsimile 214-242-4333*
*Certified Mail/Return Receipt Requested*
*U.S. First Class Mail*

Ms. Diana L. Porter
**Diana L. Porter, P.C.**
103 E. Virginia Street, Suite 201
McKinney, Texas 75069
*Facsimile 972-548-2349*
*Certified Mail/Return Receipt Requested*
*U.S. First Class Mail*
*dporter@collincountydivorce.com*

Pursuant to Request of Attorney

8

*Certified to as of this 27th day of June, 2014.*

/s/ Robert S. Widner
ROBERT S. WIDNER

9